COLIN LENNARD (SBN 42304)
MARTIN L. PITHA (SBN 192447)
PATRICIA J. CHEN (SBN 197719)
**FULBRIGHT & JAWORSKI L.L.P.**
555 S. Flower Street, Suite 4100
Los Angeles, California 90071
Telephone: (213) 892-9200
Facsimile: (213) 892-9494

Attorneys for Plaintiff
HAZEL GREEN RANCH, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| HAZEL GREEN RANCH, LLC, a Delaware limited liability company<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR, DIRK KEMPTHORNE, in his capacity as Secretary of the United States Department of the Interior, NATIONAL PARK SERVICE, MARY A. BOMAR, in her capacity as Director, National Park Service, MICHAEL J. TOLLEFSON, in his capacity as Superintendent, Yosemite National Park,<br><br>Defendants. | Civil Action No.<br><br>**COMPLAINT FOR QUIET TITLE, DECLARATORY JUDGMENT, AND WRIT OF MANDAMUS** |

Plaintiff Hazel Green Ranch, LLC alleges as follows:

## INTRODUCTION

1. In 1866, Congress enacted R.S. 2477 which provides that "the right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted." Mining Act of July 1866, § 8, 14 Stat. 251, codified at 43 U.S.C. § 932 (repealed, prospectively only, by Federal Land Policy Management Act of 1976 ("FLPMA"), Pub.L. No. 94-579 § 706(a), 90 Stat. 2473). Courts and the federal government have interpreted R.S. 2477 as an express grant of highway rights-of-way from the federal government which become automatically valid upon the construction of the highway under the laws of the state in which they are located. Two of these rights-of-way, and the private easements to utilize them, are the subject of this Complaint.

2. Plaintiff Hazel Green Ranch, LLC ("HGR") owns Hazel Green Ranch ("Hazel Green"), which is an approximately 83-acre private property in Mariposa County, California, surrounded on all four sides by federal land, with Yosemite National Park as its eastern boundary, and Stanislaus National Forest as its northern, southern, and western boundaries.

3. The first two state authorized highways to reach the Yosemite Valley floor were completed in 1874 and both were connected to and thereafter utilized continuously by Hazel Green and its patrons. The first of these highways came from Coulterville, California, and became known as the "Coulterville Road." The other came from Big Oak Flat, California, is now known as the "Old Big Oak Flat Road," and was connected to Hazel Green by a highway known as the "Crane Flat Road" (also sometimes referred to as the "Crane Flat Cut-off Road"). (<u>See</u> Exhibit 1.)[1]

---

[1] Exhibits referenced in this Complaint are attached to the Appendix of Exhibits Referenced in Complaint ("Appendix") filed in conjunction with the Complaint. The Exhibits are intended to assist in understanding the history of Hazel Green, the Crane Flat Road, and the Coulterville Road.

4. Commencing in 1874, when the Coulterville Road opened, Mr. James Halstead collected tolls at Hazel Green, and in 1877, he began a food and overnight service facility there. In October 1888, the United States granted a patent of the Hazel Green property (which was then 120 acres) to Mr. Halstead, and Hazel Green continued to be utilized as a stagecoach (and, subsequently, an automobile) stop as well as a hotel for visitors to Yosemite. In 1938, the eastern 40 acres of Hazel Green were, pursuant to an Act of Congress, sold to the United States in connection with the then-planned realignment of the Old Big Oak Flat Road. The Big Oak Flat Road (sometimes referred to as "Highway 120" on various maps) was finally realigned in 1969 and became the main highway entering Yosemite from the newly established North Entrance, built along a new route that passed directly through what had been, until 1938, the eastern 40 acres of Hazel Green. This new route intersected in two separate places both highways (the Crane Flat Road and the Coulterville Road) which Hazel Green and its visitors had used since 1874 to enter Yosemite Valley. Thus, as it had been since 1874, Hazel Green had two separate access roads to the Yosemite Valley floor in 1969 utilizing either the Crane Flat Road segment or the Coulterville Road segment. These two separate segments exist today intersecting with the realigned Big Oak Flat Road.

5. Notwithstanding (i) this 132-year history (virtually all of which is contained in documents and maps of the Department of the Interior ["DOI"] itself), (ii) extensive negotiations with the National Park Service ("NPS") evidenced by and resulting in the 2001 Final Yosemite Valley Plan, and (iii) an additional year of documentation and meetings with the NPS and several senior staff of DOI with respect to the vehicular access of Hazel Green, the DOI and NPS now take the position that there are no such segments leading to the realigned Big Oak Flat Road and thus, according to the NPS and DOI, there is no vehicular access from Hazel

Green to the Valley floor. (See Exhibit 2.)[2] Thus after more than a century of explicitly recognizing these roads, as of November 2006, the apparent federal position is now that these roads do *not* exist. In taking this position, however, the DOI has not explained why an unbroken string of its *own* publications explicitly recognize these roads. Nor has it explained (as detailed below) why it inexplicably reversed positions on this issue within a recent three-month span. (See Exhibit 2.) Nor can this new position explain the 2001 Final Yosemite Valley Plan, which represents the NPS's recognition of the existence of HGR's highway rights. Nor, critically, does this new position account for the historical evidence or the legal record. These purportedly "non-existent" roads appear in Senate Reports, official NPS documents, DOI's own maps, private surveyor reports, and official county records. These purportedly non-existent rights also were expressly preserved in relevant legislation (both state and federal) affecting Hazel Green and the surrounding area from 1874 to the present.

6. HGR hereby brings this suit to (i) enforce the R.S. 2477 rights of way to the Crane Flat Road and to the Coulterville Road and to each separate intersection with the Big Oak Flat Road, (ii) enforce the easement rights appurtenant to the Patent of Hazel Green in 1888, and (iii) enforce rights specifically recognized by the State of California in streets and highways as a private easement or other right in, to, or over the lands subject to the street or highway, regardless of the manner in which the private easement or other right was acquired. These roads, and their underlying easements, remain intact today and can be utilized and appropriately improved to accommodate vehicular traffic between Hazel Green and the Big Oak Flat Road where each of the Crane Flat Road and the

---

[2] HGR's inclusion of Exhibit 2 (a letter from the DOI dated November 2006) in the Appendix is not intended as an adoption of its contents or positions by HGR. That letter is intended to demonstrate the position of the DOI – with which HGR expressly disagrees – and part of the history of communications between HGR and DOI. The letter is inaccurate in numerous respects, and HGR does not address each of those errors herein.

Coulterville Road, separately and independently, intersects with the realigned Big Oak Flat Road.

## JURISDICTION AND VENUE

7. The Court has subject matter jurisdiction under 28 U.S.C. §§ 1346(f) and 2409(a) (quiet title to real property in which the United States claims an interest), and 28 U.S.C. § 1361 (action to compel officer, employee, or agency of United States to perform a duty).

8. Venue is proper under 28 U.S.C. § 1391 as the roads at issue are located in Mariposa and Tuolumne Counties, California, and venue is proper in the Court pursuant to 28 U.S.C. § 1391(b), and all applicable law.

## THE PARTIES

9. Plaintiff Hazel Green Ranch, LLC ("HGR") is a Delaware limited liability company authorized to do business in California. The members of HGR are Lewis P. Geyser ("Geyser") and Genevieve L. Geyser.

10. Defendant United States Department of Interior ("DOI") is the department of the federal government to which Congress delegated specific authority to administer public lands under federal law, including Yosemite National Park.

11. Defendant Dirk Kempthorne is the Secretary of the Department of the Interior and is responsible for the direction and supervision of all operations and activities within DOI, including those taken by the National Park Service in Yosemite National Park.

12. Defendant National Park Service ("NPS" or the "Park Service") is the agency of DOI that has been delegated specific authority by Congress to manage Yosemite National Park pursuant to federal law.

13. Defendant Mary A. Bomar is the Director of the Park Service, is responsible for the direction and supervision of all operations and activities within the Park Service, and is charged with following and implementing the federal laws

and regulations governing the use and management of the Park Service lands within Yosemite National Park.

14. Defendant Michael J. Tollefson is the Superintendent of Yosemite National Park, is responsible for the direction and supervision of all operations and activities in Yosemite National Park, and is charged with following and implementing the federal laws and regulations governing the use and management of Park Service lands within Yosemite National Park.

## HAZEL GREEN RANCH RECENT BACKGROUND

15. Hazel Green is an approximately 83-acre private property in Mariposa County, California (a political subdivision of the State of California), with the following legal description: (i) Parcel 1, Northwest quarter of the northwest quarter of Section 15, Township 2 South, Range 19 East, M.D.B.&M; (ii) Parcel 2, Northeast quarter of the northwest quarter of Section 15, Township 2 South, Range 19 East, M.D.B.&M.

