# EXHIBIT 2

# United States Department of the Interior

OFFICE OF THE SOLICITOR

L. Poe Leggette
Fulbright & Jaworski L.L.P.
801 Pennsylvania Avenue, N.W.
Washington D.C. 20004-2623

NOV 30 2006

Re: Hazel Green Ranch R.S. 2477 Claims

Dear Poe:

In August, we discussed your clients' R.S. 2477 claims to the Crane Flat Road and the Coulterville Road, both of which, to the extent they might still exist, cross land that has been within the boundaries of Yosemite National Park since as early as 1890. Following our meeting, I asked the attorneys in the Solicitor's Office who do National Park Service work to review the extensive written materials you provided me and then advise me of their views on the R.S. 2477 issue. Following their review, they raised the concerns discussed below.

In the March 28, 2006 letter you provided to me, it is acknowledged that the roads "have not been heavily used by travelers going to and from Yosemite for some time," but it is nevertheless asserted that "while use of these easements has declined, it has not ceased." The National Park Service informs me, however, that it has taken numerous actions over the years to close the Crane Flat Road and the Coulterville Road to traffic. Such actions have included erecting gates, and constructing berms and other features to make the roads impassible to traffic. Also, natural events have made the roads impassible, including notably a large rockslide in 1982 that obliterated a lengthy segment of the Coulterville Road. I am informed that under California law, public roads or rights-of-way may be abandoned through relocation or nonuse. Thus, to the extent that RS. 2477 rights-of-way may have existed in the two roads, it appears that the long-term nonuse of the roads coupled with the formalization of the Big Oak Flat Road in the park as the designated route to Yosemite Valley from points west has resulted in their abandonment.

Even in the absence of abandonment, it appears that the statute of limitations for challenging the actions taken by the National Park Service to close the roads has run. Claims under the Quiet Title Act, 28 U.S.C. Section 2409(a), which is the exclusive means for quieting title to real property as against the federal government, are subject to a twelve-year statute of limitations. The Park Service actions to close the roads, about which I assume your clients knew or should have known, took place more than twelve years ago. Moreover, it does not appear that your clients, as owners of private land adjacent to the claimed rights-of-way, could assert a valid R.S 2477 claim under the Quiet Title Act in any event. R.S 2477 grants rights of way for the construction of roads for public uses, and, accordingly, it is only the public, through government entities, that can hold such rights of way and seek vindication of them through a Quiet Title action.

The March 28 letter also asserts that the Coulterville Road "was completed in 1874, across what was then unreserved land." I am informed, however, that, in 1864, the United States conveyed Yosemite Valley and the lands immediately around the valley to the State of California so that the state could manage the area as a park. Act of June 30, 1864, 13 Stat. 325. The State of California retained title to this area until the early 1900s.[1] Thus, it appears that at least some portion of the Coulterville Road was constructed while the land was state-owned. Because R.S. 2477 only authorized the construction of rights-of-way across unreserved *federal* land, there can be no R.S. 2477 claim for that portion of the road.

Your clients have asserted various appurtenant rights in the Coulterville and Crane Flat roads. These claims are based on state law. I am informed that, in California, private easements in public roads are subject to extinguishment through abandonment, adverse possession, waiver, and estoppel. As described above, National Park Service management actions and natural events have led to the closure of these roads to traffic for many years. Thus, it does not appear that any private easements in these routes that may have at one time existed would still be valid.

Finally, I note that, in 1919, the State of California ceded to the United States exclusive jurisdiction over all land then or thereafter included in Yosemite National Park. Cal. Stat. 1919, c. 51. The United States accepted the retrocession of exclusive jurisdiction in 1920. Act of June 2, 1920, 41 Stat. 731, (codified at 16 U.S.C. Section 57). When the State ceded its jurisdiction to the United States, the state retained only limited powers over lands within Yosemite National Park. The powers reserved by the State of California are the power to levy taxes, collect fishing license fees, and to serve civil or criminal process. The State also reserved the right for residents of Yosemite to vote. Other than the specific rights reserved by the State in the 1919 cession law, lands within Yosemite are beyond the reach of state law. Large segments of the Coulterville Road and the entire Crane Flat route are included within the boundaries of Yosemite. It is not presently clear to us whether and how that retrocession may have affected any State property interests within Yosemite and whether and how it would affect the validity of claims based on state law.

If you have additional information, beyond that already provided, on the issues discussed in this letter, or would like to discuss them further, please contact Barbara Goodyear in our San Francisco Field Office. Her direct number is 510/817-1446.

Sincerely,

Larry Jensen

Lawrence J. Jensen
Deputy Solicitor

---

[1] The State of California granted the Yosemite Valley area back to the United States in 1905. Cal Stat. 1905, c. 60. The United States accepted this conveyance on June 11, 1906. Act of June 11, 1906, 34 Stat. 831.

cc:
Field Solicitor, San Francisco Field Office
Superintendent, Yosemite National Park