# EXHIBIT 6

THE SECRETARY OF THE INTERIOR WASHINGTON

WASHINGTON

MAR 22 2006

Memorandum

To: Assistant Secretary, Land and Minerals Management
Assistant Secretary, Fish, Wildlife and Parks
Assistant Secretary, Indian Affairs
Assistant Secretary Water and Science

From: Secretary /s/

Subject: Departmental Implementation of *Southern Utah Wilderness Alliance v. Bureau of Land Management,* 425 F.3d 735 (10th Cir. 2005); Revocation of January 22, 1997, Interim Policy; Revocation of December 7, 1988, Policy

The decision by the United States Court of Appeals for the Tenth Circuit in *Southern Utah Wilderness Alliance v. Bureau of Land Management,* 425 F.3d 735 (10th Cir. 2005) (hereinafter *SUWA v. BLM),* necessitates that the Department of the Interior revisit its existing policies interpreting and implementing the statute commonly known as "R.S. 2477." See Act of July 26, 1866, ch. 262, § 8. 14 Stat. 251, 253, codified in 1873 as section 2477 of the Revised Statutes, recodified in 1938 as 43 U.S.C. § 932. R.S. 2477 provided in its entirety:

> *And be it further enacted,* That the right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted.

In 1976, R.S. 2477 was repealed by the Federal Land Policy and Management Act of 1976 (FLPMA), 43 U.S.C. § 1701 *et seq.,* Pub. L. No. 94-579 § 706(a), 90 Stat. 2743. FLPMA did not, however, terminate valid rights of way that had been established under R.S. 2477 prior to its repeal. Instead, Congress specified that any valid R.S. 2477 rights of way existing as of the date FLPMA was approved. October 21, 1976, would continue in effect. This has led to a number of difficult administrative problems and extensive litigation, culminating in the *SUWA v. BLM* decision.

In light of that decision, I have concluded that the interim departmental policy on R.S. 2477, which was issued in 1997, must be revised. Accordingly, this memorandum revokes the interim policy and directs affected Interior agencies to issue, as necessary, revised instructions or guidance consistent with the *SUWA v. BLM* decision and this memorandum.

The purpose of this document is to clarify how the Department will carry out its obligations following *SUWA v. BLM.* As neither this document nor the guidance contemplated herein will be a final rule or regulation, they need not be published in the Code of Federal Regulations, and they

do not impose binding rights or obligations on the agency or private parties. They are statements of policy, not codifications of binding rules. See *The Wilderness Soc'y v. Norton,* 434 F.3d 584, 595 (D.C. Cir. 2006). Therefore, neither is inconsistent with Congress's direction in Pub. L. No. 104-208.

## I. Background

Although R.S. 2477 was repealed nearly 30 years ago, controversies continue to arise about the existence and scope of the rights of way it granted. R.S. 2477 has been subject to inconsistent judicial and administrative interpretations throughout its history. Because R.S. 2477 did not require that the rights of way be recorded or otherwise documented, it is often difficult for Federal land managers, State, local, and tribal governments, and public land users to know which right of way claims are valid, where they are located, and how they may be used.

### A. 1988 Hodel Policy

On December 7, 1988, Secretary Hodel signed a memorandum that discussed his policy for the administrative recognition of asserted R.S. 2477 rights of way. The policy defined the key terms in the statute: "construction," "highway," and "public lands, not reserved for public uses." Secretary Hodel noted that "under R.S. 2477, the United States had (has) no duty or authority to adjudicate an assertion or application." Nevertheless, he determined that "it is necessary in the proper management of Federal lands to be able to recognize with some certainty the existence, or lack thereof, of public highway grants obtained under R.S. 2477." He thus directed Interior land managing agencies to develop internal procedures for administratively recognizing those highways, consistent with the criteria established in his policy and for recording such highways on the land status records for the area managed by that agency

