# EXHIBIT 7

MUNGER, TOLLES & OLSON LLP

560 MISSION STREET
TWENTY-SEVENTH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2907
TELEPHONE (415) 512-4000
FACSIMILE (415) 512-4077

355 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 683-9100
FACSIMILE (213) 687-3702

PETER R TAFT*
ROBERT K. JOHNSON*
ALAN V FRIEDMAN*
RONALD L OLSON*
DENNIS E. KINNAIRD*
RICHARD S VOLPERT
DENNIS C BROWN*
ROBERT E. DENHAM
JEFFREY I WEINBERGER
ROBERT L. ADLER
CARY B LERMAN*
CHARLES D SIEGAL
RONALD K. MEYER
GREGORY P STONE
VILMA S MARTINEZ
BRAD D BRIAN
BRADLEY S PHILLIPS
GEORGE M GARVEY
WILLIAM D TEMKO
STEVEN L GUISE*
ROBERT B KNAUSS
STEPHEN M KRISTOVICH
JOHN W SPIEGEL
TERRY E. SANCHEZ
STEVEN M PERRY
MARK B HELM
JOSEPH D LEE
MICHAEL R DOYEN
MICHAEL E. SOLOFF
GREGORY D PHILLIPS
LAWRENCE C BARTH
KATHLEEN M McDOWELL
GLENN D POMERANTZ
THOMAS B WALPER
RONALD C HAUSMANN
PATRICK J CAFFERTY, JR
JAY M FUJITANI
O'MALLEY M MILLER
SANDRA A. SEVILLE-JONES
MARK H EPSTEIN
HENRY WEISSMANN
KEVIN S ALLRED
MARC A. BECKER
BART H WILLIAMS
JEFFREY A. HEINTZ
JUDITH T KITANO

KRISTIN LINSLEY MYLES
MARC T G DWORSKY
JEROME C ROTH
STEPHEN D ROSE
JEFFREY L BLEICH
GARTH T VINCENT
TED DANE
MARK SHINDERMAN
STUART N SENATOR
MARTIN D BERN
DANIEL P COLLINS
STEVEN B WEISBURD
EDWARD C HAGEROTT, JR
RICHARD E DROOYAN
ROBERT L. DELL ANGELO
BRUCE A. ABBOTT
JONATHAN E. ALTMAN
MARY ANN TODD
MICHAEL J O'SULLIVAN
KELLY M KLAUS
DAVID B GOLDMAN
BURTON A. GROSS
KEVIN S MASUDA
HOJOON HWANG
KRISTIN S ESCALANTE
DAVID C DINIELLI
ANDREA WEISS JEFFRIES
PETER A. DETRE
PAUL J WATFORD
DANA S TREISTER
CARL H MOOR
DAVID M ROSENZWEIG
DAVID H FRY
LISA J DEMSKY
MALCOLM A. HEINICKE
GREGORY J WEINGART
TAMERLIN J GODLEY
JAMES C RUTTEN
J MARTIN WILLHITE
RICHARD ST JOHN
ROHIT K. SINGLA
LUIS LI
CAROLYN HOECKER LUEDTKE
C. DAVID LEE
MARK H KIM
ALLISON B STEIN

*A PROFESSIONAL CORPORATION

MARSHA HYMANSON
SUSAN R SZABO
LINDA S GOLDMAN
NATALIE PAGÈS STONE
BRETT J RODDA
JOSEPH S KLAPACH
LISA VANCE CASTLETON
MONIKA S WIENER
LYNN HEALEY SCADUTO
RANDALL G SOMMER
AARON M MAY
SHONT E. MILLER
MARIA SEFERIAN
JASON L. HAAS
MANUEL F CACHÁN
ERIC J LORENZINI
MEGAN M LA BELLE
KATHERINE K. HUANG
SARAH KURTIN
KATHERINE M FORSTER
ROSEMARIE T RING
JOSEPH J YBARRA
AILSA W CHANG
AMANDA SCHREIBER
BLANCA FROMM YOUNG
ROBERT E. SATTERTHWAITE
ÖZGE GÜZELSU
LINDSAY D McCASKILL
KATE K. ANDERSON
ALISON J MARKOVITZ
LOREN KESSLER-HIGGINS
E. DORSEY HEINE
SAMUEL N WEINSTEIN
PAUL M ROHRER
KIT JOHNSON
JAY K. GHIYA
SUSAN TRAUB BOYD
JOHN C. DAY
JENNIFER L. POLSE
TODD J ROSEN
DANIEL L. GEYSER
BRIAN R HOCHLEUTNER
DEAN N KAWAMOTO
GRANT A. DAVIS-DENNY
E. MARTIN ESTRADA
JASON RANTANEN

AMY C. TOVAR
REBECCA GOSE LYNCH
JONATHAN H BLAVIN
JOHN R GRIFFIN
KAREN J FESSLER
MICHELLE T FRIEDLAND
J RAZA LAWRENCE
MICHAEL T KOVALESKI
LIKA C. MIYAKE
MELINDA EADES LEMOINE
ANDREW W SONG
DANIEL A. BECK
FREYA K RUSSELL
YOHANCE C. EDWARDS
JULIE D CANTOR
SETH GOLDMAN
FADIA ISSAM RAFEEDIE
DANIEL J POWELL
DANIEL B LEVIN
DAVID M GRABLE
JOSHUA P GROBAN
VICTORIA L BOESCH
JEFF J BOWEN
ADAM M FLAKE
HAILYN J CHEN
BRAD SCHNEIDER
DAVID W SWIFT
JEAN Y RHEE
ALEXANDRA LANG SUSMAN
GENEVIEVE A. COX
MIRIAM KIM
MISTY M SANFORD
BRIAN P DUFF
AIMEE FEINBERG
JOEL D WHITLEY
JEFFREY E. ZINSMEISTER
MONICA DIGGS MANGE

RICHARD D ESBENSHADE*
OF COUNSEL

E. LEROY TOLLES
(RETIRED)

March 28, 2006

WRITER'S DIRECT LINE
(415) 512-4064
(415) 644-6964 FAX
Brian Hochleutner@mto com

Mr. Michael J. Tollefson
Superintendent
Yosemite National Park
P.O. Box 577
Yosemite, CA 95389

Re *Hazel Green Ranch, an approximately-80-acre private property in Mariposa County, California, with the following legal description [i] Parcel 1, Northwest quarter of the northwest quarter of Section 15, Township 2 South, Range 19 East, M D B &M, [ii] Parcel 2, Northeast quarter of the northwest quarter of Section 15, Township 2 South, Range 19 East, M D B &M*

Dear Superintendent Tollefson:

***The letter that follows was written and ready to be posted when the Secretary of the Interior issued her March 22, 2006 Memorandum Re: Departmental Implementation of Southern Utah Wilderness Alliance v. Bureau of Land Management. We believe that this letter, although drafted prior to the Secretary's memorandum, is consistent with it. We submit this letter as part of the "communication and cooperation" the Secretary recognized was necessary for successful resolution of claims to a right-of-way under the federal statute known as "R.S. 2477."***

This letter concerns Hazel Green Ranch ("Hazel Green"), a private property that has as its eastern boundary line a portion of the western boundary line of Yosemite National Park

("Yosemite"). Our firm represents Hazel Green's owner, Hazel Ranch, LLC, and its members and owners Lewis P and Genevieve L. Geyser (collectively, the "Geysers").

