1

2

3

4                    UNITED STATES DISTRICT COURT

5                   EASTERN DISTRICT OF CALIFORNIA

6

7
| Hazel Green Ranch, LLC | 1:07-CV-00414-OWW-SMS |

**Hazel Green Ranch, LLC**
**a Delaware limited liability**
**company,**

                    **Plaintiff,**

        **v.**

**United States Department of**
**the Interior, Dirk Kempthorne**
**in his Capacity as the**
**Secretary of the United States**
**Department of the Interior,**
**National Park Service, Mary A.**
**Bomar, in her capacity of**
**director of National Park**
**Services, Michael J. Tollefson**
**in his capacity as**
**Superintendent of Yosemite,**

                    **Defendants.**

        **and**

**Sierra Club, Natural Defense**
**Resources Council, and The**
**Wilderness Society,**

        **Intervenor-Defendant**
                    **Applicants.**

**1:07-CV-00414-OWW-SMS**

**MEMORANDUM DECISION AND ORDER**
**RE INTERVENOR-DEFENDANTS**
**MOTION TO INTERVENE (DOC. 12)**

                    **I.   INTRODUCTION**

     Plaintiff, Hazel Green Ranch, LLC ("Hazel Green Ranch") owns

an 83-acre parcel on the western edge of Yosemite National Park

("Yosemite").  Hazel Green Ranch filed a lawsuit under the Quiet

Title Act, 28 U.S.C. § 2409(a), seeking to gain more direct

                              **1**

vehicle access to Yosemite.  Federal question jurisdiction exists under 28 U.S.C. § 1331 because this lawsuit was filed pursuant to the federal Quiet Title Act, 28 U.S.C. § 2409(a).  Before the Court is a motion to intervene filed by the Sierra Club, Natural Resources Defense Council ("NRDC"), and The Wilderness Society ("Society") (collectively, "proposed intervenors").  All three proposed intervenors claim to use and enjoy Yosemite for recreational, scientific, spiritual, educational, scenic, and aesthetic purposes.  They have brought this motion under Federal Rules of Civil Procedure 24(a)(2) intervention as of right and (b) permissive intervention.

## II.   PROCEDURAL BACKGROUND

On March 14, 2007, Hazel Green Ranch filed its complaint for Quiet Title, Declaratory Judgment, and Writ of Mandamus in the District Court Eastern District of California.  *Pl.'s Compl., doc. 1, 1.*  On May 30, 2007, Sierra Club, NRDC, and the Society filed a motion to intervene.  *Mot., doc. 3, 1.*  On July 11, 2007 Hazel Green Ranch and the United States filed oppositions to the motion to intervene.  *Pl.'s Memo. Opp'n, doc. 19, 1, Def.'s Memo. Opp'n, doc. 21, 1.*  On July 20, 2007, proposed intervenors filed a reply.  *Memo. Supp., doc. 23, 1.*

## III.   FACTUAL BACKGROUND

**A.   Underlying Lawsuit**

Hazel Green Ranch is located on an approximately 83-acre privately owned piece of property in Mariposa County, California, contiguous to Yosemite.  In the past Hazel Green has been used as

**2**

a stage coach stop, an automobile stop and fueling station, and hotel facilities.  During that time Hazel Green Ranch provided access to the Yosemite Valley floor via the Coulterville Road and the Crane Flat Road (collectively known as "HG Roads").

Hazel Green Ranch was purchased in 1998 by Hazel Green Ranch, LLC subject to the condition that the property could be developed as a resort.  Hazel Green Ranch claims to have worked closely with the Park Services to develop and become a part of the National Park Service's Final Yosemite Valley Plan ("Plan"). Hazel Green Ranch alleges the Plan identifies the Hazel Green Ranch property as the preferred location for off-the-Valley floor parking for visitors to Yosemite, a new park contact station, a proposed University of California research facility, 40 employee residential units, and an environmentally-friendly 300-unit resort.

Hazel Green Ranch claims during the negotiations, it agreed to relinquish its rights to use the HG Roads and instead will build a 500-foot road from Yosemite to the Ranch.  It alleges the use of this new road would be more convenient and environmentally friendly than using the two HG Roads to gain access to Yosemite Valley floor. It also claims the Park Service adopted a plan that included Hazel Green Ranch as the preferred location for off-the-Valley floor parking, a new short two-lane 500-foot road, and the new park contact station.  Hazel Green Ranch brings this lawsuit for quiet title under R.S. 2477 to compel the Park Service to recognize Hazel Green Ranch's right of way easements pursuant to

R.S. 2477.[1]  Plaintiff's suit seeks to: 1) have the National Park Service recognize such rights of ways and easements in Plaintiff; 2) ensure access at all times; 3) enjoy unfettered use of the two routes; 4) and continuously maintain and improve the two routes without unlawful hindrance from the National Park Service.

On March 30, 2007, proposed intervenors filed their motion to intervene.  Proposed intervenors claim use and enjoyment of Yosemite for recreational, scientific, spiritual, educational, scenic, and aesthetic purposes.  Their motion is brought under Federal Rule of Civil Procedure 24(a), intervention as of right, and (b), permissive intervention.

**B.   Intervenors**

The Sierra Club is a nationwide non-profit conservation organization with over 750,000 members and approximately 185,000 members in California.  The Sierra Club's purposes are:

---

[1] "In 1866 Congress enacted an offer of grants of rights of way over unreserved public lands for the construction of highways." *County of Inyo v. Dep't of the Interior, et al.*, 2007 U.S. Dist. LEXIS 45819 (E.D.Cal. 2007), at *3. "The grant was originally at section 8 of the Mining act of 1866, which became section 2477 of the Revised Statutes, which was codified at 43 U.S.C. § 932, until it was repealed in 1976." *Id.* "Rights of way granted pursuant to this section continue to be referred to as R.S. 2477 grants." *Id.* "The repeal in 1976 of authority to grant rights of way under this provision recognized the validity of rights of way that were established as of the date of repeal." *Id.* The underlying action by Hazel Green Ranch seeks to resolve a dispute as to the validity of two rights of ways claims under R.S. 2477. *Id.* Such disputes over title to land in which the United States claims an interest are cognizable under the Quiet Title Act, 28 U.S.C. § 2409, which affords a limited waiver of federal sovereign immunity for such suits against the United States. *Id.*

1        (1) to explore, enjoy, and protect the wild places of
2   the Earth;

3        (2) to practice and promote responsible uses of the
4   Earth's ecosystems and resources;

5        (3) to educate and enlist humanity in the protection
6   and restoration of the quality of the natural and human
7   environment; and

8        (4) to use all lawful means to carry out those
9   objectives.

