MCGREGOR W. SCOTT
United States Attorney
2500 Tulare St., Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

RONALD J. TENPAS
Acting Assistant Attorney General
BRUCE D. BERNARD
Trial Attorney
General Litigation Section
Environment and Natural Resources Division
U.S. Department of Justice
1961 Stout Street, 8th Floor
Denver, Colorado 80294
Telephone: (303) 844-1361
Facsimile: (303) 844-1350
e-mail: bruce.bernard@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HAZEL GREEN RANCH, LLC<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR, ET AL.,<br><br>Defendants. | No. 1:07-CV-00414-OWW-SMS<br><br>FEDERAL DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS<br><br>Judge Oliver W. Wanger<br><br>Date: December 10, 2007<br>Time: 10:00 a.m.<br>Courtroom: 3 |

**TABLE OF CONTENTS**

I. INTRODUCTION . . . . . 1

II. FACTUAL AND PROCEDURAL BACKGROUND . . . . . 2

A. Factual Background . . . . . 2

B. Procedural Background . . . . . 3

III. STATUTORY BACKGROUND . . . . . 5

A, The Quiet Title Act . . . . . 5

B. R.S. 2477 . . . . . 7

IV. STANDARDS OF REVIEW . . . . . 8

V. ARGUMENT . . . . . 8

A. The Complaint Must Be Dismissed Because The United States Has Not Waived Its Sovereign Immunity With Respect To Any Of Plaintiff's Claims For Relief . . . . . 8

1. Plaintiff Has No Interest In Title to The Alleged Rights-of-Way And Therefore Lacks a Right Of Action Under The Quiet Title Act . . . . . 8

2. Plaintiff May Not Evade The Strictures Of The QTA By seeking Review Of Its Quiet Title Action Under Some Other Statute . . . . . 12

CONCLUSION . . . . . 14

# TABLE OF AUTHORITIES

CASES

Alaska v. Babbitt, 38 F.3d 1068 (9th Cir. 1994) . . . . . 13

Biotics Research Corp. v. Heckler, 710 F.2d 1375 (9th Cir. 1983) . . . . . 8

Block v. North Dakota, 461 U.S. 273 (1983) . . . . . passim

Cadorette v. United States, 988 F.2d 215 (1st Cir. 1993) . . . . . 9

California v. Quechan Tribe of Indians, 595 F.2d 1153 (9th Cir. 1979) . . . . . 13

Central Pac. Ry. Co. v. Alameda County, 284 U.S. 463 (1932) . . . . . 7

City of San Mateo et al. v. Railroad Commission of the State of California, 68 P.2d 713 (Cal. 1937) . . . . . 10

Consejo de Desarollo Economico De Mexicali, A.C. v. United States, 482 F.3d 1157 (9th Cir. 2007) . . . . . 7

Cox Cable San Diego, Inc. v. County of San Diego, 229 Cal Rptr. 839 (Cal. Ct. App. 1986) . . . . . 10

Fairhurst Family Ass'n v. U.S. Forest Service, 172 F. Supp.2d 1328 (D.Colo. 2001) . . . . . 9

Friends of the Panamint Valley v. Kempthorne, 499 F.Supp.2d 1165 (E.D. Cal. 2007) . . . . . passim

General Atomic Co. v. United Nuclear Corp., 655 F.2d 968 (9th Cir. 1981) . . . . . 8

Hou Hawaiians v. Cayetano, 183 F.3d 945 (9th Cir. 1999) . . . . . 13

Kinscherff v. United States, 586 F.2d 159 (10th Cir. 1978) . . . . . 10, 11

Lane v. Pena, 518 U.S. 187 (1996) . . . . . 5

Lehman v. Nakshian, 453 U.S. 156 (1981) . . . . . 5

Long v. Area Manager, Bureau of Reclamation, 236 F.3d 910 (8th Cir. 2001) . . . . . 9, 10, 11

Marin County v. Superior Court of Maring County, 349 P.2d 526 (Cal. 1960) . . . . . 10

McCarthy v. United States, 850 F.2d 558 (9th Cir. 1988) . . . . . 8

Southern Utah Wilderness Alliance v. Bureau of Land Management, 425 F.3d 735 (10th Cir. 2006) . . . . . 7

Southwest Four Wheel Drive Ass'n v. BLM, 363 F.3d 1069 (10th Cir. 2004) . . . . . 13

Staley v. United States, 168 F. Supp. 2d 1209 (D. Colo. 2001) . . . . . 10

Standage Ventures, Inc. v. Ariz., 499 F.2d 248 (9th Cir. 1974) . . . . . 7

Thomas v. McCombe, 99 F.3d 352 (9th Cir. 1996) . . . . . 8

United States v. Mottaz, 476 U.S. 834 (1986) . . . . . 7, 9, 14

United States v. Sherwood, 312 U.S. 584 (1941) . . . . . 5

United States v. Testan, 424 U.S. 392 (1976) . . . . . 7

White v. Admn'r of Gen. Serv. Admin. of United States, 343 F.2d 444 (9th Cir. 1965) . . . . . 13

