1
2
3
4
5
6

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| HAZEL GREEN RANCH, LLC, | ) | No. 1:07-CV-00414 OWW SMS |
| | ) | |
| | ) | MEMORANDUM AND DECISION RE |
| | ) | GRANTING FEDERAL DEFENDANTS' |
| Plaintiff, | ) | MOTION TO DISMISS (Doc. 36 |
| | ) | and 38) |
| vs. | ) | |
| | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| THE INTERIOR, et al., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| | ) | |
| SIERRA CLUB, NATURAL RESOURCES | ) | |
| DEFENSE COUNCIL, and THE | ) | |
| WILDERNESS SOCIETY, | ) | |
| | ) | |

Plaintiff Hazel Green, LLC ("Hazel Green Ranch" or "HGR") is proceeding under a "First Amended Complaint for Quiet Title, Declaratory Judgment, and Writ of Mandamus" ("FAC"). (Doc. 35). Defendants are the United States Department of the Interior ("DOI"); Dirk Kempthorne, in his capacity as Secretary of the DOI; the National Park Service ("NPS"); Mary A. Bomar, in her capacity as Director of the NPS; Michael J. Tollefson, in his capacity as Superintendent of Yosemite National Park; the United

1

States Department of Agriculture; Charles F. Connor, in his capacity as Acting Secretary of the United States Department of Agriculture; the National Forest Service; Gail Kimball, in her capacity as Chief of the National Forest Service; and the United States of America (hereafter collectively referred to as the "Federal Defendants").  Oral argument was heard on February 4, 2008.

The FAC alleges "subject matter jurisdiction under 28 U.S.C. §§ 1346(f) and 2409(a) [sic] (quiet title to real property in which the United States claims an interest), and 28 U.S.C. § 1361 (action to compel officer, employee, or agency of United States to perform a duty)."

The FAC is 46 pages long, contains twelve causes of actions, alleges extensive historical and factual background, cites and quotes statutes and cases, and attaches 305 pages of exhibits. HGR is the private owner of an 83-acre parcel of real property located in Mariposa County and surrounded on all four sides by federal land, with the Yosemite National Park, as its eastern boundary and Stanislaus National Forest as its northern, southern and western boundaries.  HGR brings this suit to gain more direct vehicle access to the Yosemite Valley Floor over two county-owned roads.  It alleges that it is entitled to use two Mariposa County-owned roads that traverse federal land, the "Coulterville Road" and the "Crane Flat Road," from points leaving HGR's property to their alleged intersection with State Highway 120. The DOI and NPS take the position that there are no such road

2

segments leading to the State Highway 120 and therefore, there is no vehicular access from HGR to the Yosemite Valley Floor.  HGR alleges that it is entitled to use and improve the roads and seeks to (1) enforce R.S. 2477 rights of way to the two roads, (2) enforce easement rights appurtenant to HGR's 1888 Land Patent issued to Hazel Green in 1888, and (3) enforce rights specifically recognized by the State of California in streets and highways as a private easement or other right in, to, or over the disputed lands.  The FAC alleges at paragraph 6:

> 6.  HGR hereby brings this suit to (i) enforce the R.S. 2477 rights of way to the Crane Flat Road and to the Coulterville Road and to each separate intersection with the Big Oak Flat Road, (ii) to enforce the easement rights appurtenant to the Patent of Hazel Green in 1888, and (iii) enforce rights specifically recognized by the State of California in streets and highways as a private easement or other right in, to, or over the lands subject to the street or highway, regardless of the manner in which the private easement or other right was acquired.  These roads, and their underlying easements, remain intact today and can be utilized and appropriately improved to accommodate vehicular traffic between Hazel Green and the Big Oak Flat Road where each of the Crane Flat Road and the Coulterville Road, separately and independently, intersects with the realigned Big Oak Flat Road.

HGR was acquired by Hazel Green Ranch, LLC in 1988.  Although Paragraphs 16-34 of the FAC, captioned "Hazel Green Ranch Recent Background," detail various negotiations by representatives of Hazel Green Ranch and officers and agencies of the United States concerning the proposed development of Hazel Green Ranch, they do

not appear to be relevant to the resolution of the motions to dismiss.  Paragraphs 35-60 of the FAC, captioned "Hazel Green: Historical Facts", allege in pertinent part:

> 35.  On June 30, 1864, the United States Congress granted certain portions of the Sierra Nevada Mountains known as the Yosemite Valley and as the Mariposa [sic] Big Tree Grove to the State of California 'to be managed by the Governor of the State, with eight other commissioners.'  Chap. CLXXIV of the Statutes at Large, passed at the 38th Congress, Session 1.
>
> 36.  The Grant was accepted on April 2, 1866, and the Commissioners were appointed by the Accepting Act.  See Chapter DXXXVI of the Statutes of California, passed at the Sixteenth Session of the Legislature, 1865-6.
>
> 37.  The Commissioners, in order to encourage development of roads which would lead to Yosemite Valley, 'did offer to grant franchises for the construction of roads within the grant, in return for which the builders would be authorized to collect tolls for use of their rights-of-way.'  (See Exhibit 10 at p. 114.)
>
> 38.  As a result, two different companies were formed competing to build the first road to Yosemite Valley.  Both would build their roads on primarily federal property which had not been 'reserved for public uses.'  In 1868 a group was formed to construct what is now known as the 'old' Big Oak Flat Road ('old' Highway 120), and obtained in 1869 exclusive rights from 'the Yosemite Board of Commissioners to build a wagon road within the Yosemite Grant, entering from the north side of the Valley.'  Although the road was built, it was not built within the time limits set by the Yosemite Board of Commissioners and the group lost its rights to exclusivity.  The second group, known as the Coulterville and Yosemite Turnpike Company was formed to 'build a wagon road from Bower Cave through Hazel Green and Crane Flat to an unspecified point on the boundary

4

line of the Yosemite Grant.' (<u>See</u> Exhibit 10 at p. 116.) Once they reached Crane Flat, 'they apparently intended to connect with the Big Oak Flat Road and share its route into the Valley. (<u>See</u> <u>id</u>. at p. 117.)

39. In 1872, a new owner acquired the Coulterville and Yosemite Turnpike Company, learned of the discovery of the Merced [sic] Grove of Trees, acquired the expired exclusive rights from the Yosemite Board of Commissioners, and changed the route of the road so that the right of way descended from 'Hazel Green, elevation 5,665 feet, ... south through the Merced [sic] Grove of Big Trees' and headed down into the Valley instead of utilizing the road to Crane Flat.

40. However, the company constructing the Big Oak Flat Road became rejuvenated. Although it could not obtain exclusive rights from the Yosemite Board of Commissioners, it persuaded the California legislature to allow its road to go into the Valley Floor notwithstanding the Coulterville group's exclusive rights. (<u>See</u> Exhibit 10 at pp.122-125.)

41. The Coulterville and Yosemite Turnpike Company commenced regularly scheduled stage service on the Coulterville Road, through Hazel Green, on June 18, 1874. The Big Oak Flat Road commenced service on July 17, 1874, with 'a caravan of fifty-two vehicles, trailing nearly a mile back along the road.' (<u>See</u> Exhibit 10 at p. 129.) Therefore, as of approximately mid-1874, there were two public highways (and one connecting highway) connected to Hazel Green. Each of these constructed roadways was an R.S. 2477 highway, and Hazel Green was connected to each with traffic passing from Coulterville through Hazel Green to the Valley Floor, either on the Coulterville Road through the Merced [sic] Grove of Trees or on the Crane Flat Road to the Big Oak Flat Road.

