1

2

3

4                    UNITED STATES DISTRICT COURT

5                   EASTERN DISTRICT OF CALIFORNIA

6   HAZEL GREEN RANCH, LLC,            1:07-CV-00414 OWW SMS

7                      Plaintiff,      MEMORANDUM DECISION RE:
                                       FEDERAL DEFENDANTS' MOTION
8        v.                            TO STRIKE AND/OR DISMISS
                                       THE SECOND AMENDED
9   UNITED STATES DEPARTMENT OF        COMPLAINT (DOC. 88) AND
    THE INTERIOR, *et al.*,            PLAINTIFFS' MOTION TO JOIN
10                                     MERCED AND TUOLUMNE
    Defendant,                         COUNTIES (DOC. 54)
11
         and
12

13  SIERRA CLUB, NATURAL RESOURCES
    DEFENSE COUNCIL, and THE
14  WILDERNESS SOCIETY,

15                 Defendant-Intervenors.

16

17            I.   INTRODUCTION

18        On August 13, 2008, Plaintiff Hazel Green, LLC ("Hazel Green

19  Ranch" or "HGR") filed a "Second Amended Complaint for Quiet

20  Title" ("SAC"), naming as Defendants the United States Department

21  of the Interior ("DOI"); Dirk Kempthorne, in his capacity as

22  Secretary of DOI; the National Park Service ("NPS"); Mary A.

23  Bomar, in her capacity as Director of NPS; Michael J. Tollefson,

24  in his capacity as Superintendent of Yosemite National Park; the

25  United States Department of Agriculture; Charles F. Connor, in

26  his capacity as Acting Secretary of the United States Department

27  of Agriculture; the United States Forest Service; Gail Kimball,

28  in her capacity as Chief of the United States Forest Service; and

                              1

the United States of America (hereafter collectively referred to as the "Federal Defendants").

Before the court for decision are: (1) Federal Defendants' motion to strike and/or dismiss the SAC, which alleges four separate claims under the Quiet Title Act 28 U.S.C. §§ 1346(f) and 2409(a) (Doc. 88); and (2) HGR's motion to join Tuolumne and Merced Counties as Defendants (Docs. 54 & 81).  Oral argument was heard on October 20, 2008.

## II.  BACKGROUND

HGR is the private owner of an 83-acre parcel of real property located in Mariposa County and surrounded on all four sides by federal land, with Yosemite National Park as its eastern boundary and Stanislaus National Forest as its northern, southern, and western boundaries.  HGR brings this suit to gain more direct vehicle access to the Yosemite Valley Floor over two roads that traverse federal land, the "Coulterville Road" and the "Crane Flat Road," from points leaving HGR's property to their alleged intersection with State Highway 120, which provides acess to the Yosemite Valley Floor.

In its First Amended Complaint ("FAC") HGR alleged that it is entitled to use and improve both the Coulterville and Crane Flat Roads and sought to enforce: (1) a right-of-way pursuant to R.S. 2477, 43 U.S.C. § 932 (1970),[1] to use both roads; (2) easement rights appurtenant to an 1888 patent granted to HGR by

---

[1] R.S. 2477 granted a "right of way for the construction of highways over public lands, not reserved for public uses."

2

1  the United States; and (3) "rights specifically recognized by the

2  State of California in streets and highways as a private easement

3  or other right." (FAC at ¶6.)   Specifically, for both roads, HGR

4  sought: (1) to quiet title to right-of-way easements pursuant to

5  R.S. 2477; (2) to quiet title to private easements; (3) a

6  declaratory judgment to recognize the R.S. 2477 right-of-way and

7  private easements; and (4) a writ of mandamus to compel access to

8  the R.S. 2477 right-of-way and private easements.   (FAC.)

9      Federal Defendants' motion to dismiss the FAC was granted in

10  its entirety on July 24, 2008.   (Doc. 80.)   HGR was afforded an

11  opportunity to amend its complaint and did so on August 13, 2008.

12  (Doc. 85, SAC.)

13      Prior to the July 24, 2008 order granting Federal

14  Defendants' first motion to dismiss, Plaintiffs moved to join

15  Mariposa and Tuolumne Counties as defendants.   (Doc. 54.)   In

16  connection with the July 24, 2005 dismissal, the parties were

17  ordered to file supplemental briefing on the issue of joinder,

18  and the matter was set for oral argument on October 20, 2008.

19  (Docs. 80, 81, 83-2 & 84.)   Federal Defendants then moved to

20  dismiss and/or strike all of the claims in the SAC, and set oral

21  argument on their motion for the same date.   (Doc. 88.)

22

23                     III.   <u>LEGAL STANDARDS</u>

24      A.   <u>Motion to Strike</u>.

25      Federal Rule of Civil Procedure 12(f) provides that

26  "redundant, immaterial, impertinent, or scandalous matters" may

27  be "stricken from any pleading."   Fed. R. Civ. P. 12(f).   The

28  disposition of a motion to strike lies within the discretion of

                              3

1  the district court; such motions are disfavored and infrequently

2  granted.  *Legal Aid Serv. of Or. v. Legal Serv. Corp.*, 561 F.

3  Supp. 2d 1187, 1189 (D. Or. 2008).  Nevertheless, a motion to

4  strike may serve as an appropriate vehicle for eliminating claims

5  that have been previously dismissed.  *See generally G.K. Las*

6  *Vegas Ltd. P'ship v. Simon Prop. Group*, 460 F. Supp. 2d 1222 (D.

7  Nev. 2006).

8

9         **B.    Rule 12(b)(1) and Sovereign Immunity.**

10        Federal Defendants also move to dismiss the claims in the

11  SAC pursuant to Federal Rule of Civil Procedure 12(b)(1), which

12  provides for dismissal of an action for "lack of jurisdiction

13  over the subject matter."  Faced with a Rule 12(b)(1) motion, a

14  plaintiff bears the burden of proving the existence of the

15  court's subject matter jurisdiction.  *Thompson v. McCombe*, 99

16  F.3d 352, 353 (9th Cir. 1996).  A federal court is presumed to

17  lack jurisdiction in a particular case unless the contrary

18  affirmatively appears.  *Gen. Atomic Co. v. United Nuclear Corp.*,

19  655 F.2d 968, 968-969 (9th Cir. 1981).  A challenge to subject

20  matter jurisdiction may be facial or factual.  *White v. Lee*, 227

21  F.3d 1214, 1242 (9th Cir. 2000).  As explained in *Safe Air for*

22  *Everyone v. Meyer*, 373 F.3d 1035, 1038 (9th Cir. 2004), *cert.*

23  *denied,* 544 U.S. 1018 (2005):

24                    In a facial attack, the challenger asserts
                    that the allegations contained in a complaint
25                    are insufficient on their face to invoke
                    federal jurisdiction.  By contrast, in a
26                    factual attack, the challenger disputes the
                    truth of the allegations that, by themselves,
27                    would otherwise invoke federal jurisdiction.

