UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAZEL GREEN RANCH, LLC, | 1:07-CV-00414 OWW SMS |
| Plaintiff, | ORDER RE MOTION TO DISMISS THIRD AMENDED COMPLAINT (DOC. 108) |
| v. | |
| UNITED STATES DEPARTMENT OF THE INTERIOR, et al., | |
| Defendant, | |
| and, | |
| SIERRA CLUB, et al., | |
| Defendant-Intervenors. | |

I. <u>INTRODUCTION</u>

Federal Defendants move to dismiss Plaintiffs Mariposa County ("County") and Hazel Green Ranch LLC's ("HGR") Third Amended Complaint for Quiet Title to certain, now largely unused

segments of Crane Flat and Coulterville roads leading into Yosemite Valley from HGR's property.  HGR is surrounded on its northern, southern, and western boundaries by the Stanislaus National Forest, and Yosemite National Park on its eastern boundary.  Doc. 108.  Federal Defendants argue that the County's quiet title allegations are not pled with sufficient specificity and that HGR's allegations fail to state a claim upon which relief may be granted.  *Id*.  Plaintiffs oppose dismissal.  Doc. 115.  Federal Defendants replied.  Doc. 120.

## II. PREVIOUS RULINGS

On two previous occasions, all of HGR's claims seeking to quiet title over the Coulterville and Crane Flat Roads have been dismissed.  The July 24, 2008 Decision dismissed all twelve claims alleged in the First Amended Complaint ("FAC").  Doc. 80. HGR's claims based on R.S. 2477 were barred by the Quiet Title Act's ("QTA") waiver of sovereign immunity, which does not extend to actions by private parties seeking a right of access over a public road.  *Id*. at 26, 30.  HGR's private easement claims were dismissed on the ground that "claiming an interest as an abutting landowner is not sufficient" to establish and easement because "Plaintiff ... is attempting to claim an interest in a public road."  *Id*. at 34.  The declaratory judgment and mandamus claims were found "improper and unnecessary" and barred by the United States' sovereign immunity.  *Id*. at 37-39.  However, due to an

2

ambiguity in HGR's private easement claims, HGR was granted leave to amend "to allege facts that entitle it to claim an interest under the Quiet Title Act," i.e., to claim private easements independent of the existence of public or county roads. *See id.* at 35.

On August 13, 2008, HGR filed its Second Amended Complaint ("SAC"), seeking to quiet title in private easements for the claimed roads on the bases that: (1) the 1888 patent of the Hazel Green Ranch, "together with all the rights, privileges, immunities, and appurtenances, of whatsoever nature thereunto belonging" to HGR's predecessor conveyed private easements that were in existence prior to issuance of the patent (Claims 1 and 2); and (2) under California state law, owners of land abutting public highways have a property right in the nature of a private easement in such public highways (Claims 3 and 4). Doc. 85.

An October 28, 2008 Memorandum Decision dismissed all the claims in the SAC. Doc. 97. The two claims based on HGR's status as an abutting landowner (Claims 3 and 4) were dismissed with prejudice, because these claims were the same private easement claims that were previously dismissed. *Id.* at 18-19, 27, 29. The two claims for private easements based on the 1888 patent and the alleged existence of the claimed private easements prior to patent (Claims 1 and 2) were dismissed for failure to meet the particularity requirement of the QTA and for failure to

"articulate a legal theory (or facts from which a legal theory could be implied) upon which" its claimed private easements could have been established. *Id.* at 23, 26-27. After recognizing that "HGR's equivocation regarding the nature and origin of any claimed property interest in the roads raises doubt whether, after two opportunities, Plaintiff can allege a federally enforceable real property interest in the two roads," HGR was afforded "one final opportunity" to articulate a property interest cognizable under the QTA. Finally, it was recognized that "if HGR is able to articulate a claim based on possession of a property interest" cognizable under the Quiet Title Act, "Mariposa County, which is alleged by plaintiffs to be the current owner of the roads, must be named as a party to this case." *Id.* at 27-28 (emphasis in original).

On November 12, 2008, HGR, along with the County, filed a Third Amended Compliant ("TAC"), alleging: (a) that Mariposa County has an "R.S. 2477 right-of-way" to the Coulterville and Crane Flat Roads, as those roads are described in the complaint (First and Second Claim for Relief); and (b) that HGR possesses an implied easement by necessity (Third and Fourth Claims for Relief), and an implied easement by use (Fifth and Sixth Claims for Relief) over those roads. Doc. 100.

### III. STANDARDS OF DECISION

A.   Rule 12(b)(6).

Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To sufficiently state a claim to relief and survive a 12(b)(6) motion, the pleading "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id.* Rather, there must be "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In other words, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). The Ninth Circuit has summarized the governing standard, in light of *Twombly* and *Iqbal*, as follows: "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted). Apart from factual insufficiency, a complaint is also subject to

dismissal under Rule 12(b)(6) where it lacks a cognizable legal theory, *Balistreri*, 901 F.2d at 699, or where the allegations on their face "show that relief is barred" for some legal reason, *Jones v. Bock*, 549 U.S. 199, 215 (2007).

In deciding whether to grant a motion to dismiss, the court must accept as true all "well-pleaded factual allegations" in the pleading under attack.  *Iqbal*, 129 S. Ct. at 1950.  A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  "When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond."  *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir.2003).  "A court may, however, consider certain materials -- documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice -- without converting the motion to dismiss into a motion for summary judgment."  *Id*. at 908.

B.    Rule 12(b)(1) and Sovereign Immunity.

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action for "lack of jurisdiction over the subject matter."  Faced with a Rule 12(b)(1) motion, a plaintiff bears

6

the burden of proving the existence of the court's subject matter jurisdiction. *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996). A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears. *Gen. Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 968-969 (9th Cir. 1981). A challenge to subject matter jurisdiction may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). As explained in *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1038 (9th Cir. 2004), *cert. denied,* 544 U.S. 1018 (2005):

> In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.

In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. *Savage v. Glendale Union High School,* 343 F.3d 1036, 1039 n.2 (9th Cir. 2003), *cert. denied*, 541 U.S. 1009 (2004); *McCarthy v. United States,* 850 F.2d 558, 560 (9th Cir. 1988), *cert. denied*, 489 U.S. 1052 (1989). "If the challenge to jurisdiction is a facial attack, *i.e.*, the defendant contends that the allegations of jurisdiction contained in the complaint are insufficient on their face to demonstrate the existence of jurisdiction, the plaintiff is entitled to safeguards similar to those applicable when a Rule 12(b)(6) motion is made." *Cervantez v. Sullivan*, 719 F. Supp.