16. Hazel Green was purchased in 1998 by Geyser (on behalf of an entity to be formed [now HGR]) from two different sellers pursuant to two separate agreements. One of the conditions of the purchase was that the buyer was to be given substantial time to have discussions with the Park Service, the United States Forest Service, and the County of Mariposa to determine that the property could be developed as a resort.

17. One of Geyser's prospective partners, Mr. Stanley Selengut, had a long, mutually beneficial relationship with the Park Service, and particularly with Mr. John Reynolds, the then-Regional Director of the Pacific West Region of the Park Service. Among other activities, Mr. Selengut had cooperated with the Park Service in many environmental and tourism-related endeavors and was the recipient of the 1997 Smithsonian Magazine Environmentalist of the Year Award, in large part as a result of his activities in conjunction with and for the benefit of the Park Service. Prior to HGR's purchase, Mr. Selengut was informed by Regional

Director Reynolds that Hazel Green was for sale, that the Park Service was updating its Yosemite Valley Plan, that the Plan was expected to require off-the-valley-floor public parking, and that the Park Service would prefer that such public parking be on private property. Mr. Reynolds recognized that finding such property would be very difficult. Mr. Selengut and Mr. Reynolds knew that if Mr. Selengut were to purchase Hazel Green the Park Service would, based on their prior relationship, be secure in the knowledge that a portion of Hazel Green would be made available for these anticipated Park Service purposes based on the Park Service's expressed desire to promote a private-public partnership beneficial not only to the land owner for development purposes, but also to the Park Service for its purposes (namely, a park contact station, parking spaces for park visitors, and bus stop facilities) as well. (See Exhibit 3.)

18. During the purchase investigation period, Geyser determined that Hazel Green could be developed as an ecotourism destination and still have room to accommodate the Park Service's desire for a park contact station, parking spaces for park visitors, and bus stop facilities. Building the parking spaces and bus stop facilities would enable the Park Service to bus visitors entering the Park from the North directly from Hazel Green to the Valley floor, eliminating both substantial traffic and increased Valley floor parking requirements.

19. Geyser also determined during the investigation period that (i) Hazel Green had public road access to the two separate historic roads, the Crane Flat Road and the Coulterville Road, which originally led directly into Yosemite Valley and that (ii) as a result of the realignment of the Big Oak Flat Road by the Park Service to a more southerly and westerly route in 1969, these historic roads now actually intersected with and fed into the realigned Big Oak Flat Road, which then led to the Valley floor. However, the Park Service indicated that it would prefer to utilize the shortest possible route directly from Hazel Green to the Big Oak Flat Road. This route, a 200-400 yard two-lane road, would be routed from the Hazel Green Dip

area (where the Big Oak Flat Road is 4 lanes wide) thru an area devastated by a 1987 major forest fire directly to Hazel Green. (See Exhibit 4.) This proposed newer, shorter road would serve to eliminate the use of the two separate historic roads, each of which was longer and would require more busing than routing two short lanes thru the burned out area by Hazel Green Dip.

20. As a result of these facts learned during the investigation period, Geyser completed the purchase of both parcels of Hazel Green. At no time did any representative or employee of NPS question the existing legal access to Hazel Green. Geyser then commenced the planning and design stage for the resort, park contact stations, parking, and bus stop facilities. The Park Service suggested that in this stage Geyser should hold discussions with Mariposa County, the local Park Service personnel in charge of the new Valley Plan, various environmental organizations, the Forest Service, and the office of the Congressman representing the congressional district which included Yosemite National Park. Geyser pursued these contacts.

21. The Park Service approached Geyser with a request for HGR to consider meeting with the newly planned University of California Merced ("UC Merced"). The Park Service had previously agreed with UC Merced to join with it in establishing a Sierra Nevada Research facility in Yosemite National Park. If such a facility could be erected at Hazel Green as part of the development of Hazel Green, the result would be beneficial to the Park Service, Mariposa County, the State of California, UC Merced, and Hazel Green. Geyser met with representatives of UC Merced and an understanding was reached to include in the resort design a 5000-square foot facility for UC Merced's new Sierra Nevada Research Institute and the creation of a John Muir Professorship. A Memorandum of Understanding with UC Merced regarding the establishment of the UC Merced Sierra Nevada Research Institute at Hazel Green has been executed.

22. Throughout the 1998-2000 time period, the Park Service had been proceeding with designing the new Yosemite Valley Plan. The process included numerous public hearings and presentations. HGR and UC Merced were asked to give presentations in writing and orally at these public hearings. The presentations by HGR made clear (i) that HGR was intent on creating a public/private/University partnership in connection with the development by HGR, (ii) that HGR had direct access to the Big Oak Flat Road in two separate but longer locations (i.e., the Coulterville Road and the Crane Flat Road), and (iii) that HGR would agree to the out-of-valley floor parking, the different (and shorter) access road location, and the new UC Merced Sierra Nevada Research Institute Facility. UC Merced supported this position.

23. Letters in support of HGR as the desired location for the out-of-valley floor parking were received by the Park Service from Mariposa County, Congressman George Radanovich (whose district encompasses Yosemite), and multiple environmental organizations. Excerpts were published in the Valley Plan Published Comments and Responses, Vol. III.[3] Specifically, the Park Service published the following statement from HGR: "We believe that we are entitled to access from Hazel Green to Highway 120 in any event." (See Exhibit 5.)

24. In adopting the Preferred Alternative utilizing Hazel Green, the Park Service stated:

> "The Preferred Alternative [which was Alternative No. 2] includes both an access road into the Hazel Green site as well as the National Park Service parking lot. The environmental impacts of these actions are extensively addressed in Vol. IB, Chapter 4, Environmental Consequences. The impacts were deemed to be moderate to minor. No additional environmental impacts from the proposed road are

[3] The Final Yosemite Valley Plan/Supplemental Environmental Impact Statement including appendices and public comments may be found at: http://www.nps.gov/archive/yose/planning/yvp/seis/pdf/Vol_IB_Part_1.pdf.

anticipated beyond what was identified in the SEIS. The Sierra Nevada Research Institute —University of California, Merced facility and private development proposed at the site are outside the scope of this planning effort. Development on this private property would be subject to approval by Mariposa County."

On January 12, 2001 the Department of the Interior National Park Service published a Notice of Approval of Record of Decision:

"Decision: The National Park Service (NPS) will implement actions, strategies, and programs encompassed in Alternative 2 as described in the Final Supplemental Environmental Impact Statement on the Yosemite Valley Plan. . . . Elements of the selected alternative are to be implemented as soon as practical."

25. Having accomplished the inclusion of Hazel Green in the Yosemite Valley Plan (setting the access routes and the Park Service conditions for the development of Hazel Green), Geyser turned to completing the planning and zoning of Hazel Green with Mariposa County, which had embarked on the process of updating its required General Plan. By the end of 2004, it appeared that the new General Plan would be adopted and, from all indications, it was most likely that Hazel Green was going to receive appropriate zoning. This prompted Geyser to request a meeting with the Park Service.

26. Approximately two years after the Park Service's Record of Decision was published, the Park Service changed Yosemite Park Superintendents. The new Superintendent, Michael J. Tollefson, agreed to meet on December 9, 2005. Superintendent Tollefson, a new Chief of Planning (Linda Dahl), and Kevin Cann, Deputy Superintendent of Yosemite National Park, Geyser, and Genevieve L. Geyser, the members of HGR, attended. The meeting began with the Superintendent stating that the out-of-valley parking was never going to be implemented and therefore there would be no access road as set forth in the Record

of Decision. Three things were discussed as a result of this statement: (i) that the shorter Record of Decision access road from Hazel Green Dip was the Park's preferred access rather than the use of the two other routes from Hazel Green to the Big Oak Flat Road (i.e., the Coulterville Road and the Crane Flat Road), (ii) that HGR, as a good citizen, was agreeable to utilizing this least sensitive route from the Big Oak Flat Road to Hazel Green and that HGR would pay for the installation of the access road called for in the Record of Decision, and (iii) that if the Park Service did not concur, HGR would go forward with its development plans utilizing the two historic and legal access roads.

27. The Superintendent requested that HGR make a new presentation specifically to him showing the existing roads and the proposed access road. HGR agreed to do this.