### B. 1997 Babbitt Policy

On January 22, 1997, Secretary Babbitt revoked the Hodel policy and established an "Interim Departmental Policy on Revised Statute 2477 Grant of Right-of-Way for Public Highways; Revocation of December 7, 1988 Policy." Secretary Babbitt clarified this interim policy in a memorandum of February 20, 1997. Following Congress's prohibiting the Department from issuing a final rule or regulation regarding the adjudication of R.S. 2477 claims in Pub. L. No. 104-208, the Babbitt policy directed that R.S. 2477 determinations be postponed unless the claimant demonstrated an immediate and compelling need for a determination. Where such a need was demonstrated, the policy provided a claim-handling process. The Babbitt policy redefined some of the key elements of R.S. 2477 and directed Interior agencies to "apply state law in effect on October 21, 1976, to the extent that it is consistent with federal law." Since issuance of the Babbitt policy in 1997, few administrative determinations have been completed.

## *II. Southern Utah Wilderness Alliance v. Bureau of Land Management*

*SUWA* v. *BLM* involved numerous allegations that the grading and expansion of 16 routes on Bureau of Land Management (BLM) lands by three counties in southern Utah constituted trespass. The counties asserted that although their activities had not been authorized by the BLM, they were legal because they were conducted on valid R.S. 2477 rights of way. The Tenth Circuit made several important rulings.

First, the court addressed the BLM's trespass claims against the counties, and held that "when the holder of an R.S. 2477 right of way across federal land proposes to undertake any improvements in the road along its right of way, beyond mere maintenance, it must advise the federal land management agency of that work in advance." This notice is necessary to "afford" the agency a fair opportunity to carry out its own duties to determine whether the proposed improvement is reasonable and necessary in light of the traditional uses of the rights of way as of October 21,
1976, to study potential effects, and if appropriate, to formulate alternatives that serve to protect the lands."

Next, the court found that the BLM lacks the authority to make binding determinations on the validity of R.S. 2477 rights of way. The court emphasized, however, that its ruling "does not mean that the BLM is forbidden from determining the validity of R.S. 2477 rights of way for its own purposes. The BLM has always had this authority."

The court then held "that federal law governs the interpretation of R.S. 2477, but that in determining what is required for acceptance of a right of way under the statute, federal law 'borrows' from long-established principles of state law, to the extent that state law provides convenient and appropriate principles for effectuating congressional intent."

Finally, the court stated that (1) the burden of proving the existence of an R.S. 2477 right of way in court lies on the claimant; (2) continuous use over a specified period of time would establish an R.S. 2477 right of way in most Western States; (3) mechanical construction generally is not required; (4) whether a route connected identifiable destinations is relevant, but not determinative, to whether it is a valid R.S. 2477 right of way; and, (5) that a 1910 coal withdrawal was not a reservation for public use under R.S. 2477.

Thus, while the Department may make non-binding, administrative determinations for its own land-use planning and management purposes, it cannot create a single national standard governing the validity of all R.S. 2477 claims, but instead must look to the particular laws of each State in which a claimed right of way is situated.

## III. Actions

These holdings effectively require the Department to alter its current administration of R.S. 2477. Though *SUWA v. BLM* is a Tenth Circuit decision, its analysis and holdings are comprehensive and persuasive, and do not appear to conflict with any other circuit's decisions. The Department therefore should apply its principles nationwide, keeping in mind that one of the most important of those principles is that State law generally must be used to assess R.S. 2477 claims. Accordingly, this memorandum:

(1) revokes the Interim Departmental Policy on Revised Statute 2477, signed by Secretary Babbitt on January 22, 1997, and clarified on February 20, 1997;

(2) confirms that the departmental policy signed by Secretary Hodel on December 7, 1988, and revoked by Secretary Babbitt in 1997, remains revoked;

(3) directs the Department to coordinate the termination of the Memorandum of Understanding between the Department and the State of Utah dated April 9, 2003, recognizing that it is inoperative in light of the Tenth Circuit's decision in *SUWA v. BLM* and the revocation of the 1997 Interim Departmental Policy;