Since 1998, the Geysers and the National Park Service ("NPS") have been working to reach an agreement regarding simplified access between Hazel Green and Highway 120 (also known as Big Oak Flat Road) This effort led to the inclusion of Hazel Green access in the "preferred alternative" that was adopted by NPS pursuant to the January 2001 Final Yosemite Valley Plan (the "Plan") Implementation of the Hazel Green portion of the Plan would have resolved the issue of access to Hazel Green, but we understand that that this portion of the Plan (among many others) has been put on indefinite hold by NPS.

The Geysers have now determined that they must resolve the issue of access to Hazel Green without relying on implementation of the Plan, in order to complete their planning for a resort and hotel development and a University of California, Merced ("University") facility at Hazel Green. Accordingly, they have decided that they must *either* (1) reach an agreement with NPS that allows use of the short, simple, and unobtrusive access route connecting Hazel Green and Highway 120 that was contemplated under the Plan and fully reviewed and approved during the public environmental review process associated with the Plan (the "Preferred Access Agreement"), *or* (2) pursue access on two longer and more complicated already-existing highway rights-of-way. These existing rights-of-way, both of which were once paved, were portions of the roads commonly known as the Crane Flat Road and the Coulterville Road, respectively, and were created under the federal statute known as "R S. 2477."[1] They currently provide legal access, through Yosemite, between Hazel Green and Highway 120

This letter explains the legal basis for these two existing rights-of-way, which the Geysers would seek to utilize and improve only if the Preferred Access Agreement cannot be achieved through a reasonably expeditious process with NPS. The Geyers still wish to work in harmony with NPS if possible. And thus, it is only if NPS no longer consents to the Preferred Access Agreement that the Geysers will be forced to pursue appropriate recognition of their rights to utilize, appropriately restore, and improve the existing Coulterville Road and Crane Flat Road rights-of-way, in connection with the Geysers' planned development of Hazel Green.

## I. OVERVIEW

Hazel Green is a privately-owned 80-acre site surrounded on all four sides by federal land, with Yosemite to the East, and Stanislaus National Forest to the North, South, and West [2] Between October 1888 and June 1938, Hazel Green was part of a larger approximately-

---

[1] R S 2477 was first enacted as Section 8 of the Act of July 26, 1866, ch 262, 14 Stat 251, 253, and was later codified as section 2477 of the Revised Statutes and as 43 U S C § 932 (1970 ed ) The statute's history and scope are discussed below

[2] *See* Exh 1 (1993 U S Forest Service map, showing Hazel Green in white, surrounded by shaded federal properties); Exh. 2 (First American Title Company Preliminary Report on Hazel Green)

120-acre property, and was utilized as a stagecoach and automobile stop and a hotel In 1938, the eastern 40 acres of this larger property were deeded to the United States, in connection with the planned realignment of Highway 120 (i.e., Big Oak Flat Road). When that realignment occurred thereafter, Highway 120 was built along a new route that passed directly through what had been, until 1938, the eastern 40 acres of Hazel Green.

The two rights-of-way at issue in this letter were created long before Highway 120's realignment. Prior to that realignment, these rights-of-way brought travelers from Northern California, through Hazel Green, to the Yosemite Valley Floor along two separate roads. One of these roads was the "Crane Flat Road," which went east from Hazel Green toward Crane Flat, near which it intersected with the route of Big Oak Flat Road. The second road was the "Coulterville Road," which went south from Hazel Green through the Merced Grove of Big Trees ("Merced Grove"), and continued from there to the Yosemite Valley floor. (At some point, NPS created the Merced Grove parking area along Highway 120, which is where the Coulterville Road now intersects with Highway 120.) Both the Coulterville Road and the Crane Flat Road were constructed as segments of the historic "Coulterville & Yo Semite Turnpike" (hereinafter, "Coulterville to Yosemite Road"). These roads, or at least the portions of the roads between Hazel Green and the realigned and current route of Highway 120, continue to provide needed access to and from Hazel Green, on easements granted by Congress over 100 years ago.

In the late 1860s, Congress enacted R.S. 2477, which granted public highway rights-of-way wherever roads were built across unreserved federal lands in the frontier regions of the western United States. Courts have interpreted R S. 2477 as an express grant of highway rights-of-way from the federal government

The Coulterville Road and Crane Flat Road were constructed during the 1870's across what was then unreserved federal land, as segments of the Coulterville to Yosemite Road As such, they were part of the first wagon road to link Yosemite Valley to the outside world, and the first road on which automobiles were permitted to enter Yosemite.[3] Although neither has received significant use of late, both remain roads, and their underlying easements created through R.S. 2477 remain intact today, and can be utilized and appropriately improved to accommodate vehicular traffic in connection with the development of Hazel Green.

[3] Exh 3 ("Coulterville Road (Coulterville to Yo Semite Turnpike), Yosemite National Park," Historic American Engineering Record prepared for Yosemite National Park Roads and Bridges Recording Project, 1991) [hereinafter, "Engineering Record"] at 2 (stating that Coulterville & Yo Semite Turnpike was the first road into Yosemite National Park "to be opened to automobiles")

## II. BACKGROUND

### A. Ownership History of Hazel Green

The land around and encompassing Hazel Green was acquired by the United States government under the Treaty of Guadalupe Hidalgo, in 1848[4] The Hazel Green site then became a recognized destination along the Coulterville to Yosemite Road, and in 1888 the government granted approximately 120-acres, encompassing Hazel Green, to James Halstead of Mariposa County.[5] This grant included the current 80 acres of Hazel Green, plus 40 acres to the East that – except for the easements discussed herein – are now part of Yosemite. Mr. Halstead, recognizing the importance of Hazel Green's location on the Coulterville to Yosemite Road, constructed and operated a hotel and stagecoach stop on his 120-acre Hazel Green property.[6]

Hazel Green has remained private throughout the ensuing decades, as surrounding lands have been made part of Yosemite or Stanislaus National Forest. Beginning in 1890, much of the land around Hazel Green was set aside by the U.S. government for national park or forest purposes, and many of the private plots in the area were purchased by the federal government.[7] (Prior to that date, Congress had only acted to protect the Yosemite Valley itself, and the Mariposa Grove of Big Trees.) The government, however, did not purchase Hazel Green

In the early 20th Century, Mr. Halstead sold his property to the Curry family, founders of Camp Curry in Yosemite Valley, and the entire property remained in their hands until 1938, when they sold their interests in the property's eastern 40 acres to the federal government in conjunction with plans for a realignment of Highway 120.[8] Significantly, the recorded deed for this transfer shows that the parties recognized that existing rights-of-way crossed Hazel Green, and that the transfer would not impact those rights. The deed stated

---

[4] *See Collins v Yosemite Park & Curry Co*, 304 U.S 518 (1938) (citing treaty at 9 Stat 922)

[5] Exh 4 (grant deed for 120 acres at Hazel Green, from U S to James Halstead, Oct 1888)