10      The Sierra Club alleges that they have made the protection
11  of Yosemite a priority for many years.  They have formed a
12  Commission whose mission it is to contribute, and participate in
13  plans and actions affecting Yosemite.

14      With over 525,000 members and approximately 97,000 members
15  in California, the NRDC also seeks to intervene.  The NRDC is a
16  non-profit environmental organization whose purpose is to
17  safeguard the Earth's endangered natural resources and restore
18  the integrity of the elements that sustain life.  NRDC asserts
19  that it has worked to protect wild lands and natural values on
20  federal land in California, including Yosemite.  NRDC advocates
21  for maximum protection of Yosemite's outstanding publicly owned
22  resources.  NRDC also alleges that it has participated
23  intensively in the National Park Service's recent efforts to
24  develop and implement the Plan, which governs the management of
25  significant areas of Yosemite.

26      The Society also seeks to intervene in this action.  The
27  Society numbers nearly 200,000 members, 33,000 of whom are in
28  California.  The Society's purpose is to protect America's

**5**

wilderness and wildlife.  It alleges that it has been a longstanding advocate for the protection of California's national parks, including Yosemite.  The Society alleges that it has actively participated in the development and implementation of the Plan, which governs the management of significant areas of Yosemite.

All three proposed intervenors claim they were founded to protect and have fought for decades to preserve Yosemite.  They seek to intervene as Defendants upon the premise that the perfection of easements in Plaintiff will transfer ownership from public to private ownership and, if the land use is changed to commercial, the Yosemite Valley Plan will be adversely impacted.

**C.    Intervention as of Right**

Intervention is governed by Federal Rule of Civil Procedure 24.  To intervene as a matter of right under Rule 24(a), the applicant must claim an interest the protection of which may, as a practical matter, be impaired or impeded if the lawsuit proceeds without the applicant. *Forest Conservation Council v. United States Forest Serv.*, 66 F.3d 1489, 1493 (9th Cir. 1995). The Ninth Circuit applies Rule 24(a) liberally, in favor of intervention, and requires a district court to "take all well-pleaded, non-conclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818, 820 (9th Cir. 2001).  A four-part test governs a motion for intervention as of right:

**6**

1     (1) the motion must be timely;

2     (2) the applicant must claim a "significantly

3       protectable" interest relating to the property or
        transaction which is the subject of the action;

4     (3) the applicant must be so situated that the
        disposition of the action may as a practical

5       matter impair or impede its ability to protect
        that interest; and

6

7     (4) the applicant's interest must be inadequately
        represented by the parties to the action.

8 *Forest Conservation Council*, 66 F.3d at 1493.

9

10 **D.** **Timing**

11   Timeliness is a threshold requirement for intervention as a

12 right. *United States v. Oregon,* 913 F.2d 576, 588 (9th Cir.

13 1990). The Ninth Circuit uses three factors to assess

14 timeliness: (1) the current stage of the proceedings, (2) whether

15 the existing parties would be prejudiced; and (3) the reason for

16 any delay in moving to intervene. *League of United Latin Am.*

17 *Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997).

18   Here, the lawsuit is in its infancy. Plaintiff filed its

19 complaint on March 14, 2007 and the proposed intervenors filed

20 their motion to intervene on May 30, 2007. Proposed intervenors

21 filed their motion the day after Defendants filed their answer.

22 Some Courts in the Ninth Circuit consider prejudice to be the

23 most important factor in determining timeliness of a motion to

24 intervene. *Peterol Stops Nw. v. Cont'l Oil Co.*, 647 F.2d 1005,

25 1010 (9th Cir. 1981). By allowing the proposed intervenors to

26 enter as a party to the lawsuit there is no prejudice to the

27 existing parties because the applicants agree to abide by the

28 Court's Scheduling Order. Further, when this motion to intervene

**7**

1   was filed, the district court had made no substantive rulings.

2   *N.W. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir.

3   1996).   There have been no motions heard or rulings on

4   substantive matters in the underlying lawsuit.   In addition,

5   neither Hazel Green Ranch nor the United States challenge the

6   timeliness of the proposed intervenors' motion.   At oral

7   argument, all Defendants conceded the motion is timely.   The

8   motion to intervene is timely.

9

10  **E.   Significantly Protectable Interests**

11       The requirement of a significantly protectable interest is

12  generally satisfied if (1) the interest is protected by law, and

13  (2) there is a relationship between the legally protected

14  interest and the claims at issue.   *U.S. v. Alisal Water* Corp.,

15  370 F.3d 915, 919 (9th Cir. 2004); Sierra *Club v. United States*

16  *Envtl. Prot. Agency*, 995 F.2d 1478, 1484 (9th Cir. 1993).   The

17  applicant must satisfy each element.   *Arakaki v. Cayetano*, 324

18  F.3d 1078, 1084 (9th Cir. 2003).   Rule 24(a)(2) does not require

19  a specific legal or equitable interest.   *Portland Audubon Soc'y*

20  *V. Hodel*, 866 F.2d 302, 308 (9th Cir. 1989).   The Supreme Court

21  has yet to provide any clear definition of the nature of the

22  "interest relating to the property or transaction which is the

23  subject of the action."   *Arakaki*, 324 F.3d at 1084.   The term

24  significantly protectable interest has not been established as a

25  recognized term of art in the law, and room for disagreement

26  exists over the meaning of the term.   *Id.*

27       A prospective intervenor is not ordinarily required to show

28  that the interest that is asserted is one that is protected by

**8**

the statute under which the litigation is brought.  *Sierra Club*,
995 F.2d at 1484.  It is generally enough that the interest is
protectable under any statute, and that there is a relationship
between the legally protected interest and the claims at issue.
*Id*.  An applicant generally satisfies the relationship
requirement only if the resolution of the plaintiff's claims
actually will affect the applicant.  *Donnelly v. Glickman*, 159
F.3d 405, 410 (9th Cir. 1998).[2]

A non-speculative, economic interest may be sufficient to
support a right of intervention.  *Arakaki*, 324 F.3d at 1088.  An
economic interest must be concrete and related to the underlying
subject matter of the action.  *Id.* at 1085.  Proposed intervenors
do not claim to have an economic interest in dispute.

### 1.    Interest Protected Under Some Law

The Ninth Circuit has held that the "interest" test is not a
bright line rule. *Alisal Water Corp.*, 370 F.3d at 919.  The
interest can be protected under any statute not solely under the
statute which the litigation is brought. *Sierra Club*, 995 F.2d
at 1484.