STATUTES

28 U.S.C. § 1361 . . . . . 2, 12

28 U.S.C. § 1402(d) . . . . . 6

28 U.S.C. § 2201 . . . . . 2, 12

28 U.S.C. § 2409a . . . . . passim

43 U.S.C. § 932 (1970) (repealed 1976) . . . . . 1, 7

Pub. L. No. 94-579, 90 Stat. 2473, (1976) . . . . . 7

Fed. R. Civ. P. 12(h)(3) . . . . . 8

OTHER AUTHORITY

Pamela Baldwin, Highway Rights of Way: The Controversy Over Claims Under R.S. 2477, Cong. Research Serv., Jan. 15, 1993 . . . . . 7

## I. INTRODUCTION

On March 14, 2007, Hazel Green Ranch, LLC ("Plaintiff") filed this action in an attempt to gain more direct vehicle access to the Yosemite Valley floor. Specifically, Plaintiff alleges that it is entitled to use what it refers as the Coulterville Road and the Crane Flat Road from the points those roads leave the Hazel Green property to their alleged intersections with State Highway 120.[1]/ Plaintiff alleges that it is entitled to use these roads despite their location on federal lands because Plaintiff, as a member of the public, is a beneficiary of alleged rights-of-way claimed to have been established pursuant to Revised Statute 2477, 43 U.S.C. 932 (1970) (repealed 1976) ("R.S. 2477"). Plaintiff seeks to "enforce" the alleged rights-of-way to ensure that it may "enjoy unfettered use of" the alleged R.S. 2477 rights-of-way under the Quiet Title Act, 28 U.S.C. 2409a. Complaint[2]/ ¶¶ 6, 90, 94, 99, 103 (Claims 1 - 4). Plaintiff also seeks a declaratory judgment from the Court requiring Federal Defendants[3]/ to provide Plaintiff "a recognized" right-of-way over the alleged roads, id. ¶¶ 107, 111, 115, 119 (Claims 5-8), and a writ of mandamus compelling Federal Defendants to provide Plaintiff the access it seeks and to allow Plaintiff to perform maintenance of the alleged roads without agency approval or even notification. Id. ¶¶ 123, 128, 133, 138 (Claims 9-12).

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, Federal Defendants hereby move to dismiss the Complaint for lack of jurisdiction because Plaintiff's claims are

---

[1]/ Defendants deny that the Coulterville Road ever intersected with Highway 120 and that the road that now connects the Coulterville Road with Highway 120 is in fact the Merced Grove road which was constructed by the National Park Service much later than the 1874 date of completion of Coulterville Road.

[2]/ Citations to the Complaint are to the First Amended Complaint for Quiet Title, Declaratory Judgment, and Writ of Mandamus filed by Plaintiff on October 5, 2007.

[3]/ The term "Federal Defendants" refers to the Department of the Interior, Dirk Kempthorne, in his official capacity of the Department of the Interior, the National Park Service, Mary A. Bomar, in her official capacity as Director of the National Park Service, Michael J. Tollefson, in his official capacity as Superintendent of Yosemite National Park, the Department of Agriculture, Charles F. Connor, in his official capacity as Acting Secretary of the Department of Agriculture, the U.S.D.A. Forest Service, Gail Kimball, in her official capacity as Chief of the U.S.D.A. Forest Service, and the United States of America.

barred by the United States' sovereign immunity. All twelve of Plaintiff's claims seek to acquire, perfect, or enforce rights to use roads on federal lands that Plaintiff alleges were acquired by operation of R.S. 2477.[4] That statute, however, granted rights-of-way over public land only for the construction of highways. Under California State law, highways vest in the State and in the counties in which they lie – not in individual members of the public. Accordingly, only those governmental entities may seek to quiet title in an alleged R.S. 2477 right-of-way because the limited waiver of sovereign immunity provided by the Federal Quiet Title Act applies only to plaintiffs who themselves claim an interest in title to the disputed real property. This limitation on the waiver defines a district court's jurisdiction and must be strictly enforced.