42. On October 10, 1888, following James Halstead's 14 years of occupancy of Hazel Green (from 1874 to 1888) the 120-acre tract was patented by Certificate No. 8654 by which

5

the United States of America, 'in consideration of the premises, and in conformity with the several Acts of Congress in such case made and provided, have given and granted and by these presents do give and grant, unto the said James Halstead and to his heirs, the said Tract above described: To have and to hold the same, together with all the rights, privileges, immunities, and appurtenances, of whatever nature thereto belonging unto the said James Halstead and to his heirs and assigns forever.'  At that time, the Coulterville Road and the Crane Flat Road were in existence and utilized by the owners of the roads, their visitors, and people traversing them through Hazel Green, so that Hazel Green had valid existing private easements to utilize these highways, and these easements were specifically granted to Mr. Halstead 'and to his heirs and assigns forever' by the United States.

43.  On October 1, 1890, pursuant to 26 Stat. 659, Congress expanded certain forest reservations, including a major portion of land which would become part of Yosemite National Park (and was at that time referred to as Yosemite Forest Reserve).  The Act of October 1, 1890 expressly provided that 'nothing in this act shall be construed as affecting any bona-fide entry of land made within the limits above described under any law of the United States prior to the approval of this act.'

44.  Stanislaus National Forest was established on February 22, 1897.

45.  On April 28, 1904 the Congress had directed the Secretary of the Interior to 'examine the conditions and situations in the United States Yosemite Park in the State of California.'  On December 13, 1904 the Report of the Yosemite Park Commission (established by DOI) and the Letter from the Secretary of the Interior were printed as Senate Document No. 34 ('the Report').

46. The Report set forth the existence of the following roads:

Big Oak Flat Road - Name of Company

Big Oak Flat and Yosemite Turnpike Road Company; incorporated January 20, 1871; road completed in 1874; original length, 33 miles; State of California in 1886 bought up 3 miles within the grant; length in present national park, 19 miles.

Coulterville Road - Name of company

Coulterville and Yosemite Turnpike Company; date of incorporation apparently in 1870; road completed and opened to travel June 17, 1874, being the first or pioneer road into the valley; original length, 31 miles; in 1885-1887 State purchased the 4 miles east of the 'blacksmith shop;' a branch was built from Hazel Green to Crane Flat on Big Oak Flat road, a distance of 4.8 miles, making total length owned by company 31.8 miles, of which 24 miles is within the national park.

(See Exhibit 11.)

47.  In the early 1900s, Hazel Green was sold to the Curry family, founders of Camp Curry in Yosemite Valley, and the entire 120-acre property remained in the Curry family's hands until 1938.

48.  In 1905, California re-ceded and re-granted to the United States the 'Yosemite Valley' and the 'Mariposa [sic] Big Tree Grove'.  Cal. Stat. 1905, c.60, p. 54.  The re-cession and re-grant stated: 'Provided, however, that the re-cession and re-grant hereby made shall not affect vested rights and interests of third persons.'  Thus, all of the rights of Hazel Green remained, including the right to have access to the Valley floor.

49.  In 1911, the Mariposa County Board of Supervisors declared various segments of the Coulterville to Yosemite Road to be free public highways on which no tolls could be charged.  (See Exhibit 12.)  When the federal government subsequently sought to purchase the entire Coulterville to Yosemite Road from Mariposa County, the County refused to sell.

7

(See Exhibit 13 at p. 7.)  The federal
government thereafter conducted maintenance
on the road, and even paved portions of it in
the 1960s.  (See id.)

50.  Cars were banned from Yosemite National
Park only from approximately 1907 thru [sic]
1912.  In 1913 through 1915, cars were
allowed to enter the Park from the North and
then only (i) from Coulterville Road, through
Hazel Green down through the Merced [sic]
Grove of Trees and (ii) from the Big Oak Flat
Road but only by turning back to Hazel Green
on the Crane Flat (referred to by the Park
Service as Crane Flat Cut-off Road) and then
proceeding south on the Coulterville Road
from Hazel Green thru [sic] the Merced [sic]
Grove.  These conditions were set forth in
Department of Interior Yosemite National Park
rules and regulations for the years involved.

51.  In 1916, Washington B. Lewis, Supervisor
of Yosemite National Park, 'sent the
Superintendent of National Parks a list of
all existing roads and trails within the
limits of the park:

     (1) Government-Owned Roads

     ... Big Oak Flat Rd. Between El
     Capitan Bridge to park line near
     Tuolumne Big Trees 13.90 miles

     (2) Non-Government-Owned Roads

     ... Coulterville Rd Between
     Yosemite Valley & Hazel Green 12.00
     miles

     ... Crane Flat Cut-off Rd. Between
     Crane Flat & Hazel Green (Mariposa
     Co. Rd.) 3.00 miles'

(See Exhibit 14 at pp. 531-532.)

52.  The 1917 Report of the Director of the
National Park Service contained an Automobile
Map of Yosemite National Park showing the Big
Oak Flat Road, the Crane Flat Cut-off Road,
the Coulterville Road, and the 'Auto Checking
Station' location at each of these three

8

roads.   (<u>See</u> Exhibit 14 at p. 526.)

53.  In 1919, California enacted a cession law stating that '[e]xclusive jurisdiction shall be and the same is hereby ceded to the United States over and within all of the territory which is now or may hereafter be included in those several tracts of land in the State of California <u>set aside and dedicated for park purposes</u> by the United States as "Yosemite National Park."' (Emphasis added.)

54.  In 1923, the Curry family had Hazel Green surveyed by a licensed Land and U.S. Minerals surveyor.  The survey showed the Coulterville Road and Crane Flat Road Cut-off [sic] as each exited the Hazel Green property to the south and to the east.  Both of these roads, including the intersection of the Crane Flat Road Cut-off [sic] with the Big Oak Flat Road, appear on the Map of Yosemite National Park, 1929 (<u>see</u> Exhibit 14 at pp.566-567), Map of Yosemite National Park, 1939 (<u>see</u> Exhibit 14 [Illustration 217]), and Guide Map of Yosemite National Park, CA 1968 (<u>see</u> Exhibit 14 [Illustration 243]).

55.  In 1937, Congress authorized the Secretary of the Interior to acquire several sections of privately owned land adjacent to certain of the boundaries of Yosemite National Park.  (July 9, 1937, chapter 469, Secs. 1, 2, 50 Stat. 485, 486, codified at 16 U.S.C. § 47e).  This proposed acquisition of private lands covered virtually all of the land thru [sic] which the Crane Flat Road passed from Hazel Green to Crane Flat, and substantially all of the land that the Mariposa County Coulterville Road passed thru [sic] on its route to the Merced [sic] Grove of Trees as it descended to the Valley Floor. It was the acquisition authorized by this 1937 statute that enabled the realignment of the Big Oak Flat Road from what would become the new Northern Entrance to the Park, to Crane Flat (constructed in 1969), and from Crane Flat to the Valley Floor (constructed in 1940).  One of those parcels was the 'northwest quarter of the northeast quarter section 15, township 2 south, range 19 east'

9

which was the easternmost 40 acre parcel of
Hazel Green.  The remainder of the parcels
consisted of the land, once actually
acquired, and including this Hazel Green
parcel, to which the Big Oak Flat Road
(Highway 120) would be relocated.  (See
Exhibit 14 at pp. 931-932.)  The statute
further provided

> 'when title to the aforesaid
> privately owned lands has been
> vested in the United States, all of
> the lands described in this section
> shall be added to and become a part
> of the Yosemite National Park and
> shall be subject to all laws and
> regulations applicable thereto;
> *provided, that nothing in this*
> *section or section 47f of this*
> *title shall be construed to affect*
> *any valid existing rights.*'
> (Emphasis added).

The maps described above show that this
provision applied to the Crane Flat Cut-off
Road, the Coulterville Road, and to each of
the easement rights of Hazel Green.