28

                                    4

1    In resolving a factual attack on jurisdiction, the district
2 court may review evidence beyond the complaint without converting
3 the motion to dismiss into a motion for summary judgment. *Savage*
4 *v. Glendale Union High School,* 343 F.3d 1036, 1039 n.2 (9th Cir.
5 2003), *cert. denied*, 541 U.S. 1009 (2004); *McCarthy v. United*
6 *States,* 850 F.2d 558, 560 (9th Cir. 1988), *cert. denied*, 489 U.S.
7 1052 (1989).  "If the challenge to jurisdiction is a facial
8 attack, *i.e.*, the defendant contends that the allegations of
9 jurisdiction contained in the complaint are insufficient on their
10 face to demonstrate the existence of jurisdiction, the plaintiff
11 is entitled to safeguards similar to those applicable when a Rule
12 12(b)(6) motion is made."  *Cervantez v. Sullivan*, 719 F. Supp.
13 899, 903 (E.D. Cal. 1989), *rev'd on other grounds*, 963 F.2d 229
14 (9th Cir. 1992).  "The factual allegations of the complaint are
15 presumed to be true, and the motion is granted only if the
16 plaintiff fails to allege an element necessary for subject matter
17 jurisdiction."  *Id.*

18    The United States, as a sovereign, is immune from suit
19 unless it has waived its immunity.  *Dept. of the Army v. Blue*
20 *Fox*, *Inc.*, 525 U.S. 255, 260 (1999); *United States v. Mitchell,*
21 445 U.S. 535, 538 (1980).  A court lacks subject matter
22 jurisdiction over a claim against the United States if it has not
23 consented to be sued on that claim.  *Consejo de Desarrollo*
24 *Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173
25 (9th Cir. 2007).  "When the United States consents to be sued,
26 the terms of its waiver of sovereign immunity define the extent
27 of the court's jurisdiction."  *United States v. Mottaz*, 476 U.S.
28 834, 841 (1986).  A waiver of sovereign immunity by the United

States must be expressed unequivocally. *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33 (1992). As a general matter, purported statutory waivers of sovereign immunity are not to be liberally construed. *Id.* at 34.

### 2. Quiet Title Act.

28 U.S.C. § 1346(f) provides that "[t]he district courts shall have exclusive original jurisdiction of civil actions under section 2409a to quiet title to an estate or interest in real property in which an interest is claimed by the United States."

28 U.S.C. § 2409a provides in pertinent part:

> (a) The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property *in which the United States claims an interest* ....
>
> ***
>
> (d) The complaint shall set forth with particularity the nature of the right, title, or interest which the plaintiff claims in the real property, the circumstances under which it was acquired, and the right, title, or interest claimed by the United States.

28 U.S.C. § 2409a (emphasis added).

The Quiet Title Act is the exclusive means by which adverse claimants can challenge the United States' title to real property. If the United States has an interest in disputed property, the waiver of sovereign immunity must be found, if at all, within the Quiet Title Act. *Alaska v. Babbitt*, 38 F.3d 1068, 1073 (9th Cir. 1994). If the Quiet Title Act does not apply, the district court does not have jurisdiction over the claim. *Leisnoi, Inc. v. United States*, 170 F.3d 1188, 1191 (9th Cir. 1999).

6

Two conditions must exist before a district court can exercise jurisdiction over an action under the Quiet Title Act: (1) the United States must claim an interest in the property at issue, and (2) there must be a disputed title to real property. 28 U.S.C. § 2409a(a, d).

# IV. DISCUSSION

A. <u>Motion to Strike Claims Three and Four</u>.

Federal Defendants move to strike the Third and Fourth Claims on the ground that essentially the same claims were dismissed by the July 24, 2008 decision.  In that decision, the district court first addressed the FAC's quiet title claim based on an alleged right-of-way under R.S. 2477:

> HGR's first and second cause of action seek, pursuant to the Federal Quiet Title Act (the "Quiet Title Act" or "QTA"), 28 U.S.C. § 2409a, recognition and enforcement of its claimed right to use two alleged roads-the so-called "Coulterville Road" and the "Crane Flat Road," public roads established by operation of R.S. 2477 [], that would connect its 83-acre inholding within Stanislaus National Forest to the Big Oak Flat Road in Yosemite National Park.  Plaintiff does not assert it is the owner of or has any claim to title to the real property over which the alleged rights-of-way are claimed, instead it alleges that Mariposa County owns the rights-of-way.
>
> Federal Defendants argue that the Court is without subject matter jurisdiction to hear an action brought under the QTA where the plaintiff is a private party seeking only a right of access over a public road. Federal Defendants argue the United States has only waived its sovereign immunity under the QTA for actions brought by plaintiffs who claim an interest in title to disputed real property.  Because Plaintiff's claims under the QTA are all dependent on a determination that county-owned R.S. 2477 rights-of-way exist over the claimed federal lands, Federal Defendants contend that the first and second cause of action must be dismissed for lack of subject matter jurisdiction.
>
> The Eighth Circuit in *Long v. Area Manager, Bureau of Reclamation*, 236 F.3d 910, 915 (8th Cir. 2001), agreed

7

1    with a Tenth Circuit case that the right to use a
     public road is not an interest in property proper for a
2    QTA action: "We agree with the Tenth Circuit that the
     right of an individual to use a public road is not a
3    right or interest in property for purposes of the Quiet
     Title Act. [citation omitted]  The proper plaintiff to
4    challenge the condemnation of a public road is the
     governmental entity that owns the easement."  236 F.3d
5    at 915 (a QTA action must fail if the plaintiff "does
     not claim a property interest to which title may be
6    quieted"); *see also Friends of the Panamint Valley v.
     Kempthorne*, 499 F.Supp. 2d 1165, 1174 (E.D. Cal.
7    2007)(*Panamint*).  "If it [an interest] exists, it is
     vested in the public generally."  *Kinscherff v. United*
8    *States,* 586 F.2d 159, 160 (10th Cir. 1978).  The court
     did note that plaintiff-property owners did not assert
9    their interest as an easement or other similar right
     but as members of the public.  They further stated that
10   "[m]embers of the public as such do not have a 'title'
     in public roads.  To hold otherwise would signify some
11   degree of ownership as an easement."  *Id.; see also Sw.*
     *Four Wheel Drive Ass'n v. BLM,* 363 F.3d 1069, 1071
12   (10th Cir. 2004) (A four-wheel drive association filed
     suit seeking a judgment to quiet title to alleged
13   easements across government lands but Court following
     *Kinscherff,* held that the association's claim was
14   indistinguishable from the one denied in *Kinscherff*).