899, 903 (E.D. Cal. 1989), *rev'd on other grounds*, 963 F.2d 229

(9th Cir. 1992).  "The factual allegations of the complaint are

presumed to be true, and the motion is granted only if the

plaintiff fails to allege an element necessary for subject matter

jurisdiction."  *Id.*

The United States, as a sovereign, is immune from suit

unless it has waived its immunity.  *Dept. of the Army v. Blue

Fox, Inc.*, 525 U.S. 255, 260 (1999); *United States v. Mitchell,*

445 U.S. 535, 538 (1980).  A court lacks subject matter

jurisdiction over a claim against the United States if it has not

consented to be sued on that claim.  *Consejo de Desarrollo

Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173

(9th Cir. 2007).  "When the United States consents to be sued,

the terms of its waiver of sovereign immunity define the extent

of the court's jurisdiction."  *United States v. Mottaz*, 476 U.S.

834, 841 (1986).  A waiver of sovereign immunity by the United

States must be expressed unequivocally.  *United States v. Nordic

Village, Inc.*, 503 U.S. 30, 33 (1992).  As a general matter,

purported statutory waivers of sovereign immunity are not to be

liberally construed.  *Id.* at 34.

C.    Quiet Title Act.

Title 28, United States Code, section 1346(f) provides that

"[t]he district courts shall have exclusive original jurisdiction

of civil actions under section 2409a to quiet title to an estate

8

or interest in real property in which an interest is claimed by the United States."

28 U.S.C. § 2409a provides in pertinent part:

> (a) The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property *in which the United States claims an interest* ....
>
> ***
>
> (d) The complaint shall set forth with particularity the nature of the right, title, or interest which the plaintiff claims in the real property, the circumstances under which it was acquired, and the right, title, or interest claimed by the United States.

28 U.S.C. § 2409a (emphasis added).

The QTA is the exclusive means by which adverse claimants can challenge the United States' title to real property.  If the United States has an interest in disputed property, the waiver of sovereign immunity must be found, if at all, within the QTA.  *Alaska v. Babbitt*, 38 F.3d 1068, 1073 (9th Cir. 1994).  If the QTA does not apply, the district court does not have jurisdiction over the claim.  *Leisnoi, Inc. v. United States*, 170 F.3d 1188, 1191 (9th Cir. 1999).  Two conditions must exist before a district court can exercise jurisdiction over an action under the QTA: (1) the United States must claim an interest in the property at issue, and (2) there must be a disputed title to real property.  28 U.S.C. § 2409a(a, d).

Because it is a waiver of sovereign immunity, the QTA must be strictly construed, and the limitations set forth in the

9

statute must be strictly enforced. *See United States v. Mottaz*, 476 U.S. 834, 841 (1986); *United States v. Testan*, 424 U.S. 392, 399 (1976). The QTA's waiver of sovereign immunity is expressly limited by a number of conditions, including the requirements that a plaintiff seeking to quiet title as against the United States clearly plead the nature of the interest claimed and the circumstances under which the plaintiff alleges to have acquired that interest. Specifically, the QTA provides:

> The complaint shall set forth with particularity the nature of the right, title, or interest which the plaintiff claims in the real property, the circumstances under which it was acquired, and the right, title, or interest claimed by the United States.

28 U.S.C. § 2409a(d) (emphasis added). Consistent with the limited waiver of sovereign immunity in the QTA, the courts have instructed that the pleading requirements of the QTA must be strictly observed and exceptions thereto are not to be implied. *See Mottaz*, 476 U.S. at 841; *Stubbs v. United States*, 620 F.2d 775, 779 (10th Cir. 1980).

D.   <u>R.S. 2477.</u>

From its 1866 enactment until its repeal in the Federal Land Policy Management Act ("FLPMA") in 1976, R.S. 2477 provided, in its entirety, that "[t]he right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted." R.S. 2477; 43 U.S.C. § 932 (1970, repealed 1976). This land grant was self-executing in some states,

meaning that an R.S. 2477 right-of-way could come into existence automatically, without need for formal action by public authorities, whenever the public sufficiently indicated its intent to accept the land grant by establishing a public highway across public lands in accordance with state law. *See Standage Ventures, Inc. v. Ariz.*, 499 F.2d 248, 250 (9th Cir. 1974); *Southern Utah Wilderness Alliance v. Bureau of Land Mgmt.*, 425 F.3d 735, 770 (10th Cir. 2005) ("In most western states, where R.S. 2477 was most significant, acceptance required no governmental act....").

On October 21, 1976, Congress enacted FLPMA, which repealed R.S. 2477 but preserved "any valid" right-of-way "existing on the date of approval of this Act." Pub. L. No. 94-579, §§ 701(a), 706(a), 90 Stat. 2743, 2793 (1976). Accordingly, rights-of-way under R.S. 2477 that were perfected before the statute's repeal in 1976 and which have not been abandoned, remain valid today. Local governments may file suits to quiet title against the United States if they can demonstrate that the grant of a right-of-way was accepted prior to the statute's repeal in 1976 and, where applicable, prior to the reservation or appropriation of the public land underlying the alleged right-of-way to some other use.

IV. <u>DISCUSSION</u>

A.   <u>Motion to Dismiss Claims 1 and 2.</u>

    1.   <u>Failure to Allege with Particularity the Nature of the Interest Claimed and Circumstances Under Which the Claimed Interest Was Acquired.</u>

        a.   <u>Inconsistency and Ambiguity In Description of Claimed Property Interest.</u>

Federal Defendants argue that Mariposa County does not clearly allege which portions of the purported rights-of-way for the two roads it claims to own.  One part of the complaint appears to claim ownership of large portions of the Coulterville and Crane Flat Roads (or rights-of-way for the Roads) from either Coulterville (or Bower Cave, or Black's Store) or Hazel Green to the Yosemite Valley floor.  *See* TAC at ¶1 ("The County asserts that it is the owner of" two separate "Mariposa County mapped and existing roads" within Yosemite National Park and Stanislaus National Forest" which lead from Hazel Green to "the Yosemite Valley floor.").  The County later alleges that facts demonstrate the development of the roads from "Coulterville to the Yosemite Valley floor through Hazel Green...."  *Id.* at ¶17

In other places, the County asserts ownership and seeks to quiet title to only limited portions of the roads or rights-of-way in the vicinity of the Hazel Green Ranch.  For example, at paragraph 15, the County states that "[t]he segment of the Coulterville Road in which Mariposa County [] seeks to quiet title passes through Section[s] 14, 15, and 23, Township 2 South, Range 19 East, M.D.B.&M."  *Id.* at ¶15.  Likewise, at paragraph

16, the County alleges that "[t]he segment of the Crane Flat Road

in which Mariposa County [] seeks to quiet title passes through

Section 15, Township 2 South, Range 19 East, M.D.B.& M."  *Id*. at

¶16.  According to Federal Defendants' analysis of Geological

Survey maps attached to the complaint, those section numbers only

encompass the claimed locations of the roads to about a mile and

a half south and east of Hazel Green.  Doc. 111 at 11.