28. On or about March 22, 2006, as the requested Hazel Green presentation to the Superintendent was being finalized, the Secretary of the Interior issued a Memorandum Re: Departmental Implementation of Southern Utah Wilderness Alliance v. Bureau of Land Management. That Memorandum, a non-binding policy statement regarding R.S. 2477, suggests "communication and cooperation" between parties asserting road rights of way with the Department of the Interior. It also specifically states that DOI "'has an obligation to render its decision in a timely and expeditious manner.' It 'may not use its authority, either by delay or unreasonable disapproval, to impair the rights of the holder of the R.S. 2477 right of way. In the event of disagreement, the parties may resort to the courts." (See Exhibit 6.) The presentation to the Superintendent was modified to refer to this new Memorandum and contained full, documented proof of the existing R.S. 2477 rights of way and the Hazel Green entitlements. (See Exhibit 7.)

29. Notwithstanding the Secretary's Memorandum's statement of policy of communication and cooperation, and its direction to the agency to render "a

decision in a timely and expeditious manner," there has never been a response from the Superintendent to the Presentation.

30. HGR therefore arranged a meeting on June 21, 2006, in Washington, D.C. with David P. Smith, Deputy Assistant Secretary and Counsel for Fish, Wildlife, and Parks, United States Department of the Interior, and Julie A. MacDonald, Deputy Assistant Secretary, Fish, Wildlife, and Parks. Mr. David Verhey, Assistant Solicitor, Department of the Interior, Division of Fish, Wildlife, and Parks also attended. A full discussion of the prior history occurred, and a written presentation was submitted (in addition to the full presentation submitted to the Park Superintendent). (See Exhibit 8.) Despite representations made at the meeting, the federal government officials who attended failed to respond.

31. HGR then arranged a meeting with Lawrence J. Jensen, Deputy Solicitor of the Department of the Interior on August 10, 2006. A briefing memorandum by HGR was again submitted prior to the meeting. (See Exhibit 9.) Deputy Solicitor Jensen began the meeting by stating his opinion that HGR has R.S. 2477 rights of way over the two roads exiting Hazel Green and intersecting with the realigned Big Oak Flat Road. He stated that the alternative short access road identified in the Record of Decision was clearly the appropriate choice and that he would recommend that to the Park Service. Jensen concluded the meeting by asking if Geyser was not delighted that Jensen had saved the need for litigation. Geyser replied that he was. Jensen also promised a quick response.

32. Jensen responded by letter in November 2006. (See Exhibit 2.) In that letter, however, Jensen reversed his prior position and denied that HGR had R.S. 2477 rights. (See id.)

33. On or about December 6, 2006, the County of Mariposa adopted and approved a new general plan designating Hazel Green in its land use element of its General Plan as "rural economic resort."

## HAZEL GREEN: HISTORICAL FACTS

34. On June 30, 1864, the United States Congress granted certain portions of the Sierra Nevada Mountains known as the Yosemite Valley and as the Mariposa Big Tree Grove to the State of California "to be managed by the Governor of the State, with eight other Commissioners." Chap. CLXXIV of the Statutes at Large, passed at the 38th Congress, Session I.

35. The Grant was accepted on April 2, 1866, and the Commissioners were appointed by the accepting Act. See Chapter DXXXVI of the Statutes of California, passed at the Sixteenth Session of the Legislature, 1865-6.

36. The Commissioners, in order to encourage development of roads which would lead to the Yosemite Valley, "did offer to grant franchises for the construction of roads within the grant, in return for which the builders would be authorized to collect tolls for use of their rights-of-way." (See Exhibit 10 at p. 114.)

37. As a result, two different companies were formed competing to build the first road to the Yosemite Valley. Both would build their roads on primarily federal property which had not been "reserved for public uses." In 1868 a group was formed to construct what is now known as the "old" Big Oak Flat Road ("old" Highway 120), and obtained in 1869 exclusive rights from "the Yosemite Board of Commissioners to build a wagon road within the Yosemite Grant, entering from the north side of the Valley." Although the road was built, it was not built within the time limits set by the Yosemite Board of Commissioners and the group lost its rights to exclusivity. The second group, known as the Coulterville and Yosemite Turnpike Company was formed to "build a wagon road from Bower Cave through Hazel Green and Crane Flat to an unspecified point on the boundary line of the Yosemite Grant." (See Exhibit 10 at p. 116.) Once they reached Crane Flat, "they apparently intended to connect with the Big Oak Flat Road and share its route into the Valley." (See id. at p. 117.)

38. In 1872, a new owner acquired the Coulterville and Yosemite Turnpike Company, learned of the discovery of the Merced Grove of Trees, acquired the expired exclusive rights from the Yosemite Board of Commissioners, and changed the route of the road so that the right of way descended from "Hazel Green, elevation 5,665 feet, . . . south through the Merced Grove of Big Trees" and headed down into the Valley instead of utilizing the road to Crane Flat.

39. However, the company constructing the Big Oak Flat Road became rejuvenated. Although it could not obtain exclusive rights from the Yosemite Board of Commissioners, it persuaded the California legislature to allow its road to go onto the Valley Floor notwithstanding the Coulterville group's exclusive rights. (See Exhibit 10 at pp. 122-125.)

40. The Coulterville and Yosemite Turnpike Company commenced regularly scheduled stage service on the Coulterville Road, through Hazel Green, on June 18, 1874. The Big Oak Flat Road commenced service on July 17, 1874, with "a caravan of fifty-two vehicles, trailing nearly a mile back along the road." (See Exhibit 10 at p. 129.) Therefore, as of approximately mid-1874, there were two public roadways (and one connecting roadway) connected to Hazel Green. Each of these constructed roadways was an R.S. 2477 highway, and Hazel Green was connected to each with traffic passing from Coulterville through Hazel Green to the Valley floor, either on the Coulterville Road through the Merced Grove of Trees or on the Crane Flat Road to the Big Oak Flat Road.

41. On October 10, 1888, following James Halstead's 14 years of occupancy of Hazel Green (from 1874 to 1888) the 120-acre tract was patented by Certificate No. 8654 by which the United States of America, "in consideration of the premises, and in conformity with the several Acts of Congress in such case made and provided, have given and granted and by these presents do give and grant, unto the said James Halstead and to his heirs, the said Tract above described: To have and to hold the same, together with all the rights, privileges, immunities,

and appurtenances, of whatsoever nature thereunto belonging unto the said James Halstead and to his heirs and assigns forever." At that time, the Coulterville Road and the Crane Flat Road were in existence and utilized by the owners of the roads, their visitors, and people traversing them through Hazel Green, so that Hazel Green had valid existing private easements to utilize these highways, and these easements were specifically granted to Mr. Halstead "and to his heirs and assigns forever" by the United States.

42. On October 1, 1890, pursuant to 26 Stat. 650, Congress expanded certain forest reservations, including a major portion of land which would become part of Yosemite National Park (and was at that time referred to as Yosemite Forest Reserve). The Act of October 1, 1890 expressly provided that "nothing in this act shall be construed as affecting any bona-fide entry of land made within the limits above described under any law of the United States prior to the approval of this act."

43. Stanislaus National Forest was established on February 22, 1897.

44. On April 28, 1904 the Congress had directed the Secretary of the Interior to "examine into the conditions and situations in the United States Yosemite Park in the State of California." On December 13, 1904 the Report of the Yosemite Park Commission (established by DOI) and the Letter from the Secretary of the Interior were printed as Senate Document No. 34 (the "Report").

45. The Report set forth the existence of the following roads:

Big Oak Flat Road—Name of Company

Big Oak Flat and Yosemite Turnpike Road Company; incorporated January 20, 1871; road completed in 1874; original length, 33 miles; State of California in 1886 bought up the 3 miles within the grant; length in present national park, 19 miles.

Coulterville Road—Name of company

> Coulterville and Yosemite Turnpike Company; date of incorporation apparently in 1870; road completed and opened to travel June 17, 1874, being the first or pioneer road into the valley; original length, 31 miles; in 1885-1887 State purchased the 4 miles east of the "blacksmith shop;" a branch was built from Hazel Green to Crane Flat on Big Oak Flat road, a distance of 4.8 miles, making total length owned by company 31.8 miles, of which about 24 miles is within the national park.

(See Exhibit 11.)

46. In the early 1900s, Hazel Green was sold to the Curry family, founders of Camp Curry in Yosemite Valley, and the entire 120-acre property remained in the Curry family's hands until 1938.

47. In 1905, California re-ceded and re-granted to the United States the "Yosemite Valley" and the "Mariposa Big Tree Grove." Cal. Stat. 1905, c.60, p. 54. The re-cession and re-grant stated: "Provided, however, that the re-cession and re-grant hereby made shall not affect vested rights and interests of third persons." Thus, all of the rights of Hazel Green remained, including the right to have access to the Valley floor.

48. In 1911, the Mariposa County Board of Supervisors declared various segments of the Coulterville to Yosemite Road to be free public highways on which no tolls could be charged. (See Exhibit 12.) When the federal government subsequently sought to purchase the entire Coulterville to Yosemite Road from Mariposa County, the County refused to sell. (See Exhibit 13 at p. 7.) The federal government thereafter conducted maintenance on the road, and even paved portions of it in the 1960s. (See id.)