(4) confirms the Department's recognition of the Tenth Circuit's ruling that communication and cooperation between holders or claimants of R.S. 2477 rights of way and land managers, rather than unilateral action, are necessary for the proper administration of Federal lands;

(5) directs affected Interior bureaus to revise any existing guidance or policies on R.S. 2477 consistent with the legal principles established in *SUWA v. BLM* and this memorandum and its attached guidelines;

(6) directs all Interior bureaus to ensure that their administration of claimed and recognized rights of way upholds the Department's right and obligation to protect the underlying and surrounding Federal lands it manages, paying particular attention to the effects of right of way use in sensitive areas, such as units of the National Park System, units of the National Wildlife Refuge System, and congressionally-designated wilderness or wilderness study areas; and,

(7) directs all Interior bureaus to develop safeguards to ensure that their implementation of these principles does not infringe on the rights of private landowners or Indian tribes whose land may be crossed or abutted by claimed rights of way.

Administering R.S. 2477 implicates the sometimes-conflicting interests of citizen advocacy groups, private property owners, tribal, State, and local governments, and the Federal Government. But as the court said in *SUWA* v. *BLM*, "Both levels of government have responsibility for, and a deep commitment to, the common good, which is better served by communication and cooperation than by unilateral action." Department of the Interior bureaus therefore should ensure that their administration of R.S. 2477 encourages conservation through consultation, communication, and cooperation with tribes, States, counties, private landowners, and interested citizens.

Attachment

cc: Deputy Secretary

**ATTACHMENT – Guidelines for Implementation of *SUWA v. BLM* Principles**

Department land managers (and right of way claimants) should recognize that there are a number of options available for addressing claimed rights of way that may be preferable to administrative R.S. 2477 determinations. Title V of FLPMA or other right of way authorities, recordable disclaimers, and the Quiet Title Act each may offer more certainty to bureaus and to claimants. Where the land managing bureau and a claimant wish only to maintain the existing *status quo,* an agreement such as the BLM's road maintenance agreements (RMAs) or similar tools of other bureaus may be useful. Finally, bureaus in some circumstances may need to make informal, nonbinding administrative validity determinations (NBDs). Bureaus confronted with right of way issues should use this guidance, along with the decision in *SUWA v. BLM,* to decide when and how to use each of these tools.

The Tenth Circuit's decision does not affect FLPMA Title V or other similar authorities that allow bureaus to grant rights of way irrespective of R.S. 2477. Title V, for example, allows the BLM, in appropriate circumstances, to grant rights of way for, among other things, "roads, trails, highways. . , or other means of transportation." 43 U.S.C. § 1761 (a). If a route or proposed improvement to a route has an unclear R.S. 2477 status, but the land manager and county or other claimant agree on the need for the route or improvement, one of these types of right of way might best serve the needs of all involved.

Recordable disclaimers, which are authorized by FLPMA § 315, 43 U.S.C. § 1745, and discussed in detail in 43 CFR § 1864, likewise remain available to settle questions regarding the United States' interest in rights of way. Such disclaimers have the same effect as a quitclaim deed, estopping the United States from asserting a claim to the interest that is disclaimed.

As the *SUWA v. BLM* court noted, ultimately deciding who holds legal title to an interest in real property, including an R.S. 2477 right of way, "is a judicial, not an executive, function." 425 F.3d at 752. Thus, if a claimant seeks a definitive, binding determination of its R.S. 2477 rights, it must file a claim under the Quiet Title Act, 28 U.S.C. § 2409a.