[6] *See* Exh 5 ("Cultural Resources Investigations of the Hazel Green Project, 80 Acres in Northern Mariposa County, California," Inst for Arch. Research, Cal. State Univ , Stanislaus, Nov. 1998) [hereinafter, "Inst for Arch Research"] at 26, 44 (describing 1886 account of journey along Coulterville Road to "Hazel Green, where, owing to its grassy meadows, magnificent timber, and convenience of location, Mr James Halstead has established a way-side inn")

[7] *See, e g*, California Forest Reservation Act of 1890, 26 Stat 650, Act Authorizing Grant to State of California of "Yo-Semite Valley," and of Land Embracing "Mariposa Big Tree Grove," 13 Stat 325; Exh 6 (Report of Department of Interior, Dec 1904), Exh 7 (Map of Yosemite Valley from Surveys made by order of Commissioners to manage Yosemite Valley, 1865), Exh 8 (Map of Yosemite Valley, 1872)

[8] Exh 9 (Grant Deed from Jennie Foster Curry to United States of America, June 1938), Exh 10 (Letter to Mrs Curry regarding realignment of Big Oak Flat Road through her property).

explicitly that it did "not cover any right, title, or interest which the State of California may have in [the] lands for road, highway or other purposes."[9]

**B. Description of the Coulterville and Crane Flat Road Easements Between Hazel Green and Highway 120**

Highway 120 (i.e., Big Oak Flat Road) is the closest paved road to Hazel Green currently maintained to allow public automobile traffic. Near the section of the highway commonly known as the "Hazel Green Dip," it passes directly through the 40-acre parcel of land that was, until 1938, part of Hazel Green. At this point, the highway is directly east of the current Hazel Green property, with approximately 300 yards separating it from Hazel Green.

Each of the two existing easements that link Hazel Green and Highway 120 cross through portions of Yosemite: First, the Crane Flat Road, a segment of the historic Coulterville to Yosemite Road, runs directly east from Hazel Green to Highway 120, straight across the 40 acres that was once part of Hazel Green.[10] Second, the Coulterville Road runs from Hazel Green into Yosemite where it now intersects with Highway 120 near the Merced Grove parking area This road has long been and remains a designated Mariposa County road, and is recorded as such in the county's property records.[11] Various maps showing the current route of Highway 120 near Hazel Green and/or the routes of Coulterville Road and Crane Flat Road are attached hereto.[12]

**C. History of the Coulterville and Crane Flat Roads Through Hazel Green**

The name "Hazel Green" was first coined in 1856, when George W Coulter and a group of Coulterville residents exploring possible routes to Yosemite Valley came upon a meadow filled with hazel bushes and dubbed it "Hazel Green."[13] In 1857, these Coulterville residents financed construction of a route linking Coulterville to Yosemite Valley, through Hazel Green, known as the Coulterville Free Trail.[14] Hazel Green quickly became a recognized stopping-off point on the route According to one account:

---

[9] Exh 9 (Grant Deed, Jenny Foster Curry to United States, June 1938)

[10] The roads referred to herein as the Coulterville Road and the Crane Flat Road herein have also been at various times called (or been part of a longer road that was called), among other things, the "Coulterville & Yo Semite Turnpike," the "Old Coulterville Road," the "Coulterville to Yosemite Road," the "Yosemite Road," the "Old Yosemite Road," the "Coulterville Free Trail," County Road #51, and Forest Service Road 2S01

[11] *See, e g*, Attachment A, Exh 11

[12] *See, e g*, Exhs. 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 33, and 35.

[13] Exh. 5 (Inst for Arch. Research) at 22

[14] *See* Exh. 25 ("The Yosemite Grant, 1864-1906, A Pictorial History," by Hank Johnston, Yosemite Association, Yosemite National Park, California, 1995 [hereinafter, "Yosemite Grant"]) at 29-31, Exh 5 (Inst for Arch Research) at 22-23, Exh 14 (Map of Main Trails & Roads to Yosemite, 1856 to 1880,

> The thirty-three-mile route ran northeast from Bull Creek along the Deer Creek drainage to Deer Flat, then east through Hazel Green, Crane Flat, and Tamarack Flat to a point later known as Gentry's, from which it twisted down a steep sidehill descent to the Valley Floor [15]

John Muir was among the route's early travelers, and his writings induced others to follow. He described the Hazel Green site as a "good place to quietly camp and study, to get acquainted with the trees and birds, to drink the reviving water and weather, and to watch the changing lights of the big charmed days."[16]

By 1870, pressure for a more substantial road had grown and Yosemite Valley's administrators encouraged the Coulterville and Yo Semite Turnpike Company to form and to finance construction of a wagon road from Coulterville, through Hazel Green, to Yosemite Valley [17] Construction progressed quickly at first, and by May 1870, forty men were working on the road.[18] The Crane Flat Road segment was completed by 1872, and the Coulterville Road segment followed.[19] When the entire road was completed in 1874, it was the first wagon road to reach the Valley floor.[20] By the 1880s, the road was being used regularly by stagecoaches.[21]

The completed Coulterville to Yosemite Road actually included two separate roads for purposes of access to or from Hazel Green.[22] These roads entered Hazel Green together as a single road from the West, passed through the portion of Hazel Green that was used as a stagecoach stop and hotel beginning in the 1880s, and then diverged into different roads near

---

after DeVere 1991). The work was done by a miner named Jean-Nicholas Perlot, together with ten Indian laborers. Exh 3 (Engineering Record) at 2

[15] Exh. 25 (Yosemite Grant) at 29-31, *see* Exh. 3 (Engineering Record) at 2; *see also* Exh 5 (Inst. for Arch Research) at 23 (noting numerous contemporaneous accounts which confirm that the Coulterville Free Trail ran through Hazel Green and Crane Flat), Exh 14 (Map of Main Trails & Roads to Yosemite, 1856 to 1880); Exh. 8 (Map of the Yosemite Valley, prepared for the pocket edition of the Yosemite Guide Book, 1872) (showing "Coulterville Trail" as route into Yosemite Valley), Exh 14 (showing "Coulterville Road"/"Coulterville Trail" as a "main trail[] and road[] to Yosemite, 1856 to 1880")

[16] Exh 5 (Inst for Arch Research) at 24 (quoting John Muir, 1901).

[17] *See* Exh 25 (Yosemite Grant) at 119-20, Exh 3 (Engineering Record) at 2

[18] Exh 3 (Engineering Record) at 2

[19] Exh 25 (Yosemite Grant) at 116 (quoting Stockton Weekly Independent, May 14, 1870), Exh 3 (Engineering Record) at 3.

[20] Exh 3 (Engineering Record) at 2, Exh 25 (Yosemite Grant) at 120.

[21] Exh 25 (Yosemite Grant) at 128, *see also id* at 129 (reproducing poster advertising "new all-wagon road" to Yosemite via Coulterville, Hazel Green, and the Merced Grove)

[22] *See* Exhs 15, 16, 17, and 21

what is currently the eastern edge of Hazel Green. From here, the "Crane Flat Road" continued almost directly east (where it currently intersects with Highway 120, near the Hazel Green Dip), and the "Coulterville Road" forked south, passed through the Merced Grove, and continued to the Valley floor (this road now intersects Highway 120 at the Merced Grove parking area).