To meet the "protected under some law" prong of the interest

---

[2] The Supreme Court has declined to decide whether a party
seeking to intervene before a district court must satisfy not
only the requirements of Rule 24(a)(2), but also the requirements
of Art. III.  *Diamond v. Charles*, 476 U.S. 54, 68-69 (1986).  The
court has declined to incorporate an independent standing inquiry
into the 9th Circuit's intervention test.  *Portland Audubon
Soc'y*, 866 F.2d at 308 n.1.  The standing requirement is at least
implicitly addressed by the requirement that the proposed
intervenors must assert an interest relating to the property or
transaction which is the subject of the action.  *Id.*

**9**

1  test, proposed intervenors assert they do not need to show their

2  interest is protected under the Quiet Title Act. *Mot., doc. 13,*

3  *18.*  Instead, proposed intervenors argue they need only show that

4  their interest is protected under some law. *Id.* at 8.  They

5  claim they fulfill this requirement because their interest in

6  Yosemite's ecological, biological, scientific, scenic, historic

7  and aesthetic resources is protected under numerous environmental

8  and land management statutes. *Id.*  They assert the laws that

9  protect their interests include the Organic Act[3], 16 U.S.C. §1,

10  protecting for conservation and preservation objectives, and the

11  Endangered Species Act[4], 16 U.S.C. §1536(a)(2). *Id.* at 9.

12      The United States claims that the proposed intervenors must

13  have an interest in title to the property that is protected under

14  the Quiet Title Act. *Def.'s Memo. Opp'n, doc. 21, 15.*

15  Plaintiffs and Defendant argue that the statutes under which the

16  proposed intervenors claim protectable interests are land

17  management, preservation and environmental statutes that do not

18  directly implicate the parties' title dispute, albeit one of

19  these laws specifically concerns Yosemite Valley. *Id.* at 16.

20      In *Washington State Bldg. & Const. Trades Council v.*

21  *Spellman*, 684 F.2d 627, 629-630 (9th Cir. 1982), an advocacy

---

23      [3] The Organic Act requires Yosemite be managed to conserve
24  the scenery and the natural and historic objects, and the wild
   life therein and to provide for the enjoyment of the same in such
25  a manner and by such means as will leave them unimpaired for the
   enjoyment of future generations.  16 U.S.C. §1.

26      [4] The Endangered Species Act requires the Park Service to
27  ensure that its actions will not jeopardize the continued
   existence of threatened or endangered species and adverse
28  modification of the critical hapbitat. 16 U.S.C. §1536(a)(2).

group opposed to radioactive waste in Washington was permitted to intervene as of right in litigation challenging a Washington law which prohibited the transportation and storage of radioactive waste in that state.  The plaintiffs sued under the Atomic Energy Act, and although there was no suggestion that the interests of the advocacy group were protected under that act or that they had any claim to the radioactive waste, the court held that the group was entitled to intervene as of right.  *Id.*

In *Fresno County v. Andrus*, 622 F.2d 436, 437 (9th Cir. 1980), a group of farmers sought issuance of regulations to protect their water services interests under the Reclamation Act. *Id.*  The County sued to delay issuance of the regulations until an environmental impact statement was prepared.  *Id.*  The court held the farmers could intervene as of right because their interests were precisely those that Congress meant to protect under the Reclamation Act.  *Id.* at 438.  In *Sierra Club*, the court interpreted *County of Fresno v. Andrews* not to require that the proposed intervenors' interest be protected by the statute under which the lawsuit is brought; 995 F.2d at 1483, recognizing the farmers' interests were not protected under the statute invoked by the County, *Id.* at 1484, but rather by another statute.  Although the relief the farmers sought was not consonant with the policy of the statute relied on by the County, it was enough that proposed intervenors' interest was protected under some law, even if not the specific statute on which the underlying lawsuit was premised.

Here, the proposed intervenors specifically protectable interests are in environmental, aesthetic, conservation, and

preservation of the Yosemite. These interests are protected under numerous federal statutes[5] and the Plan which proposed intervenors have participated in promulgating and revising.  Such interests satisfy the interests protected under "some law" test. It is unnecessary for the proposed intervenors to show their interests in the use and enjoyment of the park are derived from and protected under the Quiet Title Act; any federal statute that preserves and conserves Yosemite and its environment to retain its natural condition for future generations.  Proposed intervenors' interests in protection and conservation of Yosemite's natural resources and character satisfy the significantly protectable interest requirement.

**2.   Relationship between Legally Protected Interest and Claims at Issue.**

Proposed intervenors claim that there is a relationship between their legally protected interests and the claims at issue because:

> 1.   Hazel Green Ranch's "unfettered use" of the two routes will cause a significantly adverse effect on the use and enjoyment of Yosemite which is in derrogation of their interest to preserve and protect Yosemite.  *Id.* at 9;
>
> 2.   Their members' ability to use and enjoy the portions of Yosemite near the two routes

---

[5] The Organic Act, 16 U.S.C. §1, the Act of Congress which established Yosemite as a forest reservation, 26 Stat. 871 (Oct. 1,1890), Endangered Species Act, 16 U.S.C. § 1536(a)(2), and the National Environmental Policy Act, 42 U.S.C. §4332(2)(C).

1                               will be adversely effected.  *Id.* at 10;

2               3.    Their legally protectable interest in the

3                     Plan for Yosemite is threatened to be

4                     impaired by resolution of the Hazel Green

5                     Ranch case.  *Id.*; and

6               4.    The change of the two routes from public to

7                     private ownership will impair and jeopardize

8                     the values proposed intervenors seek to

9                     protect to enable them to use and enjoy

10                    Yosemite in the manner the law intends.

11       In response, Hazel Green Ranch and the United States claim

12  the proposed intervenors do not have a significantly protectable

13  interest because:

14              1.    In a quiet title action, a legally

15                    protectable interest is given only to a third

16                    party who claims ownership.  *Pl.'s Memo.*

17                    *Opp'n, doc. 19, 15*.  The proposed intervenors

18                    have no significantly protectable interest

19                    because they have not asserted any ownership

20                    in the property.  *Pl.'s Memo. Opp'n, doc. 19,*

21                    *15, Def.'s Memo. Opp'n, doc. 21, 12-13*; and

22              2.    The proposed intervenors' general interest to

23                    prevent the threatened degradation of

24                    Yosemite;  *Pl.'s Memo. Opp'n, doc. 19, 15,*

25                    *Def.'s Memo. Opp'n, doc. 21, 11,* is too

26                    remote and insufficient to create a

27                    significantly protectable interest.  *Pl.'s*

28                    *Memo. Opp'n, doc. 19, 16*.