Moreover, Plaintiff may not circumvent the strict jurisdictional limitations in the Quiet Title Act by looking to the Declaratory Judgment Act, 28 U.S.C. § 2201, or the Mandamus Act, 28 U.S.C. § 1361, as a source of jurisdiction. Neither of those statutes provides a waiver of the United States' sovereign immunity, and Congress intended the Quiet Title Act to be the exclusive means by which a plaintiff may challenge the federal government's claim of title to real property. Accordingly, this Court lacks jurisdiction and the Complaint must be dismissed in its entirety.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

The Hazel Green Ranch ("Hazel Green") is an approximately 80-acre property in Mariposa County, California, located adjacent to and immediately west of Yosemite National Park. Complaint at ¶ 2. The Stanislaus National Forest surrounds Hazel Green to the north, south and west. *Id.* Motor vehicle access to Hazel Green is available over several routes from the west and northwest. See Exs. 18, 23, 25 to Complaint. Plaintiff's right to access Hazel

---

[4] See Complaint: Claim 1 at 28, 39; Claim 2 at 29, 39; Claim 3 at 39; Claim 4 at 40; Claim 5 at 31-32, 40; Claim 6 at 32-33, 40; Claim 7 at 40-41; Claim 8 at 41; Claim 9 at 35; Claim 10 at 36; Claim 11 at 37; Claim 12 at 38.

Green over these roads is not at issue in this action.

By this action, Plaintiff seeks to adjudicate its asserted right to use two routes which would give it much more direct motor vehicle access to State Highway 120 and the Yosemite Valley floor, thereby enhancing Hazel Green's value as a resort and tourist destination. See Complaint ¶¶ 17-20, Ex. 4 to Complaint. The Complaint requests the Court to adjudicate Plaintiff's claimed right to use two roads it refers to as the Coulterville Road and the Crane Flat Road. Plaintiff seeks the right to use "the Coulterville Road segment leading from Hazel Green to and through the intersection with the Big Oak Flat Road." Id. ¶¶ 90, 99, 108, 116, 124, 134. The road Plaintiff refers to variously as "the Big Oak Flat Road," the "rerouted Big Flat Road," and the "realigned Big Oak Flat Road," is now generally recognized and referred to as State Highway 120. See id. ¶ 4. Defendants deny Plaintiff's allegation that the Coulterville Road ever intersected with State Highway 120. Plaintiff also seeks the right to use the "Crane Flat Road segment leading from Hazel Green to and through the intersection with the rerouted Big Oak Flat Road." Id. ¶¶ 94, 103, 112, 120, 129, 139.

**B. Procedural Background**

On March 14, 2007 Plaintiff filed its Complaint for Quiet Title, Declaratory Judgment, and Writ of Mandamus ("Initial Complaint"). That Initial Complaint named as Defendants, DOI, Dirk Kempthorne, in his official capacity as Secretary of DOI, NPS, Mary A. Bomar, in her official capacity as Director of NPS, and Michael J. Tollefson, in his official capacity as Superintendent of Yosemite National Park. Before and during the September 6, 2007 Scheduling Conference, the United States pointed out to Plaintiff that, although the Initial Complaint requested the Court to quiet title to Plaintiff's claimed right to use the alleged rights-of-way, one of which (Coulterville Road) runs through National Forest System lands, the Initial Complaint did not name the United States of America, the United States Department of Agriculture ("USDA"), or the USDA Forest Service ("Forest Service"), as a Defendant. On October 5, 2007 Plaintiff filed its First Amended Complaint adding as additional Defendants, USDA, Charles F. Connor, in his official capacity as Acting Secretary of USDA, the Forest Service, Gail Kimball, in her official capacity as Chief of the Forest Service, and the United

States of America (First Amended Complaint referred to herein as "Complaint").

As noted above, the Complaint alleges that Plaintiff is entitled to use what it refers as the Coulterville Road and the Crane Flat Road from the points those roads leave the Hazel Green Ranch to their alleged intersections with Highway 120. The Complaint asserts twelve claims for relief. Id. ¶¶ 88-140. All twelve claims are asserted under R.S. 2477. See n.4, supra.

The Complaint does not allege that Plaintiff owns the alleged rights-of-way. See id. ¶ 6. Rather, Plaintiff alleges that Mariposa County owns R.S. 2477 rights-of-way for the two roads. See id. ¶¶ 49, 59-60, 83-84, 87. Plaintiff's twelve claims for relief, including the claims brought under the Quiet Title Act (Claims 1-4), those brought under the Declaratory Judgment Act (Claims 5-8), and those brought under the mandamus statute (Claims 9-12), seek to "enforce" Plaintiff's claimed right of access to the alleged County roads. See id. ¶ 6.

As to Plaintiff's Quiet Title Act claims (Claims 1-4), Plaintiff states that it brings this suit to ensure that it may "enjoy unfettered use of" the alleged R.S. 2477 rights-of-way. Id. ¶¶ 90, 94, 99, 103. Plaintiff further asserts that judicial relief is necessary pursuant to the Quiet Title Act to "recognize that such right-of-way exists, to ensure access at all times over the roads at issue, to perform all necessary and required improvements and maintenance without unlawful hindrance by Defendants." Id. ¶¶ 91, 95, 100, 104.