56.  As a result, in 1938, at the request of
the United States Government, and pursuant to
July 9, 1937, Chapter 469, Secs. 1, 2, 50
Stat. 485, 486, codified as 16 U.S.C. Chap.
1, Subchap. VI, Sec. 47e, Mrs. Curry sold the
property's eastern 40 acres to the federal
government in conjunction with the
government's plans for a realignment of
Highway 120 (Big Oak Flat Road).  (See
Exhibits 15 and 16.)  The recorded deed for
the transfer of the eastern 40 acres shows
that the parties recognized that existing
rights-of-way crossed Hazel Green, and that
the transfer would not impact those rights.
The deed explicitly stated that it did 'not
cover any right, title, or interest which the
State of California may have in [the] lands
for road, highway or other purposes.'  (See
Exhibit 17.)  This specifically complied with
the provisions of the July 9, 1937 statute
that 'nothing in this section or section 47f
of this title shall be construed to affect
any valid existing rights.'

10

57. As the NPS and DOI specifically have reported: one of the purchases authorized by the July 9, 1937 Act was to acquire certain lands known as the Carl Inn Sugar Pine Area. The government started a condemnation suit. That suit was settled and all of the lands were purchased: 'the Tioga Road crossed its north end, the Big Oak Flat Road crossed the central portion, and the Crane Flat road crossed the southern part. *All highways were heavily used by the general public in going to and from the park*. After a year and a half of negotiations with the Yosemite Sugar Pine Lumber Company, owner of most of the tract, an agreement was reached on price. The purchase was consummated early in 1939.' (See Exhibit 14 at pp. 931-932 [emphasis added].) The recorded deed for all of this land was specifically 'subject to (A) all existing easements and rights-of-way for public roads and/or highways and all other recorded easements and rights of way [sic]; (B) all reservations in United States patents respecting said lands.' (See Exhibit 17.) It is clear that until 1939, all of the lands on which the Crane Flat Road and the Coulterville Road segments now intersect with rerouted Big Oak Flat Road were in private ownership and that the public and the owners of the lands were utlizing those roads as public and private rights-of-way. The United States never acquired those rights-of-way and they are in existence and unimpaired today.

58. The Park Service did not take advantage of the purchase of the various land parcels until much later. The Big Oak Flat Road was rerouted from Crane Flat south to the Valley Floor in 1940. But the new segment of the Big Oak Flat Road which which now runs from the Big Oak Flat Entrance (the North Entrance) of the Park, past Hazel Green and to the 1940 rerouted Road at Crane Flat was not constructed until 1969. Throughout the period following the sale of the eastern 40 acres, the owners of Hazel Green continued to utilize both the Coulterville Road and the Crane Flat Road Cut-off [sic]. Subsequent to the 1969 realignment of the Big Oak Flat Road, as to Hazel Green's access, both of such roads became much shorter segments

11

intersecting with the realigned Big Oak Flat Road.  The Crane Flat Road decreased in length from the 4.8 miles reported in the report of the DOI Yosemite Commission in 1904 to 3,700 feet.  The Coulterville Road segment (although still a county highway of 12.00 miles as stated in the 1916 DOI supervisor of Yosemite National Park report down to the Yosemite Valley Floor) became an 11,300 foot road to its intersection with the Big Oak Flat Road.  United States Geological Survey Maps continued to show both roads running from Hazel Green.  (See Exhibit 18.)

59.  In 1985, Mariposa County recorded a highway easement through Hazel Green (required of the owners of Hazel Green as a condition of subdividing Hazel Green into two parcels).  This recorded easement is 60 feet in width and was based on County records regarding the already-existing public right-of-way, described as 'Road # 51 ... also known as Old Coulterville Yosemite Road' that intersected with Highway 120 southeast of Hazel Green.  (See Exhibits 19 and 20.)

60.  Mariposa County retains ownership of the Coulterville Road as a designated county road.  (See Exhibit 21.)  The Coulterville Road appears on DOI maps since 1904.  Numerous editions of these maps are attached hereto.  For example, the Coulterville Road is on the back cover (including the portion going through Hazel Green) of the Yosemite Road Guide (May 2005 printing of the 1989 revision) which is currently available for purchase in Yosemite National Park.  (See Exhibit 22.)  This is the eighth edition going back to the first edition in 1942.  Every edition of the Yosemite Road Guide has the Coulterville Road in it.  The latest edition of the National Geographic Map of Yosemite National Park, made 'in cooperation with the National Park Service,' has the very same Coulterville Road as it runs through Hazel Green and continues to its intersection with Highway 120 (Big Oak Flat Road).  (See Exhibit 23.)  The Stanislaus National Forest Route Inventory Map, January 18, 2006, which is the latest edition, has the Coulterville Road running through Hazel Green to its

intersection with the Big Oak Flat Road.
(<u>See</u> Exhibit 24.)  Even Google and Mapquest
today will print out the 'Old Yosemite Road'
as it runs through Hazel Green (whose address
is 12878 Old Yosemite Road, Mariposa CA) to
the intersection with Highway 120.  (<u>See</u>
Exhibit 25.)  The Crane Flat segment also
appears on DOI generated maps from the
original maps to and including that USGS map
of 1976, photoinspected in 1988.

The FAC then sets forth a section captioned "R.S. 2477

Rights: An Overview", which consists of quotations from the

statute, legislative history and cases supporting HGR's view of

the law in Paragraphs 61-75.  These paragraphs of the FAC are not

set forth at this juncture.  Paragraphs 76-87 of the FAC,

captioned "General Allegations Regarding Quiet Title Action" are

set forth even though they also include case citations not

included:

76.  This is an action in part, under 28
U.S.C. 2409a to quiet title to two R.S. 2477
rights-of-way in the County of Mariposa,
California, the Coulterville Road and the
Crane Flat Road.

77.  As described above, the two roads were
constructed in the 1870s across unreserved
federal lands and have been used as highways
since then as evidenced by the multitude of
maps and documents demonstrating the use and
existence of the roads.

78.  HGR holds its rights-of-way interests in
the roads at issue without necessity of any
approval of the federal government ...  This
right-of-way interest entitles HGR to pass
over the easements and to make reasonable and
necessary improvements within the boundaries
of the right of way ....

79.  As the owner of Hazel Green, HGR further
holds appurtenant rights to maintain
continued public access to their property

13

across any public highway that abuts their
property, i.e., Highway 120 ... In other
words, HGR, as the owner of Hazel Green, has
appurtenant legal rights in any R.S. 2477
public highway easement that abut Hazel Green
and link it to the adjoining Highway 120.

80.   These rights are not limited to allowing
access by HGR itself, but include a right to
allow other members of the public to use the
easements between Hazel Green and Highway 120
....

81.   Notwithstanding the above, Defendants
have asserted that HGR does not have R.S.
2477 rights over the two roads at issue and
that access to the roads has been blocked by
the NPS.  (<u>See</u> Exhibit 2 [stating that
actions to close the Crane Flat Road and the
Coulterville Road include 'erecting gates'].)

82.   The Defendants' description is
inaccurate, and the only gate which has been
erected has been erected on the Coulterville
Road.  HGR is informed and believes that NPS,
however, gave keys to the gate to prior
owners, as well as a number of private
citizens.

83.   Given that the Coulterville Road and
Crane Flat Road have been maintained and
utilized by the County and public to the
present date, the statute of limitations for
this Quiet Title action has not expired.

84.   All county highways continue to be
highways until abandoned by affirmative
action of the court ....

...