15   As the Supreme Court has frequently held, "a waiver of
     sovereign immunity is to be strictly construed, in
16   terms of its scope, in favor of the sovereign."
     *Department of Army v. Blue Fox, Inc.*, 525 U.S. 255, 261
17   (1999); *United States v. Nordic Village*, 503 U.S. 30,
     34 (1992) (government's consent to be sued is construed
18   "strictly in favor of the sovereign,")  Under the QTA,
     a plaintiff bringing suit is required to state "the
19   nature of the right ... or interest" that is asserted
     in the property at issue.  *See* 28 U.S.C § 2409a(d).
20
     The reasoning of the Tenth Circuit was found to be
21   "instructive, well-reasoned and persuasive," by Judge
     O'Neill of this court in *Friends of Panamint Valley v.*
22   *Kempthorne*, 499 F.Supp.2d 1165, 1175 (E.D. Cal. 2007)
     There, plaintiffs were owners of property near a
23   national park and sought to assert claims to quiet
     title and obtain right-of-way access to a road in the
24   national park they asserted was a public highway under
     R.S. 2477.  Plaintiffs asserted they had a right, as
25   members of the public, to use and maintain Surprise
     Canyon Road as a public right of way pursuant to R.S.
26   2477.  Following the Tenth Circuit decisions in
     *Kinscherff v. United States,* 586 F.2d 159, 160 (10th
27   Cir. 1978) and *Sw. Four Wheel Drive Ass'n v. BLM,* 363
     F.3d 1069, 1071 (10th Cir. 2004), and Eighth Circuit in
28   *Long v. Area Manager, Bureau of Reclamation*, 236 F.3d

                                8

910, 916 (8th Cir. 2001), the district court held that Plaintiffs had not demonstrated under federal or California law state law, they have a right, interest or title to assert a claim against Federal Defendants under the Quiet Title Act.   499 F.Supp.2d at 1177 ("Plaintiffs' reliance on California law to discuss whether Surprise Canyon Road is a public highway pursuant to R.S. 2477 does not demonstrate that they may bring a quiet title action.")   The *Panamint* decision also found that no case cited by Plaintiff stands for the proposition that California case law would allow for a quiet title action by a member of the public.   "Even if California state law would allow a member of the public to bring a quiet title action, this Court could not rely upon such law where it would conflict with federal law."   *Id.* at 1177.

A District of Colorado case, *Fairhurst Family Assoc., LLC. V. US Forest Service, Dept. of Agric*, 172 F.Supp.2d 1328 (D.Colo. 2001), held: "[a]n R.S. 2477 right-of-way does not, in fact, even come into existence unless and until such a 'highway,' e.g., public road, is established. See R.S. 2477.   As an R.S. 2477 right-of-way cannot exist without the public road and visa versa, the two are essentially synonymous in this context."   172 F.Supp.2d at 1332.

<u>While *Kinscherff* suggests that the Quiet Title Act may allow an individual to claim easement rights against the federal government in certain circumstances, such as an "easement of necessity" to access real property</u>, *Kinscherff v. United States,* 586 F.2d 159, 161 (10th Cir. 1978), <u>Hazel Green does not allege such an ownership interest in their first and second cause of action</u>.

Plaintiff argues that it is entitled to bring an action under the Quiet Title Act to quiet title on behalf of another, including on behalf of the public and the county.   Plaintiff cites several circuit decisions in the Ninth Circuit and Seventh Circuit for support. However, the Ninth Circuit cases cited by Plaintiff, concern the exceptions to the Quiet Title Act, which are interpreted broadly, but the actual waiver of sovereign immunity is interpreted narrowly.   *See Metropolitan Water Dist. v. United States*, 830 F.2d 139 (9th Cir. 1987); *Alaska v. Babbitt*, 38 F.3d 1068, 1074 (9th Cir. 1994).   Any waiver of sovereign immunity must be strictly construed in favor of not waiving sovereign immunity.   "The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress.   A necessary corollary of this rule is that when Congress attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be

9

1
2
3
4

> strictly observed, and exceptions thereto are not to be lightly implied." *Block v. North Dakota*, 461 U.S. 273, 287 (1983). "The proper plaintiff to challenge the condemnation of a public road is the governmental entity that <u>owns</u> the easement." *Long v. Area Manager, Bureau of Reclamation*, 236 F.3d 910, 915 (8th Cir. 2001)(emphasis added).

5
6

> Defendants 12(b)(1) motion to dismiss Plaintiff's first and second causes of action for lack of subject matter jurisdiction is GRANTED WITHOUT LEAVE TO AMEND.

7
8

(Doc. 80 at 26-31. (emphasis added)(internal citations and

quotations omitted).)

9
10
11
12
13
14
15

   The district court next addressed Plaintiff's alternative

argument that "it also seeks an easement interest in the property

as an <u>abutting landowner</u> and express grantee of private easement

rights, [] as evidenced by the history of the building of the

roads, HGR's uninterrupted existence since 1888 as a private

property owner deriving from a patent issued by the United

States." (*Id*. at 31.)

16
17
18
19
20

> An easement "creates a nonpossessory right to enter and use land in the possession of another and obligates the possessor not to interfere with the uses authorized by the easement." 1 Restatement (Third) of Property: Servitudes § 1.2(1). "It is well-settled that an easement is an interest in real property." *Leisnoi, Inc. v. U.S.*, 170 F.3d 1188, 1191 (9th Cir. 1999), *citing Cortese v. United States,* 782 F.2d 845, 850 (9th Cir. 1986).

21
22
23
24
25
26

> Federal Defendants argue that the FAC ties the easement rights as abutting landowners to R.S. 2477 roads.  They argue that pursuant to the language in the FAC, HGR easement rights are explicitly based on the right of the public to use the two alleged R.S. 2477 public highways passing through Yosemite National Park. Federal Defendants assert that this Court must reject HGR's attempt to evade the requirements of the QTA by mischaracterizing its causes of action as asserting private easements rights "independent" of R.S. 2477.

27
28

> Plaintiff claims it is not seeking rights as a member of the public. *Kinscherff* [], 586 F.2d 159 [], cited by all parties, reviewed legislative history and found

that plaintiffs could bring a quiet title action to assert an easement by necessity.  According to *Kinscherff*, § 2409 QTA legislative history encompasses claims to estates less than fee simple such as an easement or title to minerals.  "Easements are real property interests subject to quiet title actions.  The legislative history of 28 U.S.C. § 2409a indicates that Congress intended easements to be included in the real property rights adjudicated in a quiet title action." 586 F.2d at 161.  The Ninth Circuit [] in *Leisnoi, Inc. v. U.S.*, 170 F.3d 1188, 1191 (9th Cir. 1999) also stated that it is "well-settled that an easement is an interest in real property."  170 F.3d at 1191.  The legislative history to the Quiet Title Act states that "[t]he quieting of title where the plaintiff *claims an estate less than a fee simple-an easement* or the title to minerals-is likewise included in the terms of the proposed statute."  H.R.Rep. No. 92-1559, 92d Congress., 2d Sess., *reprinted in* 1972 U.S.S.C.A.N. 4552, 4554 (emphasis added).  However, claiming an interest as an abutting landowner, is not sufficient, as Plaintiff's special public easement is in a public road.  While Plaintiff's rights as an abutting landowner may be greater than the general public through its public easement, *Bacich v. Bd. of Control*, 23 Cal. 2d 343, 349-50 [] (1943), Plaintiff, nonetheless, is attempting to claim an interest in a public road.[FN1]  *See Staley v. United States,* 168 F. Supp.2d 1209, 1213 (D.Colo. 2001).