Elsewhere in the TAC, the claimed sections are depicted

differently.  For example, paragraph 52 alleges that the segments

of the Coulterville and Crane Flat Roads "at issue ... are

depicted on the maps attached as Exhibit 26 (1) with black and

white squares (respectively) and (2) as recently mapped with

Global Positioning System technology."  *Id*. at ¶52 (citing

Exhibit 26 to the TAC).  According to Federal Defendants'

analysis of Exhibit 26, the black squares depict a route from

point about seven miles west of Hazel Green, continuing southeast

from Hazel Green, and then forking, with one alignment proceeding

northeast for about a half mile to an unlabeled point where it

appears to join the claimed Crane Flat Road, and the other route

proceeding southeast for about a half mile at which point it

appears to be cropped-off by the bottom of the map.  Doc. 111 at

11 (citing Ex. 26 to TAC). The white squares on Exhibit 26 depict

a route from an unlabelled point about eight miles west of Hazel

Green, through Hazel Green, and east for about another five miles

to a point where the route appears to join the original Big Oak
Flat Road.  *See id*.

Finally, the County asserts in its First Claim for Relief
that the Coulterville Road: (1) "runs from Hazel Green to its
intersection with the rerouted Big Oak Flat Road" (TAC at ¶74);
(2) was completed from Bower Cave to the Yosemite Valley (*id*. at
¶75); and (3) "is further and more particularly described as
County Roads 51 (to the west of and across Hazel Green) and 8006
(to the south and east of Hazel Green) at Exhibits 2 and 26,
incorporated herein by reference."  TAC at ¶76.  Similarly
inconsistent allegations are found in the Second Claim for Relief
as to the Crane Flat Road.  *Id*. at ¶81.

The QTA requires that Plaintiff plead with particularity the
title claimed by plaintiff.  *Washington County v. United States*,
903 F. Supp. 40 (D. Utah 1995), dismissed several claims to R.S.
2477 rights-of-way, in part, on the grounds that the complaint
did not allege with particularity the interests claimed or the
circumstances under which the interests were acquired:

> Plaintiff alleges that it is "the owner of the highway
> rights-of-way shown" on the map attached to its
> complaint and that it "acquired its rights-of-way
> through public use, by County construction and
> maintenance of the rights-of-way or both."  The court
> agrees with the United States that these conclusory
> allegations do not identify "with particularity" any
> interest in real property; nor, do they describe "the
> circumstances under which" any property interest was
> acquired.

903 F. Supp. at 42.

There is scant additional authority interpreting breadth and

reach of the QTA's particularity provision.  However, the plain language of the QTA requiring particularity in description of the claimed real property interest supports the principle that a complaint that describes the claimed interest in real property in a confusing and contradictory manner is insufficient.  Even Rule 8 requires pleadings to be, among other things, "concise, and direct," and subjects a complaint to dismissal if it is "confusing" and/or "conclusary."  *See Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 673-74 (9th Cir, 1981).  Here, the complaint is, on its face, confusing and contradictory.

It is of no moment that Plaintiffs claim to have met with Federal Defendants to discuss the roads.  The complaint must stand on its own.  Nor is it relevant how Federal Defendants described the roads in their opposition to Plaintiffs' motion to join the County as a party.  Doc. 60.  The County was not a party to the case at that time.  It is the County's burden to allege the interest(s) it claims with specificity.  The County needs to provide a definite and certain description of the real property claimed.

The motion to DISMISS Claims 1 and 2 on the ground that the County has not provided a clear and consistent description of the claimed property interest(s) is GRANTED WITH A FINAL OPPORTUNITY TO AMEND.  NO FURTHER AMENDMENTS WILL BE PERMITTED TO ACCURATELY DESCRIBE THE CLAIMED REAL PROPERTY INTEREST.

b. **Failure to Allege Manner by Which the County Acquired Ownership of the Rights-of-Way.**

The County's allegations of how it acquired ownership in rights-of-way for the roads also lack clarity. The County alleges that the Coulterville and Crane Flat Roads are "Mariposa County mapped and existing roads within the boundaries of Yosemite National Park and Stanislaus National Forest" and that "it is the owner of these roads." TAC at ¶1; *see also id.* at ¶54 (the Coulterville and Crane Flat Roads were constructed in the 1870s "as Mariposa County-authorized highways").

Federal Defendants argue that authorizing, mapping or designating the roads does not, in and of itself, establish County ownership. This is of particular import given that the TAC elsewhere alleges that the roads and rights-of-way were privately-owned at various points in time by: (1) the private company that constructed the roads, (2) the private landowners whose lands were traversed by the roads, and (3) the patentee of Hazel Green, James Halstead, and subsequent owners of Hazel Green.[1] The County nowhere alleges the date or the means by

---

[1] *See id.* at ¶14 ("the private owners" and, subsequently, the County, State and Federal governments, agreed to realignment of the easements to accommodate changes in the roads over time); ¶¶ 24, 85, 87, 92, 94 (1888 patent to Halstead granted private easements by necessity in the roads); ¶¶ 99, 101, 102, 107, 109, 110 (1888 patent to Halstead and patents of adjoining properties deeded "the roads without excepting out any rights of way of others;" open, notorious, continuous, hostile use of the roads prescribed private rights-of-way; existence and use of the roads when patents were issued "created express and implied reciprocal easements between the property owners after each patent was patented"); ¶30 (the Coulterville Road, including the Crane Flat branch road, were "privately-owned roads," owned by the Coulterville and Yosemite Turnpike Company); ¶44 ("it is clear that until

16

which the County became the owner of rights-of-way for the roads.

Elsewhere in the TAC, the County appears to allege that the roads were State-owned.  *See* TAC at ¶43 (1938 deed of 40 acres east of Hazel Green excepted "existing rights-of-way" owned by the State of California).  At another point, the County claims that "as of approximately mid-1874, there were two state and county authorized roadways passing through and connecting to Hazel Green which passed to the Yosemite Valley floor," but does not allege whether at that time the roads were County-owned, State-owned, co-owned, or, if not County-owned at that point, when and how the County acquired any claimed ownership interest.  *See id*. at ¶23.  The County cryptically states that it "asserts rights, titles, and interests in the Coulterville and Crane Flat Roads since approximately 1874," but does not specify whether it claims that it has been the owner of the roads since that date or how it acquired any claimed interest from the State of California.  *See id*. at ¶57.