49. Cars were banned from Yosemite National Park only from approximately 1907 thru 1912. In 1913 through 1915, cars were allowed to enter the Park from the North and then only (i) from the Coulterville Road, through

Hazel Green down through the Merced Grove of Trees and (ii) from the Big Oak Flat Road but only by turning back to Hazel Green on the Crane Flat (referred to by the Park Service as Crane Flat Cut-off Road) and then proceeding south on the Coulterville Road from Hazel Green thru the Merced Grove. These conditions were set forth in Department of Interior Yosemite National Park rules and regulations for the years involved.

50. In 1916, Washington B. Lewis, Supervisor of Yosemite National Park, "sent the Superintendent of National Parks a list of all the existing roads and trails with the limits of the park:

> (1) Government-Owned Roads
>
> .... Big Oak Flat Rd. Between El Capitan Bridge to park line near Tuolumne Big Trees 13.90 miles
>
> (2) Non-Government-Owned Roads
>
> ...Coulterville Rd Between Yosemite Valley & Hazel Green 12.00 miles
>
> ... Crane Flat Cut-off Rd. Between Crane Flat & Hazel Green (Mariposa Co. Rd.) 3.00 miles"

(See Exhibit 14 at pp. 531-532.)

51. The 1917 Report of the Director of the National Park Service contained an Automobile Map of Yosemite National Park showing the Big Oak Flat Road, the Crane Flat Cut-off Road, the Coulterville Road, and the "Auto Checking Station" location at each of these three roads. (See Exhibit 14 at p. 526.)

52. In 1919, California enacted a cession law stating that "[e]xclusive jurisdiction shall be and the same is hereby ceded to the United States over and within all of the territory which is now or may hereafter be included in those several tracts of land in the State of California set aside and dedicated for park purposes by the United States as 'Yosemite National Park.'" (Emphasis added.)

53. In April 1923, the Curry family had Hazel Green surveyed by a licensed Land and U.S. Minerals surveyor. The survey showed the Coulterville Road and Crane Flat Road Cut-off as each exited the Hazel Green property to the south and to the east. Both of these roads, including the intersection of the Crane Flat Road Cut-off with the Big Oak Flat Road, appear on the Map of Yosemite National Park, 1929 (see Exhibit 14 at pp. 566-567), Map of Yosemite National Park, 1939 (see Exhibit 14 [Illustration 217]), and Guide Map of Yosemite National Park, CA 1968 (see Exhibit 14 [Illustration 243]).

54. In 1937, Congress authorized the Secretary of the Interior to acquire several sections of privately owned land adjacent to certain of the boundaries of Yosemite National Park. (July 9, 1937, chapter 469, Secs. 1,2, 50 Stat. 485, 486, codified at 16 U.S.C. §47e). This proposed acquisition of private lands covered virtually all of the land thru which the Crane Flat Road passed from Hazel Green to Crane Flat, and substantially all of the land that the Mariposa County Coulterville Road passed thru on its route to the Merced Grove of Trees as it descended to the Valley Floor. It was the acquisition authorized by this 1937 statute that enabled the realignment of the Big Oak Flat Road from what would become the new Northern Entrance to the Park, to Crane Flat (constructed in 1969), and from Crane Flat to the Valley Floor (constructed in 1940). One of those parcels was the "northwest quarter of the northeast quarter section 15, township 2 south, range 19 east" which was the easternmost 40 acre parcel of Hazel Green. The remainder of the parcels consisted of the land, once actually acquired, and including this Hazel Green parcel, to which the Big Oak Flat Road (Highway 120) would be relocated. (See Exhibit 14 at pp. 931-932.) The statute further provided

> "when title to the aforesaid privately owned lands has been vested in the United States, all of the lands described in this section shall be added to and become a part of the Yosemite National Park and shall be subject to all laws and regulations applicable thereto; ***provided,***

***that nothing in this section or section 47f of this title shall be construed to affect any valid existing rights.*** " (Emphasis added).

The maps described above show that this provision applied to the Crane Flat Cut-off Road, the Coulterville Road, and to each of the easement rights of Hazel Green.[4]

55. As a result, in 1938, at the request of the United States Government, and pursuant to July 9, 1937, Chapter 469, Secs. 1,2, 50 Stat. 485,486, codified as 16 U.S.C. Chap. 1, Subchap. VI, Sec. 47e, Mrs. Curry sold the property's eastern 40 acres to the federal government in conjunction with the government's plans for a realignment of Highway 120 (Big Oak Flat Road). (See Exhibits 15 and 16.) The recorded deed for the transfer of the eastern 40 acres shows that the parties recognized that existing rights-of-way crossed Hazel Green, and that the transfer would not impact those rights. The deed stated explicitly that it did "not cover any right, title, or interest which the State of California may have in [the] lands for road, highway or other purposes." (See Exhibit 17.) This specifically complied with the provisions of the July 9, 1937 statute that "nothing in this section or section 47f of this title shall be construed to affect any valid existing rights."

56. As the NPS and DOI specifically have reported: one of the purchases authorized by the July 9, 1937 Act was to acquire certain lands known as the Carl Inn Sugar Pine Area. The government started a condemnation suit. The suit was settled and all of the lands involved were purchased: "the Tioga Road crossed its north end, the Big Oak Flat Road crossed the central portion, and the Crane Flat road crossed the southern part. ***All highways were heavily used by the general public in going to and from the park.*** After a year and a half of negotiations with the Yosemite Sugar Pine Lumber Company, owner of most of the tract, an

[4] See also 16 U.S.C. §45c. ("Prior claims, locations, and entries: . . . . Nothing herein contained shall affect any valid existing claim, location, or entry established prior to July 3, 1926, under the land laws of the United States, whether for homestead, mineral, right-of-way, or any other purpose whatsoever, or shall affect the rights of any such claimant, locator, or entryman to the full use and enjoyment of his land . . . .")

agreement was reached on price. The purchase was consummated early in 1939." (See Exhibit 14 at pp. 931-932 [emphasis added].) The recorded deed for all of this land was specifically "subject to (A) all existing easements and rights-of-way for public roads and/or highways and all other recorded easements and rights of way; (B) all reservations in United States patents respecting said lands." (See Exhibit 17.) It is clear that until 1939, all of the lands on which the Crane Flat Road and the Coulterville Road segments now intersect with the rerouted Big Oak Flat Road were in private ownership and that the public and the owners of the lands were utilizing those roads as public and private rights-of-way. The United States never acquired those rights-of-way and they are in existence and unimpaired today.

57. The Park Service did not take advantage of the purchase of the various land parcels until much later. The Big Oak Flat Road was rerouted from Crane Flat south to the Valley Floor in 1940. But the new segment of the Big Oak Flat Road which now runs from the Big Oak Flat Entrance (the North Entrance) of the Park, past Hazel Green and to the 1940 rerouted Road at Crane Flat was not constructed until 1969. Throughout the period following the sale of the eastern 40 acres, the owners of Hazel Green continued to utilize both the Coulterville Road and the Crane Flat Road Cut-off. Subsequent to the 1969 realignment of the Big Oak Flat Road, as to Hazel Green's access, both of such roads became much shorter segments intersecting with the realigned Big Oak Flat Road. The Crane Flat Road decreased in length from the 4.8 miles reported in the report of the DOI Yosemite Commission in 1904 to 3,700 feet. The Coulterville Road segment (although still a county highway of 12.00 miles as stated in the 1916 DOI supervisor of Yosemite National Park report down to the Yosemite Valley Floor) became an 11,300 foot road to its intersection with the Big Oak Flat Road. United States Geological Survey Maps continued to show both roads running from Hazel Green. (See Exhibit 18.)

58. In 1985, Mariposa County recorded a highway easement through Hazel Green (required of the owners of Hazel Green as a condition of subdividing Hazel Green into two parcels). This recorded easement is 60 feet in width and was based on County records regarding the already-existing public right-of-way, described as "Road #51 . . . also known as Old Coulterville Yosemite Road" that intersected with Highway 120 southeast of Hazel Green. (See Exhibits 19 and 20.)