Where a county seeks only to preserve the status quo on a road, determining its ownership may not be necessary. Instead, the bureau should consult with the claimant about entering into an agreement that allows for the upkeep of the status quo by routine maintenance. The BLM has used RMAs for this purpose for many years. Other bureaus should consider whether such agreements or a similar tool may offer similar benefits for them. Such agreements would not make any determination regarding the validity of any R.S. 2477 claims, and would not affect the legal right of either party to assert or contest such a claim. A land manager should only agree to include a road in a RMA if preservation of the status quo through routine maintenance is consistent with the land manager's obligation to protect the surrounding and underlying Federal lands. RMAs should not be finalized until the public has received notice and had an opportunity to comment on the roads to be covered and the maintenance levels to be permitted.

In cases where none of these other tools is appropriate, a bureau may need to make an NBD for its own planning purposes or to address proposals for road use. Because NBDs create no binding

legal rights, bureaus should keep the process as simple and straightforward as possible. If a bureau must make an NBD, it should seek relevant information from the claimant, internal resources, and the public. If the proposed route crosses or abuts private land or land managed by another government agency, the bureau should ensure that the private landowner or other agency is notified and has an opportunity to comment. Once a preliminary determination is made, the public should be given notice and an opportunity to comment. Because the relevant legal rules that must be applied may vary from State to State, however, bureaus should work with the Office of the Solicitor to analyze the applicable rules before finalizing any NBDs.

Once it has gathered this information, the bureau should decide "on a preponderance of the evidence standard" if it supports the existence of a right of way under State law in effect prior to the repeal of R.S. 2477. See *SUWA v. BLM* at 750. If a bureau makes a positive NBD that an R.S. 2477 right of way may exist, it should provide the holder with written notice of the NBD and incorporate the NBD in all relevant planning processes and documents. It should also consider entering into an RMA with the holder to cover routine maintenance of the route.

If a right of way does exist, or if a route is covered by an RMA or comparable agreement, the bureau should keep in mind that the Federal Government still retains its right and obligation to reasonably regulate for the protection of the underlying and surrounding Federal lands. As the *SUWA v. BLM* court indicated, regulation should be done so as to minimize interference with the rights of the public to use the route consistent with the R.S. 2477 grant.

Bureaus should ensure that their use of these tools and their other instructions and guidance are consistent with the criteria set out by the Tenth Circuit in *SUWA v. BLM* on the validity and scope of R.S. 2477 claims. A determination of whether a claimed route or use of a route is within the valid scope of an R.S. 2477 right of way often turns on questions of State law, but certain principles can be identified. A discussion of those criteria follows.

1. *Determining the Validity of R.S. 2477 Claims*

a. <u>Public Highway</u>

R.S. 2477 rights of way must be "public highways." What constitutes a "public highway" will again generally be determined by looking to State law regarding public easements, but in general, a public highway is a definitive route or way that is freely open for all to use. See *SUWA v. BLM,* 425 F.3d at 765, 782-83. It need not necessarily be open to vehicular traffic. *Id.* Multiple ways through a general area may not qualify as a definitive route, though evidence may show that one or more of the ways qualifies as a highway depending on climate, topography, historic use, and other factors. See *id.* at. 767. The route need not lead to an identifiable destination, although that may be one factor to consider in assessing whether the route is in fact a public highway. See *id.* at 783.

b. Public Lands Not Reserved for Public Uses

R.S. 2477 limited its reach to "public lands, not reserved for public uses." For purposes of R.S. 2477, public lands are those lands that are open to the operation of the various public land laws enacted by Congress. Lands were "reserved for public use" only when they were both "withdraw[n] from the operation of the public land laws, [and] also dedicate[d] to a particular public use." *SUWA* v. *BLM,* 425 F.3d at 784. Therefore, public land that was "withdrawn" but not reserved for any particular use remained subject to R.S. 2477. Land that was temporarily withdrawn from only certain kinds of private appropriation for study or later classification cannot be said to have been "reserved for public use." Nor was any land that remained open to settlement, sale, or entry under certain public land laws exempt from operation of R.S. 2477.