The existence of these two separate routes has to do with how the Coulterville to Yosemite Road was constructed.[23] The road was "built over several stages, to connect the northern Mariposa County mining town of Coulterville with the [Yosemite] Valley "[24] The two roads at issue here were each separate stages of the larger project, and after the Crane Flat Road segment had been completed, in 1872, the Coulterville Road segment was constructed as an alternative route, to allow travelers the option to travel through the Merced Grove.[25] Both were used by the public thereafter.[26]

The roads' width and quality of construction were substantial. While they were built with two-way horse-drawn-wagon traffic in mind, they easily accommodated subsequent two-way automobile traffic on a roadway that averaged sixteen feet in width.[27] Cars began using the roads in 1902, and although Yosemite's administrators prohibited cars between 1907 and 1913, traffic picked up again thereafter.[28] In fact, Yosemite's own regulations stated that the Coulterville to Yosemite Road through Hazel Green was the *only road* on which cars were allowed to enter Yosemite when automobile traffic into the park recommenced in 1913· cars approaching Yosemite on the Big Oak Flat Road were required to turn west at Crane Flat, toward Hazel Green, and to take the Coulterville Road into Yosemite Valley.[29]

Local county officials, meanwhile, continued to assert their interests in the portions of the Coulterville to Yosemite Road within Yosemite, and the federal government continued to recognize the road's non-federal ownership. For example, in the Department of the Interior's 1904 report to Congress regarding the setting of Yosemite's boundaries, the federal

---

[23] *See* Exh 25 (Yosemite Grant) at 120

[24] *Id*

[25] *Id* The purpose of adding this second route was to encourage increased use of the Coulterville Road so as to maximize tolls *Id*

[26] *See, e g*, Attachment A, Exhs 15, 16, 17, and 21

[27] Exh 25 (Yosemite Grant) at 121-22 ("With the six-mile branch to Crane Flat, .. total construction encompassed nearly thirty-eight miles The width averaged sixteen feet In a few places where rock formation prevented the usual width, turnouts were built ")

[28] Exh 3 (Engineering Record) at 6

[29] *See* Exh 29 (Yosemite National Park, Season of 1914, "Regulations of June 3, 1914, Governing Automobiles") ¶ 14, Exh 3 (Engineering Record) at 6 ("The Coulterville Road was the first route chosen for the re-entry of automobiles to the park, and was quickly put back in shape for motorists' use ") (citing newspaper account extolling virtues of the road in the *Modesto Mining Herald*), Exh 5 (Inst for Arch. Research) at 27

government acknowledged the existence and use by the public of the Coulterville and Crane Flat Roads, and estimated that the federal government would likely be unable to purchase the roads at any price less than $50,000.[30] In 1911, the County of Mariposa Board of Supervisors declared the various segments of the Coulterville to Yosemite Road inside Yosemite to be free public highways on which no tolls could be charged.[31] And when the federal government subsequently sought to purchase the entire Coulterville to Yosemite Road from Mariposa County, the County refused to sell.[32] The federal government thereafter conducted sporadic maintenance, and even paved portions of the road in the 1960s.[33]

When Highway 120 was reconstructed along its current route, it crossed the 40-acre site that had been part of Hazel Green prior to 1938, and the revised (and current) route of Highway 120 intersected with the routes of both the Coulterville and Crane Flat Roads.[34] As both federal government and Mariposa County officials repeatedly recognized, both of these roads continued to exist after Highway 120's realignment. In 1976, Yosemite officials applied for and received approval to have the portion of the Coulterville Road inside Yosemite added to the National Register of Historic Places.[35] In 1985, Mariposa County recorded a highway easement through Hazel Green (as a condition of subdividing Hazel Green into two parcels) This recorded easement is 60 feet in width, and was based on what the County said was an already-existing public right-of-way, described as "Road #51 . . . also known as Old Coulterville Yosemite Road," that intersected with Highway 120 southeast of Hazel Green [36]

## III. ANALYSIS

### A. Under R.S. 2477, Congress Granted Public Easements Along the Coulterville and Crane Flat Roads.

#### 1. The Congressional Grant of Public Rights-of-Way Under R.S. 2477

In 1866, Congress enacted a federal statute that granted easements over federal land. This enactment, known as R.S. 2477, provided in its entirety as follows: "The right of way

---

[30] *See* Exh 6 (Report of Department of Interior to Congress, Dec 1904) at 15

[31] Exh 26 (NPS National Register of Historic Places Nomination Form) (noting that after "[t]he Board of Supervisors declared the section [of the Coulterville to Yosemite Road] from Hazel Green to the Pohono Bridge a public highway in 1911," the financiers of the road unsuccessfully sought to continue charging tolls on the road)

[32] Exh 3 (Engineering Record) at 7

[33] *Id*

[34] *See* Exh 33 (Stanislaus National Forest, Route Inventory Map, Ackerson Mountain SW)

[35] Exh. 26 (National Register of Historic Places Inventory – Nomination Form submitted by NPS)

[36] Exh. 11 (Highway Easement Deed, June 26, 1986), Exh 27 (documents on 1985 subdivision of Hazel Green noting its location "[n]orthwest of the Old Coulterville road and Highway 120 intersection")

for the construction of highways over public lands, not reserved for public uses, is hereby granted" As courts have since explained, the legislative purpose behind this simple enactment was to "facilitate the settlement of the country," and to further a "general policy of the federal government" by "tend[ing] to increase the value of the public lands."[37] In short, Congress enacted R S. 2477 because they deemed roads "a good thing," and encouraged their construction by granting perpetual rights-of-way wherever they were built across unreserved federal land.[38]

R.S 2477 remained part of federal law until 1976, when Congress enacted the Federal Land Policy Management Act of 1976 ("FLPMA"). FLPMA repealed the portion of R S 2477 that granted *new* public rights-of-way, but explicitly protected all *existing* rights-of-way previously dedicated under the statute [39] Thus, while Congress placed tighter controls on the future creation of easements over federal land, it recognized that R S. 2477 had created vested rights that could not be disregarded [40]

"R.S. 2477 [has been] uniformly interpreted by the courts as an express dedication of the right of way by the landowner, the United States Congress."[41] The statute itself, however, says nothing about how Congress' grant was to be accepted. Because of this, courts have determined that Congress incorporated into the statute, as part of federal law, state common-law principles regarding the acceptance of an offer to dedicate a highway right-of-way.[42] Under these incorporated common law principals, the acceptance of R.S. 2477 easements was quite simple, and could be accomplished without any formal action by local government authorities [43] In fact, "the establishment of R.S 2477 rights of way required no administrative formalities [at all]: no entry, no application, no license, no patent, and no deed on the federal side; no formal act of public acceptance on the part of the states or localities in whom the right was vested."[44] All

---

[37] *Southern Utah Wilderness Alliance v Bureau of Land Management*, 425 F 3d 735, 741 (10th Cir. 2005) (hereinafter, "*SUWA v BLM*")

[38] *Id*

[39] *See* FLPMA §§ 509(a), 701(a), and 701(h), codified respectively at 43 U.S C §§ 1769(a) and 1701, Savings Provisions (a) and (h); *Adams v United States*, 3 F 3d 1254, 1258 (9th Cir 1993).