**13**

1      The United States advances two further arguments:

2              1.    The proposed intervenors cannot show that the

3                    resolution of this case will have a direct,

4                    immediate and harmful effect on their

5                    interest. *Def.'s Memo. Opp'n, doc. 21, 10*;

6                    and[6]

7              2.    The proposed intervenors only have an

8                    interest in how Yosemite is managed. *Id. at*

9                    *21.*

10     A mere interest in property that may be impacted by

11     litigation is not a passport to participate in the litigation

12     itself. *Alisal Water Corp.*, 370 F.3d at 920 n.3.  In *Alisal Water*

13     *Corp.*, the court reasoned to hold otherwise would create a

14     slippery slope permitting anyone with any interest in the

15     property of a party to a lawsuit to bootstrap that stake into an

16     interest in the litigation itself.  *Id.* (Distinguishing *Ghazarian*

17     *v. Wheeler*, 177 F.R.D. 482, 486-87 (C.D.Cal. 1997) (where the

18     court held that a medical provider had a right to intervene in an

19     accident-related settlement to protect its statutory lien to

20     recover the costs of medical care it provided to the plaintiff)).

21     In *Alisal Water Corp.*, the United States brought an

22

23          [6] The United States argues for an extra requirement for

24     intervention, a "direct, immediate, and harmful effect," citing
       *Forest Conservation Council*, 66 F.3d at 1494, where the court

25     held "when ... the injunctive relief sought by plaintiffs will
       have direct, immediate, and harmful effects upon a third party's

26     legally protectable interests, that party satisfies the interest
       test of Fed.R.Civ.P. 24(a)(2)."  Forest Conservation Council is

27     distinguishable because the parties do not seek injunctive relief

28     that will have any effects on intervenors' interests.

**14**

environmental enforcement action against municipal water systems
and their owners and operators for violations of the Safe
Drinking Water Act. 370 F.3d at 918.  A judgment creditor,
Silverwood Estates ("Silverwood"), moved to intervene as a matter
of right.  *Id.*  Although Silverwood lacked an interest in the
environmental issues, Silverwood alleged an award of penalties
would jeopardize its interests as a creditor of the water
systems.  *Id.* at 920.  The court held a non-speculative, economic
interest may be sufficient to support a right of intervention.
*Id.* at 919.  However, the economic interest must be concrete and
related to the underlying subject matter of the action.  *Id.*
Silverwood's interest was several degrees removed from the
overriding public health and environmental policies that were the
backbone of the litigation.  *Id.* at 920.  Silverwood was not
entitled to intervene as of right because its interest in
collecting an unpaid debt was not sufficiently related to the
environmental enforcement action brought by the United States.
*Id.* at 920-21.[7]

---

[7] *County of Inyo* is distinguishable from *Alisal Water Corp.*
case because the outcome of *County of Inyo* directly challenged
the advocacy work of the proposed intervenors.  *County of Inyo v.
Dep't of the Interior, et al.*, 2007 LEXIS 45819 (E.D.Cal. 2007).
In *County of Inyo*, the court allowed conservation groups to
intervene in a quiet title action that would grant right of way
inside federal land.  *Id.*  The County of Inyo sought to, among
other things, widen the road at least to the extent of a two-lane
road to allow travelers to pass each other when increased travel
rendered that reasonable and necessary. *Id.*  The court held a
significantly protectable interest existed because the proposed
intervenors' advocacy substantially contributed to the ultimate
blockage of the right of way and exclusion of motor vehicles from
usage in order to enhance the wilderness values of the
surrounding lands. *Id.*  The underlying lawsuit sought to undo

1    In *Sierra Club*, the court allowed the City of Phoenix

2 ("City") to intervene in a lawsuit that the Sierra Club had filed

3 against the United States Environmental Protection Agency (EPA).

4 995 F.2d at 1480.   The City's motion claimed it had a

5 significantly protectable interest because the City owned

6 wastewater treatment plants that held permits which were the

7 subject of the lawsuit.  *Id.* at 1481.  The court determined that

8 the central issue was whether the City's interest was

9 protectable, the second element of the test.  *Id.*

10    The court compared the City's protectable interest with

11 *Donaldson v. United States*, 400 U.S. 517 (1970).  In *Donaldson*,

12 the Internal Revenue Service ("IRS") issued a summons to a circus

13 and its accountant for the circus's records relating to

14 Donaldson's personal income taxes.  *Id.* at 522-523.  The Court

15 held Donaldson's interests were not protectable, because the

16 records were not his, and he had no (1) proprietary right in the

17 records;(2) no evidentiary privilege; (3) no work product claim;

18 and (4) no constitutional claim to suppress or any other right to

19 interfere with the circus's disclosure to the IRS.  *Id.* at 530.

20    The court also compared the City's interest to

21 *Portland Audubon Soc'y*, where environmental advocacy groups sued

22

23 precisely what the pro posed intervenors worked to accomplish.
   *Id.   County of Inyo* is also distinguishable here, due to the

24 level of prior direct involvement of proposed intervenors.   The
   proposed intervenors were not directly involved in the prior

25 blockage of the HG Roads as in *Inyo*. The proposed intervenors

26 have worked for years to preserve and protect Yosemite, to limit
   access, and reduce disruption of Yosemite and ingress and egress

27 of vehicular traffic overall but they did not have a direct prior
   involvement in prohibiting access to these two roads prior to the

28 present action.

**16**

the Interior Department to enjoin sales of old-growth timber.
866 F.2d at 303.  A group of loggers were allowed to intervene in
some claims but not the claim brought under the National
Environmental Policy Act ("NEPA").  *Id.* at 309-310.  The loggers
could not intervene in the NEPA claim because only the agencies
charged with enforcement of the law were proper defendants.  *Id.*
at 309.

*Sierra Club* found the City had a significantly protectable
interest, 995 F.2d at 1483, because the City owned rights
protected by law relating to the property which was the subject
of the action.  *Id.* at 1482.  This differentiated the City's
interest from the loggers in *Portland Audubon*, whose only claimed
interest was economic based on a bare expectation in harvesting
timber, rather than real or personal property rights, contracts,
or permits.  *Id.*  In *Sierra Club* the City owned the wastewater
treatment plants and the permits which were directly effected by
the outcome of the litigation.  *Id.*  This gave the City a
significantly protectable interest, because the underlying
lawsuit affected the use of permits regulating real property
owned by the City and whether the terms of the permits had to be
changed.  *Id.* at 1483.

In *Sagebrush Rebellion*, the Audubon Society (a group devoted
to the protection of birds and other animals and their habitats)
sought to intervene in an action challenging the legality of
removal of 500,000 acres of land from the Snake River Birds of
Prey National Conservation area.  *Sagebrush Rebellion, Inc. v.*
*Watt*, 713 F.2d 525, 526 (9th Cir. 1983).  At first the Audubon
Society was denied intervention because it had no interest in the

**17**

land which was the subject matter of the lawsuit. *Id.* at 527. On appeal, the Ninth Circuit held the Audubon Society was entitled to intervene as of right, because it was a public interest group that challenged the legality of a measure which it has supported. *Id.* The Audubon Society had participated actively in the administrative process surrounding the establishment of the Birds of Prey Conservation Area and supported the creation of such a preserve. *Id.* at 526-27.