Plaintiff's claims for declaratory judgment (Claims 5-8) likewise state that Plaintiff "seeks to quiet title through declaratory judgment relief by requiring the defendants to provide the Plaintiff a recognized right-of-way created pursuant to R.S. 2477," id. ¶¶ 107, 111, 115, 119, and that judicial relief is necessary "to recognize that such right-of-ways exist to ensure unfettered use of, to make improvements to, and to have the right to continuously improve and maintain" the alleged roads. Id. ¶¶ 108, 112, 116, 120.

Finally, Plaintiff's mandamus claims assert that mandamus is necessary "to compel NPS to provide Plaintiff access" to the alleged roads, id. ¶¶ 123, 128, 133, 138, and to ensure Plaintiff's "right to unfettered use of, to make all necessary improvements to, and to continuously improve and maintain" the alleged roads. Id. ¶¶ 124, 129, 134, 139. The Complaint further prays for an order "compelling the authorized officer of the NPS to remove

any and all gates and/or non-natural barriers erected by the NPS inhibiting access between Hazel Green and the Big Oak Flat Road [Highway 120]." Id. ¶ 13 at 42.

On May 30, 2007, the Sierra Club, the Natural Resources Defense Council and The Wilderness Society (collectively the "Conservation Groups") filed a Motion to Intervene as Defendants. The Conservation Groups' Motion requested intervention as of right under Fed. R. Civ. P. 24(a)(2) and, in the alternative, permissive intervention under Fed. R. Civ. P. 24(b)(2). Plaintiff and Defendants filed briefs opposing the Conservation Groups' Motion. On September 5, 2007, the Court filed its Memorandum Decision and Order Re Intervenor-Defendants Motion to Intervene ("Intervention Order"). The Intervention Order denied intervention of right, but granted permissive intervention conditioned on the Conservation Groups limiting their participation to claims and defenses not advanced by Federal Defendants and on the Conservation Groups consulting with Federal Defendants before filing motions or conducting discovery. After a discussion with the parties during the September 6, 2007 Scheduling Conference concerning the logistics of Conservation Groups consulting with Federal Defendants, the Court filed an Amendment to the Intervention Order on September 14, 2007, removing the requirement that the Conservation Groups consult with Federal Defendants, but leaving in place the limitation that the Conservation Groups limit their participation to claims and defenses not advanced by Federal Defendants.

## III. STATUTORY BACKGROUND

### A. The Quiet Title Act

Under the doctrine of federal sovereign immunity, the United States is immune from suit except to the extent Congress expressly waives that immunity. See Lane v. Pena, 518 U.S. 187, 192 (1996); Lehman v. Nakshian, 453 U.S. 156, 160 (1981); United States v. Sherwood, 312 U.S. 584, 586 (1941). Before the Quiet Title Act's ("QTA") enactment in 1972, the United States had not waived its immunity with respect to suits involving title to land. See Block v. North Dakota, 461 U.S. 273, 280 (1983). As a result, prior to the QTA, those asserting title to land claimed by the United States had limited means of obtaining a resolution of the title dispute. Id. Those asserting title adverse to the United States could try to induce the United States to file

a quiet title action against them or they could petition Congress or the Executive Branch for discretionary relief. Id. Those willing to settle for monetary compensation (instead of title to the disputed property) could sue and attempt to establish a constitutional claim for just compensation. Id. at 280-81. Others tried to institute so-called "officer's suit[s]," thereby proceeding against the federal official charged with supervision of the relevant land instead of the United States. Id. at 281. Such suits proved unsuccessful in circumventing federal sovereign immunity. Id. at 281-82.

Against that backdrop of limited remedies, Congress considered and enacted the QTA in order to provide recourse to citizens asserting title to lands also claimed by the United States. Id. at 282. The QTA provides that "[t]he United States may be named as a party defendant in a civil action . . . to adjudicate a disputed title to real property in which the United States claims an interest." 28 U.S.C. § 2409a(a). The Act, therefore, operates as a limited waiver of the United States' sovereign immunity, and is the "exclusive means by which adverse claimants [may] challenge the United States' title to real property." Block, 461 U.S. at 286-87. Where QTA jurisdiction lies, the court can adjudicate the disputes between the plaintiff and the United States and render judgment between them.

However, the QTA's waiver of sovereign immunity is expressly limited by a number of conditions. Of relevance here, the QTA directs that any complaint alleging a quiet title claim must "set forth with particularity the nature of the right, title, or interest which the plaintiff claims in the real property." 28 U.S.C. § 2409a(d). In addition, the QTA directs that "[a]ny civil action under section 2409a to quiet title to an estate or interest in real property. . . shall be brought in the district court of the district where the property is located," see 28 U.S.C. § 1402(d), and the Act limits its waiver of sovereign immunity to quiet title actions commenced within twelve years of the accrual of the action. See 28 U.S.C. § 2409a(g). Finally, with respect to successful quiet title actions, the QTA makes clear that, "if the final determination shall be adverse to the United States, the United States nevertheless may retain such possession or control of the real property" upon payment of just compensation. See § 2409a(b).