87.   Neither the County of Mariposa nor HGR
has expressed any intent to abandon the R.S.
2477 rights-of-way at issue ... [T]he County
of Mariposa has specifically refused to
relinquish the highway easements and has
actually recorded the Coulterville to
Yosemite Road right-of-way ... HGR relied on
the existence of the R.S. 2477 right-of-ways
when it purchased Hazel Green.  In testimony
before NPS during the adoption of the 2000

14

1

2

3

4

5

6

7

               **Yosemite Vally Plan, HGR repeatedly made references to its R.S. 2477 rights in the Coulterville Road and Crane Flat Roads [sic] and its willingness to build the 300 meter road from Highway 120 to the northeastern boundary of Hazel Green.  NPS never refuted any of HGR's contentions, nor did it ever indicate that HGR abandoned any such R.S. 2477 rights.  HGR's first indication that it had allegedly abandoned such right was the November 30, 2006 letter wherein DOI rejected HGR R.S. 2477 rights.**

8

9

      **The FAC alleges twelve causes of action that can be grouped into four primary claims:**

10

11

      **(1) action to quiet title to right-of-way easements pursuant to R.S. 2477 (for both the Coulterville Road and Crane Flat Road);**

12

13

      **(2) action to quiet title to private easements (for both the Coulterville Road and Crane Flat Road);**

14

15

16

      **(3) action for declaratory judgment to recognized right-of-way easements pursuant to R.S. 2477 and private easements (for both the Coulterville Road and Crane Flat Road); and**

17

18

19

20

      **(4) action for writ of mandamus to compel access to right-of way easements pursuant to R.S. 2477 and private easements (for both the Coulterville Road and Crane Flat Road).**

21

22

23

24

      **Federal Defendants and Defendant Intervenors Sierra Club, Natural Resources Defense Council, and The Wilderness Society ("Defendant Intervenors") in their respective motions to dismiss challenge all twelve causes of action and seek to dismiss the entire lawsuit.**

25

26

      **The First Claim for Relief in the FAC is for "quiet title in**

15

a right-of-way easement across federal public lands pursuant to

R.S. 2477 - Coulterville Road".  After incorporating all

preceding allegations, the First Claim for Relief alleges with

respect to the Coulterville Road and right-of-way:

> 89. ... [T]he Coulterville Road, having a
> history of over 130 years, a Mariposa County
> designated and recorded road, runs from Hazel
> Green to its intersection with the rerouted
> Big Oak Flat Road just west of the Merced
> Grove [sic] parking areas ....

> 90.  Plaintiff brings this action in order to
> enjoy unfettered use of, to make improvements
> to, and to have the right to continuously
> improve and maintain the Coulterville Road
> segment leading from Hazel Green to and
> through the intersection with the Big Oak
> Flat Road, in each and every instance as
> required by all applicable (based on the
> legal use of the real property constituting
> Hazel Green from time to time) state and
> county laws.

> 91.  Judicial relief is necessary and
> appropriate, pursuant to the Quiet Title Act,
> in order to recognize that such right-of-way
> exists, to ensure access at all times over
> the roads at issue, and to perform all
> necessary and required improvements and
> maintenance without unlawful hindrance by
> Defendants.

The Second Claim for Relief is captioned "Quiet Title in a

Right-of-Way Across Federal Public Lands Pursuant to R.S. 2477 -

Crane Flat Road."  After incorporating all preceding allegations,

the Second Claim for Relief similarly alleges with respect to the

Crane Flat Road:

> 93. ... [T]he Crane Flat Road has run
> directly east from Hazel Green to the point
> at which it now intersects with the rerouted
> Big Oak Flat Road for over 130 years.

94.   Plaintiff brings this action in order to enjoy unfettered use of, to make improvements to, and to have the right to continuously improve and maintain the Crane Flat Road segment leading from Hazel Green to and through the intersection with the Big Oak Flat Road, in each and every instance as required by all applicable (based on the legal use of the real property constituting Hazel Green from time to time) state and county laws.

95.   Judicial relief is necessary and appropriate, pursuant to the Quiet Title Act, in order to recognize that such right-of-way exists, to ensure access at all times over the roads at issue, and to perform all necessary and required improvements and maintenance without unlawful hindrance by Defendants.

The Third Claim for Relief is captioned "Quiet Title in Private Easement Over the Coulterville Road".  After incorporating all preceding allegations, the Third Claim for Relief alleges in pertinent part with respect to Coulterville Road and private easements:

97.   It is well-settled that owners of land in California have appurtenant rights, akin to rights in a private easement, to maintain continued public access to their property across any public highway ....

98.   The Coulterville Road has been used for egress and ingress to Hazel Green since its construction in the 1870s and is a private easement.  The easement includes the right to improve it to applicable state and county highway standards of use, as such standards evolve, and as the mode of use changes on the properties having the right to use the easement.  The right of use includes the right to allow its patrons and members of the public to use the easement between Hazel Green and the rerouted Big Oak Flat Road ....

99.   Plaintiff brings this action in order to

17

1    enjoy unfettered use of, to make improvements
     to, and to have the right to continuously
2    improve and maintain the Coulterville Road
     segment leading from Hazel Green to and
3    through the intersection with the Big Oak
     Flat Road, in each and every instance as
4    required by all applicable (based on the
     legal use of the real property constituting
5    Hazel Green from time to time) state and
     county laws.

6
     100.   Judicial relief is necessary and
7    appropriate, pursuant to the Quiet Title Act,
     in order to recognize that such right-of-way
8    exists, to ensure access at all times over
     the roads at issue, and to perform all
9    necessary and required improvements and
     maintenance without unlawful hindrance by
10   Defendants.

11        The Fourth Claim for Relief is captioned "Quiet Title in

12   Private Easement over the Crane Flat Road".   After incorporating

13   all preceding allegations, the Fourth Claim for Relief alleges

14   with respect to Crane Flat Road and private easements:

15        102.   The Crane Flat Road has been used for
          egress and ingress to Hazel Green since its
16        construction in the 1870s and is a private
          easement.   The easement includes the right to
17        improve it to applicable state and county
          highway standards of use, as such standards
18        evolve, and as the mode of use changes on the
          properties having the right to use the
19        easement.   The right of use includeds the
          right to allow its patrons and members of the
20        public to use the easement between Hazel
          Green and the rerouted Big Oak Flat Road ....

21
          103.   Plaintiff brings this action in order
22        to enjoy unfettered use of, to make
          improvements to, and to have the right to
23        continuously improve and maintain the
          Coulterville Road segment leading from Hazel
24        Green to and through the intersection with
          the Big Oak Flat Road, in each and every
25        instance as required by all applicable (based
          on the legal use of the real property
26        constituting Hazel Green from time to time)

                                  18

state and county laws.

>104.  Judicial relief is necessary and
>appropriate, pursuant to the Quiet Title Act,
>in order to recognize that such right-of-way
>exists, to ensure access at all times over
>the roads at issue, and to perform all
>necessary and required improvements and
>maintenance without unlawful hindrance by
>Defendants.

The Fifth, Sixth, Seventh and Eighth Claims for Relief are for declaratory judgment pursuant to 28 U.S.C. § 2201(a), to recognize Plaintiff's right-of-way easements pursuant to both R.S. 2477 and HGR's alleged private easements in Coulterville Road and Crane Flat Road.

The Ninth, Tenth, Eleventh and Twelfth Claims for Relief are for writs of mandamus to compel Defendants to provide access to the rights-of-way easements pursuant to R.S. 2477 and HGR's alleged private easements pursuant to R.S. 2477.