[FN1] "For all intents and purposes ... the public entity 'owns' the public streets and highways." *Cox Cable San Diego, Inc. v. County of San Diego,* 185 Cal.App.3d 368, 384 [] (1986).  "[A]ll roads committed to the care of a county belong ultimately, to all the people of the state." *Marin County v. Superior Court of Marin County,* 53 Cal.2d 633, 638 [](1960).

Because of the potential ambiguity in the claim Plaintiff advances, coupled with the unambiguous case law prohibiting a party from bringing a QTA action on the basis of seeking to quiet title in R.S. 2477 rights-of-way, Plaintiff must amend the third and fourth claims, if it can, to allege facts that entitle it to claim an interest under the Quiet Title Act. Plaintiff is granted LEAVE TO AMEND the third and fourth causes of action.  The motion to dismiss the third and fourth claim is GRANTED.

(*Id.* at 31-35 (emphasis added)(parallel citations omitted).)

Federal Defendants assert that this language precludes HGR from re-filing claims that attempt to quiet title based on a

1  purported interest in a public road.   (Doc. 89 at 6-7.)

2      The FAC's abutting landowner claim was premised on a line of

3  California cases holding that a landowner possess a right of

4  access "in the nature of an easement" in abutting public roads.

5              [A]n owner of property abutting upon a public street
              has a property right in the nature of an easement in
6              the street which is appurtenant to his abutting
              property and which is his private right, as
7              distinguished from his right as a member of the public.
              That right has been described as an easement of ingress
8              and egress to and from his property or, generally, the
              right of access over the street to and from his
9              property....

10  *Bacich v. Board of Control*, 23 Cal. 2d 343, 349-350 (1943).

11  "[T]he right is more extensive than the mere opportunity to go on

12  to the street immediately in front of the property."  *Id*. at 352.

13  Rather, it "consists of the right to get into the street upon

14  which the landowner's property abuts and from there, in a

15  reasonable manner, to the general system of public streets."

16  *Border Business Park, Inc. v. City of San Diego*, 142 Cal. App.

17  4th 1538, 1554 (2006).   It "extends in both directions to the

18  next intersecting street," *Bacich*, 23 Cal. 2d at 354, and "will

19  not be defeated because there is other access to the property,"

20  *Ratchford v. County of Sonoma*, 22 Cal. App. 3d 1056, 1069 (1972).

21      The July 24, 2008 decision relied upon a series of federal

22  district and circuit court decisions applying state law to the

23  Quiet Title Act.   These cases uniformly reject the proposition

24  that a member of the public, or even an abutting landowner, could

25  possess a title interest in a public road sufficient to satisfy

26  the Quiet Title Act, but left open the possibility that certain

27  types of true easements, such as an easement by necessity, might

28  be cognizable under the Quiet Title Act.   For example, the Tenth

1  Circuit in *Kinscherff* unequivocally held that a Quiet Title Act

2  claim could not proceed on the theory that a plaintiff, as a

3  member of the public, possesses a right to access a public

4  highway.  586 F.2d at 160-61.  However, the *Kinscherff* court

5  declined to dismiss a claim based on an alleged easement of

6  necessity, instructing the district court to develop a factual

7  record regarding "the existence of an implied easement of

8  necessity, its extent, <u>or whether [the] road is such an</u>

9  <u>easement</u>."  *Id*. at 161 (emphasis added).[2]

10     Even though the *Bacich* line of cases indicates that

11 California landowners possess an in interest "in the nature of an

12 easement" in abutting public roads, one's status as an abutting

13 landowner is not enough to establish a property interest <u>for</u>

14 <u>purposes of the Quiet Title Act</u>.  For example, the plaintiffs in

15 *Kinscherff*, asserted that they possessed "a real property

16 interest in the Jemez Dam Road as members of the public entitled

17 to use public roads pursuant to [New Mexico law] <u>and as an owner</u>

18 <u>of land abutting a public highway</u>, and under 43 U.S.C. s 932."

19 586 F.2d at 160.  The *Kinscherff* court found these were not

20 interests in real property covered contemplated by the Quiet

21 Title Act.  *Id*.

22     Both the *Kinscherff* and *Staley* courts analyzed state law to

23 determine that neither the public generally nor abutting

24 landowners have a real property interest in a public road

25

26        [2]   As the road in question was alleged to be a public
27 road, this implies that it is possible for a landowner to
   establish <u>some</u> form of title interest in a public road, just not
28 by virtue of ownership of land abutting the road.

sufficient to satisfy the Quiet Title Act.  *See Kinscherff*, 586

F.2d 159 (New Mexico law); *Staley v. United States,* 168 F.

Supp.2d 1209, 1212-13 (D. Colo. 2001) (Colorado law).  The *Staley*

court's review of Colorado law is instructive.

> In *Jackson v. Kiel,* the Colorado court allowed a
> plaintiff to recover damages from a railroad who had
> continually kept freight cars in an intersection
> thereby blocking the plaintiff's access to his home via
> a public street. 13 Colo. 378, 22 P. 504 (1889). The
> Court stated, "[t]he right to a free use of this space
> of street intersection for purposes of ingress and
> egress was therefore as closely identified with his
> lot, and interference therewith was as peculiar and
> personal an injury, as if the obstruction had prevented
> access from his lot to the street immediately adjacent
> thereto." *Id*. at 504. In a case dealing primarily with
> the question of abandonment of a public road, a
> Colorado court of appeals stated, "reasonable surface
> use, including access, is part of the 'bundle of
> sticks' of mineral claim property rights, including
> unpatented claims." *Heath v. Parker*, 30 P.3d 746,
> 750-51 (Colo. App.2000). The court also stated, "[a]
> county cannot, without compensation, formally abandon a
> public road if such action would deprive abutting
> landowners of access to their property." *Id*. at 749-50
> (citing Colo. Rev. Stat. § 43-2-303(2)(a)).