The County alleges that in 1911 it declared the Coulterville to Yosemite Road, from Hazel Green to the Yosemite Valley to be a "free county highway[]" on which no tolls could be charged.  *Id*. at ¶33, Ex. 2 to TAC (declaring Coulterville Road from Hazel Green to Cascade Falls to be "a public highway").  If the County

1939, all of the lands on which the Crane Flat Road and the Coulterville Road segments now intersect with the rerouted Big Oak Flat Road were in private ownership and the owners of the lands were utilizing those roads as private rights-of-way"); ¶¶ 75 & 80 ( bullet 13) ("the owners" and the Federal, State and County governments agreed to realignments in the roads).

intends to assert that the resolution serves as its basis for its claimed ownership, the County fails to allege how the resolution declaring the roads to be public highways, free from tolls, could have transferred ownership in view of the 1917 judgment in *Mary Helen McLean v. County of Mariposa*, referred to in paragraph 37 of the complaint.  *See id*. at ¶ 37, Ex. 11.  That judgment adjudicated Mary McLean as "owner in fee of the franchise to collect tolls" on the Coulterville Road from Hazel Green to the Yosemite Valley as well on the Crane Flat Road (referred to as the branch road from Hazel Green to Crane Flat).  *See id*.  Finally, the County fails to allege how it could have acquired ownership of the right-of-way for the Coulterville Road from Coulterville to Hazel Green, or for the Crane Flat Road, neither of which is addressed by the resolution.

   The County further alleges that the 1917 *McLean* judgment declared the County to be the owner of the portion of the Coulterville Road from Bower Cave to Hazel Green.  *Id*.  However, the judgment does not adjudicate the County as the owner of the road beyond Hazel Green and therefore provides no basis for a claim of ownership the road east or south of Hazel Green.  *See id*.

   Finally, the complaint alleges "Mariposa County has also recently re-asserted its rights in the Roads under R.S. 2477, and that it had not abandoned the Roads."  TAC at ¶50, citing Ex. 25

to TAC.  That 2008 resolution very generally asserts that "there
now exists in Mariposa County a network of roads, mining roads,
logging roads, horse trails, hiking trails and footpaths, all of
which provide access to and throughout National Parks and
National Forests and Bureau of Land Management lands representing
a substantial portion of the land within Mariposa," and resolves
that "[t]he County and the public have acquired rights-of-way
pursuant to R.S. 2477" to unidentified roads, trails and
footpaths and that "the County expects all Federal agency actions
to be consistent with this assertion."  Ex. 25 to TAC at 1-2.
The County's allegation that the resolution constitutes an
assertion of ownership in the Coulterville and Crane Flat Roads
is belied by the general language of the resolution.

    The County's present allegations regarding the legal basis
for its asserted ownership of the roads are internally
inconsistent, as other allegations in the complaint (e.g.,
reference to the McLean Judgment) undermine any alleged theory of
ownership.  The County must specifically and unambiguously
describe the nature of its assertion of ownership over the roads.

    The motion to DISMISS Claims 1 and 2 on the ground that the
County has not provided sufficient particularity with respect to
the legal basis for its asserted property interest in the roads
is GRANTED WITH ONE OPPORTUNITY TO AMEND.  No further leave will
be granted.

19

1                    (1)   County's Judicial Estoppel Argument.

2          The County argues "Federal Defendants have long admitted

3   that Mariposa County owns the roads at issue in this case."  Doc.

4   115 at 5.  The admission to which the County refers originated in

5   the *McLean* suit, filed in 1914.  In that suit, Federal

6   Defendants, including the then-Superintendent of Yosemite

7   National Park, George Sovulewski, stated in their answer that:

8

9                [C]ontinuously, for a period of more than five years
                 prior to the commencement of this action, the
10               Defendant, County of Mariposa, has worked said alleged
                 toll road and kept the same in repair, and during all
11               of said time, said County of Mariposa has been in
                 undisputed possession of, and has owned and controlled
12               said toll road and has claimed the same as a public
                 highway of the said county adversely to the whole
13               world, and for more than five years prior to the
                 commencement of this action, said highway has been
14               abandoned to the public and has been by the public
                 accepted and used during all of said time, as a public
15               highway, free of all toll and free of any right or
                 interest of the Plaintiff or any of her alleged
16               predecessors in title.

17

18  TAC, Ex. 10.  The County asserts that Federal Defendants should

19  be judicially estopped from asserting that it does not own the

20  roads.

21          The doctrine of judicial estoppel is an equitable doctrine a

22  court may invoke to protect the integrity of the judicial

23  process.  *United National Ins. Co. v. Spectrum Worldwide, Inc.,*

24  555 F.3d 772, 778 (9th Cir. 2009).  "It was developed to prevent

25  litigants from 'playing fast and loose' with the courts by taking

26  one position, gaining an advantage from that position, then

27

28
                                    20

seeking a second advantage by later taking an incompatible position." *Id*. For judicial estoppel to apply: (1) the litigant's current position must be "clearly inconsistent" with his earlier position; (2) the litigant must have succeeded in persuading the court to accept the earlier position, so that accepting litigant's current argument would create "the perception that either the first of the second court was misled"; and (3) the court must consider whether litigant would derive an unfair advantage from having taken inconsistent positions if not estopped. *Id*.

Here, although the Federal Defendants' current position is arguably inconsistent with the position taken in the *McLean* answer, the second factor is definitely not present, as Federal Defendants did not succeed at persuading the *McLean* court to accept the assertion that the entire road belonged to the County. Rather, the 1917 judgment entered in *McLean*, found <u>McLean</u> to be the owner of the franchise to collect tolls on all portions of the Coulterville Road <u>east</u> of HGR (i.e., all portions of the road from HGR southeasterly and easterly to the Yosemite Valley Grant, as well as the Crane Flat branch road), and determined the County to be the owner of the <u>western</u> portion of the Coulterville Road, from Bower Cave to Hazel Green. *See* Response at 6, Ex. 11 to TAC. It is the eastern portion of the road system (that between HGR and Yosemite Valley) that is at issue in this litigation.

Federal Defendants did not persuade the *McLean* court to accept
its position with respect to any roads east of HGR.  The County
also fails to demonstrate that Federal Defendants would derive an
unfair advantage as a result of taking inconsistent positions.
It is not appropriate to apply judicial estoppel as a result of
the Federal Defendants' "admissions" in the *McLean* case.

Alternatively the County argues that Federal Defendants
admitted that the roads were established pursuant to California
law and R.S. 2477 based on an 1891 memorandum by the Assistant
Attorney General.  *See* Doc. 115 at 7-8 (citing TAC, Ex. 5).  That
memorandum was prompted by correspondence from John McLean
seeking a meeting with the Secretary of the Interior to discuss
whether the Secretary would consider recommending an
appropriation from Congress to purchase McLean's claimed toll
franchise.  TAC, Ex 5 at 1.  The memorandum concludes that the
owners of toll roads are entitled to collect tolls in accordance
with the terms of their contracts subject to regulation by the
Department of the Interior short of prohibiting the taking of
tolls.  *Id.* at 13.  The author notes that "[f]rom the meager
data" before the author, it was "quite impracticable" to advise
the Secretary whether to seek an appropriation for the purchase
of the toll franchise and recommended that, to this end, "an
investigation of the status of said roads, and all other legal or
equitable claims within the limits of [Yosemite] National Park

and outside the Yosemite Valley, should be made under the direction of the Secretary of the Interior, and the report of the results of such investigation should be made to Congress." *Id*. at 13-14.  The memorandum then concludes by offering the author's opinion and advice to the Secretary that the toll roads in the Yosemite National Park derive their privileges from the laws of California and R.S. 2477 and that the Secretary has the power to regulate, but not prohibit, the taking of tolls by the toll companies on roads in the Park outside of the Yosemite Valley (which was owned by the State of California at that time).  *Id*. at 14.  Plaintiff does not explain how this memorandum addressing unidentified toll roads within Yosemite and calling for investigation into the status of the roads could be asserted as an admission that bars Federal Defendants from disclaiming the County's ownership to the Coulterville and Crane Flat Roads as they are alleged to exist today.