59. Mariposa County retains ownership of the Coulterville Road as a designated county road. (See Exhibit 21.) The Coulterville Road appears on DOI maps since 1904. Numerous editions of these maps are attached hereto. For example, the Coulterville Road is on the back cover (including the portion going thru Hazel Green) of the Yosemite Road Guide (May 2005 printing of the 1989 revision) which is currently available for purchase in Yosemite National Park. (See Exhibit 22.) This is the eighth edition going back to the first edition in 1942. Every edition of the Yosemite Road Guide has the Coulterville Road in it. The latest edition of the National Geographic Map of Yosemite National Park, made "in cooperation with the National Park Service," has the very same Coulterville Road as it runs through Hazel Green and continues to its intersection with Highway 120 (Big Oak Flat Road). (See Exhibit 23.) The Stanislaus National Forest Route Inventory Map, January 18, 2006, which is the latest edition, has the Coulterville Road running through Hazel Green to its intersection with the Big Oak Flat Road. (See Exhibit 24.) Even Google and Mapquest today will print out the "Old Yosemite Road" as it runs through Hazel Green (whose address is 12878 Old Yosemite Road, Mariposa, CA) to the intersection with Highway 120. (See Exhibit 25.) The Crane Flat segment also appears on DOI generated maps from the original maps to and including the USGS map of 1976, photoinspected in 1988.

## R.S. 2477 RIGHTS: AN OVERVIEW

60. R.S. 2477, enacted as part of the Mining Act of July 26, 1866, provides in pertinent part as follows:

> "§8. And be it further enacted, that the right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted."

Mining Act of July 1866, § 8, 14 Stat. 251, codified at 43 U.S.C. § 932 (repealed, prospectively only, by Federal Land Policy Management Act of 1976 ("FLPMA"), Pub.L. No. 94-579 § 706(a), 90 Stat. 2473).

61. The legislative purpose behind this enactment was to "facilitate the settlement of the country," and to further a "general policy of the federal government" by "tend[ing] to increase the value of the public lands." Southern Utah Wilderness Alliance v. Bureau of Land Management, 425 F.3d 735, 741 (10th Cir. 2005) ("SUWA").

62. R.S. 2477 remained part of federal law until 1976, when Congress enacted FLPMA, which repealed the portion of R.S. 2477 that granted ***new*** public rights-of-way, but explicitly protected all ***existing*** rights-of-way previously dedicated under the statute. FLPMA §§ 509(a), 701(a), and 701(h), codified respectively at 43 U.S.C. §§ 1769(a) and 1701, Savings Provisions (a) and (h).

63. R.S. 2477 was self-executing and therefore, ratification or approval by the federal government was not required to perfect an R.S. 2477 right-of way. Schultz v. Department of Army, 10 F.3d 649, 655 (9th Cir. 1993); SUWA, 425 F.3d at 776; Sierra Club v. Hodel, 848 F.2d 1068, 1083-84 (10th Cir. 1988) overruled in part on other grounds by Los Ranchos De Albuquerque v. Marsh 956 F.2d 970 (10th Cir. 1992).

64. R.S. 2477 has been uniformly interpreted by the courts as an express dedication of the right of way by the landowner, the United States Congress. SUWA, 425 F.3d at 769-70. The statute itself, however, is silent as to how Congress's grant was to be accepted. Courts have determined that Congress incorporated into the statute, as part of federal law, state common-law principles

regarding the acceptance of an offer to dedicate a highway right-of-way. Id. at 765. Here, California law governs the establishment of a public highway.

65. In California, "no particular formality of either word or act is required" to constitute a dedication of a road. Western Aggregates v. Yuba, 101 Cal.App.4th 278, 297 (2002). "The use of the street by the public for a reasonable length of time, is sufficient evidence of acceptance." Smith v. City of San Luis Obispo, 95 Cal.463, 467 (1932). This doctrine is not unique to California; it is well-settled common law. Indeed, the U.S. Supreme Court has even recognized that the "passage of wagons, etc., over natural soil," can "form[]" a public highway. Central Pac. Ry. Co. v. Alameda County, 284 U.S. 463, 467 (1932).

66. Furthermore, under California law, a public highway is established when a toll road is created. See Wood v. The Truckee Turnpike Co., 24 Cal. 474, 490 (1864). A person who creates a toll road, even if that toll road is over private land, dedicates it as a public highway when it accepts tolls from the public for its use. See People v. Davidson, 79 Cal. 166 169-70 (1889).

67. Markings on official maps can provide evidence that a public road exists. See Gray v. Magee, 133 Cal.App. 653, 658, 661 (1933); see also Cal. Evid. Code § 1341.

68. The scope of an R.S. 2477 right-of way is that which is reasonable and necessary for the type of use to which the right-of-way has been put. Hodel, 848 F.2d at 1083-84.

69. The general rule with respect to public highway easements, including R.S. 2477 rights-of-way, is, "[o]nce a highway, always a highway." Western Aggregates, 101 Cal.App.4th at 303, 305 (citation omitted). Under R.S. 2477, "it is not important how extensively a highway was used, or whether it was used at all, by the public after that time so long as it was not legally abandoned." Ball v. Stephens, 68 Cal.App.2d 843, 848 (1945).

70. The scope of an highway easement is determined by the historical use, purpose, and future uses reasonably contemplated when the easements were created. Fristoe v. Drapeau, 35 Cal.2d 5, 9 (1950) ("It is to be assumed that [an easement's creators] anticipated such uses as might reasonably be required by a normal development of the dominant tenement"). R.S. 2477 created easements that were to be used by the public prospectively. Accordingly, the scope of the easements when granted necessarily encompassed both present and future needs. See Faus v. City of Los Angeles, 67 Cal.2d 350, 355-56 (1967). Thus, "[t]he dedicator is presumed to have intended the [easement] to be used by the public in such a way as will be most convenient and comfortable, and according to not only the proprieties and uses known at the time of the dedication, but as to those justified by lapse of time and change of conditions." Griffith v. City of Los Angeles, 175 Cal.App.2d 331, 337 (1959).

71. Areas along the roadway beyond the actual beaten path that are reasonable and necessary to accommodate "sound engineering practice," including lands on which attendant accouterments such as drainage ditches, culverts, shoulders and cut slopes existed as of October 21, 1976, or as reasonably and necessarily added after that date to accommodate increased travel, are "part of the reasonable and necessary use" and therefore within the scope of the highway right-of-way. Hodel, 848 F.2d at 1083-84. Thus, the scope of an R.S. 2477 right-of-way includes the right to conduct reasonable and necessary maintenance within the right-of-way and to make reasonable and necessary improvements therein without NPS authorization. Id. at 1086 n.16.

72. The government has limited authority to regulate access over a right-of-way dedicated under R.S. 2477. See Clouser v. Espy, 42 F.3d 1522, 1538 (9th Cir. 1994); SUWA, 425 F.3d at 748. The government "may not use its authority, either by delay or by unreasonable disapproval, to impair the rights of the holder[s] of the R.S. 2477 right-of-way." SUWA, 425 F.3d at 748.

73. The Secretary of Interior has recognized that DOI may only "make non-binding administrative determinations for its own land-use planning and management purposes, it cannot create a single national standard governing the validity of all R.S. 2477 claims, but instead must look to the particular laws of each State in which a claimed right of way is situated." Memorandum re: Departmental Implementation of *Southern Utah Wilderness Alliance v. Bureau of Land Management*, 425 F.3d 735 (10th Cir. 2005); Revocation of January 22, 1997, Interim Policy; Revocation of December 7, 1988, Policy, The Secretary of the Interior, March 22, 2006 (Exhibit 6).

74. The Secretary of Interior has further directed parties who disagree with any R.S. 2477 decision made by DOI to "resort to the courts," as "[i]t has long been established that the Quiet Title Act is the exclusive remedy against the United States for finally resolving such disputes of title." (See Exhibit 6.)

**GENERAL ALLEGATIONS REGARDING QUIET TITLE ACTION**

75. This is an action in part, under 28 U.S.C. § 2409a to quiet title to two R.S. 2477 rights-of-way in the County of Mariposa, California, the Coulterville Road and the Crane Flat Road.

76. As described above, the two roads were constructed in the 1870s across unreserved federal lands and have been used as highways since then as evidenced by the multitude of maps and documents demonstrating the use and existence of the roads.

77. HGR holds its right-of-way interests in the roads at issue without necessity of any approval of the federal government. Western Aggregates, 101 Cal.App.4th at 296. This right-of-way interest entitles HGR to pass over the easements and to make reasonable and necessary improvements within the boundaries of the right of way. Hodel, 848 F.2d at 1086, n.16.

78. As the owner of Hazel Green, HGR further holds appurtenant rights to maintain continued public access to their property across any public highway that

abuts their property, i.e., Highway 120. Hanshaw v. Long Valley Road Assoc., 116 Cal.App.4th 471, 482 (2004). This "right has been described as an easement of ingress and egress to and from the property or, generally, the right of access over the [highway] and from [the] property . . . ." Bacich v. Board of Control, 23 Cal.2d 343, 349-50 (1943). Furthermore, this right exists irrespective of "whether [the property owner] does or does not own [a] fee in the street," and is considered a "private easement which is an incident to the . . . ownership of the land abutting the subject [highway]." Id.; see also Rachford v. County of Sonoma, 22 Cal.App.3d 1056, 1069 (1972). In other words, HGR, as the owner of Hazel Green, has appurtenant legal rights in any R.S. 2477 public highway easement that abut Hazel Green and link it to the adjoining Highway 120.