The *SUWA* v. *BLM* court recognized the need to examine the text of the specific withdrawal or reservation in question, but in general lands set aside for "specific public uses; such as parks, military posts, Indian lands, etc." are "reserved for public uses." *Id.* (quoting Black's Law Dictionary 1031 (1st ed. 1891)). No R.S. 2477 rights of way could be established on such reserved lands after the date of the reservation. While such a reservation would not extinguish any R.S. 2477 rights of way established prior to the date of the reservation, bureaus should carefully consider the question of abandonment (discussed below) on such lands.

c. Acceptance

As the *SUWA v. BLM* court held, "the establishment of a public right of way require[s] two steps: the landowner's objectively manifested intent to dedicate property to the public use as a right of way, and acceptance by the public." 425 F.3d at 769. R.S. 2477 has always been interpreted as "an express dedication of the right of way by the landowner, the United States." *Id.* Therefore, the difficult question is "whether any particular disputed route ha[s] been 'accepted' by the public before the land had been transferred to private ownership or otherwise reserved." *Id.* at 770.

This presents difficulties on two levels. First, as the court ruled, "in determining what is required for acceptance of a right of way under the statute, federal law 'borrows' from long-established principles of state law, to the extent that state law provides convenient and appropriate principles for effectuating congressional intent." *Id.* at 768. Thus, the Department cannot create a national standard for deciding whether a right of way was validly created, but must look to the law of each State where a claim arises.

The second difficulty is in the type of evidence that is required to demonstrate that a right of way was established prior to the earlier repeal of R.S. 2477 or the reservation of the land for public use. Though the appropriate factors to consider will vary depending on the location of the claim, and land managers should work with regional and field solicitors' offices to identify the relevant legal criteria in each State, the following will be common considerations (all of which are discussed in *SUWA v. BLM*):

- In most, but not all, Western States, acceptance requires no local governmental or official act, but can be manifested by continuous public use over a specified period of time;
- Affirmative acts of acceptance by a local government authority are nevertheless appropriate to consider. For example, the inclusion of a highway in a State, county, or other local road system is strong evidence of acceptance, as is the expenditure of money for construction or maintenance. In some States, official action may even be determinative. These facts may also be helpful in determining whether the claimed right of way was public in nature;
- Mechanical construction is not a necessary condition for finding a valid R.S. 2477 right of way, but it is evidence of the existence and scope of the public use that defined the right of way. In the words of the *SUWA v. BLM* court, "Congress did not require mechanical construction where no construction was needed." 425 F.3d at 781. The "construction" required by the language of the statute "would be the construction necessary to enable the general public to use the route for its intended purposes;" *Id.*
- While State law generally controls the existence and scope of an R.S. 2477 right of way, it cannot "override federal requirements or undermine federal land policy" behind R.S.2477. *Id.* at 766. Thus, long-standing Department interpretation has refused to recognize State laws that purport to create rights of way on section lines or otherwise accept R.S. 2477 rights of way "in advance of an apparent necessity therefore, or on the mere suggestion that at some future time such roads may be needed." *Douglas County. Washington.* 26 *Pub. Lands Dec.* 446,447 (1898).

d. Abandonment

Although the *SUWA v. BLM* court did not address the issue of abandonment, its holding that State law generally controls the validity and scope of R.S. 2477 claims means that any argument that an R.S. 2477 right of way was abandoned, including by relinquishment by proper authority, also should be analyzed using appropriate State law in effect at the time of the abandonment.

*2. Determining the Scope of R.S. 2477 Rights of Way*

While a right of way is a property right, the *SUWA v. BLM* court clarified that it "is not tantamount to fee simple ownership of a defined parcel of territory. Rather, it is an entitlement to use certain land in a particular way." 425 F.3d at 747. Thus, "the scope of an R.S. 2477 right of way is limited by the established usage of the route as of the date of repeal of the statute." *Id.* at 746. State laws that purport to expand the width and uses permitted on any right of way are subject to this principle of Federal law.