[40] *Fitzgerald v United States*, 932 F Supp 1195, (D Ariz 1996) ("[In] repealing R S 2477, FLPMA preserved any rights of way that had existed prior to the date of [its] enactment")

[41] *Id* at 769-70 (internal citations omitted)

[42] *See, e g*, *SUWA v BLM*, 425 F 3d at 765 ("[W]hen Congress granted rights of way for the construction of public highways across unreserved federal lands of the West in 1866, it was aware of and incorporated the common law pertaining to the nature of public highways and how they are established"), *Sierra Club v Hodel*, 848 F 2d 1068, 1082 (10th Cir 1988) ("State law has defined R S 2477 grants since the statute's inception").

[43] *See SUWA v BLM*, 425 F 3d at 741.

[44] *Id.*

that was "necessary . . .in order that a road should become a public highway [was] that [the road] be established in accordance with the laws of the state in which it was located "[45]

In California, the creation of an R.S 2477 right-of-way could be accomplished either through formal acceptance by local public officials, or through the construction or use, for a reasonable period of time, of a public road.[46] Once the congressional offer had been accepted through one of these methods, the dedication of the R.S 2477 easement was complete, and the federal government as grantor gave up control over the easement: "the dedication forthwith bec[a]me[] effectual and irrevocable."[47]

2. <u>The Coulterville and Crane Flat Roads Were Dedicated As Easements Under R.S. 2477, Through Public Construction and Use of the Roads.</u>

Extensive records and materials demonstrates that the Coulterville and Crane Flat Roads were constructed and used as public road for a reasonable period of time, thereby dedicating them as rights-of-way for public highway purposes. Much of this material has been discussed above Further confirmation is cited in Attachment A hereto. These materials, although merely illustrative, are more than sufficient. Indeed, the existence of these roads as right of ways is amply supported by the fact that they were shown as "existing" roads on various federal government maps, and were discussed in the 1904 Department of the Interior report to Congress (which served as the basis for drawing Yosemite's boundaries).[48] This alone is sufficient to show that the roads were constructed for and used by the public, and the mere fact

---

[45] *Ball v Stephens*, 68 Cal App 2d 843, 846 (1945). This fit with the purpose of R.S 2477, encouraging development of frontier areas of the West, where government authorities were often nonexistent

[46] *See, e g , Gion v City of Santa Cruz*, 2 Cal. 3d 29, 39 (1970) ("If a road is involved, the litigants must show that it was used as if it were a public road."), *Diamond Match Co v Savercool*, 218 Cal. 665, 668-69 (1933) ("To constitute a valid and complete dedication there must be an intention by the owner, clearly indicated by his words or acts, to dedicate the lands to public use, and an acceptance either by public user or formal resolution.") (internal citations omitted), *City of Venice v Short Line Beach Land Co* , 180 Cal 447, 449 (1919) ("The use of the street by the public for a reasonable length of time, is sufficient evidence of acceptance "), *Smith v City of San Luis Obispo*, 95 Cal 463, 470 (1892) ("If the soil be accepted and used by the public in the manner intended by the owner, the dedication is complete ") This doctrine was not unique to California, but was well-settled at common law Indeed, the U.S Supreme Court has even recognized that the "passage of wagons, etc , over the natural soil," can "form[]" a public highway *Central Pac Ry Co v Alameda County*, 284 U S 463, 467 (1932)

[47] *Hanshaw v Long Valley Road Assoc* , 116 Cal App 4th 471, 482 (2004)

[48] *See, e g , Ball*, 68 Cal. App. 2d at 848 ("The strongest evidence as to the extent of the travel was the fact that the road did come into existence through public use. In other words, it came to be a road by means of being used as a road and in the same fashion that many other mountain roads have come into existence "), Exh 25 (Report of Department of Interior, Dec 1904) at 15.

that tolls were charged cannot deprive the roads of their public character.[49] All that is necessary is that roads were "used as . . . public road[s] by all who [had] occasions to travel over" them, and there is ample evidence of that here.[50]

**B. <u>The R.S. 2477 Rights-of-Way In The Coulterville and Crane Flat Roads Remain Public Rights-of-Ways.</u>**

Although the Crane Flat and Coulterville Roads have not been heavily used by travelers going to or from Yosemite for some time, they have been used by the public, and they remain public highway easements which provide access between Hazel Green and Highway 120. "The general rule is: Once a highway, always a highway," and this rule applies to R S. 2477 rights-of-way in California.[51] Thus, because the Crane Flat and Coulterville Roads were dedicated as public highways, they remain so irrespective of the level of use that has taken place since their original dedication.[52] Under R.S. 2477, "it is not important how extensively a highway was used, or whether it was used at all, by the public after that time so long as it was not legally abandoned "[53] "A highway once established must remain such until changed or discontinued by process of law."[54]

The easements here were never discontinued by process of law or otherwise given back to the federal government.[55] To the contrary, the County of Mariposa has specifically refused to give up the highway easements along the Coulterville to Yosemite Road, and has recorded a 60-foot-wide highway deed to reflect the Coulterville to Yosemite Road right-of-way.[56] And while use of these easements has declined, it has not ceased.[57] Indeed, even if use had ceased completely (which it has not), this would not equal legal abandonment of the

---

[49] *See SUWA v BLM*, 425 F 3d at 765 ("Toll roads are highways, and differ from ordinary highways merely in the fact that they are also subjects of property and the cost of their construction and maintenance is raised by a toll from those using them, instead of by general taxation ").

[50] *Hanshaw*, 116 Cal App 4th at 483, *see Phillips v Laguna Beach Company*, 190 Cal. 180, 183 (1922)

[51] *Western Aggregates, Inc v County of Yuba*, 101 Cal App. 4th 278, 303, 305 (2002) (internal quotes omitted)

[52] *See id* at 308.

[53] *Ball*, 68 Cal App 2d at 848, *see also id* at 850 (stating that "[n]o act could divest the right which the public had acquired" in a public highway pursuant to R S. 2477)

[54] *Id* (internal quotes omitted).

[55] *See Central Pac Ry Co*, 284 U S at 468

[56] *See* Exh 3 (Engineering Record), Exh 11 (Highway Easement Deed); Exh 26 (NPS National Register of Historic Places Nomination Form)

[57] *See Ball*, 68 Cal App 2d at 848 (stating that "it is not important how extensively [a R S 2477 easement] was used, or whether it was used at all, by the public after that time so long as it was not legally abandoned").

easements [58] The lack of comparable access to Hazel Green that might be used in place of the two easements at issue here is further proof that the easements have not been abandoned.[59]

In sum, because the roads here became public rights-of-way under R S. 2477 once constructed and used, "the dedication [thereafter] bec[a]me[] effectual and irrevocable "[60]

## C. <u>The Owners of Hazel Green, Which Abuts The Coulterville and Crane Flat Roads, Have Appurtenant Rights To Access Over the Roads.</u>