To have standing under 28 U.S.C. § 2409(a), a plaintiff must set forth the right, title, or interest it claims against the United States. The proposed intervenors' interest in the ecological management and preservation of Yosemite does not per se derive from title to rights of ways. The proposed intervenors cannot claim a direct interest in the rights of way, however Hazel Green Ranch affirmatively seeks more relief than quiet title. It prays for a declaration of unfettered right of use and to expand and improve the rights of way. The proposed intervenors' interest is in using and enjoying Yosemite, including the location, nature, and use of the two routes in dispute. Their concern is with future development rather than title to the specific routes. They argue that a private owner does not have the same public trust obligations to protect the right of way and affected surrounding area as a public owner.

The proposed intervenors do not own any real property rights that will be affected by the outcome of the underlying lawsuit. They have not asserted any proprietary right, evidentiary privilege, or constitutional claim to the two rights of ways. Proposed intervenors do not claim a protectable interest based on

**18**

1  any contract or a permit. Rather, their interest is based on an

2  expectation that their use and enjoyment of Yosemite will be

3  impaired or abrogated by establishment and expansion of these two

4  routes that may lead destruction of habitat, increased vehicle

5  traffic and future commercial use

6       Throughout the years the proposed intervenors have fought to

7  protect their interests in the preservation and conservation of

8  Yosemite. As in *Sagebrush*, the proposed intervenors are public

9  interest groups.   713 F.2d at 526-27. Proposed intervenors have

10 also been actively participating in development of the Yosemite

11 Plan and continue to advance concerns for the preservation and

12 protection of Yosemite.   In the development of the Final Yosemite

13 Valley Plan, Hazel Green Ranch asserts they interacted with the

14 proposed intervenors and sent them detailed materials regarding

15 Hazel Green Ranch's project.  *Pl.'s Memo. Opp'n, doc. 19, 9.*  And

16 a representative from one of the proposed intervenors went to

17 Hazel Green Ranch, toured the Ranch and saw the proposed future

18 development plans.  *Id.*

19      Hazel Green Ranch's ultimate objective in obtaining these

20 two routes is to open access to increase motor vehicle traffic

21 and parking on Hazel Green Ranch property which will directly

22 conflict with the interests of the proposed intervenors who seek

23 to limit the development in Yosemite. More importantly,

24 Plaintiff's complaint asks the Court to grant it "unfettered use"

25 of the two rights of ways, to allow it to make reasonable and

26 necessary improvements, without authorization. Pl.'s Memo. Opp'n,

27 doc. 19, 12. The proposed intervenors claim intangible direct use

28 and enjoyment interests in the disputed real property to prevent

**19**

it from passing from public into private ownership and control, which will lead to development of access to Yosemite and facilitating improvement of Plaintiff's property which in turn will derogate and destroy the environmental and preservation interests proposed intervenors seek to protect.  The proposed intervenors' interest in the protection and conservation of Yosemite is directly affected by Hazel Green Ranch's claim to unfettered and expansive use of the rights of way for access and future use and development of Hazel Green Ranch, this includes Hazel Green Ranch's ability to make reasonable and necessary improvements without authorization. Therefore, on balance, the significantly protectable interest requirement is satisfied.

### 3.    Impairment of Interest

The third element for intervention as of right is that the intervening party must show that the disposition of the action may impair or impede its ability to protect the intervenor's interest unless intervention is allowed.  Fed.R.Civ.P. 24(a).

The proposed intervenors claim if they are not allowed to intervene, the disposition of the action will impair or impede their ability to protect their environmental concerns for the preservation of Yosemite. *Mot., doc. 13, 10.*  The proposed intervenors argue that if there is a judicial determination that Hazel Green Ranch has a right of way or private easement over the two routes, that future development they oppose will be directly facilitated by relief in this case. *Id.*  Adverse effects identified by the proposed intervenors include:

1.    Grading and maintenance of the roadways. *Id.* That

**20**

use will: (a) harm or kill sensitive plants and animal species, (b) destroy or modify wildlife habitat, (c) modify water flows in a way that harms habitats downstream, (d) ruin scenic values, and (e) facilitate vandalism and the destruction of cultural resources within Yosemite. *Id.*

2.   Harm will be caused along the roads due to the use of motor vehicles. *Id.* at 11.  That harm will: (a) adversely effect surrounding vegetation, (b) frighten and kill wildlife, (c) fragment species habitat, (d) disrupt the quiet and solitude, and (e) import invasive, non native plant species. *Id.*

Further harm will occur because the resolution of the underlying lawsuit will limit the Park Service's range of management options over the rights of way. *Id.*  Losing management options will adversely effect future use and enjoyment of Yosemite, *Id.*, including but not limited to aesthetic interests.

Proposed intervenors allege that the United States will not oppose these claims by Hazel Green Ranch and will not vigorously advance their environmental and aesthetic concerns, which are directly put in issue by Hazel Green Ranch's declaratory relief claims.

In opposition, both the United States and Hazel Green Ranch argue that the legal determination of who is the title holder and legal owner of the land access routes (rights of way) will not effect future managerial use, or other decisions made regarding the use of the land.  *Pl.'s Memo. Opp'n, doc. 19, 17., Def.'s Memo. Opp'n, doc. 21, 24-25.*

**21**

Hazel Green Ranch further claims:

1.  The resolution of the quiet title claim will not prevent the proposed intervenors from asserting their interest in the environment. *Pl.'s Memo. Opp'n, doc. 19, 17*; and

2.  Protecting their interests in preserving the environment will be ripe when Hazel Green Ranch has to obtain permits to build on the property. *Id.*

The United States also argues that quiet title will not impair or impede the proposed intervenors' interests because:

1.  The proposed intervenors cannot establish a sufficient interest. *Def.'s Memo. Opp'n, doc. 21, 24*;

2.  The resolution of the quiet title claim will not impede or impair the proposed intervenors' interest in the management of Yosemite. *Id.*; and

3.  Other methods are available to the proposed intervenors to challenge the management decisions made in regards to Yosemite. *Id.* at 27.