Because it is a waiver of sovereign immunity, the QTA must be strictly construed, and the limitations set forth in the statute (and described above) must be strictly enforced. See United States v. Mottaz, 476 U.S. 834, 841 (1986); United States v. Testan, 424 U.S. 392, 399 (1976). "'When the United States consents to be sued, the terms of its waiver of sovereign immunity define the extent of the court's jurisdiction.'" Consejo de Desarollo Economico de Mexicali, A.C. v. United States, 482 F.3d 1157, 1173 (9th Cir. 2007) (quoting Mottaz, 476 U.S. at 841).

**B. R.S. 2477**

In 1866, in the midst of an era of federal land grant statutes aimed at facilitating the settlement of the American West, Congress passed R.S. 2477 as a means of providing public access across unreserved public domain lands. See generally, Pamela Baldwin, Highway Rights of Way: The Controversy Over Claims Under R.S. 2477, Cong. Research Serv., Jan. 15, 1993, at 10-18; see also Central Pac. Ry. Co. v. Alameda County, 284 U.S. 463, 472-73 (1932). From its 1866 enactment until its repeal in the Federal Land Policy Management Act ("FLPMA") in 1976, the statute provided, in its entirety, that "[t]he right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted." R.S. 2477; 43 U.S.C. § 932 (1970) (repealed 1976). This land grant was self-executing in some states – in other words, an R.S. 2477 right-of-way could come into existence automatically, without need for formal action by public authorities, whenever the public sufficiently indicated its intent to accept the land grant by establishing a public highway across public lands in accordance with state law. See Standage Ventures, Inc. v. Ariz., 499 F.2d 248, 250 (9th Cir. 1974); Southern Utah Wilderness Alliance v. Bureau of Land Management, 425 F.3d 735, 770 (10th Cir. 2005) ("In most of the western states, where R.S. 2477 was most significant, acceptance required no governmental act . . . .").

On October 21, 1976, Congress enacted FLPMA, which repealed R.S. 2477 but preserved "any valid" right-of-way "existing on the date of approval of this Act." Pub. L. No. 94-579, §§ 701(a), 706(a), 90 Stat. 2743, 2793 (1976). Accordingly, rights-of-way under R.S. 2477 that were perfected before the statute's repeal in 1976 and which have not been abandoned

remain valid today. Local governments may file suits to quiet title against the United States if they can demonstrate that the grant of a right-of-way was accepted prior to the statute's repeal in 1976 and, where applicable, prior to the reservation or appropriation of the public land underlying the alleged right-of-way to some other use.

## IV. STANDARD OF REVIEW

"The question whether the United States has waived its sovereign immunity . . . is, in the first instance, a question of subject matter jurisdiction." McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988). When defending on the basis of sovereign immunity, therefore, a federal defendant may move to dismiss a claim under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Faced with a 12(b)(1) motion, a plaintiff bears the burden of proving the existence of the court's subject matter jurisdiction. See Thomas v. McCombe, 99 F.3d 352, 353 (9th Cir. 1996). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." General Atomic Co. v. United Nuclear Corp., 655 F.2d 968, 968-69 (9th Cir. 1981). In determining whether it has jurisdiction, a court is not restricted to the face of the pleadings, but may instead review evidence and resolve factual disputes concerning the existence of jurisdiction without converting the motion into one for summary judgment. See McCarthy, 850 F.2d at 560; Biotics Research Corp. v. Heckler, 710 F.2d 1375, 1379 (9th Cir. 1983). If a federal court finds that it lacks subject matter jurisdiction, then it must dismiss the action. See Fed. R. Civ. P. 12(h)(3).

## V. ARGUMENT

### A. The Complaint Must Be Dismissed Because The United States Has Not Waived Its Sovereign Immunity With Respect To Any Of Plaintiff's Claims For Relief

#### 1. Plaintiff Has No Interest In Title To The Alleged Rights-of-Way And Therefore Lacks a Right Of Action Under The Quiet Title Act