The Federal Defendants move pursuant to Rule 12(b)(1), Fed. R. Civ. Proc., to dismiss for lack of subject matter jurisdiction on the ground that the United States has not waived its sovereign immunity under the Quiet Title Act.  Defendant Intervenors move pursuant to Rule 12(b)(6), Fed. R. Civ. Proc., to dismiss for failure to state a claim upon which relief can be granted.  The grounds asserted in both motions are substantially identical, it is unnecessary to address duplicative matters brought by Defendant Intervenors pursuant to the Court's prior order.[1]

---

[1]  **The Amended Memorandum Decision and Order allowed the Defendant Intervenors to intervene on the following grounds:**

19

A.   <u>GOVERNING STANDARDS</u>.

    1.   <u>Rule 12(b)(1) and Sovereign Immunity</u>.

Rule 12(b)(1), Federal Rules of Civil Procedure, provides for dismissal of action for "lack of jurisdiction over the subject matter."

Faced with a Rule 12(b)(1) motion, a plaintiff bears the burden of proving the existence of the court's subject matter jurisdiction. *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996). A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears. *General Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 968-969 (9th Cir. 1981). A challenge to subject matter jurisdiction may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). As explained in *Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004), *cert. denied,* 544 U.S. 1018 (2005):

> In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves,

> conditioned upon intervenors strictly limiting their participation to claims or defenses not already advanced by the government.

(Doc. 34) Hazel Green complains that Defendant Intervenors' motion to dismiss fails to raise any issues materially distinct from those raised by the Federal Defendants. Defendant Intervenors reply that they have complied with the Court's Order by consulting with the Federal Defendants and avoiding duplicative arguments. However, other than the fact that the Federal Defendants base their motion on Rule 12(b)(1) and Defendant Intervenors base their motion on Rule 12(b)(6), there is no substantive difference between the two motions.

would otherwise invoke federal jurisdiction.
373 F.3d at 1038.  In resolving a factual attack on jurisdiction,
the district court may review evidence beyond the complaint
without converting the motion to dismiss into a motion for
summary judgment.  *Savage v. Glendale Union High School,* 343 F.3d
1036, 1039 n.2 (9th Cir. 2003), *cert. denied*, 541 U.S. 1009
(2004); *McCarthy v. United States,* 850 F.2d 558, 560 (9th Cir.
1988), *cert. denied*, 489 U.S. 1052 (1989).  "If the challenge to
jurisdiction is a facial attack, *i.e.*, the defendant contends
that the allegations of jurisdiction contained in the complaint
are insufficient on their face to demonstrate the existence of
jurisdiction, the plaintiff is entitled to safeguards similar to
those applicable when a Rule 12(b)(6) motion is made."  *Cervantez
v. Sullivan*, 719 F.Supp. 899, 903 (E.D. Cal. 1989), *reversed on
other grounds*, 963 F.2d 229 (9th Cir. 1992).  "The factual
allegations of the complaint are presumed to be true, and the
motion is granted only if the plaintiff fails to allege an
element necessary for subject matter jurisdiction."  *Id.*

The United States, as a sovereign, is immune from suit
unless it has waived its immunity.  *Department of Army v. Blue
Fox*, *Inc.*, 525 U.S. 255, 260 (1999); *United States v. Mitchell,*
445 U.S. 535, 538 (1980).  A court lacks subject matter
jurisdiction over a claim against the United States if it has not
consented to be sued on that claim.  *Consejo de Desarrollo
Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173
(9th Cir. 2007).  "When the United States consents to be sued,

21

the terms of its waiver of sovereign immunity define the extent of the court's jurisdiction." *United States v. Mottaz*, 476 U.S. 834, 841 (1986). A waiver of sovereign immunity by the United States must be expressed unequivocally. *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33 (1992). As a general matter, purported statutory waivers of sovereign immunity are not to be liberally construed. *Id.*, at 34.

> 2. <u>Quiet Title Act</u>.

28 U.S.C. § 1346(f) provides that "[t]he district courts shall have exclusive original jurisdiction of civil actions under section 2409a to quiet title to an estate or interest in real property in which an interest is claimed by the United States."

28 U.S.C. § 2409a provides in pertinent part:

> (a) The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property *in which the United States claims an interest* ....
>
> ...
>
> (d) The complaint shall set forth with particularity the nature of the right, title, or interest which the plaintiff claims in the real property, the circumstances under which it was acquired, and the right, title, or interest claimed by the United States.

28 U.S.C. § 2409a (emphasis added).

This case concerns two historical county roads that traverse federal property and connect with Highway 120 (also known as the "Big Oak Flat Road"). These two roads are known as "Coulterville Road" and the "Crane Flat Road", collectively the "Roads."

Federal Movants argue that the limited waiver of sovereign immunity provided under the Quiet Title Act requires an ownership interest. Federal Movants argue that HGR has no interest in title in a right-of-way and an easement under R.S. 2477 and their interest is not sufficient to support a quiet title action against the United States with its limited waiver of sovereign immunity under the Quiet Title Act. Movants also argue that even under an alleged right-of-way, as an abutting landowner to a public highway, Plaintiff's alleged title is insufficient to support a quiet title action as all public highways in California are held by the state and public entities and California law does not allow any member of the public to quiet title in a public road against the United States.

## 3. R.S. 2477

R.S. 2477, 43 U.S.C. § 932 (1970), enacted in 1866, provided that "[t]he right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted." R.S. 2477 was repealed in 1975 by the Federal Land Policy and Management Act (FLPMA), but the FLPMA specifically provided in pertinent part:

> Nothing in this subchapter shall have the effect of terminating any right-of-way or right-of-use heretofore issued, granted, or permitted.

43 U.S.C. § 1769(a).

Movants argue that HGR has no interest in title to the alleged R.S. 2477 rights-of-way and, therefore, cannot maintain a

23

1   right of action under the Quiet Title Act.[2]  Movants contend that

2   HGR does not allege that it owns the rights-of-way at issue but,

3   rather, asserts that HGR has the right of access to the rights-

4   of-way along with other members of the public.  Movants argue

5   that the FAC does not expressly seek to quiet title in the

6   alleged rights-of-way, but asks the Court to "recognize" and

7   "enforce" the rights-of-way to vindicate HGR's alleged right to

8   "unfettered use ... make improvements ... and to have the right

9   to continuously improve and maintain" the Coulterville and Crane

10  Flat Roads.

11      Movants cite cases holding that the "right of an individual

12  to use a public road is not a right or interest in property for

13  purposes of the Quiet Title Act."  *Long v. Area Manager, Bureau*

14  *of Reclamation*, 236 F.3d 910, 915 (8th Cir. 2001), *citing*

15  *Kinscherff v. United States*, 586 F.2d 159, 160 (10th Cir. 1978).

16  Movants further argue that even if HGR had alleged an ownership

17  interest in the rights-of-way, HGR could not proceed under the

18  Quiet Title Act because individual members of the public cannot

19  hold title to a public road or highway.

20                          1. <u>DISCUSSION</u>

21      A.   <u>JURISDICTION</u>

22      Federal Defendants move to dismiss for lack of subject

23  matter jurisdiction under Rule 12(b)(1).  Plaintiff asserts the

24  _____

25      [2] **The Federal Defendants deny HGR's allegations that (1) the
    Coulterville Road ever intersected with Highway 120 and that (2)**
26  **the County of Mariposa owns the claimed rights-of-way.**

Court's jurisdiction pursuant to 28 U.S.C. § 1346(f). "The district courts shall have exclusive original jurisdiction of civil actions under [28 U.S.C. § 2409a] to quiet title to an estate or interest in real property in which an interest is claimed by the United States." 28 U.S.C. § 1346(f). Accordingly, jurisdiction pursuant to § 1346(f) is only proper where the conditions of 28 U.S.C. § 2409a, the QTA, are satisfied. The Quiet Title Act is the exclusive means by which adverse claimants can challenge the United States' title to real property, if the United States has an interest in disputed property, the waiver of sovereign immunity must be found, if at all, within the Quiet Title Act. *Alaska v. Babbitt*, 38 F.3d 1068, 1073 (9th Cir. 1994). Therefore, if the Quiet Title Act does not apply, the district court does not have jurisdiction over the claim. *Leisnoi, Inc. v. U.S.*, 170 F.3d 1188, 1191 (9th Cir. 1999).