*Id*.  While the *Staley* court acknowledged that "abutting

landowners [in Colorado] may have rights beyond those of the

general public in certain public roads," the court rejected the

proposition that any such interest was equivalent to "a title

interest in any public road such that they can maintain an action

under the Quiet Title Act," refusing "to blur the lines between a

title interest and a right of access to a public road."   *Id*. at

1213.

The *Bacich* line of cases is not significantly

distinguishable from Colorado's abutting landowner doctrine.  As

in *Staley*, where Colorado's abutting landowner right of access

created "rights beyond those of the general public in certain

14

public roads," these interests are insufficient and do not create

a property interest for purposes of the Quiet Title Act.   This

conclusion formed the basis for the July 24, 2008 ruling in this

case.

      The question is whether the Third and Fourth Claims of the

SAC are effectively the same as those previously dismissed

claims.   The SAC generally alleges:

> 54.   This is an action under 28 U.S.C. § 2409a to quiet title to two rights-of-way in the County of Mariposa, California, the Coulterville Road and the Crane Flat Road.
>
> 55.   [] the two Roads were constructed in the 1870s and have been used as Mariposa County-authorized highways since then as evidenced by the multitude of maps and documents demonstrating the use and existence of the Roads.
>
> 56.   HGR holds its right-of-way and easement interests in the Roads by virtue of the 1888 Patent to Halstead and HGR's accession to those rights.   (See Exhibit 20.)
>
> 57.   As the owner of Hazel Green, HGR also holds easement rights to maintain continued access to its property across any state or county highway that abuts its property.   *Hanshaw v. Long Valley Road Assoc.*, 116 Cal.App.4th 471, 482 (2004).   This "right has been described as an easement of ingress and egress to and from the property or, generally, the right of access over the [highway] and from [the] property . . . ." *Bacich v. Board of Control*, 23 Cal.2d 343, 349-50 (1943).   Furthermore, this right exists irrespective of "whether [the property owner] does or does not own [a] fee in the street," and is considered a "private easement which is an incident to the . . . ownership of the land abutting the subject [highway]."   *Id.*; *see also Rachford v. County of Sonoma*, 22 Cal.App.3d 1056, 1069 (1972).   In other words, HGR, as the owner of Hazel Green, has appurtenant legal rights in any highway (see, e.g., Exhibit4 [re Mariposa County ownership]) that abuts Hazel Green and links it to the adjoining Highway 120.
>
> 58.   Notwithstanding the above, Defendants have asserted that HGR does not have any rights over the two Roads at issue.   Additionally, access to Highway 120 from County Road 8006 has been impeded by the construction of a gate, but in clear recognition of the

private easement right-of-way, NPS gave keys to the gate to owners of HGR, as well as a number of other private citizens who also had similar private property easement rights.

59.   The Coulterville Road and Crane Flat Road have been owned by Mariposa County to the present date.   All county highways continue to be highways until abandoned by affirmative action of the county.   Cal. Streets & Highways Code § 901.   Moreover, vacation of a highway does not affect a private easement or other right of a person (including, but not limited to, a public utility, the state, a public corporation, or a political subdivision, other than the local agency adopting the resolution of vacation) in, to, or over the lands subject to the street, highway, or public service easement, regardless of the manner in which the private easement or other right was acquired.   Cal. Streets & Highways Code § 8352(a).   "A private easement or other right described in subdivision (a) is subject to extinguishment under the laws governing abandonment, adverse possession, waiver, and estoppel."   Cal. Streets & Highways Code § 8352(b).

60.   Neither the County of Mariposa nor HGR has expressed any intent to abandon the right-of-ways at issue.   On the contrary, as discussed above, the County of Mariposa has specifically refused to relinquish the highway easements.   Further, in testimony before NPS during the adoption of the 2000 Yosemite Valley Plan, HGR repeatedly made references to its private easement rights in the Coulterville Road and Crane Flat Roads. NPS never refuted any of HGR's contentions, nor did it ever indicate that HGR abandoned any such private easement rights.   In fact, NPS acknowledged those rights in the 2000 Yosemite Valley Plan.

With respect to the Coulterville Road, the Third Claim for Relief alleges:

76.   Mariposa County owns the Coulterville Road.   As stated above, Mariposa County:

- authorized construction of the Roads in 1857;

- allowed the collection of tolls thereon beginning in 1870;

- declared the Roads to be highways (first doing so in   approximately 1911);

- was declared to be owner of the Roads by judgment rendered in 1917;

- acknowledged that Mariposa County has carried and continues to carry the Coulterville Road

16

(including the branch road described as the Crane Flat Road) as a county road in its Maintenance Road System; and

• has stated that Mariposa County expressly "retain[s] all of its rights, titles, and interests in and to such road [including the Crane Flat Road segment]."

77. It is well-settled that owners of land in California have easement rights to maintain continued access to their property across any highway that abuts their property. See *Bacich v. Bd. of Control*, 23 Cal.2d 343, 349-50 (1943), *McKinney v. Ruderman*, 203 Cal.App.2d 109, 119 (1962). As the California Supreme Court has explained, "[i]t has long been recognized in this state and elsewhere that an owner of property abutting upon a public [highway] has a property right in the nature of an easement in the street which is appurtenant to his abutting property and which is his private right, as distinguished from the right of the general public in and to the street." *McKinney*, 203 Cal.App.2d at 119 (internal quotes omitted).

78. The Coulterville Road has been used for egress and ingress to Hazel Green since its construction in the 1870s. It is a Mariposa County road in which Plaintiff has private easement rights. The easement includes the right to improve it to applicable state and county highway standards of use, as such standards evolve, and as the mode of use changes on the properties having the right to use the easement. *See McKinney*, 203 Cal.App.2d at 119. The road has been modified over time by the owners and Federal, State, and County Governments, who agreed on the realignment of the easements to accommodate those changes, and such modifications have not changed the easement rights but have merely facilitated the use of the easement to take into account changing road configurations, which the maps of all of the authorities involved demonstrate.

79. Plaintiff brings this action in order to affirm and enjoy use of the private easement in the Coulterville Road segment leading from Hazel Green to and through the intersection with the Big Oak Flat Road.

80. Judicial relief is necessary and appropriate, pursuant to the Quiet Title Act, in order to recognize that such right-of-way exists and to ensure access at all times over the roads at issue.

The Fourth Claim to "Quiet Title in Private Easement Existing Under California Law Over the Crane Flat Road," contains

17

1  essentially the same allegations.  (SAC at ¶¶ 81-85.)