The County further alleges that Federal Defendants have admitted and confirmed the County's ownership of the roads since 1891, citing Exhibit 7 to the TAC.  *See* Doc. 115 at 8.  Exhibit 7 is an excerpt from an undated "Historical American Engineering Record" prepared for the Yosemite National Park Roads and Bridges Project as part of an evaluation concerning whether the Coulterville Road (and other roads addressed in other parts of the report) qualified for listing in the National Register of

Historic Places.  While the report documents the construction of the Coulterville Road by 1874, it notes that less than three miles of the road remain open to vehicular traffic within the Park, due to rockslides, realignments and closures to vehicles by the Park.  See Ex. 7 to TAC at 2, 7.  The report notes that the Valley end of the road was closed for good by a massive rockslide in 1982 although it can still be hiked, "but scrambling over the rockslide at the bottom is very difficult," and that the segment through the Merced Grove of Giant Sequoias was closed by the Park except for use as a foot trail and fire motorway.  *Id*. at 7.  The County fails to explain how this document precludes Federal Defendants from disclaiming County ownership of the roads in question.

Finally, the County argues that the existence of the toll roads as public roads has been "confirmed by federal decisions" subsequent to 1891.  Doc. 115 at 8.  The County cites *Curtin v. Benson*, 158 F. 383 (C.C.N.D. Cal. 1907), where the Circuit Court for the Northern District of California noted the parties' agreement that plaintiff Curtin owned and leased lands within Yosemite National Park and that unidentified toll roads led to such lands over which the public had the right to pass upon the collection of the toll by the "corporation controlling said roads."  The Circuit Court upheld Department of the Interior regulations that required the owners of patented lands within the

Park to clearly mark the boundaries of their property and to obtain the permission of the Park Superintendent prior to herding or driving stock across Park lands to their private inholdings. *Id*. at 384.

The Supreme Court reversed, holding that the regulations constituted "an absolute prohibition of use" and that the Secretary and the Superintendent were without power to so limit the use of private property. *Curtin v. Benson*, 222 U.S. 78, 86-87 (1911). Critically, <u>neither the Circuit nor the Supreme Court made any findings or conclusions concerning the roads claimed by the County in this action</u>. In fact, the Circuit Court decision sets forth a legal description of the lands at issue in that case as lying within:

> N. 1/2 of section 16, and S.E. 1/4 of section 18, in
> township 2 S., range 20 E." and "section 17, in
> township 2 S., range 20 E., and the S.W. 1/4 of section
> 13, township 2 S., range 19 E.

*Curtin*, 158 F. at 383. To the contrary, the County's complaint states that the "segment of the Coulterville Road in which Mariposa County and HGR seek to quiet title passes through Sections 14, 15, and 23, Township 2 South, Range 19 East, M.D.B.&M." TAC at ¶15. Paragraph 16 alleges that the "segment of the Crane Flat Road in which Mariposa County and HGR seek to quiet title passes through Section 15, Township 2 South, Range 19 East, M.D.B.&M." *Id*. at ¶ 16. None of the lands identified by the circuit court in *Curtin* are common to the areas the TAC

25

alleges are traversed by the roads claimed in this action.

There is no basis to judicially estop Federal Defendants

from disclaiming the County's ownership over the roads in

question.

> 2.   <u>Failure to Identify with Particularity the Road
> Segments Allegedly Established as R.S. 2477 Highways
> and How Those Roads Were Realigned Over Time.</u>
>
> > a.   <u>Failure to Identify Specific Locations of Original
> > Roads Claimed to have been Constructed as R.S.
> > 2477 Highways.</u>

Federal Defendants next argue that the County fails to

identify the beginning point of the original claimed R.S. 2477

road in a consistent or specific manner.   The County alleges

variously that the Coulterville Road began in Coulterville,

California (TAC at ¶¶ 14, 17, 33), Bower Cave (*id*. at ¶¶ 21, 37;

*id*. at ¶¶ 75, 80, 85, 92, 99, 107; *id*. at Ex. 2 at 1, 2), and

Black's Store on Bull or Bold Creek (*id*. at Ex. 2 at 1).

The County also fails to identify specific ending points for

the Coulterville Road or the Crane Flat Road.   The County alleges

that the Coulterville and Yosemite Turnpike Company was formed to

build a wagon road from Bower Cave through Hazel Green and Crane

Flat to an "unspecified point" on the Valley floor and that, once

the Company reached Crane Flat, it intended to connect with the

Big Oak Flat Road and share its route "into the Valley."   *Id*. at

21.   The County also alleges that the Coulterville Road as

completed traveled through Hazel Green, where it branched south,

continuing "to the Yosemite Valley floor." *Id*. at ¶¶ 14, 17, 21,

Ex. 2.  The County likewise alleges that the Crane Flat Road

branched off at Hazel Green and continued to Crane Flat, and then

continued "to the Yosemite Valley floor" over the Big Oak Flat

Road.  *Id*. at ¶ 14.  *See also id*. at ¶¶ 22, 23, 46, 74, 75 & 80

(bullet 3), 79 (referring to the roads as traveling "to the

Yosemite Valley" or "to the Yosemite Valley floor").

     The complaint also lacks a specific description of other

portions of the claimed roads.  For example, the County alleges

that the Crane Flat Road proceeded to Crane Flat where it joined

the Big Oak Flat Road, but fails to identify the course of the

road to Crane Flat, the location where it joined the Big Oak Flat

Road, or the location of the Big Oak Flat Road.  *See id.* at ¶¶

14, 21, 23.  Similarly, the County alleges that the Coulterville

Road proceeded south, descending from Hazel Green through the

Merced Grove of Big Trees, and down into the Yosemite Valley, but

fails to identify the specific route of the road through those

broad landmarks.  *See id.* at ¶¶ 14, 17, 22, 23.