79. These rights are not limited to allowing access by HGR itself, but include a right to allow other members of the public to use the easements between Hazel Green and Highway 120. See McKinney v. Ruderman, 203 Cal.App.2d 109, 119 (1962).

80. Notwithstanding the above, Defendants have asserted that HGR does not have R.S. 2477 rights over the two roads at issue and that access to the roads has been blocked by the NPS. (See Exhibit 2 [stating that actions to close the Crane Flat Road and the Coulterville Road include "erecting gates"].)

81. The Defendants' description is inaccurate, and the only gate which has been erected has been erected on the Coulterville Road. HGR is informed and believes that NPS, however, gave keys to the gate to prior owners, as well as a number of other private citizens.

82. Given that the Coulterville Road and Crane Flat Road have been maintained and utilized by the County and public to the present date, the statute of limitations for this Quiet Title action has not expired.

83. All county highways continue to be highways until abandoned by affirmative action of the county. Cal. Streets & Highways Code § 901. Moreover,

vacation of a highway does not affect a private easement or other right of a person (including, but not limited to, a public utility, the state, a public corporation, or a political subdivision, other than the local agency adopting the resolution of vacation) in, to, or over the lands subject to the street, highway, or public service easement, regardless of the manner in which the private easement or other right was acquired. Cal. Streets & Highways Code § 8352(a). "A private easement or other right described in subdivision (a) is subject to extinguishment under the laws governing abandonment, adverse possession, waiver, and estoppel." Cal. Streets & Highways Code § 8352(b).

84. In California, in order to extinguish an easement by abandonment, the owner of the underlying property must show (i) non-use, (ii) intention to abandon, and (iii) damage by the holder of the easement. Nevada Irrigation Dist. v. Keystone Copper, 224 Cal.App.2d 523, 532 (1964). In other words, an easement created by grant cannot be lost merely by lack of use, no matter how long, "there must be conduct demonstrating that intent which is so decisive and conclusive as to indicate a clear intent to abandon." Tract Development Service, Inc. v. Kepler, 199 Cal.App.3d 1374, 1385; see also Nevada Irrigation Dist., 224 Cal.App.2d at 532. "Extinguishment of an easement is an extreme and powerful remedy which is utilized only when use of the easement has been rendered essentially impossible." Reichardt v. Hoffman, 52 Cal.App.4th 754, 767 (1997).

85. Even if use of the roads had ceased completely (which it has not), this would not equal legal abandonment of the easements. See People v. Myring, 144 Cal. 351, 354 (1904) (even complete "c[essation] of a use of a portion of [a] road after it has been once established d[oes] not of itself destroy its character as a public highway.").

86. Neither the County of Mariposa nor HGR has expressed any intent to abandon the R.S. 2477 right-of-ways at issue. On the contrary, as discussed above, the County of Mariposa has specifically refused to relinquish the highway

easements and has actually recorded the Coulterville to Yosemite Road right-of-way. As discussed above, HGR relied on the existence of the R.S. 2477 right-of-ways when it purchased Hazel Green. In testimony before NPS during the adoption of the 2000 Yosemite Valley Plan, HGR repeatedly made references to its R.S. 2477 rights in the Coulterville Road and Crane Flat Roads and its willingness to build the 300 meter road from Highway 120 to the northeastern boundary of Hazel Green. NPS never refuted any of HGR's contentions, nor did it ever indicate that HGR abandoned any such R.S. 2477 rights. HGR's first indication that it had allegedly abandoned such right was the November 30, 2006 letter wherein DOI rejected HGR R.S. 2477 rights. (See Exhibit 2.)

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF:

### (QUIET TITLE IN A RIGHT-OF-WAY EASEMENT ACROSS FEDERAL PUBLIC LANDS PURSUANT TO R.S. 2477 – COULTERVILLE ROAD)

87. Plaintiff realleges and incorporates by reference the allegations of Paragraphs 1 through 86.

88. As stated, the Coulterville Road, having a history of over 130 years, a Mariposa County designated and recorded road, runs from Hazel Green to its intersection with the rerouted Big Oak Flat Road just west of the Merced Grove parking area. (See Exhibit 19.)

89. Plaintiff brings this action in order to enjoy unfettered use of, to make improvements to, and to have the right to continuously improve and maintain the Coulterville Road segment leading from Hazel Green to and through the intersection with the Big Oak Flat Road, in each and every instance as required by all applicable (based on the legal use of the real property constituting Hazel Green from time to time) state and county laws.

90. Judicial relief is necessary and appropriate, pursuant to the Quiet Title Act, in order to recognize that such right-of-way exists, to ensure access at all times over the roads at issue, and to perform all necessary and required improvements and maintenance without unlawful hindrance by NPS.

**SECOND CLAIM FOR RELIEF:**

**(QUIET TITLE IN A RIGHT-OF-WAY EASEMENTS ACROSS FEDERAL PUBLIC LANDS PURSUANT TO R.S. 2477 – CRANE FLAT ROAD)**

91. Plaintiff realleges and incorporates by reference the allegations of Paragraphs 1 through 90.

92. As stated, the Crane Flat Road has run directly east from Hazel Green to the point at which it now intersects with the rerouted Big Oak Flat Road for over 130 years.

93. Plaintiff brings this action in order to enjoy unfettered use of, to make improvements to, and to have the right to continuously improve and maintain the Crane Flat Road segment leading from Hazel Green to and through the intersection with the rerouted Big Oak Flat Road, in each and every instance as required by all applicable (based on the legal use of the real property constituting Hazel Green from time to time) state and county laws.

94. Judicial relief is necessary and appropriate, pursuant to the Quiet Title Act, in order to recognize that such right-of-way exists, to ensure access at all times over the roads at issue, and to perform all necessary and required improvements and maintenance without unlawful hindrance by NPS.

**THIRD CLAIM FOR RELIEF:**

**(QUIET TITLE IN PRIVATE EASEMENT OVER THE COULTERVILLE ROAD)**

95. Plaintiff realleges and incorporates by reference the allegations of Paragraphs 1 through 94.

96. It is well-settled that owners of land in California have appurtenant rights, akin to rights in a private easement, to maintain continued public access to their property across any public highway that abuts their property. See Bacich v. Bd. of Control, 23 Cal.2d 343, 349-50 (1943), McKinney v. Ruderman, 203 Cal.App.2d 109, 119 (1962). As the California Supreme Court explained, "[i]it has long been recognized in this state and elsewhere that an owner of property abutting upon a public [highway] has a property right in the nature of an easement in the street which is appurtenant to his abutting property and which is his private right, as distinguished from the right of the general public in and to the street." McKinney, 203 Cal.App.2d at 119 (internal quotes omitted).

97. The Coulterville Road has been used for egress and ingress to Hazel Green since its construction in the 1870s and is a private easement. The easement includes the right to improve it to applicable state and county highway standards of use, as such standards evolve, and as the mode of use changes on the properties having the right to use the easement. The right to use includes the right to allow its patrons and members of the public to use the easement between Hazel Green and the rerouted Big Oak Flat Road. See McKinney, 203 Cal.App.2d at 119.

98. Plaintiff brings this action in order to enjoy unfettered use of, to make improvements to, and to have the right to continuously improve and maintain the Coulterville Road segment leading from Hazel Green to and through the intersection with the rerouted Big Oak Flat Road, in each and every instance as required by all applicable (based on the legal use of the real property constituting Hazel Green from time to time) state and county laws.

99. Judicial relief is necessary and appropriate, pursuant to the Quiet Title Act, in order to recognize that such private easement exists, to ensure access at all times over the roads at issue, and to perform all necessary and required improvements and maintenance without unlawful hindrance by NPS.

**FOURTH CLAIM FOR RELIEF:**

**(QUIET TITLE IN PRIVATE EASEMENT OVER THE CRANE FLAT ROAD)**

100. Plaintiff realleges and incorporates by reference the allegations of Paragraphs 1 through 99.

101. The Crane Flat Road has been used for egress and ingress to Hazel Green since its construction in the 1870s and is a private easement. The easement includes the right to improve it to applicable state and county highway standards of use, as such standards evolve, and as the mode of use changes on the properties having the right to use the easement. The right to use includes the right to allow its patrons and members of the public to use the easement between Hazel Green and the rerouted Big Oak Flat Road. See McKinney, 203 Cal.App.2d at 119.