As the Tenth Circuit stated, however, this does not mean "that the road ha[s] to be maintained in precisely the same condition it was in on October 21, 1976; rather, it [can] be improved as necessary to meet the exigencies of increased travel, so long as this [is] done in the light of traditional uses to which the right of way was put as of repeal of the statute in 1976." *Id.*

***Use, Maintenance, and Improvements of Rights of Way***

As both the Tenth and the Ninth Circuits recently have recognized, land managers may take reasonable steps to ensure that the use of roads within Federal land does not violate the Federal landowners' duty to protect the surrounding and underlying lands, even if the roads are valid rights of way. See *SUWA* v. *BLM,* 425 F.3d at 747; *Hale* v. *Norton,* No. 03-36032 (9th Cir. Feb. 9, 2006). Moreover, agency review and approval for other than routine maintenance is required under the analysis in *SUWA* v *BLM.* This derives from the legal premise that "the easement holder must exercise its rights so as not to interfere unreasonably with the rights of the owner of the servient estate." *SUWA* v *BLM,* 425 F.3d at 747. The Federal owner of that estate, however, "may not use its authority, either by delay or unreasonable disapproval, to impair the rights of the holder of the R.S. 2477 right of way." *Id.* at 748.

There are three main categories into which post-determination activities on rights of way may be placed. The principles discussed above and in *SUWA* v. *BLM* apply to each of the following situations differently, but the same basic principles of coordination and communication should guide land managers.

1. Non-traditional use

R.S. 2477 does not give either the holder of a right of way or the Department authority to expand the scope of a right of way beyond the established right of way as of the date of repeal of the statute or reservation for public use of the lands. That the activity may take place within the physical boundaries of the traditional right of way is not relevant if the proposed use is not of a type for which the right of way was established. As discussed above, this does not mean "that the road had to be maintained in precisely the same condition it was in on October 21, 1976; rather, it could be improved as necessary to meet the exigencies of increased travel, so long as this was done in the light of traditional uses to which the right of way was put as of repeal of the statute in 1976." *Id.* at 746. Any uses that go beyond those occurring on October 21, 1976, or an earlier date of reservation must be authorized under another provision of law, such as Title V of FLPMA.

2. Traditional use, routine maintenance

The holder of an R.S. 2477 right of way across Federal land who wishes simply to conduct routine maintenance or to use the right of way in the same manner as it was used on October 21, 1976, or an earlier date of reservation may do so without consultation with the Department. It may nevertheless be in the best interests of both the right of way holder and the land manager to recognize these rights in an RMA or comparable agreement in which the parties may also elect to apply similar processes for consultation.

3. Traditional use, change in character

The holder of an established R.S. 2477 right of way, though still using the route for the traditional uses to which it was put as of the earlier repeal of R.S. 2477 or the reservation of the land, may find it necessary to improve or change the character of the route in some way "to meet the exigencies of increased travel." *Id.* at 746. The Tenth Circuit held that so long as such improvements are "needed to accommodate traditional uses," they are not outside the scope of the right of way, and are therefore permissible. *Id.* at 748.

Nonetheless. "[j]ust because a proposed change falls within the scope of a right of way does not mean that it can be undertaken unilaterally." *Id.* It is well established that "changes in roads on R.S. 2477 rights of way across federal lands are subject to regulation by the relevant federal land management agencies." *Id.* at 746. Therefore. "[e]ven legitimate changes in the character of the roadway require consultation when those changes go beyond routine maintenance." *Id.* at 748.