While the County of Mariposa has rights in the Coulterville and Crane Flat Road easements, so does the owner of Hazel Green. It is well-settled that owners of land in California have appurtenant rights, akin to rights in a private easement, to maintain continued public access to their property across any public highway that abuts their property.[61] As the California Supreme Court explained, "[i]t has long been recognized in this state and elsewhere that an owner of property abutting upon a public [highway] has a property right in the nature of an easement in the street which is appurtenant to his abutting property and which is his private right, as distinguished from his right as a member of the public."[62] In other words, "[a]n owner of land has a right of access to and from his property via an abutting street which constitutes an easement that he enjoys as an incident of this ownership that is separate and distinct from the right of the general public in and to the street."[63] The "right has been described as an easement of ingress and egress to and from the property or, generally, the right of access over the [highway] and from [the] property . . . ."[64] This right exists even irrespective of "whether [the

---

[58] *See People v Myring*, 144 Cal 351, 354 (1904) (stating that even complete "c[essation] of use of a portion of [a] road after it has been once established d[oes] not of itself destroy its character as a public highway ")

[59] *See Western Aggregates, Inc*, 101 Cal. App 4th at 305 ("The availability of substitute access provided by another road has usually been a relevant, if not critical, factor in the determination of an intent to abandon.") Moreover, the public cannot lose R S 2477 rights-of-way by prescription *See* Cal Civ Code § 1007, *Hays v Vanek*, 217 Cal. App 3d 271, 286-87 (holding that Cal Civ Code § 1007 prohibits prescriptive loss of R.S 2477 easements)

[60] *Hanshaw*, 116 Cal App 4th at 482 (emphasis added)

[61] *See Bacich v Board of Control*, 23 Cal. 2d 343, 349-50 (1943), *McKinney v Ruderman*, 203 Cal. App 2d 109, 119 (1962)

[62] *Bacich*, 23 Cal 2d at 349-50

[63] *McKinney*, 203 Cal App 2d at 119 (internal quotes omitted)

[64] *Bacich*, 23 Cal 2d at 349-50 Moreover, the right of access includes rights to ingress and egress, and reducing a two-way road to one-way travel amounts to an unlawful deprivation of the landowner's property rights *Id* at 354

property owner] does or does not own [a] fee in the street," and is considered a "private easement which is an incident to the[] ownership of the land abutting the subject [highway]."[65]

Thus, Hazel Ranch, LLC, as the owner of Hazel Green, has appurtenant legal rights in any R.S. 2477 public highway easements that abut Hazel Green and link it to the adjoining Highway 120. Moreover, these rights are not limited to allowing access by Hazel Ranch, LLC itself, but include a right to allow other members of the public to use the easements between Hazel Green and Highway 120.[66]

**D. <u>The Crane Flat and Coulterville Roads Can Be Restored And Paved To Accommodate Two-Way Vehicular Traffic.</u>**

To determine the scope of Hazel Green's appurtenant right to access on the Coulterville Road and Crane Flat Road easements, state common-law principles regarding the scope of public highway rights-of-way must be examined.[67] Under these state law principles, the scope of the easements over the two roads is determined by the historical use, purpose, and future uses reasonably contemplated when the easements were created.[68] Pursuant to these principles, the easements here may be restored and appropriately improved with pavement to allow two-way vehicular traffic between Hazel Green and Highway 120.

R S. 2477 created easements that were to be used by the public prospectively. Accordingly, the scope of the easements when granted necessarily encompassed both present and future needs.[69] Thus, "[t]he dedicator is presumed to have intended the [easement] to be used by the public in such way as will be most convenient and comfortable, and according to not only the proprieties and uses known at the time of the dedication, but as to those justified by lapse of time

---

[65] *Id*, *see Ratchford v County of Sonoma*, 22 Cal App 3d 1056, 1069 (1972) (stating that owners of private land have "a property right in the nature of an easement" in abutting public highways).

[66] *See McKinney*, 203 Cal App 2d at 119.

[67] *SUWA v BLM*, 425 F 3d at 764-65 (discussing fact that state common law regarding the scope of highways was incorporated into R S 2477 by Congress), *Hodel*, 848 F 2d at 1084 (holding that R S 2477 incorporated state law regarding the scope of rights-of-way, and "[b]ecause the grantor, the federal government, was never required to ratify a use on an R S 2477 right-of-way, each new use automatically vested as an incident of the easement ")

[68] *Fristoe v Drapeau*, 35 Cal 2d 5, 9 (1950) ("It is to be assumed that [an easement's creators] anticipated such uses as might reasonably be required by a normal development of the dominant tenement ")

[69] *See Faus v City of Los Angeles*, 67 Cal 2d 350, 355-56 (1967) (discussing how easements necessarily encompass future needs, and that "[c]hanging conditions, in customs, usages and improvements must be deemed to have been contemplated by the grantor").

and change of conditions."[70] "Many California cases have held that in the grant or dedication of land for highway purposes, changing conditions, in customs, usages and improvements, and changes in the prevailing mode of transportation . . . since the original dedication are to be assumed as being contemplated."[71]

This means that the R S. 2477 easements here are such as to accommodate reasonably foreseeable improvements in technology, including the improvements that led to the switch from horse-drawn wagons to automobiles.[72] Although built primarily with horse-drawn wagons in mind, the roads here created easements that prospectively included rights to allow use by cars, and to allow improvements such as pavement, so as to make travel by car more convenient, comfortable, and safe.[73] As public highway rights-of-way, the easements here allow for "a modern vehicular means of transport . . in place of an outmoded one."[74]

Moreover, the federal government has limited power to regulate improvements to a R.S. 2477 right-of-way that are designed to enable the right-of-way to more readily accommodate two-way vehicular traffic. In *Sierra Club v Hodel*, the Tenth Circuit Court of Appeals held that an R.S. 2477 right-of-way that had been built as a wagon road could be modified by any reasonable and necessary improvements, as long as the modifications were made within the boundaries of the right of way, or outside of those boundaries to the extent an expansion was necessary to allow two-way vehicular traffic.[75] Mariposa County has indicated here that the Coulterville to Yosemite Road's right-of-way is 60 feet in width, as evidenced by the highway easement deed recorded when Hazel Green Ranch was subdivided.[76] The

---

[70] *Griffith v City of Los Angeles*, 175 Cal. App. 2d 331, 337 (1959) (public highway easements "respond to whatever demands new improvements and increased facilities might make upon them, [if] such demands [are] consistent with their character and purpose as public highways")

[71] *Norris*, 261 Cal. App 2d at 47 (internal quotation marks omitted).

[72] *See Faus*, 67 Cal 2d at 358; *Griffiths*, 175 Cal App 2d at 337.

[73] *See, e g*, *Wattson v Eldridge*, 207 Cal 314, 320, 358 (1929) (holding that highway easements created to allow only canals could be paved as streets because alternative would improperly "fix forever the means of public transport in the straightjacket of an outmoded method"), *Hayes v Handley*, 182 Cal 273, 282 (1920)) (holding that highway easements allow "such methods for the transportation of passengers and freight as modern science and improvements may have rendered necessary . and, indeed, of those yet to be discovered"); *In re Anderson*, 130 Cal. App 395, 398 (1933) ("The easement which the public acquires includes every reasonable means of transportation for persons, and commodities, and of transmission of intelligence which the advance of civilization may render suitable for a highway "), *Collopy v United Railroads*, 67 Cal App 716, 723 (1924) (holding that highways easements allow "new and improved methods" of transport)

[74] *Faus*, 67 Cal 2d at 355, *see also Salvaty v Falcon Cable Television*, 165 Cal App 3d 798, (1985) (discussing "policy of broadly interpreting easements to meet progressive inventions")

[75] *See Hodel*, 848 F 2d at 1086

[76] Exh 11 (Highway Easement Deed)

easements here are certainly wide enough to have accommodated two-way vehicular traffic, as Yosemite at one point required that cars entering and leaving Yosemite use the Coulterville to Yosemite Road. Under *Hodel*, Hazel Ranch, LLC can therefore pursue the restoration and improvement of the Coulterville and Crane Flat Road easements, so that vehicular traffic can safely and comfortably travel to and from Highway 120.