In *United States v. Carpenter*, the court granted two environmental organizations' intervention of right to object to a proposed settlement agreement over the status of a road on United States Forest Service land. *United States v. Carpenter*, 298 F.3d 1122, 1124 (9th Cir. 2002). As part of the settlement, the United States agreed that it would not contest that Elko County had a right of way to the road, but did not waive its authority to manage federal lands and natural resources in accordance with

**22**

federal laws. *Id.* at 1124. The defendants agreed that they
would not do any work on the road without receiving prior
approval from the Forest Service and that they would comply with
federal environmental laws. *Id.* Two citizens groups, The
Wilderness Society and Great Old Broads for Wilderness, devoted
to preserving wilderness and wildlife in public lands, moved to
intervene of right because the U.S. would not contest and in fact
settled the claim by allegedly improperly ceding a property
interest in the road to the County of Elko, thereby
substantially diminishing the environmental protections for the
adjacent wilderness areas. *Id.*

When there are other means available to protect the proposed
intervenors' interest then there is no impairment caused by the
resolution of the underlying lawsuit. *Alisal Water Corp.*, 370
F.3d at 921. In *Alisal Water Corp.*, the court held the
creditors' interests were not impaired because the court had
established a process for addressing claims that was adequate to
protect the creditors' interest. Here, if the nature and extent
of the rights of way are not defended by the United States, the
proposed intervenors claim their environmental interests will not
be adequately protected.

*Carpenter* focused on timeliness of intervention and is
partially distinguishable as it was not decided on the basis of
impairment of interests.

The United States argues that other effective means of
redress are available because, any future development decisions

**23**

must be made in accordance with applicable law[8] and public notice and comment requirements.[9]  *Id.*  A bare quieting of title to the access routes will only impair the proposed intervenors' present ability to have heard their claims that the ownership decision will result in a transfer from a public to private ownership. Under the intervention of right cases, it is an exceedingly close whether proposed intervenors' interests will be practically impaired, given the availability of other effective means of redress to fully protect their interests.

### 4.   Not Adequately Represented

The final element is that proposed intervenors' interests are not being adequately represented by the current parties.

---

[8] Congress has made it clear that the Secretary has broad power to regulate and manage national parks.  The Secretary's power to regulate within a national park to "conserve the scenery and the nature and historic objects and wildlife therein and to provide for the enjoyment of the same in such a manner and by such means as will leave them unimpaired for the enjoyment of future generations.  This applies with equal force to regulating an established right of way within the park.  The regulations here are necessary to conserve the natural beauty of the Preserve; therefore, they lie within the government's power to regulate national parks.  *United States v. Vogler*, 859 F.2d 638, 642 (quoting 16 U.S.C §1)(9th Cir. 1988).

[9] I*n Vogler*, the court rejected the argument that the National Park Service lacks the power to regulate travel to an inholding across federally protected land.  *Id.* at 640.  In *Vogler*, an inholder in the Yukon-Charley Rivers National Preserve in Alaska sought to drive heavy equipment over a claimed R.S. 2477 trail without a permit.  *Id*. at 640-42.  Without deciding if the trail was established as a right of way under R.S. 2477, the court held the government could regulate the use of the trail. *Id.* at 642.  Proposed intervenors do not claim such a direct interest by actual use, rather potential future use if the permitted use of right of way is effected with development.

**24**

Fed.R.Civ.P. 24(a).  If an absentee will be substantially affected in a practical sense by the determination made in an action, as a general rule that absentee should be entitled to intervene. *Sw. Ctr. for Biological Diversity*, 268 F.3d at 822. The burden on the proposed intervenors in showing inadequate representation is minimal and is satisfied by a showing that representation of their interests may be inadequate. *Arakaki*, 324 F.3d at 1086.

Three factors are considered in determining the adequacy of representation:

> (1)   whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments;
>
> (2)   whether the present party is capable and willing to make such arguments; and
>
> (3)   whether a proposed intervenor would offer any necessary input to the proceedings that other parties would neglect.

*Id.*

The most important factor in determining the adequacy of representation is how the proposed intervenor's interest compares with the interest of the existing parties. *Id.*  When a proposed intervenor and an existing party have the same ultimate objective a presumption of adequacy of representation arises. *Id.*  When the parties share the same ultimate objective, differences in litigation strategy do not normally justify intervention. *Id.*

When the government is involved in a lawsuit it acts on behalf of the constituency that it represents. *Id.*  There is a

**25**

presumption of adequacy of representation when the government and the proposed intervenor are on the same side. *Id.* To show differently, the proposed intervenors must assert a very compelling showing to the contrary. *Id.* A very compelling showing of the government's inadequacy requires the intervenor to demonstrate a likelihood that the government will abandon or concede a potentially meritorious reading of the statute. *California ex. Rel. Lockyer v. United States*, 450 F.3d 436, 444 (9th Cir. 2006).

The proposed intervenors share the same ultimate objective with the United States, to defeat establishment of the rights of way. Both parties argue that Hazel Green Ranch does not have a right of way over the two routes to Yosemite. The proposed intervenors allege however, the United States will not adequately represent their interests in this case because their interests in Yosemite substantially differ. *Mot., doc. 13, 13.* The proposed intervenors claim they have a more narrow and focused environmentally and preservation-based interest to protect Yosemite. *Id.*

Unlike, the United States, which has a generalized interest that takes into account many different obligations and political considerations, proposed intervenors and the United States have had prior litigation over their difference in their competing interests in Yosemite and in implementation of the Plan. Intervenors fear that political considerations will deter the government's incentive to litigate vigorously in advancing "all the interests" intervenors seek to protect. Intervenors contend they cannot rely on the government to advance the same legal

arguments they intend to make.  *Id.*  They claim the United States has "a policy of cooperating with persons claiming R.S. 2477 rights of ways through federal land."  *Id.*  The proposed intervenors on the other hand, intend to object on all possible grounds to the quiet title remedy Plaintiffs seek.  *Id.*  The government rejoins that it will actively defend on all available grounds against Plaintiffs' right of way claims.

The proposed intervenors also allege Hazel Green Ranch cannot adequately represent their interest because proposed intervenors oppose the two rights of ways Plaintiffs seek to establish and any extension, improvement, or all of those rights of way.  *Id.* at 12.  The proposed intervenors claim that none of the current parties adequately represent their interests in the underlying lawsuit.  *Id.* at 13.