The QTA operates as a waiver of the United States' sovereign immunity and provides a right of action for certain quiet title suits, but the waiver is limited in scope. Block, 461 U.S. at 287. Among these limitations is the requirement that a plaintiff identify and plead "with particularity the nature of the right, title, or interest which the plaintiff claims in the real

property, the circumstances under which it was acquired, and the right, title, or interest claimed by the United States." 28 U.S.C. § 2409a(d) (emphasis added). As its text makes clear, the purpose of a QTA suit "is to determine which named party has superior claim to a certain piece of property." Cadorette v. United States, 988 F.2d 215, 223 (1st Cir. 1993). Congress thus permitted challenges to the United States' claim of title to real property only by parties who themselves claim an interest in title. See Long v. Area Manager, Bureau of Reclamation, 236 F.3d 910, 915 (8th Cir. 2001) (recognizing that a federal quiet title action must fail if the plaintiff "does not claim a property interest to which title may be quieted"). The requirement that this condition be met is neither discretionary nor flexible because the terms of the waiver of sovereign immunity in the QTA limit the scope of this Court's jurisdiction and must be construed strictly in the government's favor. Mottaz, 476 U.S. at 841; Block, 461 U.S. at 287; Friends of Panamint Valley v. Kempthorne, 499 F. Supp. 2d 1165, 1174 (E.D. Cal. 2007). In short, a party without an ownership claim in the disputed property has no place in a federal quiet title suit.

Turning to this case, Plaintiff's Claims 1-4 brought under the QTA seek to establish the existence of public rights-of-way over the Coulterville and Crane Flat roads on federal lands to which the United States would otherwise hold an unencumbered title in fee simple. See Complaint at ¶¶ 88-104. Plaintiff does not assert that it is the owner of the alleged rights-of-way, instead alleging that the rights-of-way are owned by Mariposa County.[5]/ Id. ¶¶ 49, 59-60, 83-84, 87. Plaintiff asserts that it has the right to access these alleged public rights-of-way, a right to access it concedes is shared by "other members of the public." Id. at ¶ 80. Plaintiff, does not expressly seek to quiet title in the alleged rights-of-way, roads, or highways themselves,[6]/ but instead asks the Court to "recognize" and "enforce" the rights-of-way so as to vindicate Plaintiff's alleged right to "unfettered use . . . make improvements . . . and to have the right to

---

[5]/ Federal Defendants deny Plaintiff's allegation that Mariposa County owns the claimed rights-of-way.

[6]/ The terms "roads," "highways," and "R.S. 2477 rights-of-way" are synonymous in this context, and are therefore used interchangeably throughout this brief. See Fairhurst Family Ass'n v. U.S. Forest Service, 172 F. Supp. 2d 1328, 1332 (D. Colo. 2001).

continuously improve and maintain" the Coulterville and Crane Flat roads. Complaint ¶¶ 90-91, 94-95, 99-100, 103-104. This is fatal to its claim.

It is well settled that a mere right or interest in the use of a public road or highway does not constitute an interest in title to property within the meaning of the QTA, and therefore is not a proper basis for a QTA suit. See Long, 236 F.3d at 915 ("[T]he right of an individual to use a public road is not a right or interest in property for purposes of the Quiet Title Act."); Kinscherff v. United States, 586 F.2d 159, 160 (10th Cir. 1978) (holding that the plaintiffs' "interest" as members of the public in the use of the Jemez Dam Road "is not an interest in real property contemplated by [the QTA]" because "[i]f it exists, it is vested in the public generally"); see also Staley v. United States, 168 F. Supp. 2d 1209, 1213 (D. Colo. 2001) ("The Court refuses Plaintiffs' invitation to blur the lines between a title interest and a right of access to a public road."). This remains true even in cases where state law affords abutting landowners greater rights in the public roads than are granted to the general public.[7]/ See id. Accordingly, the QTA does not provide a means to enforce or vindicate whatever rights the Plaintiff believes it may have in the use of the Coulterville and Crane Flat road segments. Put another way, the QTA cannot serve as a basis to secure the incidents of ownership in a public road unless and until a plaintiff alleges an ownership interest, which Plaintiff has failed to do here.

Even if Plaintiff had alleged an ownership interest, however (rather than merely seeking to "enforce" its claimed right of access), its claims would still be improper because individual members of the public cannot hold title to a public road or highway. It is well established in California that all public highways belong to the State and, as to county roads, that their custody and control is confided to the boards of supervisors for the counties in which they are located. See Marin County v. Superior Court of Marin County, 349 P.2d 526, 529 (Cal. 1960) (citing People v. County of Marin, 37 P. 203 (Cal. 1894)); Cox Cable San Diego, Inc. v. County of San Diego, 229 Cal. Rptr. 839, 848 (Cal. Ct. App. 1986) ("For all intents and purposes, . . . the public

---

[7]/ In California, landowners abutting a public road may sometimes have a private right of access. See City of San Mateo et al. v. Railroad Commission, 68 P.2d 713, 718 (Cal. 1937).

entity 'owns' the public streets and highways."). Accordingly, only the State of California or Mariposa County may raise a challenge to the United States' interest in title to the Coulterville and Crane Flat roads. See Long, 236 F.3d at 915 ("The proper plaintiff to challenge the [United States' claim of title in] a public road [under the QTA] is the governmental entity that owns the easement."); see also Kinscherff, 586 F.2d at 160, 161 ("It is apparent that a member of the public cannot assert such an ownership in a public road"). Claims 1-4, therefore, must be dismissed because they are beyond the reach of the QTA's waiver of sovereign immunity.