Two conditions must exist before a district court can exercise jurisdiction over an action under the Quiet Title Act: (1) the United States must claim an interest in the property at issue, and (2) there must be a disputed title to real property. 28 U.S.C. § 2409a(a, d); *Id*. ("These subsections make it clear that two conditions must exist before a district court can exercise jurisdiction over an action under the Quiet Title Act: (1) the United States must claim an interest in the property at issue, and (2) there must be a disputed title to real property. If either condition is absent, the Act in terms does not apply

and the district court lacks jurisdiction to entertain the action.")

B.   **Quiet Title Action: Right-of-Way Easement pursuant to R.S. 2477 (First and Second Causes of Action)**

HGR's first and second cause of action seek, pursuant to the Federal Quiet Title Act (the "Quiet Title Act" or "QTA"), 28 U.S.C. § 2409a, recognition and enforcement of its claimed right to use two alleged roads-the so-called "Coulterville Road" and the "Crane Flat Road," public roads established by operation of R.S. 2477, 43 U.S.C. § 932 (*repealed by* Federal Land Policy Management Act of 1976 § 706(a), Pub.L. No. 94-579, 90 Stat. 2793)[3], that would connect its 83-acre inholding within Stanislaus National Forest to the Big Oak Flat Road in Yosemite National Park.  Plaintiff does not assert it is the owner of or has any claim to title to the real property over which the alleged rights-of-way are claimed, instead it alleges that Mariposa County owns the rights-of-way.

Federal Defendants argue that the Court is without subject matter jurisdiction to hear an action brought under the QTA where the plaintiff is a private party seeking only a right of access over a public road.  Federal Defendants argue the United States has only waived its sovereign immunity under the QTA for actions brought by plaintiffs who claim an interest in title to disputed real property.  Because Plaintiff's claims under the QTA are all

---

[3] R.S. 2477 granted a "right of way for the construction of highways over public lands, not reserved for public uses." 43 U.S.C. § 932.

dependent on a determination that county-owned R.S. 2477 rights-of-way exist over the claimed federal lands, Federal Defendants contend that the first and second cause of action must be dismissed for lack of subject matter jurisdiction.

The Eighth Circuit in *Long v. Area Manager, Bureau of Reclamation*, 236 F.3d 910, 915 (8th Cir. 2001), agreed with a Tenth Circuit case that the right to use a public road is not an interest in property proper for a QTA action: "We agree with the Tenth Circuit that the right of an individual to use a public road is not a right or interest in property for purposes of the Quiet Title Act. [citation omitted]  The proper plaintiff to challenge the condemnation of a public road is the governmental entity that owns the easement."  236 F.3d at 915 (a QTA action must fail if the plaintiff "does not claim a property interest to which title may be quieted"); *see also Friends of the Panamint Valley v. Kempthorne*, 499 F.Supp. 2d 1165, 1174 (E.D. Cal. 2007)(*Panamint*).  "If it [an interest] exists, it is vested in the public generally."  *Kinscherff v. United States,* 586 F.2d 159, 160 (10th Cir. 1978).  The court did note that plaintiff-property owners did not assert their interest as an easement or other similar right but as members of the public.  They further stated that "[m]embers of the public as such do not have a 'title' in public roads.  To hold otherwise would signify some degree of ownership as an easement."  *Id.; see also Sw. Four Wheel Drive Ass'n v. BLM,* 363 F.3d 1069, 1071 (10th Cir. 2004) (A four-wheel drive association filed suit seeking a judgment to

27

1  quiet title to alleged easements across government lands but

2  Court following *Kinscherff,* held that the association's claim was

3  indistinguishable from the one denied in *Kinscherff*).

4      As the Supreme Court has frequently held, "a waiver of

5  sovereign immunity is to be strictly construed, in terms of its

6  scope, in favor of the sovereign." *Department of Army v. Blue*

7  *Fox, Inc.*, 525 U.S. 255, 261 (1999); *United States v. Nordic*

8  *Village*, 503 U.S. 30, 34 (1992) (government's consent to be sued

9  is construed "strictly in favor of the sovereign,")  Under the

10 QTA, a plaintiff bringing suit is required to state "the nature

11 of the right ... or interest" that is asserted in the property at

12 issue.  *See* 28 U.S.C § 2409a(d).

13     The reasoning of the Tenth Circuit was found to be

14 "instructive, well-reasoned and persuasive," by Judge O'Neill of

15 this court in *Friends of Panamint Valley v. Kempthorne*, 499

16 F.Supp.2d 1165, 1175 (E.D. Cal. 2007)  There, plaintiffs were

17 owners of property near a national park and sought to assert

18 claims to quiet title and obtain right-of-way access to a road in

19 the national park they asserted was a public highway under R.S.

20 2477.  Plaintiffs asserted they had a right, as members of the

21 public, to use and maintain Surprise Canyon Road as a public

22 right of way pursuant to R.S. 2477.  Following the Tenth Circuit

23 decisions in *Kinscherff v. United States,* 586 F.2d 159, 160 (10th

24 Cir. 1978) and *Sw. Four Wheel Drive Ass'n v. BLM,* 363 F.3d 1069,

25 1071 (10th Cir. 2004), and Eighth Circuit in *Long v. Area*

26 *Manager, Bureau of Reclamation*, 236 F.3d 910, 916 (8th Cir.

2001), the district court held that Plaintiffs had not
demonstrated under federal or California law state law, they have
a right, interest or title to assert a claim against Federal
Defendants under the Quiet Title Act.  499 F.Supp.2d at 1177
("Plaintiffs' reliance on California law to discuss whether
Surprise Canyon Road is a public highway pursuant to R.S. 2477
does not demonstrate that they may bring a quiet title action.")
The *Panamint* decision also found that no case cited by Plaintiff
stands for the proposition that California case law would allow
for a quiet title action by a member of the public.  "Even if
California state law would allow a member of the public to bring
a quiet title action, this Court could not rely upon such law
where it would conflict with federal law."  *Id.* at 1177.

A District of Colorado case, *Fairhurst Family Assoc., LLC.*
*V. US Forest Service, Dept. of Agric*, 172 F.Supp.2d 1328 (D.Colo.
2001), held: "[a]n R.S. 2477 right-of-way does not, in fact, even
come into existence unless and until such a 'highway,' e.g.,
public road, is established. See R.S. 2477.  As an R.S. 2477
right-of-way cannot exist without the public road and visa versa,
the two are essentially synonymous in this context."  172
F.Supp.2d at 1332.

While *Kinscherff* suggests that the Quiet Title Act may allow
an individual to claim easement rights against the federal
government in certain circumstances, such as an "easement of
necessity" to access real property, *Kinscherff v. United States,*
586 F.2d 159, 161 (10th Cir. 1978), Hazel Green does not allege

such an ownership interest in their first and second cause of action.

Plaintiff argues that it is entitled to bring an action under the Quiet Title Act to quiet title on behalf of another, including on behalf of the public and the county. Plaintiff cites several circuit decisions in the Ninth Circuit and Seventh Circuit for support. However, the Ninth Circuit cases cited by Plaintiff, concern the exceptions to the Quiet Title Act, which are interpreted broadly, but the actual waiver of sovereign immunity is interpreted narrowly. *See Metropolitan Water Dist. v. United States*, 830 F.2d 139 (9th Cir. 1987); *Alaska v. Babbitt*, 38 F.3d 1068, 1074 (9th Cir. 1994). Any waiver of sovereign immunity must be strictly construed in favor of not waiving sovereign immunity. "The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress. A necessary corollary of this rule is that when Congress attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be strictly observed, and exceptions thereto are not to be lightly implied." *Block v. North Dakota*, 461 U.S. 273, 287 (1983). "The proper plaintiff to challenge the condemnation of a public road is the governmental entity that <u>owns</u> the easement." *Long v. Area Manager, Bureau of Reclamation*, 236 F.3d 910, 915 (8th Cir. 2001)(emphasis added).