2       The Third and Fourth claims are the same claims that were

3  previously dismissed on the ground that the *Bacich* line of cases

4  does not create a property right that falls within the Quiet

5  Title Act's limited waiver of sovereign immunity.  State law

6  rights of access, ingress, or egress in public roads are

7  insufficient ownership interests to support a federal Quiet Title

8  Act claim.  Federal Defendants' motion to strike Claims Three and

9  Four is GRANTED.[3]

10

11       **B.   Motion to Dismiss Claims One and Two.**

12       The cases relied upon in the July 24, 2008 decision leave

13  open the possibility that where a plaintiff claims a true

14  easement, such as an easement by necessity in a public road, a

15  Quiet Title Act claim might exist, even where the interest

16  asserted is in a public road.  For example, the *Kinscherff* court

17  declined to dismiss a claim that plaintiffs possessed an easement

18  of necessity, instructing the district court to develop a factual

19  record regarding "the existence of an implied easement of

20  necessity, its extent, or whether [the] road is such an

21  easement."  586 F.2d at 161.  But, it is not enough for Plaintiff

22  to allege it is an abutting landowner, as that status does not

23

24       [3] To the extent that ambiguity in the July 24, 2008 decision

25  caused Plaintiff to re-file an abutting landowner claim based on

26  the *Bacich* line of cases, striking the claims as previously
   dismissed is not appropriate.  This does not change the outcome,

27  however, as Plaintiff's Third and Fourth Claims would
   alternatively be dismissed for lack of subject matter

28  jurisdiction for the reasons stated above.

18

1    create a property interest enforceable under the Quiet Title Act.

2         At oral argument on the first motion to dismiss, Plaintiff

3    asserted it was an express grantee of a private easement over the

4    roads in question.  (*See* Doc. 80 at 33-34.)  The July 24, 2008

5    decision afforded Plaintiffs an opportunity to allege, if

6    possible, the nature of that grant and the specific basis for a

7    claim that qualifies for coverage under the Quiet Title Act.

8    (*Id.* at 35.)

9         The SAC's First Claim for Relief, entitled "Quiet Title in

10   Private Easement Granted by United States by Patent -

11   Coulterville Road," alleges:

12            62.  As stated, the Coulterville Road, having a history
              of physical existence for over 130 years, a Mariposa
13            County designated and mapped road, runs from Hazel
              Green to its intersection with the rerouted Big Oak
14            Flat Road just west of the Merced Grove parking area.

15            63.  The United States Patent of 1888 to HGR's
              predecessor, James Halstead, provides unqualified
16            access to two existing routes to the Yosemite Valley,
              including the Coulterville Road, because the Roads
17            existed at the time of the Patent:

18            •    Mariposa County's Board of Supervisors granted
                   permission to build the Roads in 1857;
19
              •    Mariposa County's Board of Supervisors approved
20                 licenses to collect tolls on the Roads in 1870;

21            •    the Roads were then built in 1874, and both were
                   then used to access the Yosemite Valley in two
22                 different ways along two different routes;

23            •    in 1874, Halstead collected tolls at Hazel Green
                   and, three years later, opened a food and
24                 overnight facility there;

25            •    in 1888, as Halstead continued to collect tolls
                   and operate a food and overnight facility at Hazel
26                 Green, the United States issued a Patent to
                   Halstead to a 120-acre tract of land (including
27                 the approximately 80 acres that comprise HGR's
                   property today).  The Patent expressly grants the
28                 "rights, privileges, immunities, and

                                   19

appurtenances, of whatever nature thereunto belonging" to Halstead and his heirs and assigns "forever."  These "rights, privileges, immunities, and appurtenances, of whatever nature thereunto belonging" include the rights-of-way across the adjacent lands for the benefit of the real property conveyed by the Patent that existed at the time that the Patent was issued to Halstead.  The Patent recognized these easements as appurtenances and granted these easements;

• the Roads continued to be used after 1888 by Halstead and his successors as they had been used before, specifically including for access to the Yosemite Valley; and

• the Roads have been modified over time by the owners and Federal, State, and County Governments, who agreed on the realignment of the easements to accommodate those changes, and such modifications have not changed the easement rights but have merely facilitated the use of the easements to take into account changing road configurations, which the maps of all of the authorities involved demonstrate.

64.  Since the 1888 Patent, the United States has repeatedly recognized the rights that have been reserved in the Patentee (and his successors) in, and without limitation, 26 Stat. 650, the April 14, 1930 Presidential Proclamation, 16 U.S.C. § 47e, and 43 U.S.C. §§ 1769(a) & 1701.

65.  HGR has succeeded by successive grant deeds (from prior owners to prior owners) to the land, and the "rights, privileges, immunities, and appurtenances, of whatever nature thereunto belonging" granted by the Patent.

66.  Plaintiff brings this action in order to affirm and enjoy use of the private easement in the Coulterville Road segment leading from Hazel Green to and through the intersection with the Big Oak Flat Road.

67.  Judicial relief is necessary and appropriate, pursuant to the Quiet Title Act, in order to recognize that such rights-of-way exist and to ensure HGR's access at all times over the roads at issue.

For the purposes of this motion, the second cause of action

contains substantially similar allegations with respect to the

Crane Flat Road.  (SAC ¶¶ 68-74.)

1    Federal Defendants first move to dismiss the First and

2  Second Claims on the ground that, like Claims Three and Four,

3  they are predicated on an alleged interest in a public road.

4  Federal Defendants correctly point out that the allegations in

5  the SAC do not articulate any specific theory upon which an

6  easement was <u>expressly</u> created, leaving as the only possible

7  basis for the creation of an easement the following alleged

8  facts: (1) that the two roads existed prior to the issuance of

9  the patent to Halstead; and (2) that they passed through HGR and

10 were used by residents and patrons of HGR, including Halstead,

11 who collected tolls on the road and operated traveler services at

12 the Ranch.  (*See* Doc. 89 at 13.)

13   Contrary to HGR's assertions at oral argument that it

14 possessed an express easement, HGR asserts in its opposition that

15 the easements in question originated by creation or implication.[4]

16 (Doc. 92 at 5.)  HGR correctly argues that "easements may be

17 created in numerous ways aside from an express grant," (*id*. at

18 4.), but does not articulate the means or mechanism of creation

19 or implication that gave rise to any easement in this case.  The

20 closest HGR comes to identifying the origin of its alleged

21 easement is its assertion that "the roads were privately built by

22 private parties across Hazel Green, traversed private property on

23 their route to Yosemite Valley, and were used by Halstead (and

24 those from whom he took tolls at his operation on Hazel Green)

25 continuously and before and after the 1888 patent."  (*Id*. at 6.)

26 ─────────────

27   [4]   Although HGR refuses to concede that its claim is not
   based on an express easement created by the patent, it repeatedly
28 describes its claim as being based on an easement that existed
   prior to the issuance of the patent.

1   HGR cites no authority to explain how these circumstances give
2   rise to any easement that is distinguishable from the easement-
3   like interest articulated in *Bacich*.