     Even as to the more limited segments of the roads to which

the County may be seeking to quiet title, the County describes

the Coulterville and Crane Flat Roads as running from Hazel Green

to their respective intersections "with the rerouted Big Oak Flat

Road."  *Id*. at ¶ 74, 79.  However, the new or rerouted Big Oak

Flat Road did not exist in 1874; it was not constructed until the

1    1960s.  *See id*. at ¶ 46.

2        The QTA's particularity requirement demands more.  Although

3    the exact level of specificity is not clearly articulated in the

4    statute or caselaw, it cannot be disputed that, to claim rights

5    to an R.S. 2477 road system that has been unused for many

6    decades, Federal Defendants are entitled to know, according to

7    the best available historical information, where the road was

8    located when R.S. 2477 was in effect.  The County has failed to

9    provide this information.

10       The motion to DISMISS Claims 1 and 2 on the ground that the

11   County has not provided sufficient particularity with respect to

12   the location (including start and end points) of the original

13   R.S. 2477 roads in which it Claims interest is GRANTED WITH ONE

14   OPPORTUNITY TO AMEND.  No other leave will be given.

15
16           b.   <u>Failure to Allege Specific Circumstances Under</u>
                  <u>which Original R.S. 2477 Roads Were Realigned Over</u>
17                <u>Time.</u>

18       Federal Defendants also argue that Mariposa County fails to

19   describe the series of realignments that it alleges were made

20   over time, or when, by whom, and under what legal authority the

21   unidentified realignments were made.  The County states that the

22   two segments of the Coulterville and Crane Flats "at issue" are

23   shown on the maps attached to Exhibit 26 as recently mapped with

24   GPS technology.  *Id*. at ¶ 52, citing Ex. 26 to TAC.  The County

25   alleges that the claimed road segments "reflect[] the realignment

of the easements to accommodate changes in the roads over time
which the private owners, and thereafter the County, the State,
and the Federal governments, agreed to" and mapped.  *See id.* at ¶
14; *see also id.* at ¶¶ 75 & 80 (bullet 13) ("the Roads have been
modified over time by the owners and the Federal, State, and
County Governments ... and such modifications have merely
facilitated the use of the Road[s] to take into account changing
configurations"); ¶46 (the Crane Flat-Big Oak Flat Road "was
rerouted from Crane Flat south to the Valley Floor in 1940").

   Federal Defendants complain that the County never alleges
the location or dates of the series of realignments that it
alleges were made to "accommodate changes in the roads over
time."  Nor does the County identify who constructed the
realigned roads, other than its cryptic allegations that the
realignments were made and agreed to over time by "the private
owners" (id. at ¶ 14), or "the owners" (id. at ¶ 75 & 80 (bullet
13)), and by "the County, the State and the Federal governments
(id. at ¶14, 75 & 80 (bullet 13)).

   As discussed above, the level of specificity required at the
pleading stage in a QTA case is not clearly defined.  However, at
the very least Federal Defendants are entitled to enough
information to permit them to understand the legal basis upon
which the County continues to claim a real property interest in
roads that have been realigned since they were originally

perfected under R.S. 2477.  The County has failed to provide this information in a clear, consistent manner.

The motion to DISMISS Claims 1 and 2 on the ground that the County has not provided sufficient particularity with respect to the realignment of the original R.S. 2477 roads is GRANTED.

### 3.   Failure to Allege that the Claimed Highways Were Established Over Public Land, Not Reserved For Public Uses.

R.S. 2477 granted the public the right of way for the construction of public highways only over "public lands, not reserved for public uses." *See* R.S. 2477; 43 U.S.C. § 932 (1970, repealed 1976).  Given the QTA's particularity requirement, Federal Defendants assert that a plaintiff seeking to quiet title to an R.S. 2477 right-of-way must allege that the lands over which a claimed highway was constructed constituted unreserved public lands as of the date the highway was completed.  Federal Defendants contend that the County cannot so allege, and therefore that its claim must be dismissed.

The County does allege that lands in the vicinity of HGR were owned by the federal government as of the 1888 date of the patent of the Hazel Green property, that in 1890 Congress expanded certain forest reservations, including much of the land that would later become part of Yosemite National Park, and that the Stanislaus National Forest was established in 1897.  *Id.* at ¶ 25, 26, 28.  However, allegations in the complaint indicate that

the Yosemite Grant, including the entire Yosemite Valley floor, was, in fact owned by the State of California from 1866 to 1905. *See id.* at ¶¶ 18-19, 32.  While the complaint is vague as to where on the Yosemite Valley floor the Coulterville and Crane Flat Roads ended, the County apparently asserts that the roads extended into the Yosemite Valley.  During the relevant time period of R.S. 2477's operation, <u>the Valley Floor was owned by the State</u>.  Moreover, the County alleges that the northern and eastern segments of the Coulterville and Crane Flat Roads claimed in its suit, where the County asserts those roads now intersect with the new Big Oak Flat Road, were located on lands that were in private ownership from some unidentified date "until 1939." *See id.* at ¶44.  These contradictory allegations are inconsistent with an allegation that the claimed R.S. 2477 roads were established "over public land," not reserved for public uses.

The motion to DISMISS Claims 1 and 2 on the ground that the County has not alleged the roads were established Over public land, not reserved for public uses is GRANTED WITH ONE OPPORTUNITY TO AMEND.  No further leave will be given.

B.   <u>Motion to Dismiss Claims 3 and 4 for Failure to State A Claim.</u>

    1.   <u>The Patent Contains No Clear and Express Language Granting the Claimed Easements.</u>

HGR's Claims 3 and 4 allege HGR's predecessor, James

Halstead, was granted an implied easement by necessity for the Coulterville and Crane Flat Roads through the 1888 patent. Specifically, HGR alleges that: "The United States Patent of 1888 to HGR's predecessor, James Halstead, provides unqualified access to two existing routes to the Yosemite Valley, including the [Coulterville and Crane Flat Roads], because the Roads existed at the time of Patent."  TAC at ¶¶ 85, 92.

An easement will not be implied "where title was taken by way of a public grant."  *McFarland v. Kempthorne*, 545 F.3d 1106, 1112 (9th Cir. 2008), cert. denied, 129 S.Ct. 1582 (2009).  "In a public grant nothing passes by implication, and unless the grant is explicit with regard to the property conveyed, a construction will be adopted that favors the sovereign."  *Id*.

The 1888 patent to James Halstead states that it grants the specifically identified 120 acre tract, to have and hold, "together with all the rights, privileges, immunities, and appurtenances, of whatsoever nature thereunto belonging unto the said James Halstead and to his heirs and assigns forever."  See TAC at ¶ 24, Ex. 3 to TAC (Halstead Patent).  The patent does not contain clear and explicit language purporting to grant easements for the Coulterville or Crane Flat Roads.  *See also Order Dismissing Second Amended Complaint* at 22 (finding that the use of the word "appurtenance" does not create an easement).