102. Plaintiff brings this action in order to enjoy unfettered use of, to make improvements to, and to have the right to continuously improve and maintain the Crane Flat Road segment leading from Hazel Green to and through the intersection with the rerouted Big Oak Flat Road, in each and every instance as required by all applicable (based on the legal use of the real property constituting Hazel Green from time to time) state and county laws.

103. Judicial relief is necessary and appropriate, pursuant to the Quiet Title Act, in order to recognize that such private easement exists, to ensure access at all times over the roads at issue, and to perform all necessary and required improvements and maintenance without unlawful hindrance by NPS.

**FIFTH CLAIM FOR RELIEF:**

**(DECLARATORY JUDGMENT RECOGNIZING RIGHT-OF-WAY EASEMENT PURSUANT TO R.S. 2477 – COULTERVILLE ROAD)**

104. Plaintiff realleges and incorporates by reference the allegations of Paragraphs 1 through 103.

105. Title 28, Section 2201 of the United States Code authorizes this Court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a); see also 28 U.S.C. § 2202.

106. This action seeks to quiet title through declaratory relief by requiring the defendants to provide the Plaintiff a recognized right-of-way created pursuant to R.S. 2477 over the Coulterville Road to and including its intersection with the rerouted Big Oak Flat Road.

107. Plaintiff has met the necessary elements to establish a granted right-of-way pursuant to R.S. 2477. Judicial relief is necessary and appropriate, pursuant to the Declaratory Judgment Act, in order to recognize that such right-of-ways exist to ensure unfettered use of, to make improvements to, and to have the right to continuously improve and maintain the Coulterville Road segment leading from Hazel Green to and through the intersection with the rerouted Big Oak Flat Road, in each and every instance as required by all applicable (based on the legal use of the real property constituting Hazel Green from time to time) state and county law without unlawful hindrance from NPS.

**SIXTH CLAIM FOR RELIEF:**

**(DECLARATORY JUDGMENT RECOGNIZING RIGHT-OF-WAY EASEMENT PURSUANT TO R.S. 2477 – CRANE FLAT ROAD)**

108. Plaintiff realleges and incorporates by reference the allegations of Paragraphs 1 through 107.

109. Title 28, Section 2201 of the United States Code authorizes this Court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a); see also 28 U.S.C. § 2202.

110. This action seeks to quiet title through declaratory relief by requiring the defendants to provide the Plaintiff a recognized right-of-way created pursuant to R.S. 2477, over the Crane Flat Road, to and including its intersection with the rerouted Big Oak Flat Road.

111. Plaintiff has met the necessary elements to establish a granted right-of-way pursuant to R.S. 2477. Judicial relief is necessary and appropriate, pursuant to the Declaratory Judgment Act, in order to recognize that such right-of-ways exist, to ensure unfettered use of, to make improvements to, and to have the right to continuously improve and maintain the Coulterville Road segment leading from Hazel Green to and through the intersection with the rerouted Big Oak Flat Road, in each and every instance as required by all applicable (based on the legal use of the real property constituting Hazel Green from time to time) state and county law without unlawful hindrance from NPS.

**SEVENTH CLAIM FOR RELIEF:**

**(DECLARATORY JUDGMENT RECOGNIZING PRIVATE EASEMENT IN COULTERVILLE ROAD)**

112. Plaintiff realleges and incorporates by reference the allegations of Paragraphs 1 through 111.

113. Title 28, Section 2201 of the United States Code authorizes this Court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a); see also 28 U.S.C. § 2202.

114. This action seeks to quiet title through declaratory relief by requiring the defendants to recognize the existence of Plaintiff's private easement over the Coulterville Road, to and including its intersection with the rerouted Big Oak Flat Road.

115. Plaintiff has met the necessary elements to establish a private easement over the Coulterville Road. Judicial relief is necessary and appropriate, pursuant to the Declaratory Judgment Act, in order to recognize that such right-of-ways exist, to ensure unfettered use of, to make improvements to, and to have the right to continuously improve and maintain the Coulterville Road segment leading from Hazel Green to and through the intersection with the rerouted Big Oak Flat Road, in each and every instance as required by all applicable (based on the legal use of the real property constituting Hazel Green from time to time) state and county law without unlawful hindrance from NPS.

**EIGHTH CLAIM FOR RELIEF:**

**(DECLARATORY JUDGMENT RECOGNIZING PRIVATE EASEMENT IN CRANE FLAT ROAD)**

116. Plaintiff realleges and incorporates by reference the allegations of Paragraphs 1 through 115.

117. Title 28, Section 2201 of the United States Code authorizes this Court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a); see also 28 U.S.C. § 2202.

118. This action seeks to quiet title through declaratory relief by requiring the defendants to recognize the existence of the Plaintiff's private easement over the Crane Flat Road, to and including its intersection with the rerouted Big Oak Flat Road.

119. Plaintiff has met the necessary elements to establish a private easement over the Crane Flat Road. Judicial relief is necessary and appropriate, pursuant to the Declaratory Judgment Act, in order to recognize that such right-of-ways exist, to ensure unfettered use of, to make improvements to, and to have the right to continuously improve and maintain the Coulterville Road segment leading from

Hazel Green to and through the intersection with the rerouted Big Oak Flat Road, in each and every instance as required by all applicable (based on the legal use of the real property constituting Hazel Green from time to time) state and county law without unlawful hindrance from NPS.

**NINTH CLAIM FOR RELIEF:**

**(WRIT OF MANDAMUS TO COMPEL THE DEFENDANTS TO PROVIDE ACCESS TO RIGHT-OF-WAY EASEMENTS PURSUANT TO R.S. 2477 – COULTERVILLE ROAD)**

120. Plaintiff realleges and incorporates by reference the allegations of Paragraphs 1 through 119.

121. Title 28, Section 1361 authorizes this Court to compel an officer of the United States to perform a duty owed to the Plaintiff. Section 1361 specifically states:

> "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the Plaintiff."

28 U.S.C. § 1361.

122. Plaintiff has met the necessary elements to establish granted right-of-ways pursuant to R.S. 2477. A writ of mandamus is necessary and appropriate in order to compel NPS to provide Plaintiff access to the Coulterville Road right-of-way currently blocked by an illegal and locked gate. The Coulterville Road is currently blocked by a locked gate at the Merced Grove parking lot, which should be removed to provide Plaintiff unfettered access to the right-of-way. Access by private key while acceptable until this date is no longer sufficient.

123. This writ of mandamus is necessary to ensure HGR's right to unfettered use of, to make all necessary improvements to, and to continuously

improve and maintain the Coulterville Road segment leading from Hazel Green to and through the intersection with the rerouted Big Oak Flat Road, in each and every instance as required by all applicable (based on the legal use of the real property constituting Hazel Green from time to time) state and county laws.

124. No other adequate remedy is available because only the federal district courts have original jurisdiction to invoke mandamus. See 28 U.S.C. § 1361.

**TENTH CLAIM FOR RELIEF:**

**(WRIT OF MANDAMUS TO COMPEL THE DEFENDANTS TO PROVIDE ACCESS TO RIGHT-OF-WAY EASEMENTS PURSUANT TO R.S. 2477 – CRANE FLAT ROAD)**

125. Plaintiff realleges and incorporates by reference the allegations of Paragraphs 1 through 124.

126. Title 28, Section 1361 authorizes this Court to compel an officer of the United States to perform a duty owed to the Plaintiff. Section 1361 specifically states:

> "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the Plaintiff."

28 U.S.C. § 1361.

127. Plaintiff has met the necessary elements to establish granted right-of-ways pursuant to R.S. 2477. A writ of mandamus is necessary and appropriate in order to compel NPS to provide Plaintiff access to the Crane Flat Road right-of-way.

128. This writ of mandamus is necessary to ensure HGR's right to unfettered use of, to make all necessary improvements to, and to continuously improve and maintain the Crane Flat Road segment leading from Hazel Green to and through the intersection with the rerouted Big Oak Flat Road, in each and every

instance as required by all applicable (based on the legal use of the real property constituting Hazel Green from time to time) state and county laws.

129. No other adequate remedy is available because only the federal district courts have original jurisdiction to invoke mandamus. See 28 U.S.C. § 1361.

**ELEVENTH CLAIM FOR RELIEF:**

**(WRIT OF MANDAMUS TO COMPEL THE DEFENDANTS TO PROVIDE ACCESS TO PRIVATE EASEMENT PURSUANT TO R.S. 2477 – COULTERVILLE ROAD)**

130. Plaintiff realleges and incorporates by reference the allegations of Paragraphs 1 through 129.

131. Title 28, Section 1361 authorizes this Court to compel an officer of the United States to perform a duty owed to the Plaintiff. Section 1361 specifically states:

> "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the Plaintiff."