When determining whether a proposed activity is "routine maintenance" or "construction of improvements," bureaus should be guided by the *SUWA v. BLM* decision, which emphasizes that routine maintenance only "preserves the status quo" while construction, by contrast, involves improving or changing the nature of the road.[1]

---

1 The *SUWA v. BLM* court's extensive discussion is quoted below in its entirety:

> In drawing the line between routine maintenance, which does not require consultation with the BLM, and construction of improvements, which does, we endorse the definition crafted by the district court in *[United States v.] Garfield County,* [122 F. Supp. 2d 1201 (D. Utah 2000)]:
>
> Defined in terms of the nature of the work, "construction" for purposes of 36 *C.F.R.* § 5.7 includes the widening of the road, the horizontal or vertical realignment of the road, the installation (as distinguished from cleaning, repair, or replacement in kind) of bridges, culverts and other drainage structures, as well as any significant change in the surface composition of the road *(e.g.,* going from dirt to gravel, from gravel to chipseal, from chipseal to asphalt, etc.), or any "improvement," "betterment," or any other change in the nature of the road that may significantly impact Park lands, resources, or values. "Maintenance" preserves the existing road, including the physical upkeep or repair of wear or damage whether from natural or other causes, maintaining the shape of the road, grading it, making sure that the shape of the road permits drainage [and) keeping drainage features open and operable--essentially preserving the status quo.
>
> 122 F. Supp. 2d at 1253 (footnote omitted). Under this definition, grading or blading a road for the first time would constitute "construction" and would require advance consultation, though grading or blading a road to preserve the character of the road in accordance with prior practice would not. Although drawn as an interpretation of 36 *C.F.R.* § 5.7, which applies within national parks, the district court noted that: "This construction comports with the commonly understood meanings of the words, the pertinent statutes, agency interpretations, and the past experience of the parties on the Capitol Reef segment, including the experience leading up to February 13, 1996." *Id.* We therefore find it applicable to distinguishing between routine maintenance and actual improvement of R.S. 2477 claims across Federal lands more generally.

Drawing the line between maintenance and construction based on "preserving the status quo" promotes the congressional policy of "freezing" R.S. 2477 rights of way as of the uses established as of October 21, *1976. [Sierra Club v. Hodel.* 848 F.2d 1061, 1081 (l0th Cir. 1988)]. It protects existing uses without interfering unduly with Federal land management and protection. As long as the Counties act within the

The Tenth Circuit therefore clarified that the holder of an R.S. 2477 right of way across Federal land who proposes to undertake any improvements beyond mere maintenance on its right of way

> must advise the Federal land management agency of that work in advance, affording the agency a fair opportunity to carry out its own duties to determine whether the proposed improvement is reasonable and necessary in light of the traditional uses of the rights of way as of October 21, 1976, to study potential effects, and if appropriate, to formulate alternatives that serve to protect the lands. . *Id.* at 748.

When a right of way holder approaches an agency with a plan to improve the existing condition of an R.S. 2477 road, the "initial determination of whether the construction work falls within the scope of an established right of way is to be made by the federal land management agency." *Id.*

The agency should also work with the holder to ensure that the improvements are "reasonable and necessary," as determined by State law, in light of the traditional uses to which the right of way was put. Moreover, the Department still must meet its obligation to reasonably regulate the underlying and surrounding Federal lands. This means that if an improvement is proposed, the agency should "study potential effects, and if appropriate, [] formulate alternatives that serve to protect the lands." *Id.*

The agency "has an obligation to render its decision in a timely and expeditious manner." *Id.* It "may not use its authority, either by delay or unreasonable disapproval, to impair the rights of the holder of the R.S. 2477 right of way. In the event of disagreement, the parties may resort to the courts." *Id.* It has long been established that the Quiet Title Act is the exclusive remedy against the United States for finally resolving such disputes of title.

---

existing scope of their rights of way, performing maintenance and repair that preserves the existing state of the road, they have no legal obligation to consult with the BLM (though notice of what they are doing might well avoid misunderstanding or friction). If changes are contemplated, it is necessary to consult, and the failure to do so will provide a basis for prompt injunctive relief. "Bulldoze first, talk later" is not a recipe for constructive intergovernmental relations or intelligent land management

*SUWA v. BLM,* 425 FJd at 748-49.