**E. <u>The Government Has Only Limited Rights To Regulate Access to Hazel Green From Highway 120.</u>**

The government has limited authority to regulate access over a right-of-way dedicated under R.S. 2477.[77] The government "may not use its authority, either by delay or by unreasonable disapproval, to impair the rights of the holder[s] of the R.S. 2477 right of way."[78] The rights-of-way are easements across the government's land, and under well-settled principles of easement law, the government must work with the owners of Hazel Green "in a spirit of mutual accommodation," regarding access to and from Highway 120.[79] Indeed, it has long been settled in California that owners of dominant and servient estates must exercise their rights so as not to unreasonably interfere with each other.[80]

Therefore, pursuit by the Geysers of improvements to the Crane Flat and Coulterville Roads in accordance with these principles would require federal government action and approval in a timely and expeditious manner.[81]

## IV. <u>CONCLUSION</u>

Hazel Green has two RS 2477 rights-of-way between it and Highway 120 inside Yosemite: the Coulterville Road and the Crane Flat Road The Geysers are ready to meet now to discuss plans for the utilization and restoration of these existing R.S. 2477 rights-of-way. The Geysers would, however, prefer to meet as soon as possible to discuss the alternative approach mentioned above (i.e , the "Preferred Access Agreement"), whereby all rights they or Hazel Green have in the existing rights-of-way might be exchanged for the right to use a single right-of-way for vehicular traffic between Hazel Green and Highway 120 pursuant to the Preferred Access Agreement.[82] If NPS is willing to reach an agreement regarding such access to Hazel

---

[77] *See Clouser v Espy*, 42 F 3d 1522, 1538 (9th Cir 1994); *SUWA v BLM*, 425 F 3d at 748.

[78] *SUWA v BLM*, 425 F 3d at 748

[79] *Id* ("In the absence of detailed arrangements between them, it is assumed that the owner of the servitude and holder of the servient estate are intended to exercise their respective rights and privilege in a spirit of mutual accommodation ") (quoting Rest. (3d) of Property: Servitudes, § 4 10 cmt A (1998)

[80] *See, e g , Hargrave v Cook*, 108 Cal 72, 81 (1895)

[81] *See SUWA v BLM*, 425 F 3d at 748.

[82] The Preferred Access Agreement would reflect the sort of direct unobtrusive access to Hazel Green contemplated under the Plan. *See* Exh 36 (map showing "preferred alternative" adopted by NPS under

Green, the Geysers would be willing to undertake the burden of construction and maintenance at their own expense and in accordance with any NPS road requirements.

The Geysers have already spent several years working with NPS on an agreement for access to Hazel Green, but time is now of the essence. The Geysers have embarked on planning for developing the property, and are in the process of negotiating a memorandum of understanding with the University, regarding construction of a facility for the University's Sierra Nevada Research Institute. The Geysers believe that, in creating such a facility for the University, they will be accomplishing much of what led NPS to include access to Hazel Green in the Plan, and will be supporting NPS in its efforts to promote University interests at Yosemite. However, the access situation must be resolved before the Geysers can complete detailed plans for Hazel Green

We look forward to hearing from you in a timely manner. Please do not hesitate either to contact me, or to communicate directly with the Geysers (either by telephone, at (805) 688-2106, or by e-mail to lew@hazelgreenranch.net). We are prepared to meet with you at your earliest convenience. We would also very greatly appreciate an early communication from you indicating your receipt of this letter and its attachments.

Sincerely,

Brian R. Hochleutner

BRH·dlr

Enclosures

cc Mr. and Mrs. Lewis P. and Genevieve L. Geyser (w/ encl.)
Donald Starchman, Esq (w/ encl.)
Anita Starchman Bryant, Esq. (w/out encl.)
Dana S. Treister, Esq. (w/out encl )

---

the Plan) (stating that "Hazel Green (outside the park) is the preferred location for out-of-Valley, day-visitor parking along the Big Oak Flat Road").

ATTACHMENT A

## ATTACHMENT A

**Selected Additional Materials Establishing Recognized Existence and Use of the Coulterville and Crane Flat Roads Between Hazel Green and Highway 120**

- Various maps (many prepared by the federal government) detail the existence of the Coulterville and Crane Flat Roads. These maps include, among others, the following: (1) a 1906 map from the collection of the Library of Congress, Division of Maps, dated 1906, which clearly shows the two roads (the Coulterville Road and the Crane Flat Road) as "Existing roads," running from Hazel Green to where Highway 120 currently passes,[1] (2) a Department of the Interior administrative map of Yosemite National Park, published April 1910 and based on surveys from 1898 through 1906, shows the Coulterville and Crane Flat Roads as existing roads running from Hazel Green to the current route of Highway 120;[2] (3) a federal government map published in 1915 by the United States Geological Survey as a "Topographic Map of Yosemite National Park, California," based on surveys conducted between 1893 and 1909, which shows the Coulterville and Crane Flat Roads as existing roads from Hazel Green to the current route of Highway 120;.[3] (4) a federal government map published in 1956 by the Department of the Interior as a geological survey of the "Lake Eleanor Quadrangle, California," showing the Coulterville and Crane Flat Roads, although not named, as two existing roads running from Hazel Green to the current route of Highway 120;[4] (5) various other official maps from the Library of Congress, Division of Maps, showing that the Coulterville Road was constructed all the way to Yosemite Valley;[5] and (6) numerous other maps and surveys document the existence of the Coulterville Road and the Crane Flat Road between Hazel Green and the current route for Highway 120.[6]

- Yosemite regulations, published in various annual reports by the Secretary of the Interior, required that automobiles entering Yosemite use the Coulterville Road through Hazel Green

[1] *See* Exh. 15 ("Map of Yosemite National Park showing boundaries established by Act of Congress Approved June 11, 1906, and lands eliminated therefrom and placed in the Sierra Forest Reservation," dated 1906)

[2] *See* Exh. 16 ("Department of the Interior, Administrative Map of Yosemite National Park, Map of Yosemite National Park, California," 1910)

[3] *See* Exh. 17 ("Department of the Interior, Administrative Map of Yosemite National Park, Map of Yosemite National Park, California," 1910)

[4] *See* Exh 21 ("United States Department of the Interior, Geological Survey, Lake Eleanor Quadrangle, California," 1956)

[5] *See, e g* , Exh. 18 ("United States Department of the Interior, Geological Survey, Map of Yosemite Valley," 1938), Exh 19 ("United States Department of the Interior, Geological Survey, Map of Yosemite Valley," 1938); Exh 20 ("United States Department of the Interior, Geological Survey, Yosemite Quadrangle," 1956)

[6] *See, e g* , Exhs 12, 31, 33 and 35

and the Merced Grove, beginning in 1914.[7] For a period of time, this road was the only route on which cars were allowed to enter the park.