Both Hazel Green Ranch and the United States allege:

    1.    The proposed intervenors have not met the heightened burden necessary to show the government is not adequately representing their interest.  *Pl.'s Memo. Opp'n, doc. 19, 20., Def.'s Memo. Opp'n, doc. 21, 28.*  When the government is involved there is a presumption that they are a representative of its citizens.  *Pl.'s Memo. Opp'n, doc. 19, 19.*

The United States further alleges that:

    1.    The proposed intervenors have the same ultimate objective as the government.  *Def.'s Memo. Opp'n, doc. 21, 28.*  Their same ultimate objective is defeating Hazel Green Ranch's claim to R.S. 2477

**27**

1                              rights-of-ways within Yosemite.  *Id.* at 30.; and

2              2.     Difference in litigation strategy is not enough to

3                     claim inadequate representation.  *Id.*

4     In *California ex. rel. Lockyer*, health care providers moved

5 to intervene as a right in a case challenging the

6 constitutionality of a federal appropriations rider enacted to

7 protect their interests.  450 F.3d at 439.  The court held the

8 United States would not adequately represent the interests of the

9 proposed intervenors, because the United States had already shown

10 it was going to take a different stand from the intervenors.  *Id.*

11 at 445.  The intervenors' position was not represented by either

12 the plaintiffs or the defendants.  *Id.* at 444-45.  This was more

13 than a difference in litigation strategy, as it went to the heart

14 of the defense.  *Id.*

15     In *Arakaki*, a group of native Hawaiians moved to intervene

16 to challenge the constitutionality of a provision by the

17 government for benefits to Native Hawaiians.  324 F.3d at 1081.

18 The court held the state defendants would adequately represent

19 the proposed intervenors' interest because: (1) the present

20 parties have shown that they were willing to make all of the same

21 arguments, (2) the proposed intervenors did not offer any new or

22 different position, and (3) other Native Hawaiian groups had

23 already been allowed to intervene.  *Id.* at 1087.

24     Here, proposed intervenors have argued adversity to both

25 Plaintiff and Defendants.  They claim they will raise the

26 mechanical construction defense, which will not be raised by the

27 United States.  They also will oppose declaratory relief for any

28 expansion of use or improvement rights Plaintiffs seek.  The

**28**

proposed intervenors chief objection is that the United States

will not argue that mechanical construction [of the easement] is

a necessary condition for finding a valid R.S. 2477 right of way.

However, the government legal defenses, applicable to this

dispute cannot be resolved at this stage of the case.  Future

construction and development is not now at issue in the quiet

title suit and can be addressed in future by intervenors as a

matter of land use planning.

The United States has represented that it is capable of and

will raise all legal and factual arguments that Hazel Green Ranch

does not have a right of way over the two routes into Yosemite.

Proposed intervenors however, argue that they intend to offer

additional relevant and admissible evidence, law, or arguments

about the nature and extent of any easements and their use and

improvements.  The evidence about adequacy of representation is

hotly disputed, it does not preponderate. Proposed intervenors

have not met their burden to show that their interests are

inadequately represented by the United States. The United States

has said it will address all proposed intervenors' concerns in

defending and defeating title against Hazel Green Ranch's claim

to R.S. 2477 rights of ways within Yosemite.  Proposed

intervenors' chief objection is that the United States will fail

to argue mechanical construction as an affirmative defense. The

motion to intervene as right of is **DENIED.**

**F.  Permissive Intervention**

Alternatively, the proposed intervenors move for permissive

intervention.  Where a party may not intervene as a matter of

right, the court may consider whether permissive intervention is appropriate. *Spangler v. Pasadena City Bd. of Educ*. 552 F.2d 1326, 1329 (9th Cir. 1977).  A Court has broad discretion to grant intervention under Fed.R.Civ.P. 24(b) when the following conditions are met: (1) the motion is timely; (2) the applicant's claim or defense and the main action have a question of law or fact in common; and (3) the movant shows an independent ground for jurisdiction.  *Greene v. United States*, 996 F.2d 973, 978 (9th Cir. 1993).

Unlike Rule 24(a), a "significantly protectable interest" is not required by Rule 24(b).  *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108 (9th Cir. 2002).  Rule 24(b) does not specify any particular interest that will suffice for permissive intervention, it plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation.  *Id*.[10]

If the court determines that the initial conditions for permissive intervention are met, it is entitled to consider other factors in making its discretionary decision on the issue of permissive intervention. *Spangler,* 552 F.2d at 1329.  Relevant factors the Court can consider include the nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case. The court may also consider whether the intervenors' interests are adequately represented by

---

[10] There is no dispute that the proposed intervenors motion is timely.

other parties, whether intervention will prolong or unduly delay the ligation and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit. *Id.*

**G.    Question of Law or a Question of Fact in Common**

The proposed intervenors claim all that is necessary for permissive intervention is that claims and defenses in this case raise questions of law and fact in common with the main action. *Mot., doc. 13, 14.* The main question is whether Hazel Green Ranch is entitled to quiet title to two claimed rights of way. *Id.* The proposed intervenors also claim:

1.    They are going to assert defenses regarding the main action such as, (a) the court lacks subject matter jurisdiction, (b) the claims are barred by statute of limitations, and (c) the complaint fails to state a claim which relief can be granted. *Memo. Supp., doc. 23, 21.*;

2.    Proposed Intervenors assert they will advance a new interpretation of the law unique to their positions as environmental advocates. They also assert that they are going to raise defenses that the United States refuses to offer. *Id.*; and

3.    They have longstanding expertise in R.S. 2477 rights of way litigation and expertise in Yosemite and the Plan which will contribute to the equitable resolution of the underlying lawsuit. *Id.*

Both Hazel Green Ranch and the United States argue the

31

1  proposed intervenors interests in the environmental condition of
2  Yosemite shares nothing in common with the issue of ownership of
3  the roads at dispute in this litigation.  *Pl.'s Memo. Opp'n, doc.*
4  *19, 21., Def.'s Memo. Opp'n, doc. 21, 39.*

5      Under *Kootenai Tribe of Idaho*, 313 F.3d at 1111, the
6  language of Rule (24)(b)(2) makes clear that if the would-be
7  intervenor's claim or defense contains no question of law or fact
8  that is raised by the main action, intervention under Rule
9  24(b)(2) must be denied.  *Id.*   But, if there is a common
10 question of law or fact, the requirement of the rule has been
11 satisfied and it is then discretionary with the court whether to
12 allow intervention.  *Id.*

13     In *Greene*, the Tulalip tribe sought to intervene in an
14 action between the Samish tribe and the Department of Interior
15 regarding federal recognition of the Samish tribe.  *996 F.2d at*
16 *975.*   The Tulalip tribe argued for intervention because federal
17 acknowledgment of the Samish as an Indian tribe would lead to the
18 dilution of its treaty fishing rights.  *Id.*   The court held there
19 was no common question of law or fact because even if the federal
20 government recognized the Samish as an official Indian tribe,
21 whether they may fish as a treaty tribe in common with the
22 Tulalip presented a different legal question.  *Id.*

23     Here, the proposed intervenors have shown that their
24 asserted legal interests in the use, enjoyment, and preservation
25 of Yosemite are directly affected by Plaintiff's right as a
26 private landowner, to settle ownership to easements in land over
27 which two rights of ways are claimed pursuant to R.S. 2477, and
28 to expand, maintain, and insure use of these routes for vehicular

**32**

traffic.  Plaintiff, by its specific claim for an increase of
unfettered use and improvement of the rights of way, has raised a
common question of law and fact in which proposed intervenors
have a protectable interest.