Judge O'Neill recently dismissed very similar claims brought under the QTA in Friends of the Panamint Valley v. Kempthorne. Judge O'Neill pointed out that Congress' waiver of sovereign immunity through the QTA is limited "to parties who themselves claim an interest in title." Friends of the Panamint Valley v. Kempthorne, 499 F. Supp. 2d 1165, 1174 (E.D. Cal. 2007), citing Long, 236 F.3d at 915. Judge O'Neill further explained that:

> Courts which have addressed whether a plaintiff, as a member of the public, can assert a title under the Quiet Title Act for access to routes established pursuant to R.S. 2477 have ruled that there is no subject matter jurisdiction. The Tenth Circuit Court of Appeals has long held that members of the public are without jurisdiction in actions brought under the Quiet Title Act for access to public roads claimed under R.S. 2477. In 1978, the Court reasoned that "[m]embers of the public as such do not have 'title' in public roads. To hold otherwise would signify some degree of ownership as an easement. It is apparent that a member of the public cannot assert such an ownership in a public road." Kinscherff v. United States, 586 F.2d 159, 160 (10th Cir. 1978). This position was reaffirmed in Sw. Four Wheel Drive Ass'n v. BLM, 363 F.3d 1069 (10th Cir. 2004), wherein the Court ruled that Southwest Four Wheel Drive Association, as members of the public, did not meet the requirements under the Quiet Title Act to assert a claim seeking judgment granting the public title to certain roads of federal land that the BLM closed after designating it wilderness. Id. This rule has been adopted in the Second Circuit Court of Appeals, which held, "We agree with the Tenth Circuit that the right of an individual to use a public road is not a right or interest in property for purposes of the Quiet Title Act." Long v. Area Manager, Bureau of Reclamation, 236 F.3d 910, 915 (8th Cir. 2001 (citing Kinscherff v. United States, 586 F.2d 159, 160 (10th Cir. 1978).

Friends of the Panamint Valley, 499 F. Supp. 2d at 1175. Judge O'Neill pointed out that, in Long, the plaintiffs, like those at bar in Friends of the Panamint Valley, owned land which abutted the federal property. Id. n.6 at 1175. Judge O'Neill then concluded that:

> Plaintiffs' interest asserted under the Quiet Title Act "must be some interest in the title to the property." Kansas v. United States, 249 F.3d 1213, 1224 (10th Cir. 2001) (quoting Kincherff). "A quiet title action may be brought by anyone claiming an interest in the real property. The interest, however, must be some

> interest in the title to the property. An attempt to remove a cloud from title presupposes that the plaintiff has some title to defend." Kinscherff, 586 F.2d at 160 (internal citations omitted). Plaintiffs do not assert that they have an interest in the title to Surprise Canyon Road. Rather, they argue that as members of the public, they have a right to use the route.

Id. at 1177.

Based on the fact that plaintiffs as members of the public, albeit members owning land adjacent to the claimed route, had not demonstrated that they had a "right, interest, or title" under either federal or California law to assert against Federal Defendants under the QTA, Judge O'Neill dismissed plaintiffs' claim brought under the Quiet Title Act for lack of jurisdiction. Id.

Just as plaintiffs in Friends of the Panamint Valley and Long, Plaintiff here has no "right, interest, or title" to the alleged R.S. 2477 rights-of-way for the routes over which it seeks access and Plaintiff's Claims 1-4 under the QTA must be dismissed for lack of subject matter jurisdiction.

**2. Plaintiff May Not Evade The Strictures Of The QTA By Seeking Review Of Its Quiet Title Action Under Some Other Statute**

Plaintiff's remaining Claims for Relief, Claims 5-8 brought under the Declaratory Judgment Act ("DJA"),[8]/ and Claims 9-12 brought under the Mandamus Act,[9]/ must also be dismissed because they do not cure Plaintiff's inability to assert a claim under the QTA.

The Ninth Circuit has long held that neither the DJA nor the Mandamus Act effects a

---

[8]/ The DJA states in relevant part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

[9]/ The Mandamus Act states in full:

> The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty to the plaintiff.