Defendants 12(b)(1) motion to dismiss Plaintiff's first and second causes of action for lack of subject matter jurisdiction

30

is GRANTED WITHOUT LEAVE TO AMEND.

        **B.**    **Quiet Title Action: Private Easement (Third and Fourth Causes of Action)**

     Plaintiff contends that if its R.S. 2477 claims are dismissed, it also seeks an easement interest in the property as an abutting landowner and express grantee of private easement rights, unlike in *Friends of Panamint Valley v. Kempthorne*, 499 F.Supp.2d 1165, 1176-77 (E.D. Cal. 2007), as evidenced by the history of the building of the roads, HGR's uninterrupted existence since 1888 as a private property owner deriving from a patent issued by the United States.  Plaintiff asserts that it does not seek to quiet title as a member of the public, but rather as a holder of an easement, making *Panamint* inapplicable. (Doc. 42, Opposition, p. 21:19-24.)

     The Third Claim for Relief is captioned "<u>Quiet Title in Private Easement Over the Coulterville Road</u>".  After incorporating all preceding allegations, the Third Claim for Relief alleges in pertinent part:

          97.  *It is well-settled that owners of land in California have appurtenant rights, akin to rights in a private easement, to maintain continued public access* to their property across any public highway ....

          98.  The Coulterville Road has been used for egress and ingress to Hazel Green since its construction in the 1870s and *is a private easement*.  The easement includes the right to improve it to applicable state and county highway standards of use, as such standards evolve, and as the mode of use changes on the properties having the right to use the easement.  The *right of use includes* the *right to allow its patrons and members of the*

31

> *public to use* the easement between Hazel
> Green and the rerouted Big Oak Flat Road ....
>
> 100.   Judicial relief is necessary and
> appropriate, pursuant to the Quiet Title Act,
> in order to recognize that such right-of-way
> exists, to ensure access at all times over
> the roads at issue, and to perform all
> necessary and required improvements and
> maintenance without unlawful hindrance by
> Defendants.

Doc. 35, FAC, ¶¶ 97-8, 100 (emphasis added).

The Fourth Claim for Relief is captioned "Quiet Title in Private Easement over the Crane Flat Road".  After incorporating all preceding allegations, the Fourth Claim for Relief alleges in part:

> 102.   The Crane Flat Road has been used for
> egress and ingress to Hazel Green since its
> construction in the 1870s *and is a private
> easement*.  The easement includes the right to
> improve it to applicable state and county
> highway standards of use, as such standards
> evolve, and as the mode of use changes on the
> properties having the right to use the
> easement.  The *right of use* includes the
> *right to allow its patrons and members of the
> public to use the easement* between Hazel
> Green and the rerouted Big Oak Flat Road ....
> [103.]
>
> 104.   Judicial relief is necessary and
> appropriate, pursuant to the Quiet Title Act,
> in order to recognize that such right-of-way
> exists, to ensure access at all times over
> the roads at issue, and to perform all
> necessary and required improvements and
> maintenance without unlawful hindrance by
> Defendants.

Doc. 35, FAC, ¶¶ 102, 104 (emphasis added).

Both claims incorporate earlier paragraphs including those under the caption "General Allegations Regarding Quiet Title

**Action**," specifically paragraph 79, which states in part "In
other words, HGR, as the owner of Hazel Green, has appurtenant
legal rights in any R.S. 2477 public highway easement that abut
Hazel Green and link it to the adjoining Highway 120." (Doc. 35,
FAC, ¶ 79.)

An easement "creates a nonpossessory right to enter and use
land in the possession of another and obligates the possessor not
to interfere with the uses authorized by the easement."  1
Restatement (Third) of Property: Servitudes § 1.2(1).  "It is
well-settled that an easement is an interest in real property."
*Leisnoi, Inc. v. U.S.*, 170 F.3d 1188, 1191 (9th Cir. 1999),
*citing Cortese v. United States,* 782 F.2d 845, 850 (9th Cir.
1986).

Federal Defendants argue that the FAC ties the easement
rights as abutting landowners to R.S. 2477 roads.  They argue
that pursuant to the language in the FAC, HGR easement rights are
explicitly based on the right of the public to use the two
alleged R.S. 2477 public highways passing through Yosemite
National Park.  Federal Defendants assert that this Court must
reject HGR's attempt to evade the requirements of the QTA by
mischaracterizing its causes of action as asserting private
easements rights "independent" of R.S. 2477.

Plaintiff claims it is not seeking rights as a member of the
public.  *Kinscherff v. United States*, 586 F.2d 159 (10th Cir.
1978), cited by all parties, reviewed legislative history and
found that plaintiffs could bring a quiet title action to assert

an easement by necessity.  According to *Kinscherff*, § 2409 QTA legislative history encompasses claims to estates less than fee simple such as an easement or title to minerals.  "Easements are real property interests subject to quiet title actions.  The legislative history of 28 U.S.C. § 2409a indicates that Congress intended easements to be included in the real property rights adjudicated in a quiet title action."  586 F.2d at 161.  The Ninth Circuit court in *Leisnoi, Inc. v. U.S.*, 170 F.3d 1188, 1191 (9th Cir. 1999) also stated that it is "well-settled that an easement is an interest in real property."  170 F.3d at 1191. The legislative history to the Quiet Title Act states that "[t]he quieting of title where the plaintiff *claims an estate less than a fee simple-an easement* or the title to minerals-is likewise included in the terms of the proposed statute."  H.R.Rep. No. 92-1559, 92d Congress., 2d Sess., *reprinted in* 1972 U.S.S.C.A.N. 4552, 4554 (emphasis added).  However, claiming an interest as an abutting landowner, is not sufficient, as Plaintiff's special public easement is in a public road.  While Plaintiff's rights as an abutting landowner may be greater than the general public through its public easement, *Bacich v. Bd. of Control*, 23 Cal. 2d 343, 349-50, 144 P.2d 818 (1943), Plaintiff, nonetheless, is attempting to claim an interest in a public road.[4]  *See Staley v.*

_____

    [4] "For all intents and purposes ... the public entity 'owns' the public streets and highways." *Cox Cable San Diego, Inc. v. County of San Diego*, 185 Cal.App.3d 368, 384, 229 Cal.Rptr. 839, 848 (1986).  "[A]ll roads committed to the care of a county belong ultimately, to all the people of the state." *Marin County v. Superior Court of Marin County*, 53 Cal.2d 633, 638, 349 P.2d 526,

1    *United States,* 168 F. Supp.2d 1209, 1213 (D.Colo. 2001).

2         Because of the potential ambiguity in the claim Plaintiff

3    advances, coupled with the unambiguous case law prohibiting a

4    party from bringing a QTA action on the basis of seeking to quiet

5    title in R.S. 2477 rights-of-way, Plaintiff must amend the third

6    and fourth claims, if it can, to allege facts that entitle it to

7    claim an interest under the Quiet Title Act.  Plaintiff is

8    granted LEAVE TO AMEND the third and fourth causes of action.