4       HGR's reliance on general language in the 1888 patent that
5   expressly grants the "rights, privileges, immunities, and
6   appurtenances, of whatever nature thereunto belonging" to
7   Halstead and his heirs is misplaced.  The use of the word
8   "appurtenance" in a patent does not, in and of itself, <u>create</u> an
9   easement.  *See Fitzgerald Living Trust v. United States*, 460 F.3d
10  1259, 1267 (9th Cir. 2006); *see also McFarland v. Kempthorne*,
11  2008 WL 4426628, --- F.3d --- (9th Cir. Oct. 2, 2008) (applying
12  *Fitzgerald* to find that the word "appurtenance" will only carry
13  with it any easement that pre-dated the grant)[5].  HGR argues that
14  it "has alleged that the easement existed at the time of the
15  Halstead patent because, for 14 years prior, the Roads not only
16  existed but Halstead used the Roads, collected tolls for the
17  Roads, and controlled passage on the Roads for toll-paying

18

19          [5]   HGR filed a supplemental brief addressing the Ninth
20  Circuit decision in *McFarland*, which issued the day before HGR
    filed its opposition to the instant motion to dismiss.  (Doc.
21  94.)  That brief, as well as Federal Defendants' and Defendant
22  Intervenors' responses, (Docs. 82-84), will be considered.
        *McFarland* noted that plaintiff's argument was "undermined by
23  his own representations that his 'predecessor's ... access into
    his property ... was not protected by any <u>county road easement</u> or
24  other guarantee of continued access."  HGR asserts that this note
    indicates that the Ninth Circuit iss "prepared to recognize
25  'county road easement[s]' or other 'guarantee[s] of continued
    access'" as passing with a government grante or patent.  (Doc. 94
26  at 1.)  HGR reads too much into *McFarland*'s language.  Whether a
27  "county road easement" is a title interest sufficient to satisfy
28  the Quiet Title Act was not at issue in *McFarland*.

1   users...."  But, critically, HGR does not articulate a legal

2   theory (or facts from which a legal theory could be implied) upon

3   which any express easement (apart from the *Bacich* easement-like

4   interest) was created by these circumstances.[6]  As discussed

5   above, to the extent that HGR relies on the *Bacich* line of cases

6   to create an easement, any such claim is not cognizable under the

7   Quiet Title Act.

8        HGR denies that its claim relies on *Bacich*, instead

9   asserting that its purported easement was created <u>prior</u> to the

10  1911 purchase of the roads by the Counties, while the road was

11  still in <u>private</u> ownership.  (*See, e.g.*, SAC at ¶¶ 4, 6, 23, 26,

12  37, 41, 52.)  For example, HGR alleges that the roads were

13  constructed by private companies to be operated as toll roads:

14       32.  The Commissioners, in order to encourage development of
          roads which would lead to the Yosemite Valley, "did
15

16  _____

17       [6]    HGR also points to the statutes establishing Yosemite
     National Park and governing the reacquisition of Yosemite Valley
18   by the United States from the State of California.  HGR asserts
     that these statutes protected "existing rights of way," and that
19   the "only existing rights of way those statutes could have been
     recognizing were roads leading to the Yosemite Valley, including
20   the toll-road rights of way which Hazel Green had acquired from
     the United States," suggesting that these statutes somehow
21   acknowledge the existence of HGR's easements.  (Doc. 92 at 2.)
     But, neither of these statutes actually mention "rights of way."
22   The statute providing for expansion of Yosemite Forest Reserve
     protected "any bona-fide entry of land," (SAC ¶34), while the
23   statute providing for the re-cession of Yosemite Valley protected
     "vested rights and interests of third persons," (SAC at ¶39).
24   Moreover, the 1904 Yosemite Commission Report, attached to the
     SAC as Exhibit 6, notes that there were numerous private in-
25   holdings, referencing private lands and associated railroads,
     roads and ditches within the Reservation.  There is no reason to
26   assume that either statute specifically or impliedly acknowledged
     that Hazel Green possessed a property interest in either road.
27

28

offer to grant franchises for the construction of roads
within the grant, in return for which the builders
would be authorized to collect tolls for use of their
rights-of-way."   (See Exhibit 3 at p. 114.)

33.   As a result, the Coulterville and Yosemite Turnpike
Company was formed to "build a wagon road from Bower
Cave through Hazel Green and Crane Flat to an
unspecified point on the boundary line of the Yosemite
Grant" pursuant to a franchise granted by Mariposa
County.   (See Exhibit 3 at p. 116.)   Once they reached
Crane Flat, "they apparently intended to connect with
the Big Oak Flat Road and share its route into the
Valley."   (See id. at p. 117.)   Mariposa County (which
had approved construction of the roads in 1857)
approved licenses to collect tolls on the roads in
1870.   (Exhibit 4.)

34.   In 1872, the company added an additional route of the
road so that the right-of-way also descended from
"Hazel Green, elevation 5,665 feet, . . . south through
the Merced Grove of Big Trees" and headed down into the
Yosemite Valley.   At that point in time, both routes
existed, as they do today (in their shortened form).

35.   The Coulterville and Yosemite Turnpike Company
commenced regularly scheduled stage service on the
Coulterville Road, through Hazel Green, on June 18,
1874.   The Big Oak Flat Road commenced service on
July 17, 1874, with "a caravan of fifty-two vehicles,
trailing nearly a mile back along the road."   (See
Exhibit 3 at p. 129.)   Therefore, as of approximately
mid-1874, there were two state and county authorized
roadways connected to Hazel Green which passed to the
Yosemite Valley Floor:   the Coulterville Road (which
reached Yosemite Valley through the Merced Grove of
Trees) and the Crane Flat Road (which reached Yosemite
Valley by connecting to the Big Oak Flat Road).   Tolls
were collected at Hazel Green for access to both such
roads.

The SAC further alleges that a 1904 DOI report described the
roads as being owned by private companies.

40.   On April 28, 1904 the Congress had directed the
Secretary of the Interior to "examine into the
conditions and situations in the United States Yosemite
Park in the State of California."   On December 13, 1904
the Report of the Yosemite Park Commission (established
by DOI) and the Letter from the Secretary of the
Interior were printed as Senate Document No. 34 (the
"Report").

41.   The Report set forth the existence of the following

24

roads:

> Big Oak Flat Road—Name of Company Big Oak Flat and Yosemite Turnpike Road Company; incorporated January 20, 1871; road completed in 1874; original length, 33 miles; State of California in 1886 bought up the 3 miles within the grant; length in present national park, 19 miles. Coulterville Road—Name of company Coulterville and Yosemite Turnpike Company; date of incorporation apparently in 1870; road completed and opened to travel June 17, 1874, being the first or pioneer road into the valley; original length, 31 miles; in 1885-1887 State purchased the 4 miles east of the "blacksmith shop;" a branch was built from Hazel Green to Crane Flat on Big Oak Flat road, a distance of 4.8 miles, making total length owned by company 31.8 miles, of which about 24 miles is within the national park.  (See Exhibit 6.)