The motion to dismiss Claims 3 and 4 on the ground that the

patent does not grant the claimed easement is GRANTED WITHOUT

LEAVE TO AMEND.  HGR has already attempted, without success, to

allege this claim on two prior occasions.  Three times is enough.

2.   The Elements of Easement by Necessity Are Not Alleged.

HGR's implied easements claim by necessity alleges as

follows:

> By the Patent of 1888, Halstead received an easement by
> necessity because title to the land he received, and
> all land adjoining Hazel Green, was held by the United
> States at the time of the Patent.  That unity of title
> was severed by conveyance of Hazel Green to Halstead.
> At the time of that severance, use of the [Coulterville
> Road/Crane Flat Road] was necessary for Halstead to use
> his property, to wit, to access Hazel Green from the
> Valley Floor, and vice versa.

*Id.* at ¶¶ 87, 94.

An easement by necessity is created when:

> (1) the title to two parcels of land was held by a
> single owner; (2) the unity of title was severed by a
> conveyance of one of the parcels; and (3) at the time
> of severance, the easement was necessary for the owner
> of the severed parcel to use his property.

*McFarland*, 545 F.3d at 1111.  To find an easement by necessity,

the necessity must exist both at the time of severance of unity

of title and at the time of exercise of the easement.  *McFarland*

*v. Kempthorne*, 464 F.Supp.2d 1014, 1019 (D. Mont. 2006), aff'd,

545 F.3d 1106 (9th Cir. 2008).  An easement by necessity does not

exist if the claimant has any other means of access to his

property.  *McFarland*, 545 F.3d at 1111.  The required element of

necessity is "defeated by alternative routes or modes of access-

no matter how inconvenient."  *McFarland*, 545 F.3d at 1111.

33

Here, HGR claims that, at the time of severance, use of the Coulterville Road, as well as the Crane Flat Road, "was necessary for Halstead to use his property, to wit, to access Hazel Green from the Valley Floor, and vice versa."  TAC at ¶¶ 87, 94.  Yet, allegations in the complaint indicate that Halstead had access, not only to Hazel Green from the town of Coulterville, but to and from the Valley floor, <u>over toll roads open to the public</u>.  *See id*. at ¶ 17, 21, 23 ("...as of approximately mid-1874, there were two state and county authorized roadways passing through and connecting Hazel Green which passed to the Yosemite Valley floor: the Coulterville Road ... and the Crane Flat Road.  Tolls were collected at Hazel Green for access to both such roads.").  This alone is sufficient to defeat HGR's claim to an easement by necessity, as the necessity must have existed at the time of severance of unity of title.

HGR concedes that it has access to HGR from the west <u>today</u>, but asserts that access to HGR <u>today</u> is inconvenient, especially with respect to accessing Yosemite Valley:

> As all parties recognize, the only routes of access to and from Hazel Green Ranch are over a Forest Service road which is over an 11-mile drive from Hazel Green Ranch to Highway 120 (which has been, on occasion, closed [see Docket No. 107 at 4]) and west on the Coulterville Road, which provide no access to the Yosemite Valley.

Doc. 115 at 12-13.

The parties engage in considerable debate over whether or

34

not this allegation of inconvenience is sufficient to state a claim for easement by necessity.  Federal Defendants rely on *McFarland*, 545 F.3d at 1111, a 2008 Ninth Circuit case that explicitly held necessity is "defeated by alternate routes or modes of access–no matter how inconvenient."  (Emphasis added.) On the other hand, *Fitzgerald Living Trust v. United States*, 460 F.3d 1259, 1266 (9th Cir. 2006), relied upon in *McFarland*, the Ninth Circuit noted that "[a]n easement by necessity is not defeated by the grantee's ability to access a public road over a stranger's property."  Moreover, both *McFarland* and *Fitzgerald* were decided on summary judgment after a close examination of the facts.[2]  Assuming, *arguendo*, that the issue of inconvenience cannot be decided on a motion to dismiss, HGR's easement by necessity claims nevertheless must be dismissed because the TAC's allegations are inconsistent with a finding of necessity at the time of severance of unity of title. HGR must allege that no other access existed at the time of severance, without regard to convenience.  It cannot do so.

The Motion to Dismiss Claims 3 and 4 for failure to state a

_____

[2] *Bydlon v. United States*, 175 F. Supp. 891 (Ct. Cl. 1959), relied upon by Plaintiffs, was also decided on summary judgment. *Bydlon*, a Court of Claims case applying the law of Minnesota, concerned a plaintiff who could only access his resort property surrounded by federal Wilderness by "bring[ing] his guests and supplies over 41 miles of lakes, portages, and dangerous rapids via a series of boats and land vehicles."  *Id*. at 897.  Under those circumstances, he was found to possess an easement by necessity to fly his guests into his property.  *Bydlon's* extreme facts and application of Minnesota law render it weak support for a finding of an easement by necessity in this case.

claim for easement by necessity is GRANTED WITHOUT LEAVE TO

AMEND.


C.   <u>Motion to Dismiss Claims 5 and 6 For Failure to Meet the</u>
     <u>Particularity Requirements of the QTA and Failure to State a</u>
     <u>Claim.</u>

     1.   <u>Ambiguous and Inconsistent Allegations of "Implied</u>
          <u>Easement By Use."</u>

     HGR's 5th and 6th claims for relief are captioned as claims

for an "implied easement by use" for the Coulterville and Crane

Flat Roads.  TAC at 39, 44.  HGR first alleges, as with Claims 3

and 4, that: "The United States Patent of 1888 to HGR's

predecessor, James Halstead, provides unqualified access to two

existing routes to the Yosemite Valley, including the

[Coulterville and Crane Flat Roads], because the Roads existed at

the time of Patent."  *Id*. at ¶¶ 99, 107.  HGR follows this

allegation with a summary of other allegations in the complaint,

including its assertions concerning Halstead's collection of

tolls and use of the roads and the County's ownership of the

roads.  *See id*.  This suggests that HGR alleges an implied grant

under the 1888 patent to Halstead based on the existence of the

roads at the time of patent.

     HGR next alleges that the patent to Halstead, together with

the patents of the other lands traversed by the two roads,

"deeded the land including the roads without excepting out any

rights of way of others."  *Id*. at ¶¶ 101, 109.  HGR further

alleges that the roads "continued to be used by all owners from

36

Coulterville through those properties, through Hazel Green, to the Yosemite Valley floor, and from the Valley back through the properties and to Coulterville." *Id*. HGR then concludes:

> The existence of the roads when the Patents were issued, and their very usage, created express and implied reciprocal easements between the property owners after each parcel was patented, and with the Federal Government up to the time each parcel was patented.

*Id*. This appears to allege a private easement created by the patent to Halstead, together with the patents of the other lands traversed by the roads, the "existence of the roads" as of the dates of those patents, and their "usage" by the property owners after issuance of the patents starting in 1888.