28 U.S.C. § 1361.

132. Plaintiff has met the necessary elements to establish easements pursuant to R.S. 2477. A writ of mandamus is necessary and appropriate in order to compel NPS to provide Plaintiff access to the Coulterville Road right-of-way.

133. This writ of mandamus is necessary to ensure HGR's right to unfettered use of, to make all necessary improvements to, and to continuously improve and maintain the Coulterville Road segment leading from Hazel Green to and through the intersection with the rerouted Big Oak Flat Road, in each and every instance as required by all applicable (based on the legal use of the real property constituting Hazel Green from time to time) state and county laws.

134. No other adequate remedy is available because only the federal district courts have original jurisdiction to invoke mandamus. See 28 U.S.C. § 1361.

**TWELFTH CLAIM FOR RELIEF:**

**(WRIT OF MANDAMUS TO COMPEL THE DEFENDANTS TO PROVIDE ACCESS TO PRIVATE EASEMENT PURSUANT TO R.S. 2477 – CRANE FLAT ROAD)**

135. Plaintiff realleges and incorporates by reference the allegations of Paragraphs 1 through 134.

136. Title 28, Section 1361 authorizes this Court to compel an officer of the United States to perform a duty owed to the Plaintiff. Section 1361 specifically states:

> "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the Plaintiff."

28 U.S.C. § 1361.

137. Plaintiff has met the necessary elements to establish easements pursuant to R.S. 2477. A writ of mandamus is necessary and appropriate in order to compel NPS to provide Plaintiff access to the Crane Flat Road right-of-way.

138. This writ of mandamus is necessary to ensure HGR's right to unfettered use of, to make all necessary improvements to, and to continuously improve and maintain the Crane Flat Road segment leading from Hazel Green to and through the intersection with the rerouted Big Oak Flat Road, in each and every instance as required by all applicable (based on the legal use of the real property constituting Hazel Green from time to time) state and county laws.

139. No other adequate remedy is available because only the federal district courts have original jurisdiction to invoke mandamus. See 28 U.S.C. § 1361.

**PRAYER FOR RELIEF**

HGR hereby requests that this Court enter judgment as follows:

1. A judgment pursuant to the Quiet Title Act that HGR is entitled to a recognized right-of-way easement over the Coulterville Road pursuant to R.S. 2477, and that HGR is entitled to unfettered use of, to make all necessary improvements to, and to have the right to continuously improve and maintain the Coulterville Road segment leading from Hazel Green to and through the intersection with the rerouted Big Oak Flat Road, in each and every instance as required by all applicable (based on the legal use of the real property constituting Hazel Green from time to time) state and county laws, without unlawful hindrance by NPS;

2. A judgment pursuant to the Quiet Title Act that HGR is entitled to a recognized right-of-way easement over the Crane Flat Road pursuant to R.S. 2477, and that HGR is entitled to unfettered use of, to make all necessary improvements to, and to have the right to continuously improve and maintain the Crane Flat Road segment leading from Hazel Green to and through the intersection with the rerouted Big Oak Flat Road, in each and every instance as required by all applicable (based on the legal use of the real property constituting Hazel Green from time to time) state and county laws, without unlawful hindrance by NPS;

3. A judgment pursuant to the Quiet Title Act that HGR is entitled to a recognized private easement over the Coulterville Road pursuant to R.S. 2477, and that HGR is entitled to unfettered use of, to make all necessary improvements to, and to have the right to continuously improve and maintain the Coulterville Road segment leading from Hazel Green to and through the intersection with the rerouted Big Oak Flat Road, in each and every instance as required by all applicable (based on the legal use of the real property constituting Hazel Green from time to time) state and county laws, without unlawful hindrance by NPS;

4. A judgment pursuant to the Quiet Title Act that HGR is entitled to a recognized private easement over the Crane Flat Road pursuant to R.S. 2477, and that HGR is entitled to unfettered use of, to make all necessary improvements to, and to have the right to continuously improve and maintain the Crane Flat Road segment leading from Hazel Green to and through the intersection with the rerouted Big Oak Flat Road, in each and every instance as required by all applicable (based on the legal use of the real property constituting Hazel Green from time to time) state and county laws, without unlawful hindrance by NPS;

5. A declaratory judgment that HGR is entitled to a recognized right-of-way easement over the Coulterville Road pursuant to R.S. 2477, and that HGR is entitled to unfettered use of, to make all necessary improvements to, and to have the right to continuously improve and maintain the Coulterville Road segment leading from Hazel Green to and through the intersection with the rerouted Big Oak Flat Road, in each and every instance as required by all applicable (based on the legal use of the real property constituting Hazel Green from time to time) state and county laws, without unlawful hindrance by NPS;

6. A declaratory judgment that HGR is entitled to a recognized right-of-way easement over the Crane Flat Road pursuant to R.S. 2477, and that that HGR is entitled to unfettered use of, to make all necessary improvements to, and to have the right to continuously improve and maintain the Crane Flat Road segment leading from Hazel Green to and through the intersection with the rerouted Big Oak Flat Road, in each and every instance as required by all applicable (based on the legal use of the real property constituting Hazel Green from time to time) state and county laws, without unlawful hindrance by NPS;

7. A declaratory judgment that HGR is entitled to a private easement in the Coulterville Road pursuant to R.S. 2477, and is entitled to unfettered use of, to make all necessary improvements to, and to have the right to continuously improve and maintain the Coulterville Road segment leading from Hazel Green to and

through the intersection with the rerouted Big Oak Flat Road, in each and every instance as required by all applicable (based on the legal use of the real property constituting Hazel Green from time to time) state and county laws, without unlawful hindrance by NPS;

8. A declaratory judgment that HGR is entitled to a private easement in the Crane Flat Road pursuant to R.S. 2477, and is entitled to unfettered use of, to make all necessary improvements to, and to have the right to continuously improve and maintain the Crane Flat Road segment leading from Hazel Green to and through the intersection with the rerouted Big Oak Flat Road, in each and every instance as required by all applicable (based on the legal use of the real property constituting Hazel Green from time to time) state and county laws, without unlawful hindrance by NPS;

9. A court order in the nature of a writ of mandamus compelling the authorized officer or officers of NPS to provide HGR a recognized right-of-way easement over the Coulterville Road, including unfettered use of, to make all necessary improvements to, and to have the right to continuously improve and maintain the Coulterville Road segment leading from Hazel Green to and through the intersection with the rerouted Big Oak Flat Road, in each and every instance as required by all applicable (based on the legal use of the real property constituting Hazel Green from time to time) state and county laws, without unlawful hindrance by NPS;

10. A court order in the nature of a writ of mandamus compelling the authorized officer or officers of NPS to provide HGR a recognized right-of-way easement over the Crane Flat Road, including unfettered use of, to make all necessary improvements to, and to have the right to continuously improve and maintain the Crane Flat Road segment leading from Hazel Green to and through the intersection with the rerouted Big Oak Flat Road, in each and every instance as required by all applicable (based on the legal use of the real property constituting

Hazel Green from time to time) state and county laws, without unlawful hindrance by NPS;

11. A court order in the nature of a writ of mandamus compelling the authorized officer or officers of NPS to provide HGR a recognized private easement over the Coulterville Road, including unfettered use of, to make all necessary improvements to, and to have the right to continuously improve and maintain the Coulterville Road segment leading from Hazel Green to and through the intersection with the rerouted Big Oak Flat Road, in each and every instance as required by all applicable (based on the legal use of the real property constituting Hazel Green from time to time) state and county laws, without unlawful hindrance by NPS;

12. A court order in the nature of a writ of mandamus compelling the authorized officer or officers of NPS to provide HGR a recognized private easement over the Crane Flat Road, including unfettered use of, to make all necessary improvements to, and to have the right to continuously improve and maintain the Crane Flat Road segment leading from Hazel Green to and through the intersection with the rerouted Big Oak Flat Road, in each and every instance as required by all applicable (based on the legal use of the real property constituting Hazel Green from time to time) state and county laws, without unlawful hindrance by NPS;

13. A court order in the nature of a writ of mandamus compelling the authorized officer of the NPS to remove any and all gates and/or non-natural barriers erected by the NPS inhibiting access between Hazel Green and the Big Oak Flat Road;

14. An award to HGR of its costs, expenses, and attorneys' fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, and all other applicable authorities; and

15. Such further and other relief as the Court deems just and proper.

Dated: March 14, 2007

COLIN LENNARD
MARTIN L. PITHA
PATRICIA J. CHEN
**FULBRIGHT & JAWORSKI L.L.P.**

By /s/Colin Lennard
Colin Lennard
Attorneys for Plaintiff HAZEL GREEN RANCH, LLC