- Various documents show that the ultimate cost of the entire Coulterville to Yosemite Road, including the Crane Flat and Coulterville Road segments through Hazel Green, was $71,000.[8]

- A history of the Coulterville to Yosemite Road commissioned by NPS shows that , on the day the road was opened to the public, in June 1874, some fifty carriages passed over what became collectively known as the "Coulterville Road."[9] Moreover, "[c]ompletion of the Coulterville [to Yosemite] Road led to increased tourist visitation to the Yosemite [Valley] by providing a connection with the Central Pacific Railroad at Modesto. Among the famous early travelers of the route were Horace Greeley, Lady Franklin (wife of the ill-fated Arctic explorer), and Ralph Waldo Emerson."[10]

- Timetables of San Francisco to Yosemite Valley stagecoaches traveling on the Coulterville Road list Hazel Green as a stop where members of the public could find a hotel or purchase hay and grain.[11]

- Minutes from the Mariposa County Board of Supervisors from May 4, 1874 list tolls that the County approved for the Coulterville Road public highway to Yosemite.[12]

- Contemporaneous accounts from the 1880s describe the Hazel Green stage stop and "wayside inn" operated by property owner James Halstead along the Coulterville Road to Yosemite Valley.[13]

---

[7] *See, e g*, Exh 28 (Yosemite National Park, Season of 1913, "Automobiles") at 27 ("Is has been decided to allow automobiles to run over the Coulterville Road and the Big Oak Flat Road from Crane Flat to the point of junction with the Coulterville Road "); Exh. 29 (Yosemite National Park, Season of 1914, "Regulations of June 3, 1914, Governing Automobiles") at 30-34 ("Automobiles entering may leave the Merced Grove of Big Trees between the hours of 7 a.m and 5 p.m."); Exh 30 (Yosemite National Park, Season of 1915, "Regulations Governing the Admission of Automobiles for the Season of 1915") at 25-27 (noting that automobiles were permitted to enter and leave the park via the Coulterville Road through the Mariposa Grove of Big Trees)

[8] Exh 25 (Yosemite Grant) at 121-22

[9] Exh 3 (Engineering Record) at 4; *see also* Exh. 31 (The Big Oak Flat Road) at 251

[10] Exh. 3 (Engineering Record) at 4

[11] Exh. 5 (Inst for Arch Research) at 25 & figure 10; *see also* Exh. 24 (Yosemite Grant) at 129

[12] Exh. 3 (Engineering Record) at 5 & n.19 (citing Minutes, Mariposa County Board of Supervisors, 4 May 1874, in Supervisor's Book B, 705-706).

[13] *See* Exh. 5 (Inst. for Arch Research) at 26, 44 (describing 1886 account of journey to Yosemite along Coulterville Road to "Hazel Green, where, owing to its grassy meadows, magnificent timber, and convenience of location, Mr James Halstead has established a way-side inn")

- Various historical photographs document the use of Hazel Green as a stage stop, and show stagecoaches on the Coulterville to Yosemite Road.[14]

- The 1904 report submitted by the Secretary of the Interior to Congress, regarding the setting of boundaries for Yosemite and the state of transportation routes to Yosemite Valley, discussed the existence of the Coulterville and Crane Flat Roads and their use by the public, and suggested that Congress might be able to purchase the easements for $50,000 [15]

- NPS applied for and obtained approval to have the Old Coulterville Road from Hazel Green through Yosemite National Park listed in the National Register of Historic Places, in 1976 [16]

- NPS recognized the existence of the Coulterville and Crane Flat Roads inside Yosemite near Hazel Green in the Final Environmental Impact Statement publications related to the Yosemite Valley Plan.[17]

- Current National Forest Service maps continue to recognize the existence of the Coulterville Road through Hazel Green and Yosemite.[18]

- A History of the Coulterville & Yo Semite Turnpike (including both the Coulterville and the Crane Flat Road segments thereof) was prepared by the Historic American Engineering Record in 1991, and it details the history of the Crane Flat and Coulterville Roads [19] "Mariposa County" is explicitly listed as a "Present Owner" of the roads as of 1991 in this publication.

- The County of Mariposa required, when the 80-acre Hazel Green Ranch property was subdivided into two separate parcels in 1985, that a public highway easement be recorded for

---

[14] Exh 5 (Inst for Arch Research) at 58-61, Exh 24 (Yosemite Grant) at 118, 119, 121.

[15] *See* Exh 6 (Report of Department of Interior, Dec 1904) at 15 (discussing history of "Coulterville road," and noting that "a branch was built from Hazel Green to Crane Flat on Big Oak Flat Road")

[16] Exh 5 (Inst for Arch Research) at 44; *see also* http //www nationalregisterofhistoricplaces com/ca/Mariposa/state html.

[17] *See* Exh 32 (Final Yosemite Valley Plan Supplemental Environmental Impact Statement) at 3-89

[18] *See* Exh 33 (Stanislaus National Forest, Route Inventory Map, Ackerson Mountain SW) (showing Coulterville Road as existing road as part of recent Forest Service road inventory). Moreover, portions of the Coulterville Road located in Stanislaus National Forest have been recorded by Forest Service archaeologists Exh 4 (Inst. for Arch Research) at 43

[19] *See generally* Exh 3 (Engineering Record)

a 60-foot-wide road described as "Road #51 . . . also known as Old Coulterville Yosemite Road," running across the Hazel Green site into Yosemite.[20]

- Various historical and archaeological records prepared on behalf of the State of California recognize the existence of the Coulterville and Crane Flat Roads between Hazel Green and Highway 120.[21]

- Various photographs document use of the Coulterville Road by automobiles, and show cars stopped at Hazel Green en route to Yosemite.[22]

- Numerous written accounts document that the Coulterville to Yosemite Road through Hazel Green was used by automobiles driving into Yosemite National Park.[23]

- Various photographs document cars using the Coulterville Road at the Merced Grove, between Hazel Green and the current route of Highway 120.[24]

- Various photographs document the presence of automobiles on the Hazel Green property between the 1920s and the 1970s.[25]

1171444 1

[20] Exh 11 (Highway Easement Deed, recorded June 26, 1986), Exh. 27 (documents related to subdivision of Hazel Green property) The County described the location of Hazel Green as "along the Old Coulterville-Yosemite Road just west of the Yosemite Park Boundary." Exh. 3

[21] *See* Exh 5 (Inst for Arch. Research) at Appendix D.

[22] Exh. 34 (photos of Howard Party at Hazel Green with automobiles, from *San Francisco Examiner*, published June 1, 1913)

[23] Exh 5 (Inst. for Arch Research) at 26 As one writer explained, "[E]ither the Big Oak Flat [Road] or Coulterville [R]oad [was at the time] practical for automobile travel, and if the ordinary amount of care [wa]s used, there [was] no more danger of driving an automobile over [these roads] than on any other mountain road" *Id.*

[24] *See* Exh 25 (Yosemite Grant) at 120

[25] Exh 5 (Inst for Arch Research) at 27, 54, 63