**H.    Independent Grounds for Jurisdiction**

The proposed intervenors maintain that Hazel Green Ranch and
the United States seek to impose a new requirement for permissive
intervenor by arguing an independent ground for jurisdiction must
be shown.  *Memo. Supp., doc. 23, 18.*

The proposed intervenors claim original subject matter
jurisdiction in a federal question case need only be present
when:

> (1)   adding new causes of actions, *Id.* at 20.;
>
> (2)   appealing a decision without the participating
>       federal defendants, *Id.*, and
>
> (3)   the original case is not based on diversity, and
>       they raise no new claims or defense.  *Id.*

They assert the court need only have subject matter
jurisdiction over the original case, which here exists under 28
U.S.C. § 1346(f) § 1361.  *Id.*

Both the Hazel Green Ranch and the United States assert that
the court does not have jurisdiction over the prospective
intervenors' claims because the proposed intervenors have no
standing alone to defend against Hazel Green Ranch's claims as
they have no legal or equitable right, title, or interest in the
subject real property.  *Pl.'s Memo. Opp'n, doc. 19, 22., Memo.
Opp'n, doc. 21, 37.*  The United States argues the proposed

**33**

1  intervenors do not raise any affirmative defenses not already

2  raised by the United States.  They only seek to intervene to

3  support the United States in its defenses against Hazel Green

4  Ranch's claims.  *Memo. Opp'n, doc. 21, 39.*

5      Permissive intervention ordinarily requires an independent

6  jurisdictional ground.  7C Charles A. Wright, Arthur R. Miller,

7  Mary R. Kane, Federal Practice and Procedure § 1917 at 466 (2d

8  ed. 1989).  The prevailing view of federal courts is that the

9  claims of permissive Rule 24(b) intervenors must be supported by

10  independent jurisdictional grounds.  *Blake v. Pallan*, 554 F.2d

11  947, 955 (9th Cir. 1977); however, *Blake v. Pallan* is not

12  authority for the parties' more expansive statement for the

13  requirement of original jurisdiction.  *Blake* quotes the rule

14  applicable here, that in an action *in rem*, i.e., to establish

15  easements in real property, an intervention need not be supported

16  by jurisdictional grounds independent of those that support the

17  original action.  *Id.; citing* 3B Moore's Federal Practice, p.

18  24.18(i), 24-753.

19      In other words, no other ground of jurisdiction to support

20  the intervention in *in rem* proceedings is required if the grounds

21  of jurisdiction (the Federal Quiet Title Act) support the

22  original action.

23      Defendants cite *Cook v. World Airways, Inc.*, 636 F.Supp.

24  693, 694 (S.D.N.Y. 1986), where airline pilots moved to intervene

25  in an age discrimination lawsuit brought by other airline pilots

26  challenging a seniority list.  *Id.*  The plaintiffs invoked the

27  court's jurisdiction over the main action under The Age

28  Discrimination in Employment Act, 29 U.S.C. §§ 621-634.  *Id.* at

**34**

1   699.  The proposed intervenors were denied permissive

2   intervention because they independently could not have brought a

3   claim under the statute on which the original claim was asserted.

4   *Id.*  When the proposed intervenors did not assert any other

5   grounds for jurisdiction, the court denied their motion for

6   permissive intervention.  *Id.*

7        The Quiet Title Act, 28 U.S.C. § 2409(a), allows the United

8   States to be named as a party defendant in a civil action to

9   adjudicate a disputed title to real property in which the United

10  States claims an interest.  For 28 U.S.C. § 2409(a) to apply, the

11  plaintiff must set forth the right, title or interest claimed by

12  the United States.  The district courts shall have exclusive

13  original jurisdiction of civil actions under § 2409(a) to quiet

14  title to an interest in real property in which an interest is

15  claimed by the United States.  28 U.S.C. § 1346(f).

16       Federal question subject matter exists under 28 U.S.C.

17  § 1361(f), giving district courts original jurisdiction over

18  civil actions under § 2409(a) of the Quite Title Act.

19       Proposed intervenors correctly note the independent

20  jurisdiction requirement for permissive intervention is

21  applicable in diversity cases and there is not a problem when the

22  intervenor relies on the same statute as the original plaintiff.

23  7C Wright, Miller & Kane, Fed. Proc. & Prac. § 1917.  Although as

24  a matter of standing, the proposed intervenors claim is to the

25  use, protection, and enjoyment of Yosemite, ostensibly not

26  protected under 28 U.S.C. § 2409(a), proposed intervenors assert

27  defenses to the quiet title relief sought by Plaintiff under the

28  Quiet Title Act and do not seek to add any new affirmative claim

**35**

1   for relief.

2       It is within this Court's discretion to grant intervention

3   under Fed.R.Civ.P. 24(b) when the conditions for permissive

4   intervention are met.  The proposed intervenors meet the

5   conditions for permissive intervention.

6       However, the court is permitted to place conditions on the

7   level of intervention by the party. *Stringfellow v. Concerned*

8   *Neighbors in Action*, 480 U.S. 370, 378 (1987). (permissive

9   intervention conditions that intervenor not assert any claim for

10  relief which had not already been requested by one of the

11  original parties, that intervenor could not intervene in

12  government plaintiffs' claim for recovery of clean-up costs, and

13  that intervenor could not file any motions or conduct its own

14  discovery unless it first conferred with all original parties and

15  obtained permission to go forward from at least one of those

16  parties not considered a complete denial of the right to

17  participate).  Here it is appropriate to limit proposed

18  intervenors' pleadings to non duplicative defenses and briefing

19  to non duplicative issues.

20

21                          **CONCLUSION**

22      The motion to intervene as a matter of right is **DENIED**.  The

23  motion for permissive intervention by the Sierra Club, NRDC and

24  the Society is **GRANTED**, conditioned upon intervenors strictly

25  limiting their participation to the claims and defenses not

26  already requested by the government.  Intervenors shall consult

27  with Defendant before filing motions or conducting independent

28  discovery, to assure their motions or discovery do not replicate

                               **36**

what has been initiated.   The complaint of intervenors shall be
filed by the clerk of the court.


IT IS SO ORDERED.

**Dated:    September 4, 2007**              **/s/ Oliver W. Wanger**
                                    UNITED STATES DISTRICT JUDGE

37