28 U.S.C. § 1361.

waiver of the United States' sovereign immunity. See California v. Quechan Tribe of Indians, 595 F.2d 1153, 1155 (9th Cir. 1979) (Declaratory Judgment Act); White v. Admn'r of Gen. Serv. Admin. of United States, 343 F.2d 444, 447 (9th Cir. 1965) (Mandamus Act); Hou Hawaiians v. Cayetano, 183 F.3d 945, 947 (9th Cir. 1999) (same). This is doubly true in the present case because the Plaintiff seeks to encumber the United States' title to these federal lands within Yosemite National Park and the Stanislaus National Forest with public rights-of-way. As this Circuit has recognized, "when the United States has an interest in the disputed property the waiver of sovereign immunity must be found, if at all, within the QTA." Alaska v. Babbitt, 38 F.3d 1068, 1073 (9th Cir. 1994); see also Block, 461 U.S. at 286 (holding that the QTA is "the exclusive means by which adverse claimants [can] challenge the United States' title in real property"). It follows, therefore, that a plaintiff who disputes the United States' claim of interest in title and who cannot meet the requirements of the QTA is simply without recourse. See Southwest Four Wheel Drive Ass'n v. BLM, 363 F.3d 1069, 1071 (10th Cir. 2004). Because Plaintiff directly attacks the United States' property interest in these federal lands, its failure to meet the requirements of the QTA requires dismissal of the Complaint.

In Friends of the Panamint Valley, Judge O'Neill dismissed nearly identical claims brought under the DJA and Mandamus Statute. Judge O'Neill noted that the Supreme Court explained in Block that "'Congress intended the QTA to provide the exclusive means by which adverse claimants could challenge the United States' title to real property.'" Friends of the Panamint Valley, 499 F. Supp. 2d at 1178 (quoting Block, 461 U.S. at 286) (emphasis added by Friends of the Panamint Valley). Judge O'Neill held that: "A claim that seeks a title determination against the United States can only be brought under the Quiet Title Act, not the Declaratory Judgment Act or any other law." Id. Judge O'Neill ruled that, because plaintiffs' claims brought under the DJA and the Mandamus Statute sought to adjudicate interests adverse to the United States' title to the subject lands, they could only be brought "pursuant to the Quiet Title Act's narrow waiver of sovereign immunity." Id. at 1178-79. The Court therefore dismissed plaintiffs' claims brought under the DJA and the Mandamus Statute. Id. at 1179.

This Court must likewise dismiss Plaintiff's Claims 5-8, brought under the DJA, and

Claims 9-12, brought under the Mandamus Act.

Even if this Court were to find that the QTA's waiver of sovereign immunity applies to the instant case, however, Plaintiff's Claims for Relief 9-12 and Plaintiff's thirteenth prayer for relief would still be improper. Those claims and prayer allege that a writ of mandamus is necessary "in order to compel NPS to provide Plaintiff access to" the alleged rights-of-way across federal land and pray for an order compelling the NPS to remove gates and barriers inhibiting access to the roads. Complaint ¶¶123, 128, 133, 138; ¶13 at 42. But the remedial clause of the QTA prohibits such a result. Instead, that clause states that "if the final determination [in a quiet title claim] shall be adverse to the United States, the United States nevertheless may retain such possession or control of the real property or of any part thereof as it may elect" upon payment of just compensation. 28 U.S.C. § 2409a(b). This provision was designed to avoid the disruption of ongoing Federal programs involving disputed lands by allowing the United States to pay money damages instead of surrendering the subject property upon loss of a quiet title claim. <u>See</u> <u>Block</u>, 461 U.S. at 283. A unanimous Supreme Court in <u>United States v. Mottaz</u> interpreted this provision as giving the choice of remedy in a QTA action to the government, not the plaintiff. 476 U.S. at 847-848. Thus, even if this motion does not dispose of Plaintiff's Complaint, the limited terms of the QTA's waiver of sovereign immunity prohibit this Court from compelling the United States to grant Plaintiff vehicular access and to remove gates impeding access to the Crane Flat and Coulterville roads.

**CONCLUSION**

For the foregoing reasons, Federal Defendants respectfully request that the Court dismiss Plaintiff's Complaint in its entirety for lack of jurisdiction. Should the Court determine that the Plaintiff's claims are cognizable, however, Federal Defendants nonetheless request that the Court dismiss Claims 9-12 because the QTA prohibits this Court from granting the requested writ of mandamus.

Dated this 18th day of October, 2007.

RONALD J. TENPAS
Acting Assistant Attorney General
Environment and Natural Resources Division

/s/ Bruce Bernard
BRUCE D. BERNARD
Trial Attorney
Natural Resources Section
Environment and Natural Resources Division
United States Department of Justice
1961 Stout Street, 8th Floor
Denver, Colorado 80294
Telephone: (303) 844-1361
Facsimile: (303) 844-1350
Email: bruce.bernard@usdoj.gov

ATTORNEYS FOR FEDERAL DEFENDANTS

OF COUNSEL:

Barbara Goodyear
U.S. Department of the Interior
Office of the Solicitor
Pacific Southwest Region
San Francisco Field Office
1111 Jackson Street, Suite 735
Oakland, California 94607