9    The motion to dismiss the third and fourth claim is GRANTED.

10        C.   Quiet Title Action: Declaratory Relief and Mandamus Act
               (Fifth through Twelfth Causes of Action)

11

12        Plaintiff's fifth through eighth causes of action seek "to

13   quiet title through declaratory relief" by requiring Defendants

14   to recognize certain easements over the alleged R.S. 2477 routes

15   and private easements as an abutting landowner.  (Doc. 35, ¶¶

16   107-108, 111-12, 115-16, 119-20.)  The Declaratory Judgment Act

17   states "(a) In a case of actual controversy within its

18   jurisdiction ... any court of the United States, upon the filing

19   of an appropriate pleading, may declare the rights and other

20   legal relations of any interested party seeking such declaration,

21   whether or not further relief is or could be sought.  Any such

22   declaration shall have the force and effect of a final judgment

23   or decree and shall be reviewable as such."  28 U.S.C. § 2201(a).

24        HGR's ninth through twelfth claims seek a writ of mandamus

25   to use and maintain, and "to compel [the Park Service] to provide

26   639 (1960).

35

1   Plaintiff access" to, the alleged R.S. 2477 routes pursuant to

2   the Mandamus Act, 28 U.S.C. § 1361. (*Id.* at ¶¶ 123-24, 128-29,

3   133-34, 138-39.)  "The district courts shall have original

4   jurisdiction of any action in the nature of mandamus to compel an

5   officer or employee of the United States or any agency thereof to

6   perform a duty owed to the plaintiff."  28 U.S.C. § 1361.

7        However, as the Supreme Court has held, "Congress intended

8   the Quiet Title Act to provide the exclusive means by which

9   adverse claimants could challenge the United States' title to

10  real property."  *Block v. North Dakota*, 461 U.S. 273, 273 (1983)

11  (emphasis added).  In *Block*, the State of North Dakota claimed

12  that the United States was "unlawfully asserting ownership over.

13  . . sovereign lands" in the state, and filed suit against federal

14  officials seeking injunctive and mandamus relief under

15  Declaratory Judgment Act, the Mandamus Act, and the

16  Administrative Procedure Act ("APA").  *Id.* at 278.  The Court

17  rejected these claims, holding that North Dakota could not use

18  "artful pleading" to escape the Quiet Title Act's limitations on

19  suits against the United States.  *Id.* at 285.  Styling a cause of

20  action as one brought under the APA or on other grounds to avoid

21  waiver of sovereign immunity is exactly the type of "artful

22  pleading" that the Supreme Court forbid in *Block*.  *See Alaska v.*

23  *Babbitt*, 75 F.3d 449, 452-53 (9th Cir. 1995) (rejecting attempt

24  to use the APA's waiver of sovereign immunity to challenge the

25  United States' title to real property); *Panamint*, 499 F. Supp. 2d

26  at 1177-79 (rejecting plaintiffs' attempts to quiet title against

36

the United States under the Declaratory Judgment Act and Mandamus Act).  "Only upon passage of the [Quiet Title Act] did the United States waive its immunity with respect to suits involving title to land."  *Block*, 461 U.S. at 280.

While Plaintiff's Opposition does not address Defendants arguments concerning the challenge to its Declaratory Judgment causes of action, HGR does argue that its claims under the Mandamus Act should not be dismissed.  HGR recognizes in its Opposition that "various decisions provide that the QTA is intended to be the exclusive remedy to resolve ownership disputes to property concerning the United States." (Doc. 42, Opposition, p.23:2-4.)  HGR continues to contend that its claims under the Mandamus Act are "well-pled insofar as they seek the removal of barriers erected by the federal government," citing to the case of *McFarland v. Kempthorne*, 464 F.Supp.2d 1014, 1024 (D. Mont. 2006), which purportedly allowed a claim under the APA by a plaintiff seeking a special use permit to access real property, which was separate from plaintiff's QTA claim concerning the road.  Defendants correctly point out an important distinction in the *McFarland* decision, aside from the fact that it is not controlling.  "McFarland's APA claim, however, does not assert title to an easement over Glacier Route 7."  *McFarland*, 464 F.Supp.2d at 1024.

Whether or not the QTA's waiver of sovereign immunity applies in the case, Plaintiff's Writ of Mandamus claims for relief and Plaintiff's Declaratory Judgment claims for relief are

still improper and unnecessary.  Those claims and prayer allege

that a writ of mandamus is necessary "in order to compel NPS to

provide Plaintiff access to" the alleged rights-of-way across

federal land and pray for an order compelling the NPS to remove

gates and barriers inhibiting access to the roads. (Doc. 1, FAC

¶¶ 123, 128, 133, 138; ¶ 13 at 42.)  The remedial clause of the

QTA prohibits such a result. Instead, 28 U.S.C. 2409a(b) states:

> **(b) The United States shall not be disturbed in possession or control of any real property involved in any action under this section pending a final judgment ...** *and if the final determination shall be adverse to the United States, the United States nevertheless may retain such possession or control of the real property or of any part thereof as it may elect, upon payment to the person determined to be entitled thereto of an amount which upon such election the district* court in the same action shall determine to be just compensation for such possession or control.

28 U.S.C. 2409a(b) (emphasis added).

The provision states that "if the final determination [in a

quiet title claim] shall be adverse to the United States, the

United States nevertheless may retain such possession or control

of the real property or of any part thereof as it may elect" upon

payment of just compensation.  28 U.S.C. § 2409a(b).  Section

2409a was designed to avoid the disruption of ongoing Federal

programs involving disputed lands by allowing the United States

to pay money damages instead of surrendering the subject property

upon loss of a quiet title claim.  *See Block*, 461 U.S. at 283.

Even if this motion does not dispose of Plaintiff's FAC, the

limited terms of the QTA's waiver of sovereign immunity prohibit

any court from compelling the United States to grant Plaintiff

1  vehicular access and to remove gates impeding access to the Crane

2  Flat and Coulterville roads.

3       Defendants motion to dismiss Plaintiff's fifth through

4  twelfth causes of action seeking Declaratory Judgment and

5  Mandamus relief is GRANTED WITHOUT LEAVE TO AMEND.  Such claims

6  and remedies are barred by the law of the United States and are

7  superfluous to the judicial recognition of an enforceable title

8  to any right-of-way in Plaintiff.

9

10                            CONCLUSION

11      For the reasons set forth above,

12      1.  Defendants 12(b)(1) motion to dismiss Plaintiff's first

13  and second causes of action is GRANTED WITHOUT LEAVE TO AMEND.

14      2.  Defendants 12(b)(1) motion to dismiss Plaintiff's third

15  and fourth causes of action is GRANTED WITH LEAVE TO AMEND.

16      3.  Defendants 12(b)(1) motion to dismiss Plaintiff's fifth

17  through eighth causes of action seeking declaratory judgment

18  against Defendants is GRANTED WITHOUT LEAVE TO AMEND.

19      4.  Defendants 12(b)(1) motion to dismiss Plaintiff's ninth

20  through twelfth causes of action seeking writ of mandamus is

21  GRANTED WITHOUT LEAVE TO AMEND.

22      5.  Plaintiff shall file any amended complaint (20) twenty

23  days after service of this order by the Clerk of the Court.

24      6.  The parties are directed to provide supplemental

25  briefing to Plaintiff's scheduled Motion to Join Mariposa County

26  and Tuolumne County as a result of this decision in this Motion

to Dismiss.  Plaintiff's supplemental briefing, not to exceed 10 pages, is due July 30, 2008.  Defendants' and Defendant Intervenors' supplemental briefing, not to exceed 10 pages, is due August 6, 2008.  The hearing on the Motion to Join Mariposa County and Tuolumne County (Doc. 54) is scheduled for October 20, 2008.

IT IS SO ORDERED.

Dated:   __July 22, 2008__                    _____/s/ Oliver W. Wanger_____
                                              UNITED STATES DISTRICT JUDGE