Federal Defendants rejoin that California Law provides that any road operated as a toll road belongs to the public.  HGR pointed to several cases that so hold in its FAC:

> [U]nder California law, a public highway is established when a toll road is created. *See Wood v. The Truckee Turnpike Co.*, 24 Cal. 474, 490 (1864). A person who creates a toll road, even if that toll road is over private land, dedicates it as a public highway when it accepts tolls from the public for its use. *See People v. Davidson*, 79 Cal. 166, 169-70 (1889).

(FAC at ¶ 67.)  Federal Defendants cite *Gardella v. County of Amador*, 164 Cal. 555, 559 (1913), which holds that toll roads are public roads, subject only to the right of the franchisee to collect tolls for a specified term.  *See also Blood v. Woods*, 95 Cal. 78 (1892).  Plaintiff protested at oral argument that there is no contradiction between its assertion that private parties own the roads and the government's assertion that they are "public."  Plaintiff is incorrect.  *Wood v. Truckee Turnpike Co.*, 24 Cal. 475, 478 (1864), and *Kellett v. Clayton*, 99 Cal. 210, 213 (1893), hold that a toll road belongs to the public; the operator only possesses an "easement" in the road, consisting of the right

1  to collect tolls as a compensation for building the road.  HGR

2  has failed to identify any legal authority establishing that

3  either of the private companies in question ever possessed <u>title</u>

4  to the roads.

5      Nevertheless, *Kinscherff* leaves open the possibility that a

6  landowner might possess a true easement interest in a public road

7  sufficient for purposes of the Quiet Title Act.  However, to the

8  extent that HGR wishes to allege the creation of an easement on

9  some theory other than the *Bacich* line of cases, it must

10  articulate that theory <u>with particularity</u>.  28 U.S.C. § 2409a(d)

11  ("The complaint shall <u>set forth with particularity</u> the nature of

12  the right, title, or interest which the plaintiff claims in the

13  real property, the circumstances under which it was acquired, and

14  the right, title, or interest claimed by the United States"); *see*

15  *also Washington County v. United States*, 903 F. Supp. 40, 42 (D.

16  Utah 1995) (where plaintiff alleged that it is "the owner of the

17  highway rights-of-way shown" on a map attached to its complaint

18  and that it "acquired its rights-of-way through public use, by

19  County construction and maintenance of the rights-of-way or

20  both," such "conclusory allegations" fail to identify "with

21  particularity" any interest in real property, nor do they do they

22  describe "the circumstances under which" any property interest

23  was acquired).

24      At oral argument, HGR suggested that an easement "by

25  prescription" was created by Halstead's use of the road.

26  To establish a prescriptive easement, the claimant must present

27  evidence of use of the property that has been (1) open and

28  notorious, (2) continuous and uninterrupted for the statutory

1  period of more than five years, (3) hostile to the true owner;

2  and (4) under a claim of right.  *See Brewer v. Murphy*, 161 Cal.

3  App. 4th 928, 938 (2008); Cal. Civ. Code § 1007.  It defies logic

4  to assert that an individual who had permission to use a road and

5  collect tolls from users of that road could possibly have used

6  the road in an openly hostile manner.

7      Federal Defendant's motion to dismiss the First and Second

8  Claims is GRANTED.

9      HGR's equivocation regarding the nature and origin of any

10  claimed property interest in the roads raises doubt whether,

11  after two opportunities, Plaintiff can allege a federally

12  enforceable real property interest in the two roads.

13  Nevertheless, in view of ambiguous language in the July 24, 2008

14  decision, Plaintiffs will be afforded one final opportunity to

15  articulate a property interest cognizable under the Quiet Title

16  Act.  Any such interest must be separate and distinct from its

17  status as an abutting landowner.

18

19      C.   Motion to Join Tuolumne and Mariposa Counties.

20      HGR moves to join Tuolumne and Mariposa Counties on the

21  ground that its abutting landowner claims depend on demonstrating

22  county ownership of the roads.  (Doc. 81 at 1.)  Given that the

23  abutting landowner claims have been dismissed, this is no longer

24  a basis upon which joinder can be justified.

25      However, if HGR is able to articulate a claim based upon

26  possession of a property interest in the roads sufficient to

27  satisfy the Quiet Title Act, Mariposa County, which is alleged by

28

27

1  Plaintiffs to be the <u>current</u> owner of the roads[7], must be named

2  as a party to this case.  Federal Rule of Civil Procedure 19

3  provides:

4          (1) Required Party. A person who is subject to service
           of process and whose joinder will not deprive the court
5          of subject-matter jurisdiction must be joined as a
           party if:
6
7              (A) in that person's absence, the court cannot
               accord complete relief among existing parties; or

8              (B) <u>that person claims an interest relating to the
               subject of the action and is so situated that</u>
9              <u>disposing of the action in the person's absence</u>
               <u>may</u>:
10
11                 (i) <u>as a practical matter impair or impede
                   the person's ability to protect the interest</u>;
12                 or

13                 (ii) leave an existing party subject to a
                   substantial risk of incurring double,
14                 multiple, or otherwise inconsistent
                   obligations because of the interest.

15 According to Plaintiffs allegations, Mariposa County claims an

16 interest in the roads and, as a practical matter, disposition of

17 this action may impede the Mariposa County's interests.

18     Plaintiff seeks to join Tuolumne County because part of the

19 Crane Flat Road appears on a map of Tuolumne County.  (Doc. 81 at

20 8.)  However, Tuolumne County has disclaimed any interest in the

21 Crane Flat Road.  (Doc. 58.)  Plaintiff nevertheless asserts that

22 Tuolumne should be joined "so that its disclaimer of interest at

23 any time can be incorporated into any judgment."  (Doc. 81 at 8.)

24 Plaintiffs fail to explain why joinder is warranted on this

25 ground.

26     HGR's motion to join is GRANTED as to Mariposa County, but

27 _____

28     [7]   Federal Defendants dispute this.

28

1   DENIED WITHOUT PREJUDICE as to Tuolumne County.

2

3                          V.   CONCLUSION

4       For the reasons set forth above:

5       (1) Federal Defendants' motion to strike the Third and

6   Fourth Claims is GRANTED WITH PREJUDICE.

7       (2) Federal Defendants' motion to dismiss the First and

8   Second Claims is GRANTED WITHOUT PREJUDICE.

9       (3) Plaintiff's motion to join is GRANTED as to Mariposa

10  County and DENIED WITHOUT PREJUDICE as to Tuolumne County.

11      (4) Plaintiff shall have fifteen days from the entry of this

12  order to file any amended complaint.

13

14  **IT IS SO ORDERED.**

15  **Dated:    October 27, 2008            /s/ Oliver W. Wanger**
                                    **UNITED STATES DISTRICT JUDGE**
16

17

18

19

20

21

22

23

24

25

26

27

28