Finally, HGR alleges private easements are based on prescription:

> HGR's predecessors, beginning with Halstead's use described above, used the Coulterville Road, and the Crane Flat Road segment, for access to the Yosemite Floor beginning in 1874. This use was open and notorious, continuous and uninterrupted, hostile to the true owners of the lands through which the Roads passed, under claim of right, and continued for a statutory period of five years (and beyond).

*Id*. at ¶¶ 102, 110.

HGR, despite having been given three opportunities to do so, still has not clearly articulated the legal basis (or bases) upon which it claims to have acquired private easements for the roads, let alone for the alleged "implied easement by use."

In opposition to Federal Defendants' motion to dismiss, HGR suggests that "easements may be created in numerous ways..."

including "constant, uninterrupted, and peaceful use of property...."  But, HGR fails to explain whether this theory is the basis for its "implied easement by use" allegation.  Again, the QTA requires a clear explanation of the nature of the claimed property interest.  HGR has once again failed to provide any such explanation.  The motion to dismiss Claims 5 and 6 for failure to plead an implied easement by use with particularity is GRANTED WITHOUT LEAVE TO AMEND.

> 2.  To the Extent Claims 5 and 6 are Based on the 1888 Halstead Patent, Plaintiffs Fail to State a Claim.

The district court previously dismissed HGR's claims that the 1888 patent to Halstead, together with the existence and use of the roads, expressly or impliedly granted a private easement to Halstead.  Doc. 97 at 21-23.  HGR failed to "articulate the means or mechanism of creation or implication that gave rise to any easement in this case."  *Id*. at 21.  Observing that the closest HGR came to identifying the origin of its alleged easements was its assertion that "the roads were privately built by private parties across Hazel Green, traversed private property on their route to Yosemite Valley, and were used by Halstead (and those from whom he took tolls at his operation on Hazel Green) continuously and before and after the 1888 patent," the district court concluded that HGR cited no legal basis to explain how these facts could give rise to its claimed private easements.  *Id*. at 21, 22.  HGR's reliance on the general language in the

1888 patent granting "rights, privileges, immunities, and appurtenances, of whatever nature thereunto belonging" to Halstead and his heirs was "misplaced," as the use of the word "appurtenance" in a patent does not create an easement and will only carry with it any easement that pre-dated the patent.  *Id*. at 22 (citing *Fitzgerald,* 460 F.3d at 1267).  HGR's argument that the easements existed at the time of the Halstead patent "because, for 14 years prior, the Roads not only existed but Halstead used the Roads, collected tolls for the Roads, and controlled passage on the Roads for toll-paying users...." was also rejected.  *Id*. at 22-23 (concluding HGR had failed to "articulate a legal theory (or facts from which a legal theory could be implied) upon which any express easement ... was created by these circumstances."  *Id*. at 22-23.

Here, the TAC suggests that private easements were created by the patent to Halstead, together with the patents of the other lands traversed by the roads, the existence of the roads as of the dates of those patents, and their use by the property owners after issuance of the patents.  *See* TAC at ¶¶ 101, 109.  HGR's allegation that these facts led to the creation of express and implied "reciprocal easements between the property owners ... and with the Federal Government" in unsupported by any legal authority not previously addressed.

HGR's attempt to distinguish *Fitzgerald*, a case relied upon

1   in the previous order, is unavailing.  HGR suggests that the

2   *Fitzgerald* plaintiffs failed to allege that their predecessor or

3   others used the nine-mile "rough trail" that was the subject of

4   the suit or that the trail became a road over time.  Doc. 115 at

5   20.  Here, by contrast, HGR points out that it directly alleges

6   that "Halstead used the Roads" and that "[u]nlike the landowners

7   in *Fitzgerald*, HGR is not a landowner seeking to convert a 'rough

8   trail' into an easement without demonstrating that the road was

9   used by its predecessor or otherwise known to the parties."  *Id.*

10

11      In fact, the *Fitzgerald* decision indicates that the

12  Fitzgeralds and their predecessors had used "FDR 56B" (the "rough

13  trail") for decades.  *Id.* at 1261 (indicating the Fitzgeralds

14  purchased the property in 1983 and "the Forest Service never

15  attempted to restrict the Fitzgeralds' or their predecessors-in-

16  interest's use of FDR 56B," but "[i]n the spring of 1986 ... the

17  Forest Service asked the Fitzgeralds to apply for a 'special use

18  permit' ... to <u>continue</u> using the road)(emphasis added).  In

19  addition, the Ninth Circuit concluded that, even assuming the

20  rough trail became FDR 56B, the patent language "with the

21  appurtenances thereof" lacked the requisite intent and

22  specificity to convey an easement.  *Id.* at 1267.  Moreover, even

23  if *Fitzgerald* could be distinguished on the ground that the

24  Fitzgerald plaintiffs had not alleged use of the road, HGR's

25  previous allegations that use created an easement have already

26

27

28

                                40

been rejected.  Doc. 97 at 22-23.  This claim is dismissed
WITHOUT LEAVE TO AMEND.  It shall not be realleged.

### 3.    To the Extent Claims 5 and 6 are Based on Prescription, Plaintiffs Fail to State a Claim.

Federal Defendants argue, in the alternative, that to the
extent Claims 5 and 6 are based on prescription, the claims fail
to state a claim upon which relief can be granted.  First,
Prescription is not available as against the United States.  *See
United States v. Vasarajs*, 908 F.2d 443, 446 n.3 (9th Cir. 1990)
("[E]ven if [defendant] could prove that the arcane time and use
requirements of a prescriptive easement were fulfilled...
[defendant] would face the traditional bar that prescriptive
rights cannot be obtained against the federal government.").

Even if this were not the case, the TAC alleges facts that
are inconsistent with the creation of a prescriptive easement,
which requires a claimant to and establish use of the property
that has been (1) open and notorious, (2) continuous and
uninterrupted for the statutory period of more than five years,
(3) hostile to the true owner, and (4) under a claim of right.
*Brewer v. Murphy*, 161 Cal. App. 4th 928, 938 (2008); Cal. Civ.
Code § 1007.  However, HGR alleges throughout its complaint that
the roads were constructed as toll roads, open to the public.
*See* TAC at ¶23.  As the district court previously indicated:  "It
defies logic to assert that an individual who had permission to
use a road and collect tolls from users of that road could

possibly have used the road in an openly hostile manner." Doc. 97 at 27. This claim is dismissed WITHOUT LEAVE TO AMEND. It shall not be realleged.

V. <u>CONCLUSION</u>

For all the reasons set forth above, Federal Defendants' motion to dismiss is GRANTED IN ITS ENTIRETY. Plaintiffs may amend their complaint, as set forth above, on or before April 29, 2010.


SO ORDERED
Dated:  April 5, 2010

                                   /s/ Oliver W. Wanger
                                   Oliver W. Wanger
                                   United States District Judge